**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **PIPELINE PRODUCTIONS, INC., et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 15-4890-KHV** |
| **HORSEPOWER ENTERTAINMENT, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER**

On May 21, 2015, Pipeline Productions, Inc. and Backwood Enterprises, LLC filed this lawsuit against Horsepower Entertainment and The Madison Companies, LLC. Plaintiffs assert state law claims for breach of contract and breach of fiduciary duty related to a joint venture to produce music festivals.[1] Defendants contend that they did not enter a joint venture but merely loaned plaintiffs $270,000 to fund a music festival in Arkansas. This matter comes before the Court on Defendants' Motion To Dismiss Plaintiffs' Complaint Or Alternatively Transfer To The District Of Delaware (Doc. #6) filed June 27, 2015. For reasons set forth below, the Court finds that defendants' motion should be overruled.

**Legal Standards**

A party may seek to enforce a forum selection clause by filing a motion to transfer under 28 U.S.C. § 1404(a). Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex., 134 S.Ct. 568, 579 (2013). Section 1404(a) provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

---

[1] Plaintiffs assert diversity jurisdiction under 28 U.S.C. § 1332.

28 U.S.C. § 1404(a) (2012). In the typical case which does not involve a forum selection clause, a district court considering a motion to transfer under Section 1404(a) must evaluate both the convenience of the parties and various public-interest considerations. Atl. Marine Constr. Co., 134 S.Ct. at 581. Ordinarily, a district court weighs the relevant factors and decides whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." Id. The calculus changes, however, when the parties' contract contains a valid forum selection clause, which represents the parties' agreement as to the most proper forum. Id. (citing Stewart Org. v. Ricoh Corp., 487 U.S. 22, 31 (1988)). Courts should give a valid forum selection clause controlling weight in "all but the most exceptional cases." Atl. Marine Constr. Co., 134 S.Ct at 581 (internal citation omitted).

**Procedural And Factual Background**

Pipeline Productions, Inc. is a Kansas corporation with its principal place of business in Lawrence, Kansas. Backwood Enterprises, LLC is an Arkansas limited liability corporation with its principal place of business in Lawrence, Kansas. Pipeline and Backwood (collectively, "Pipeline") produce live music and music festivals. Brett Mosiman and Nathan Prenger conduct business for Pipeline and related entities, including OK Productions.[2]

The Madison Companies, LLC is a Delaware limited liability company with its principal place of business in Greenwood Village, Colorado. Horsepower Entertainment, a Delaware limited liability company, is a wholly-owned subsidiary of Madison with its principal place of business in Greenwood Village, Colorado. Madison and Horsepower (collectively, "Horsepower") are in the

---

[2] OK Productions is an Arkansas entity which is related to Pipeline; the record does not reflect the exact nature of that relationship.

business of providing venture capital.

In 2014, on behalf of Pipeline, Mosiman and Prenger negotiated with Horsepower concerning a potential joint venture to produce music festivals. On July 28, 2014, the parties executed a Letter of Intent ("LOI") which summarizes a possible investment by Horsepower in Pipeline Festivals, LLC, a to-be-formed Delaware limited liability company. Doc. #8-1. The LOI refers to Mosiman, Prenger, Pipeline Productions, Inc., OK Productions and affiliates collectively as the "Pipeline Parties," the "PPI Parties" or "PPI Entities." The LOI provides that Pipeline Festivals, LLC will commence operations upon "(i) the contribution by the Pipeline Parties of substantially all of the assets, free and clear of all liabilities, of Pipeline Production, Inc.'s musical festival business to Pipeline Festivals LLC and (ii) the funding by Horsepower of certain payments to the Pipeline Parties, certain initial capital contributions to Pipeline Festivals, LLC and Horsepower's commitment to make further capital contributions to Pipeline Festivals [LLC]." Id. at 1. The LOI provides that the Pipeline Parties will issue equity interests to Horsepower and that in exchange, Horsepower will make up to $6,560,000 in payments and investments. Id.

The LOI further states that "[a]s soon as practicable after execution of the LOI, the parties shall commence to negotiate definitive agreements . . . to evidence the Transaction," and that "[t]he Definitive Agreements will include such terms and conditions as may be acceptable to all of the Parties." Id. at ¶ 8. The LOI includes a choice of law and forum selection clause which provides that all disputes "arising from or related to" the LOI must be litigated in Delaware, as follows:

> Governing Law; Venue. This letter shall be governed by and construed in accordance with internal laws of the State of Delaware . . . . The US Federal Court for Delaware and Delaware state courts having jurisdiction shall be the exclusive venues for any litigation arising from or related to this Agreement.

Id. at ¶ 16.

The LOI provides that it "will automatically terminate and be of no further force and effect upon the earlier of (i) execution of the Definitive Agreements by the Parties, (ii) mutual agreement of the Parties, and (iii) November 1, 2014." Id. at ¶ 14. It provides, however, that the choice of law and venue clause shall survive termination of the LOI. Id.

The Delaware Lawsuit

On April 15, 2015, Horsepower filed suit in Delaware Chancery Court against Pipeline Productions, Inc., Mosiman and Prenger. Horsepower sought a declaratory judgment that (1) the LOI did not create any obligation for Horsepower regarding production of the Thunder Mountain Festival in Arkansas (Count 1) and (2) Pipeline Productions, Inc., Mosiman and Prenger were obligated to repay Horsepower a $270,000 loan to produce the festival (Count 2). Horsepower also asserted that defendants breached a loan contract and thus owed Horsepower $270,000 plus interest (Count 3). Horsepower asserted that based on the LOI, which provides exclusive jurisdiction in Delaware, the Delaware Chancery Court had personal jurisdiction over defendants.

On May 14, 2015, Pipeline removed the case to the United States District Court for the District of Delaware (the "Delaware court"), asserting diversity jurisdiction. See Madison Cos. v. Backwood Enters., No. 15-cv-388-RGA (D. Del. 2015) ("Madison").[3] Pipeline moved to dismiss the claims for lack of jurisdiction or, alternatively, to transfer the claims to the United States District Court for the District of Kansas where (by then) this action was pending. Specifically, Pipeline asserted that the Delaware court lacked subject matter jurisdiction over the declaratory judgment claim in Count I and lacked personal jurisdiction over the remaining claims, as follows:

Defendants will show that the first claim – for a declaration that no duties or

---

[3] One week later, on May 21, 2015, Pipeline sued Horsepower in this Court.

>    obligations arise under the LOI – must be dismissed because this Court lacks subject matter jurisdiction. The claim is not justiciable because there is no real dispute or controversy between the parties. The second and third claims – for declaratory judgment, and a money verdict on a loan agreement – must be dismissed for lack of personal jurisdiction because there are no sufficient minimum contacts between the parties, the claims asserted against them, and Delaware.

See Doc. #8 in Madison at 5-6. Pipeline argued that Horsepower had brought the declaratory judgment claim in an attempt to establish personal jurisdiction over Pipeline to enforce an underlying loan agreement, as follows:

>    [Horsepower] does not claim, and cannot claim that the alleged loans were made under the terms of the LOI. But without the LOI, and application of its forum selection clause, [Horsepower] cannot bring suit to prove and enforce a loan in Delaware. To solve this problem [Horsepower] manufactures a dispute over the LOI that simply does not exist.

Id. at 8. Pipeline stated that "[i]n its first cause of action [Horsepower] asks the Court to declare that the LOI is a dead letter, and that no rights or obligations can arise from it." Id. at 9. Pipeline then asserted that "there cannot be a controversy when [Horsepower]'s opponent, Pipeline, agrees." Id.

In its response brief and at the hearing on the motion, Horsepower argued that the declaratory judgment claim in Count 1 was not as limited as Pipeline asserted. Horsepower argued that it presented a justiciable controversy because the declaratory judgment claim sought not only a declaration regarding the enforceability of the LOI, but also a declaration regarding the parties' commercial relationship as it related to the Thunder Mountain Festival. See, e.g., Doc. #25 in Madison at 27.

On December 4, 2015, the Delaware court granted Pipeline's motion to dismiss.[4] With respect to the declaratory judgment claim (Count 1), the Delaware court did not rule whether it had

---

[4] In essence, the Delaware court adopted Pipeline's argument that the forum selection clause in the LOI did not apply to Horsepower's claims and that it had no jurisdiction over the parties or the case.

personal jurisdiction over Pipeline.[5] Rather, it dismissed the declaratory judgment claim for lack of subject matter jurisdiction, stating as follows:

> [I]n my opinion seeking declaratory relief to somehow or other interpret a contract or the Letter of Intent when we're agreed it has no [prospective] effect, because it's expired, then there is – and there's no claim that it was breached, means that there's no justiciable controversy for me to resolve.

Id. at 72. As to the Counts 2 and 3, the Delaware court ruled that it had no personal jurisdiction over Pipeline, Mosiman and Prenger because the forum selection clause did not apply to the issue whether a $270,000 transaction was a loan or an investment as part of a joint venture. Although the Delaware court did not specifically address the fact that the forum selection clause applies to "any litigation arising from or related to" the LOI, it necessarily – if implicitly – rejected any argument that the Delaware case was "related to" the LOI.

On December 30, 2015, Horsepower filed a notice of appeal to the United States Court of Appeals for the Third Circuit.[6] On April 20, 2016, based on the parties' agreement, the Third Circuit dismissed the appeal of the Delaware case. See Madison Co. LLC v. Backwoods Enters., No. 15-

---

[5] The Delaware court addressed personal jurisdiction on a claim-by-claim basis, and counsel for Pipeline agreed with this approach:

> THE COURT: Do you think that the question of whether or not there's personal jurisdiction based on a forum selection clause means that I have to consider sort of each count separately and I could say there is personal jurisdiction for this one and there isn't personal jurisdiction for that one?
>
> MR. SKEPNEK: Good question, Your Honor. I think, yes, actually.

Doc. #25 in Madison at 13.

[6] On February 5, 2016, Horsepower filed a motion to stay Pipeline's case in this court pending the Third Circuit decision in the appeal of the Delaware case. See Doc. #16. On April 13, 2016, this Court overruled the motion to stay. See Memorandum And Order (Doc. #20).

4096, Doc. #30112269331, at 1 (3d Cir. 2016).

The Instant Lawsuit

On May 21, 2015, the week after it removed the Delaware case from state to federal court, Pipeline sued Horsepower in this Court. Highly summarized, the complaint in this case alleges as follows:

The parties never reached the "Definitive Agreements" which the LOI contemplated, and on October 23, 2014, Horsepower revoked the LOI. Complaint at ¶ 10.[7]

On November 4, 2014, Mosiman proposed a joint venture agreement between Pipeline and Horsepower for the limited purpose of owning and producing the Thunder Mountain Festival. Id. at ¶ 12. On November 6, 2014, Horsepower, through its principal Bryan Gordon, orally accepted a modified version of Mosiman's proposal. Horsepower agreed that it would (1) pay Pipeline $750,000 for a 51 per cent interest in the Thunder Mountain Festival, (2) provide $500,000 of operating capital for the Thunder Mountain Festival, and (3) pay Pipeline $80,000 to operate and produce the Thunder Mountain Festival.

Based on the agreement of November 6, 2014, Pipeline personnel spent more than 4,000 hours on the Thunder Mountain Festival from November of 2014 through May of 2015. Their efforts included creating infrastructure, contracting with vendors, setting up ticketing and marketing and promoting the festival. Mosiman used his industry contacts to obtain commitments from approximately 50 artists. As part of its commitment to provide operating capital, Horsepower provided $272,000 to pay deposits for music artists. Pipeline kept Horsepower informed about the progress of the Thunder Mountain Festival and provided daily reports about advance ticket sales.

---

[7]   In the alternative, the complaint alleges that by its own terms, the LOI terminated on Nov. 1, 2014. See Complaint, ¶ 10.

Based on music industry expectations and ticket sales, at some point Horsepower forecast that the Thunder Mountain Festival would generate a loss in 2015. Horsepower then attempted to re-characterize its investment in the Thunder Mountain Festival as a loan. Horsepower refused to fulfill its commitment to (1) provide $500,000 to produce the Thunder Mountain Festival, (2) fund its purchase of a 51 per cent interest in the Thunder Mountain Festival and (3) pay Pipeline $80,000 for operating costs. Horsepower has withheld performance of its contractual obligations in an attempt to force Pipeline to give Horsepower more favorable terms for the Thunder Mountain Festival. Pipeline has covered Horsepower's default by paying over $700,000 in production costs for the festival.

Pipeline asserts claims for breach of contract (Count 1) and breach of fiduciary duty (Count 2). It also seeks a declaration that Horsepower breached an oral contract with Pipeline, anticipatorily repudiated the contract and forfeited its right to any legal or equitable interest in the Thunder Mountain Festival (Count 3).

## Analysis

Horsepower asserts that the Court must dismiss the complaint or transfer the case to the District of Delaware because the forum selection clause in the LOI designates the District of Delaware or Delaware state courts as the exclusive venue for this litigation. On October 12, 2016, this Court noted that the parties had not addressed the effect of the Delaware litigation on the case before this Court. The Court therefore ordered the parties to show cause as to the following issues:

> **whether or to what extent the District of Delaware decision that the Letter Of Intent does not apply to the controversy [there] controls the issue whether its forum selection clause applies to the disputes at issue in this case. If any party claims that the**

> **Delaware ruling has binding force in this case, the party shall undertake the relevant choice of law analysis and explain the legal basis for any argument concerning res judicata, issue preclusion and judicial estoppel.**

<u>Memorandum And Order To Show Cause</u> (Doc. #21).[8]  In response, Pipeline contends that the Delaware court concluded that the LOI forum selection clause did not apply to the controversy between the parties, and that collateral estoppel precludes this Court from independently determining whether the forum selection clause requires dismissal or transfer of the Pipeline claims in this case.  Horsepower argues that Pipeline mischaracterizes the Delaware court's ruling and asserts that this Court must determine the merits of Horsepower's motion to dismiss or transfer.

**I.      Forum Selection Clause**

Horsepower asserts that the forum selection clause applies to this case and requires the Court to dismiss the case or transfer it to the District of Delaware.  Pipeline counters that the forum selection clause does not control because its complaint alleges breach of an agreement that does not "arise from or relate to" the LOI.  <u>Plaintiffs' Pipeline Productions  Inc. And Backwood Enterprises, LLC  Response In Opposition To Defendants' Motion To Dismiss Or Alternatively Transfer To The District Of Delaware</u> (Doc. #12) filed August 16, 2015 at 2.

A federal court exercising diversity jurisdiction determines the application of a forum selection clause under federal law.  <u>Stewart Org. v. Ricoh Corp.</u>, 487 U.S. 22, 28 (1988); <u>Black & Veatch Const., Inc. v. ABB Power Generation, Inc.</u>, 123 F. Supp. 2d 569, 577 (D. Kan. 2000).  The Court must first determine, however, whether a forum selection clause is part of the parties' agreement.  A federal court applies state law in deciding whether an agreement exists and the terms

---

[8]      On December 8, 2016, the Court held oral argument on the order to show cause.

of such an agreement. Yavuz v. 61 MM, Ltd., 465 F.3d 418, 428 (10th Cir. 2006) (law which governs contract as whole governs forum selection clause); M.K.C. Equip. Co. v. M.A.I.L. Code, Inc., 843 F. Supp. 679, 683 (D. Kan. 1994). Further, a district court exercising diversity jurisdiction applies the choice-of-law rules of the state in which it sits. Shearson Lehman Bros., Inc. v. M & L Invs., 10 F.3d 1510, 1514 (10th Cir. 1993). Kansas choice-of-law rules honor an effective choice of law made by contracting parties. See Equifax Servs. Inc. v. Hitz, 905 F.2d 1355, 1360 (10th Cir. 1990). Here, the choice-of-law provision in the LOI requires that the Court apply Delaware law. If the choice-of-law provision did not apply, the Court would apply Kansas law. Because Kansas and Delaware law appear substantially similar, however, this issue is essentially moot.

In construing a contract, the intent of the parties is the primary question; the court should ascertain the meaning by examining the document from all corners and by considering all of the pertinent provisions. Liggatt v. Emp'rs. Mut. Cas. Co., 273 Kan. 915, 921, 46 P.3d 1120, 1125 (2002)). If the terms of the contract are clear, there is no room for rules of construction, and the intent of the parties is determined from the contract itself. Id. (citing Marquis v. State Farm Fire & Cas. Co., 265 Kan. 317, 324, 961 P.2d 1213, 1219 (1998)). On the other hand, if the court determines that written contract language is ambiguous, it may consider extrinsic or parol evidence to construe it. See Waste Connections of Kan., Inc. v. Ritchie Corp., 296 Kan. 943, 963, 298 P.3d 250, 264 (2013). Before determining that a contract is unambiguous, the court must give the language a fair, reasonable and practical construction. Marquis, 265 Kan. at 324, 961 P.2d at 1219.

As noted, Horsepower relies on the following language in the LOI:

The US Federal Court for Delaware and Delaware state courts having jurisdiction shall be the exclusive venues for any litigation *arising from or related to this Agreement.*

Doc. #8-1 at 11 (emphasis added). Horsepower asserts that the Pipeline claims in this case arise from or are related to the LOI. Pipeline argues that its claims are based on an oral agreement separate from the LOI and that this litigation therefore does not arise from and is not related to the LOI.

Here, the complaint alleges that after the LOI terminated, Horsepower orally agreed to a joint venture with Pipeline to produce the Thunder Mountain Festival. See Complaint (Doc. #1) at ¶¶ 10, 12, 25. Pipeline contends that Horsepower breached the oral agreement to provide funds for the Thunder Mountain Festival.[9] Id. ¶¶ 12, 27. Horsepower disputes that it entered an oral joint venture, but argues that any such agreement necessarily arose from or is related to the LOI, which contemplates a joint venture which involved Thunder Mountain Festival. The Court agrees.

The complaint alleges obligations on the part of Horsepower which closely mirror the obligations proposed in the LOI. For example, Pipeline alleges that Horsepower agreed to fund $500,000 of operating capital for the Thunder Mountain Festival; the LOI provides that Horsepower will contribute $510,000 to Pipeline Festivals, LLC to fund the re-launch of the Thunder Mountain Festival.[10] See Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001)

---

[9] Horsepower disputes that it entered an oral agreement for a joint venture; it asserts that it loaned Pipeline funds to promote the Thunder Mountain Festival.

[10] The LOI proposes that Horsepower and Pipeline jointly form a new LLC which would own Thunder Mountain Festival and other Pipeline music festivals. The LOI provides that the ownership of the proposed LLC would entail Horsepower owning 51%, Mosiman owning 34.3%, and Prenger owning 14.7%. Doc. #10 ¶ 3(a). In other words, Horsepower would have a 51% ownership interest and Pipeline would have a 49% ownership interest in the company that included Thunder Mountain Festival. Similarly, Pipeline's complaint here contends that under an oral agreement for a joint venture, Horsepower would own 51% of Thunder Mountain Festival and Pipeline would own 49%. Doc. #1 ¶ 12. In addition, the LOI proposes that Horsepower provide $510,000 of operating capital for Thunder Mountain Festival; here, Pipeline alleges that Horsepower
(continued...)

("arising out of" usually interpreted to indicate a "causal connection"). The LOI summarizes the principal terms of Horsepower's possible investment in Pipeline music festival business. The negotiation and execution of the LOI was a step toward a potential joint venture regarding Thunder Mountain Festival and other festivals. Thus, even if Pipeline's claims do not "arise from" the LOI, they are certainly "related to" it. John Wyeth & Bros. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1075 (3d Cir. 1997) (phrase "relating to" broader than "arising from");[11] see also Coregis Ins., 241 F.3d at 128-29 ("related to" equivalent to "in connection with" and "associated with"); Sharp v. Wellmark, Inc., No. 10-cv-2430-SAC, 2010 WL 4291644, at *1-2 (D. Kan. Oct. 26, 2010) (forum selection clause may govern claims other than those alleging breach of the contract which contains clause); cf. Black's Law Dictionary 1479 (10th ed. 2014) (defining "related" as "[c]onnected in some way"). If the Court were determining in the first instance whether the forum selection clause applies to this case, it would easily so find. As set out below, however, under the doctrine of collateral estoppel, the Delaware court's ruling bars this Court from finding that the forum selection clause applies to this case.[12]

---

[10](...continued)
is obligated to provide $500,000 of operating capital for the Thunder Mountain Festival joint venture. Doc. #10 ¶ 1(a); Doc. #1 ¶ 12. Further, under either the LOI or Pipeline's alleged oral joint venture, Mosiman and Prenger were to assume operational roles for Thunder Mountain Festival. Doc. #10 ¶ 3(f); Doc. #1 ¶ 13.

[11]  In Wyeth, the parties' forum selection clause provided that English courts had jurisdiction over "any dispute arising . . . in relation to" the parties' agreement. 119 F.3d at 1074. The court concluded that the forum selection clause applied to any dispute where the dispute's origin had some "logical or causal connection" to the parties' agreement. Id. at 1074-75.

[12]  Because collateral estoppel precludes the Court from finding that the forum selection clause applies to this case, the Court need not further analyze whether the interests of justice would be served by enforcing the forum selection clause.

(continued...)

## II.     **Collateral Estoppel**

The Tenth Circuit has suggested that in considering the issue-preclusive effect of another federal court sitting in a diversity case, a federal court should apply the law of the state in which the court which issued the original ruling sits. See Cudd Pressure Control, Inc. v. N.H. Ins. Co., 645 F. App'x 733, 738 (10th Cir. 2016). Delaware, Kansas and federal law each require four conditions to establish collateral estoppel:

> (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party

---

[12](...continued)

As noted, Horsepower seeks dismissal or transfer to the District of Delaware. In the typical case not involving a forum selection clause, a district court considering a motion to transfer under Section 1404(a) must weigh the convenience of the parties and various public-interest considerations and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." Atl. Marine Constr. Co., 134 S. Ct. at 579-81; see Lagerstrom v. Enter. Bank & Tr., No. 13-2531-JTM, 2014 WL 1047955, at *1 (D. Kan. March 18, 2014). A valid forum selection clause requires district courts to adjust the usual analysis under Section 1404(a) in three ways. Atl. Marine Constr. Co., 134 S. Ct at 581 (internal citation omitted). First, Pipeline's choice of forum merits no weight. Id. Rather, as the party defying the forum selection clause, Pipeline bears the burden to establish that transfer to the forum for which the parties bargained is unwarranted. Id. Second, the court does not consider arguments about the parties' private interests. Id. at 582 (when parties agree to forum selection clause, they waive right to challenge preselected forum as inconvenient to themselves). Rather, the court may only consider arguments about public interest factors. Id. "Because those factors will rarely defeat a transfer motion," the practical result is that forum selection clauses should control "except in unusual cases." Id. In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain. Id. at 583.

In response to Horsepower's motion to dismiss or transfer, Pipeline has not demonstrated that presenting the action in Delaware is clearly unjust, or that Horsepower obtained the forum selection clause by fraud and overreaching. See Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 958 (10th Cir. 1992). Pipeline briefly argues that Delaware is an inconvenient forum, stating that "[t]here is literally nothing convenient about Delaware; neither party resides there; none of the witnesses are in Delaware; nothing at all that is relevant to this case took place in Delaware." Plaintiffs' Response (Doc. #12) at 15. Even if litigating the case in Delaware would inconvenience Pipeline, however, that prospect was evident when it entered the LOI. The parties chose Delaware, and Pipeline points to no "inconvenience so serious as to foreclose a remedy." Riley, 969 F.2d at 958.

-13-

  against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Betts v. Townsends, Inc., 765 A.2d 531, 534 (Del. 2000); B-S Steel of Kan. Inc. v. Tex. Indus., Inc., 439 F.3d 653, 662 (10th Cir. 2006) (citing Estate of True v. C.I.R., 390 F.3d 1210, 1232 (10th Cir. 2004)).

  Regarding the first element, identity of issues, collateral estoppel applies to "situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding." Comm'r of IRS v. Sunnen, 333 U.S. 591, 599-600 (1948). Mere resemblance of issues is not enough. Farha v. F.D.I.C., 963 F.2d 283, 286 (10th Cir. 1992). To establish that an issue is not identical to one resolved in previous litigation, a party "need only point to one material differentiating fact that would alter the legal inquiry[.]" F.T.C. v. Nat'l Urological Grp., Inc., 785 F.3d 477, 482 (11th Cir. 2015) (quoting CSX Transp., Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1317 (11th Cir. 2003)).[13]

  In the case before this Court, the question is whether the Pipeline claims for breach of an oral contract "arise from or are related to" the LOI. In Delaware, the question was whether the Horsepower demands for a declaratory judgment (Counts 1 and 2) and for breach of a $270,000 loan agreement (Count 3) arose from or were related to the LOI. Because it found that the declaratory judgment claim in Count 1 did not present a case or controversy, the Delaware court found no subject

---

  [13] At the show cause hearing, Horsepower argued that Pipeline is attempting to employ offensive collateral estoppel, which is not favored. See In re Microsoft Corp. Antitrust Litig., 355 F.3d 322, 326 (4th Cir. 2004). Offensive collateral estoppel refers to instances where a plaintiff attempts to foreclose defendant from litigating an issue that defendant previously litigated unsuccessfully in an action against another party. Id. The caution against offensive collateral estoppel does not apply here because Pipeline was a party to the previous case. See id.

-14-

matter jurisdiction over that question.[14] As a result, it only addressed the declaratory judgment and breach of contract claims regarding the $270,000 "loan" (Counts 2 and 3). It had to decide whether those two claims arose from or were related to the LOI.[15]

Plainly put, in Delaware the underlying question was whether Horsepower loaned Pipeline $270,000 and if so, whether Pipeline was liable for nonpayment. In the case before this Court, the question is whether $272,000 (or $270,000) was part of operating capital (versus a loan). For purposes of the forum selection clause, the Court views the issues as undistinguishable; they are actually two sides of the same question – one is a factual claim, one a factual defense. The Court finds that Pipeline has satisfied the first element of collateral estoppel.

To establish the second element of collateral estoppel, Pipeline must show that in the previous case the parties actually litigated the issue and the court adjudicated the issue on the merits. Specifically, Pipeline must show that the Delaware court finally adjudicated whether the Pipeline claims for breach of an oral contract arose from or were related to the LOI.

The Delaware court did not decide whether the forum selection clause applied to Count 1 – Horsepower's claim for a declaration of the parties' rights and obligations concerning Thunder Mountain Festival. It construed Count 1 as only seeking a declaration regarding whether the LOI created any substantive rights or duties with respect to the Thunder Mountain Festival. Because

---

[14] Count 1 in the Delaware case asked for a declaration that no duties or obligations arose under the LOI.

[15] Specifically, in Delaware, Horsepower sought to recover a $270,000 loan to Pipeline and a declaration that it had no obligations under the LOI. In this action, Pipeline seeks a declaration that $272,000 was part of $500,000 in operating capital for Thunder Mountain Festival that Horsepower allegedly committed to Pipeline as part of a joint venture. Pipeline also seeks to enforce a commercial relationship for Thunder Mountain Festival that is very similar to the terms contemplated by the LOI.

-15-

Pipeline agreed that it did not, the Delaware district court found no justiciable controversy and dismissed the claim for lack of subject matter jurisdiction. As to Counts 2 and 3, the Delaware court implicitly decided that Horsepower's claim for breach of a $270,000 loan agreement was not related to and did not arise out of the LOI. Horsepower acknowledges that ruling, but argues that because the issue was not presented in the Delaware action, the Delaware Court did not decide the broader issue whether the forum selection clause applied to the alleged oral joint venture.[16] Thus, Horsepower argues that the issue which Pipeline now seeks to preclude this Court from deciding – whether the forum selection clause applies to its claims that Horsepower entered an oral joint venture and that Horsepower paid Pipeline $272,000 as part of that agreement – was not actually litigated and decided on the merits. See Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999) (in determining preclusive effect, "the issues must be defined by reference to judicial determinations at stake) (citing Sunnen, 333 U.S. at 600).

In its ruling from the bench, the Delaware court explicitly stated that the forum selection clause did not apply to "the issue whether a $270,000 transaction was a loan or an investment in a joint venture." Thus the Delaware court adjudicated the issue on the merits. See Matosantos Commercial Corp v. Applebee's Int'l., 64 F. Supp.2d 1105, 1109 (D. Kan. 1999) (issue preclusion does not focus on whether party's entire claim has previously been adjudicated, but only whether court adjudicated particular issues). Further, although Horsepower appealed the ruling to the Third Circuit, it later abandoned that appeal. The Delaware court ruling therefore stands as a final ruling on the issue.

The Court finds that Pipeline has established the third and fourth elements of collateral

---

[16] Pipeline did not bring any counterclaims in the Delaware action.

estoppel. The parties in this action are the same as those in the Delaware action. Finally, Horsepower had a full and fair opportunity to litigate the issue in the prior action.

The Court therefore finds that the Delaware court ruling with regard to the forum selection clause precludes this Court from re-determining the issue. Although this Court would have reached a different conclusion, it finds that the forum selection clause in the LOI does not require plaintiffs to proceed in the District of Delaware.

**IT IS THEREFORE ORDERED** that <u>Defendants' Motion To Dismiss Plaintiffs' Complaint Or Alternatively Transfer To The District Of Delaware</u> (Doc. #6) filed June 27, 2015 is **OVERRULED.**

Dated this 22nd day of February, 2017 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge