**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

PIPELINE PRODUCTIONS, INC., et al., )
)
              Plaintiffs, )
)   CIVIL ACTION
v. )
)   No. 15-4890-KHV
HORSEPOWER ENTERTAINMENT, et al., )
)
              Defendants. )
_____)

## MEMORANDUM AND ORDER

On May 21, 2015, Pipeline Productions, Inc. and Backwood Enterprises, LLC brought suit against Horsepower Entertainment and The Madison Companies, LLC. Complaint (Doc. #1). On June 19, 2017, OK Productions, Inc. and Brett Mosiman joined as plaintiffs, and plaintiffs named Bryan Gordon as an additional defendant. Amended Complaint (Doc. #56). Plaintiffs assert state law claims for breach of contract, breach of fiduciary duty, fraud and tortious interference with a prospective business advantage. Id. at ¶¶ 63-86. This matter comes before the Court on defendants' Motion To Dismiss For Failure To State A Claim. (Doc. #59) filed July 10, 2017. For the reasons below, the Court sustains defendants' motion in part.

## Legal Standard

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In

determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679. The Court need not accept as true those allegations which state only legal conclusions. See id.

Plaintiffs bear the burden of framing their claim with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged – but has not "shown" – that the pleader is entitled to relief. See id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

**Procedural And Factual Background**

Pipeline Productions, Inc. is a Kansas corporation with its principal place of business in Lawrence, Kansas. Doc. #56 at ¶ 7. Backwood Enterprises, LLC is an Arkansas limited liability corporation with its principal place of business in Lawrence, Kansas. Id. at ¶ 8. Pipeline and

Backwood (collectively, "Pipeline") produce live music and music festivals. Id. Brett Mosiman and Nathan Prenger conduct business for Pipeline and related entities, including OK Productions.[1]

The Madison Companies, LLC is a Delaware limited liability company with its principal place of business in Greenwood Village, Colorado. Id. at ¶ 11. Horsepower Entertainment, a Delaware limited liability company, is a wholly-owned subsidiary of Madison with its principal place of business in Greenwood Village, Colorado. Id. at ¶ 12. Madison and Horsepower (collectively, "Horsepower") provide venture capital. Bryan Gordon is the principal of Horsepower. Id. at ¶ 13.

Highly summarized, the complaint alleges as follows. On November 4, 2014, Mosiman proposed a joint venture agreement between Pipeline and Horsepower for the limited purpose of owning and producing the Thunder Mountain Festival ("Thunder"). Id. at ¶ 32. On November 4, 2014,[2] Horsepower, through its principal Gordon, orally accepted a modified version of Mosiman's proposal. Horsepower agreed that it would (1) pay Pipeline $750,000 for a 51 per cent interest in Thunder, (2) provide $500,000 of operating capital for Thunder and (3) pay Pipeline $80,000 to operate and produce Thunder. Id. at ¶ 33.

Based on the November 4 Agreement, Pipeline personnel spent more than 4,000 hours on Thunder from November of 2014 through May of 2015. Id. at ¶ 37. Their efforts included creating infrastructure, contracting with vendors, setting up ticketing and marketing and promoting Thunder. Id. Mosiman used his industry contacts to obtain commitments from approximately 50 artists. Id.

---

[1] OK Productions is an Arkansas entity which is related to Pipeline; the record does not reflect the exact nature of that relationship.

[2] The amended complaint alleges that the parties completed the agreement on November 6, 2014. Doc. #56 at ¶ 36. However, the amended complaint refers to the agreement as the "November 4 Agreement." To avoid confusion, the Court adopts this language.

-3-

at ¶ 38. As part of its commitment to provide operating capital, Horsepower provided $272,000 to pay deposits for music artists. Id. at ¶ 39. Pipeline kept Horsepower informed about Thunder's progress and provided daily reports about advance ticket sales. Id. at ¶ 41.

Based on music industry expectations and ticket sales, Horsepower forecasted that Thunder would generate a loss in 2015. Id. at ¶ 47. In March and April of 2015, Horsepower and Pipeline began to debate the terms of the November 4 Agreement. Id. at ¶¶ 48-52. Horsepower refused to fulfill its commitment to (1) provide $268,000 to produce Thunder, (2) fund its purchase of a 51 per cent interest in Thunder and (3) pay Pipeline $80,000 for operating costs. Id. at ¶ 53. Despite Pipeline's continued efforts, it cancelled Thunder. Id. at ¶ 53. Around this time, defendants hired some of plaintiffs' key employees, including Nate Prenger and ticketing employees. Id. at ¶ 57.

On April 15, 2015, Horsepower filed suit against Pipeline, Mosiman and Prenger. Among other things, Horsepower sought a declaratory judgment that it did not have any obligations regarding the production of Thunder. Pipeline removed the case to the United States District Court for the District of Delaware. On December 4, 2015, that court dismissed Horsepower's claims for lack of jurisdiction over the parties or the case.

On May 21, 2015, the week after it removed the Delaware case, Pipeline sued Horsepower in this Court. On February 22, 2017, the Court overruled Horsepower's motion to dismiss or to transfer to the District of Delaware. See Memorandum And Order (Doc. #37). On April 27, 2017, the Court overruled Horsepower's motion for reconsideration. See Memorandum And Order (Doc. #50).

On June 19, 2017, Pipeline filed its amended complaint in this Court. Doc. #56. Pipeline asserts breach of contract (Count 1), breach of fiduciary duty related to a joint venture (Count 2),

-4-

fraud (Count 3) and tortious interference (Count 4). Doc. #56 at ¶¶ 63-86. The amended complaint added OK Productions, Inc. and Mosiman as plaintiffs. Id. at ¶ 13. It also joined Gordon as defendant on plaintiffs' claims for breach of fiduciary duty, fraud and tortious interference. Id. at ¶¶ 69, 77, 83.

## Analysis

Defendants seek dismissal of plaintiffs' claims for breach of fiduciary duty, fraud and tortious interference and all claims against Gordon. Memorandum In Support Of Motion To Dismiss For Failure To State A Claim (Doc. #60) filed July 10, 2017. First, defendants assert that the claims for breach of fiduciary duty and fraud should be dismissed because Kansas law requires dismissal of tort claims based on the same facts as a breach of contract claim and the tort claims fail to plead damages beyond the contract claim. Id. at 4-12. Second, defendants contend that the fraud claim must be dismissed for failure to plead fraud with particularity. Id. at 14-16. Third, defendants argue that plaintiffs fail to allege the elements of tortious interference with a contract or prospective business advantage. Id. at 16-22. Fourth, defendants seek dismissal of all claims against Gordon because plaintiffs added him as a defendant after the statute of limitations had expired. Id. at 23-27.

**I. Breach Of Contract And Tort Claims**

Defendants assert that under Kansas law plaintiffs cannot allege the same conduct in support of both a breach of contract claim and a tort claim. Doc. #60 at 5 (citing Ford Motor Credit Co. v. Suburban Ford, 699 P.2d 992, 998-99 (Kan. 1985)). Because plaintiffs' claims for breach of fiduciary duty, fraud and breach of contract largely rely on the same allegations, defendants argue that the Court must dismiss the tort claims.

Kansas law does not support defendants' argument. On multiple occasions, the Kansas Supreme Court has allowed litigants to bring tort and contract claims based on common facts. See Burcham v. Unison Bancorp, Inc., 77 P.3d 130, 145-46 (Kan. 2003) (breach of contract, tortious interference with contract and breach of fiduciary duty); Gerhardt v. Harris, 934 P.2d 976, 981-83 (Kan. 1997) (breach of contract and fraud). The Kansas Supreme Court has stated, "[W]hen the same conduct could satisfy the elements of both a breach of contract or of an independent tort, unless conduct is permitted by the express provisions of a contract, a plaintiff may pursue both remedies." Bittel v. Farm Credit Servs. Of Cent. Kan., 962 P.2d 491, 498 (Kan. 1998). In their reply, defendants correctly admit that contract and tort claims may coexist where "the tort claim is based upon some independent duty arising outside of those imposed by the contract." Reply To Response To Motion (Doc. #63) filed August 14, 2017 at 6. Accordingly, the viability of plaintiffs' claims depends on whether they allege breach of fiduciary duty and fraud as torts independent from defendants' contractual obligations.[3]

A.  Breach Of Fiduciary Duty

Defendants argue that the Court should dismiss plaintiffs' breach of fiduciary duty claim because plaintiffs inappropriately base the tort claim on the same conduct as their breach of contract claim. Doc. #60 at 10. Defendants assert that the November 4 Agreement created a joint venture and defined the terms of the parties' relationship; thus, defendants reason that plaintiffs should seek a remedy for any breach of fiduciary duty through a breach of contract claim. Id.

---

[3] Neither party contends that the November 4 Agreement permitted the alleged tortious conduct. Thus, the Court will only analyze whether the plaintiffs allege independent torts. See Bittel, 962 P.2d at 498.

Contrary to defendants' arguments, "a party may be liable in tort for breaching an independent duty toward another, even where the relationship creating such a duty originates in the parties' contract." Universal Premium Acceptance Corp. v. Oxford Bank & Tr., 277 F. Supp. 2d 1120, 1129 (D. Kan. 2003). Under Kansas law, all joint venture members owe their co-venturers the "same fiduciary duty to each other as do partners." Goben v. Barry, 679 P.2d 90, 97 (Kan. 1984). Partners owe each other the duties of loyalty and care. See Kan. Stat. Ann. § 56a-404. Thus, even where parties form a joint venture through a contract, co-venturers owe each other fiduciary duties unless the contract expressly negates these duties. Modern Air Conditioning, Inc. v. Cinderella Homes, Inc., 596 P.2d 816, 823 (Kan. 1979). In fact, the Kansas Supreme Court has held that plaintiffs can claim both breach of fiduciary duty and breach of contract against the same defendants. Burcham, 77 P.3d at 145-46.

Here, the fact that plaintiffs and defendants formed their joint venture through contract does not preclude plaintiffs from bringing independent tort actions based on these fiduciary duties. Plaintiffs allege that defendants breached their fiduciary duty by, among other things, attempting to force plaintiffs to amend their original agreement, threatening to sue plaintiffs and "pilfering plaintiffs' key employees and partners." Doc. #56 at ¶ 73. Plaintiffs base their claim on acts which the November 4 Agreement did not expressly govern. Because neither party contends that the November 4 Agreement negates the co-venturers' fiduciary duties and breach of fiduciary duty constitutes an independent tort, plaintiffs may allege claims for breach of contract and fiduciary duties.

B.  Fraud

For many years, Kansas courts have recognized an independent duty to refrain from misrepresenting present facts or intentions. See Garhardt v. Harris, 934 P.2d 976, 981 (Kan. 1997) ("if promisor had no intention at the time the promise was made to [perform contractual duties] . . . there is actionable fraud"); El Dorado Nat'l Bank v. Eikmeier, 300 P. 1085, 1089 (Kan. 1931); Ice Corp. v. Hamilton Sundstrand Inc., 444 F. Supp. 2d 1165, 1173 (D. Kan. 2006). Kansas courts distinguish this duty from a party's contractual obligations. "[T]he gravamen of [a fraud claim] is not the breach of the agreement to perform, but the fraudulent representation concerning a present, existing intention to perform when such intention is in fact nonexistent." Modern Air Conditioning, Inc., 596 P.2d at 824; Smith v. MCI Telecommunications Corp., 755 F. Supp. 354, 357 (D. Kan. 1990) ("[F]raud qualifies as an independent tort."); Ice Corp., 444 F. Supp. 2d at 1173. Thus, when properly pled, Kansas courts recognize fraudulent inducement as a tort independent from breach of contract claims.

Viewing the facts in the light most favorable to plaintiffs, the amended complaint alleges a plausible claim that defendants violated the general tort duty to refrain from misrepresenting present facts or intentions. In the amended complaint, plaintiffs present more than a threadbare claim, stating that defendants misrepresented their intention to perform their contractual duties in an effort to coerce plaintiffs into a more onerous deal. Doc. #56 at ¶¶ 3, 45, 48. In particular, plaintiffs allege that defendants "had no intention of performing their promises to fund Thunder at the time they made them." Id. at ¶ 77. Thus, the fraud claim relies on defendants' intentions at the time of contracting, not their non-performance of the contract. In arguing this motion, defendants rely on inapposite cases – where plaintiffs improperly premised fraud claims on express contractual duties.

See Wade v. EMCASCO Ins. Co., 483 F.3d 657, 676 (10th Cir. 2007) (fraud claim "merely a claim that EMCASCO breached its contractual duty"); see also VinStickers, LLC v. Millernet Corp., No. 07-2031-JWL, 2008 WL 360578 at *3 (D. Kan. Feb. 8, 2008) (fraud claims did not allege no intent to perform at contracting); LaCrosse Furniture Co., Ltd. v. Shoda Iron Works Co., Ltd., No. 06-2505-JTM, 2007 WL 4463572 at *2 (D. Kan. Dec. 17, 2007) (fraud claim based on "failure to satisfy [] contractual obligation").  Because these cases are distinct, this authority does not persuade the Court that dismissal of plaintiffs' fraud claim is appropriate.

        C.        Failure To Allege Additional Damages

Defendants argue that the Court must dismiss these tort claims because plaintiffs fail to plead damages beyond those alleged for the breach of contract claim.  Doc. #60 at 12.  In the breach of contract claim, plaintiffs seek "substantial damages as a direct result of the breach of contract."  Doc. #56 at ¶ 67.  The breach of fiduciary duty and fraud claims seek "substantial damages as a direct result of the breach of fiduciary duty" and "damages [sustained by] relying upon the promises of defendants," respectively.  Id. at ¶¶ 75, 81.  The Court will not allow plaintiffs to make a double recovery.  See Ice Corp., 444 F. Supp. 2d at 1173.  At this early stage in litigation, however, the Court allows plaintiffs to plead these claims in the alternative and recover extra-contractual damages if they prove their tort allegations.  Id.; see N. Ala. Fab. Co., Inc. v. Bedeschi Mid-west Conveyor Co., LLC, No. 16-2740-DDC, 2017 WL 1836973 at *10. (D. Kan. May 8, 2017).  Accordingly, the Court overrules defendants' motion on this ground.

**II.**    **Failure To Plead Fraud With Particularity**

Rule 9(b), Fed. R. Civ. P., requires that plaintiffs plead fraud with particularity.  Rule 9(b) aims to afford opposing parties with fair notice of the facts upon which plaintiffs base fraud claims.

See Koch v. Koch Indus., Inc., 203 F.3d 1202, 1236 (10th Cir. 2000). It requires plaintiffs to allege the who, what, when, where and how of the alleged fraud. U.S. ex. rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006). "Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." Scheidt v. Klein, 956 F.2d 963, 967 (10th Cir. 1992). Further, the Court must read the requirements of Rule 9(b) in conjunction with Rule 8, which calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial justice." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997).

Plaintiffs allege that Gordon, on behalf of Horsepower, made multiple statements that materially misrepresented defendants' intent to perform the November 4 Agreement at the time of contracting. Doc. #56 at ¶¶ 26-28, 34-35. Plaintiffs identify specific dates for some of these statements. Id. at ¶¶ 28, 34. The amended complaint includes direct quotes and explains how plaintiffs relied on these statements. Id. at ¶¶ 34-35, 77, 79-80. Because plaintiffs provide defendants with sufficient notice to form a defense to the fraud claim, the Court finds that plaintiffs have pled fraud with particularity. The Court overrules defendants' motion on this ground.

**III.   Tortious Interference Claim**

In Count 4, plaintiffs plead tortious interference. Plaintiffs allege that defendants attempted to make them "unable to fund a defense" in the Delaware litigation "by hiring away [plaintiffs'] key partners and employees, including Nate Prenger, their Sprocket Marketing partners, and their key ticketing employee." Doc. #56 at ¶¶ 57-58, 84. Plaintiffs fail to specify whether they allege tortious interference with a contract or a prospective business advantage. Because plaintiffs do not reference

any contracts with their employees, the Court construes the allegations as a claim for interference with a prospective business advantage. See id. at ¶ 84.

In Kansas, plaintiffs must prove the following to recover based on tortious interference with a prospective business advantage: (1) a business relationship or expectancy existed with probable future economic benefit to plaintiffs; (2) defendants knew of the relationship or expectance; (3) but for defendants' conduct, plaintiffs were reasonably certain to have continued the relationship or realized the expectancy; (4) defendants engaged in intentional misconduct and (5) plaintiffs sustained direct and proximate damages. Byers v. Snyder, 237 P.3d 1258, 1269 (Kan. Ct. App. 2010).

Defendants assert that plaintiffs fail to plead all necessary elements of tortious interference. In particular, defendants argue that plaintiffs did not allege that defendants engaged in any intentional misconduct. Doc. #60 at 16-22. Kansas courts have determined that allegations of "intent to do a harmful act without reasonable justification" satisfy the intentional misconduct element. Linden Place, LLC, v. Stanley Bank, 167 P.3d 374, 380 (Kan. Ct. App. 2007). Here, plaintiffs allege that defendants "hired away their key partners and employees . . . . for the purpose of keeping [p]laintiffs from engaging in the frivolous Delaware lawsuit and driving [p]laintiffs out of business." Doc. #56 at ¶¶ 57-58. In short, plaintiffs allege that defendants intended to (1) hinder plaintiffs' ability to defend themselves in the Delaware litigation and (2) inflict economic hardship on their business. These allegations constitute intentional misconduct. Viewing the facts in the light most favorable to the plaintiffs, the Court finds that plaintiffs have sufficiently alleged the elements of tortious interference with a prospective business advantage.

**IV.    Claims Against Bryan Gordon**

Defendants argue that Kansas has a two-year statute of limitations which bars the tort claims against Gordon because plaintiffs did not name him as a defendant until June 19, 2017 – more than two years after Horsepower repudiated the November 4 Agreement. See Doc. #60 at 23 (citing Kan. Stat. Ann. § 60-513(a)(3), (a)(4), (b)).[4]

The two-year statute of limitations on a breach of fiduciary duty claim begins at the later of (1) when plaintiff suffers substantial injury or (2) when the "injury becomes reasonably ascertainable to the injured party." Kan. Stat. Ann. § 60-513(a)(4), (b). In response to the motion to dismiss, plaintiffs do not address the breach of fiduciary duty claim. In their amended complaint, plaintiffs allege that defendants breached their duties by attempting to force plaintiffs to enter into a new deal, threatening to sue plaintiffs and hiring plaintiffs' employees. Doc. #56 at ¶ 73. By plaintiffs' own contentions, all of these acts all occurred in the spring of 2015 – more than two years before plaintiffs added Gordon as a defendant. Id. at ¶¶ 48-49, 57. Further, plaintiffs suffered injury when they cancelled Thunder and began defending the Delaware lawsuit, which Horsepower initiated on April 15, 2015. The Court finds that Section 60-513(a)(4) bars plaintiffs' breach of fiduciary duty claim against Gordon.

Kansas law also requires plaintiffs to bring claims of tortious interference with a prospective business advantage within two years of substantial injury or when the injury becomes reasonably ascertainable. Kan. Stat. Ann. § 60-513(a)(4), (b). Plaintiffs allege that defendants' tortious interference caused two injuries; both were reasonably ascertainable more than two years before

---

[4]    The Court will not analyze whether the claims against Gordon relate back under Rule 15(c), Fed. R. Civ. P., because plaintiffs concede that they do not. Doc. #62 at 11.

plaintiffs named Gordon as a defendant. The first injury occurred when defendants hired plaintiffs' key employees in early 2015. Plaintiffs also allege that defendants' tortious interference limited their ability to defend the Delaware lawsuit. This lawsuit began in April of 2015. Because plaintiffs failed to include Gordon as a defendant within two years of their alleged injuries, plaintiffs cannot claim tortious interference with a prospective business advantage against him.

In Kansas, a cause of action for fraud accrues when the injured party discovers the fraud. Kan. Stat. Ann. § 60-513(b). "[A] fraud is discovered at the time of [1] actual discovery or [2] when, with reasonable diligence, the fraud could have been discovered." Waite v. Adler, 716 P.2d 524, 528 (Kan. 1986). Plaintiffs argue that they could not reasonably ascertain Gordon's fraudulent activity until after Horsepower refused to comply with the November 4 Agreement. Doc. #62 at 11-12. In particular, plaintiffs assert that they discovered Gordon's fraud in October of 2015 or February of 2016, when they learned about his history of fraud with other companies. Id. Plaintiffs base this argument on an affidavit which is attached to their response. Ex. 1 to Doc. #62. The Court cannot consider an affidavit when deciding a Rule 12(b)(6) motion because its analysis is confined to the face of the complaint. See MacArthur v. San Juan Cty., 309 F.3d 1216, 1221 (10th Cir. 2002). On the facts alleged in the amended complaint, plaintiffs' interactions with Gordon that could have allowed them to discover his role in the fraud occurred before or shortly after Horsepower breached the November 4 Agreement in April of 2015 – more than two years before plaintiffs added Gordon as a defendant. Doc. #56 at ¶¶ 19, 21, 26-28, 33-34, 52. Accordingly, the Court sustains defendants' motion on this ground.

## V.     Plaintiff's Motion To Amend

In the final section of their response, plaintiffs seek leave to file an amended complaint if the Court dismisses any of their claims. Doc. #62 at 13-14. District of Kansas Rule 15.1 requires a party moving for leave to amend to attach a proposed amended pleading to its motion. Plaintiffs fail to attach a proposed amended complaint to their motion. The Court requires compliance with this rule. The proposed pleading allows the Court to assess whether the proposed amendment would be futile and weigh other factors relevant to deciding the motion. Calderon v. Kan. Dept. Of Soc. and Rehabilitation Servs., 181 F.3d 1180, 1186 (10th Cir. 1999). Further, the opposing party needs an opportunity to review, evaluate and oppose the proposed amendment. Id.

Plaintiffs' response indicates that the amended pleading would generally add specificity and supplement Gordon's involvement in the fraud. However, district courts do not need to "engage in independent research or read the minds of litigants to determine if information justifying an amendment exists." Brever v. Rockwell Intern. Corp., 40 F.3d 1119, 1131 (10th Cir. 1994). Because plaintiffs failed to comply with Rule 15.1, the Court is unable to assess whether to grant leave to amend. Calderon, 181 F.3d at 1186 (court only need to consider motion to amend when it gives court and opposing party notice of the basis of the proposed amendment). Thus, the Court will not consider plaintiffs' request for leave to amend.

**IT IS THEREFORE ORDERED** that defendants' Motion To Dismiss For Failure To State A Claim (Doc. #59) filed June 10, 2017 is **SUSTAINED in part**. The Court dismisses plaintiffs' claims against Bryan Gordon for breach of fiduciary duty, fraud and tortious interference.

**IT IS FURTHER ORDERED** that defendants' Motion To Dismiss For Failure To State A Claim (Doc. #59) filed June 10, 2017 is **OVERRULED** as to all remaining claims.

**IT IS FURTHER ORDERED** that the Honorable K. Gary Sebelius immediately initiate proceedings to expedite pretrial proceedings in this case and coordinate them with proceedings pending in the United States District Court for the District of Colorado, <u>Madison Cos., LLC, v. Mosiman et al.</u>, Case No. 17-cv-01669-WJM-MJW.

Dated this 11th day of October, 2017 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge