IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., <br> BACKWOOD ENTERPRISES, LLC, <br> OK PRODUCTIONS, INC., and <br> BRETT MOSIMAN, <br><br> Plaintiffs, <br><br> v. <br><br> THE MADISON COMPANIES, LLC, and <br> HORSEPOWER ENTERTAINMENT, LLC, <br><br> Defendants. | Case No. 5:15-cv-04890-KHV-KGS |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION FOR PROTECTIVE ORDER REGARDING RULE 30(b)(6) DEPOSITION**

Plaintiffs contacted the Court to request a telephone conference after Defendants threatened to file a motion for protective order to prevent Plaintiffs' Rule 30(b)(6) deposition, which Defendants filed shortly thereafter (Doc. 130). After the Clerk informed them that Judge Sebelius was out until May 14, 2018, Plaintiffs re-noticed their Rule 30(b)(6) deposition for May 15, with revised topics addressing Defendants' objections, hoping they could take the matter up quickly with the Judge upon his return. The parties were later informed that the Judge would not be back until May 21, however, and Defendants moved for another protective order (Doc. 141). Defendants' suggestion that Plaintiffs caused them to file two motions here is simply not true. Rather, Plaintiffs told Defendants they did not need to file a second motion to stop the deposition, and they could address the revised topics in their reply to Plaintiffs' response (Doc. 139). In fact, Plaintiffs even agreed that Defendants could make a motion in their reply. (Exhibit 1, Email from McInnes to Kolkey dated May 10, 2018). Not only would this have helped the parties get a decision

1

faster, it would have saved everyone's time, including the Court's. Defendants, however, chose to file another motion for protective order instead.

Despite the fact that Plaintiffs revised their topics to address Defendants' alleged concerns, **Defendants continue to object to 19 out of 30 topics** contained in Plaintiffs' Amended Rule 30(b)(6) Notice of Deposition (Doc. 137). Their motion (Doc. 141) should be rejected, and they should be ordered to produce one or more representatives to testify on behalf of the company **immediately**. Not only are Plaintiffs' revised topics appropriate, Defendants again failed to meet and confer or make a reasonable effort to meet and confer before filing their improper motion cancelling the deposition a second time.

## I.     INTRODUCTION

Plaintiffs informed Defendants that they intended to depose a corporate representative in April 2018 but still do not even have a date for the deposition. (Doc. 139-1, Email from McInnes to Kolkey dated April 26, 2018). Since Plaintiffs were having difficulty getting depositions scheduled with Defendants, Plaintiffs asked Defendants to provide their available dates (*id*.), which they gave (Doc. 139-2, Email from Kolkey to McInnes dated April 27, 2018). Defendants stated the only days that they were unavailable were May 18, 21 and 30, and June 4, 6 and 7. (*Id*.)

On April 30, 2018, Plaintiffs noticed a Rule 30(b)(6) deposition for May 8, 2018 (Doc. 127), one of Defendants' available dates. Although the topics were straight from Plaintiffs' Amended Complaint, Defendants' Answer and Counterclaims, and Plaintiffs' discovery requests, Defendants claimed that they were unavailable, and that it was "impossible" to identify and educate a corporate witness on the topics in seven days. (Doc. 139-3, Email from Kolkey to McInnes dated May 1, 2018).

Plaintiffs informed Defendants they were willing to move the deposition a short time and clarify any "problem" topics where appropriate, but Defendants refused to discuss the topics unless Plaintiffs agreed to move the deposition to a "placeholder" date in late May or early June (Doc. 139-4, Emails between McInnes and Kolkey dated May 2-3, 2018), **even though Plaintiffs' expert deadline is June 11, 2018**. Defendants also refused to move the expert deadline, despite the fact that there is eight months between the close of discovery and trial.

Plaintiffs called Defendants to discuss these issues, but Defendants refused to discuss topics unless Plaintiffs agreed to move the deposition to a date Defendants would not even guarantee. When Plaintiffs refused to do so, Defendants filed their motion for protective order (Doc. 130) to delay the corporate representative deposition until 21 days after the Court rules.

Plaintiffs filed a response to Defendants' motion (Doc. 139) and re- noticed the deposition for May 15, 2018, another one of Defendants' available dates. Plaintiffs even noticed it before Bryan Gordon's deposition, so they could potentially limit or narrow questions to him. Rather than reply to Plaintiffs' response or meet and confer about the revised topics, however, Defendants filed a second motion for protective order (Doc. 141), making the same misguided legal points.

## II.     ARGUMENT

The Court should deny Defendants' motion before even reaching their invalid objections to Plaintiffs' amended Rule 30(b)(6) notice since they **failed again to meet and confer** or make a reasonable effort to meet and confer about the topics before filing their motion.

### a.  Defendants Failed to Comply with D. Kan. Rule 37.2

Defendants refused yet again to meet and confer with Plaintiffs regarding their objections to the amended deposition notice. Local Rule 37.2 states that the Court "will not entertain any motion to resolve a discovery dispute … unless the attorney for the moving party has conferred or

3

has made reasonable effort to confer with opposing counsel regarding the matter in dispute prior to the filing of the motion." D. Kan. Rule 37.2. Defendants' filing of their first motion for protective order is not sufficient, especially since they did not meet and confer before filing it either. As the Local Rule explains, "[a] 'reasonable effort to confer' means more than mailing or faxing a letter to the opposing party. It requires that the parties in good faith converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so." *Id*. Ignoring this, Defendants simply sent an email to Plaintiffs stating: "We object to the majority of the topics in the Amended Notice, and based on prior conversations, it appears the objections will not be resolved without the Court's assistance. Given that the motion for protective order must be filed by Friday morning, we must proceed with filing it." (Ex. 1).

### b. Defendants Have Not Met Their Burden for Entry of a Protective Order

Even setting aside their failure to meet and confer, none of Defendants' arguments warrant delaying Plaintiffs' corporate representative deposition even further, especially considering their refusal to extend Plaintiffs' expert deadline.

### i. Standard

A protective order is only warranted if Defendants demonstrate that protection is necessary under a specific category set out in Rule 26(c), *i.e.*, annoyance, embarrassment, oppression, or undue burden or expense. *Cotton v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 103367, at *2 (D. Kan. July 24, 2013). Defendants bear the burden of establishing good cause for the order. *Id*. To do so, they must make "**a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements**." *Id*. (emphasis added).

4

In the context of a protective order seeking to limit or prohibit the deposition of a business, the Court should be mindful of Rule 30(b)(6)'s requirements. *Id*. Thus, Plaintiffs' 30(b)(6) notice "must describe with reasonable particularity the matters for examination." *Id*.

### ii.   Plaintiffs' Rule 30(b)(6) Notice Was Timely

Defendants' repeated suggestion that Plaintiffs' notice did not give them sufficient time tosses aside Local Rule 30.1, which expressly states that "[t]he reasonable noticed provided by Fed. R. Civ. P. 30(b)(1) for the taking of depositions is **seven days**." D. Kan. Rule 30.1 (emphasis added). Defendants were again given seven days' notice for the deposition. Defendants' claim rings hollow given Plaintiffs' repeated invitation for alternative dates. Their suggestion that it will take 21 days to prepare a witness to testify about the topics is absurd. Again, Plaintiffs' topics come directly from their Amended Complaint, Defendants' Answer and Counterclaims, and Plaintiffs' discovery requests. Further, when Plaintiffs asked Defendants why they are not preparing one or more corporate representatives now, their only excuse was that they don't know if all the topics will be permitted by the Court.

### iii.   Defendants' Objections Regarding "Contention" Topics

Defendants primarily rely on cases from outside this District[1] to support their argument that Plaintiffs' alleged "contention topics" are improper. They fail to address *Waters v. Union Pac. R.R. Co.*, 2016 U.S. Dist. LEXIS 114656, at *5 (D. Kan. Aug. 25, 2016), in which this District overruled an objection, similar to Defendants, that 30(b)(6) depositions "are designed to discover facts, not contentions or legal theories," finding that a **deposing party is not precluded from inquiring as to the opposing party's legal positions**. If Defendants believe one of Plaintiffs' questions calls for a legal conclusion, they can simply object at the deposition. *Id*.

---

[1] The two District of Kansas cases that Defendants cite do not provide significant analysis regarding their decision.

5

Regardless, Plaintiffs are not seeking to discover Defendants' attorney-client privileged communications or the work product of their attorneys. To the contrary, they intend to focus on facts contained in Defendants' Answer, Counterclaims, and discovery responses. For example, Plaintiffs are entitled to ask questions about: the "loan" that Defendants claim exists; what led Defendants to "withdraw" from the parties' "negotiations" regarding the Thunder on the Mountain music festival ("Thunder"); and the factual misrepresentations they claim Plaintiffs made about finances and projections.

Plaintiffs are not required to ask these questions in interrogatories that will be answered with the assistance of attorneys. As this Court explained in *Cotton*, "[g]enerally, parties are free to 'choose the manner and method in which they conduct discovery.'" 2013 U.S. Dist. LEXIS 103367, at *13. Asking these questions in deposition will allow Plaintiffs to explore the topics in more detail, and ask follow-up questions or seek clarification, which is especially important here given Defendants' lack of written discovery responses. (*See* Doc. 108).

Still, Plaintiffs tried to address Defendants' concerns in their Amended Rule 30(b)(6) Notice of Deposition (Doc. 137), which they would have done without Court intervention had Defendants not refused to discuss Plaintiffs' topics before filing their motion. Defendants largely ignore Plaintiffs' efforts to resolve these issues.

Contrary to Defendants' arguments regarding contention topics, this District ruled that a plaintiff is entitled to know the factual basis for a defendant's affirmative defenses and inquiring into the facts that support affirmative defenses is proper. *Miller v. NEP Grp., Inc.*, 2016 U.S. Dist. LEXIS 150808, at *23-24 (D. Kan. Oct. 28, 2016). Further, many of the examples given by Defendants do not come close to constituting "contention" topics. Defendants made the statements in their Amended Answer and Counterclaims. Plaintiffs should be able to ask about them.

6

### iv.  Defendants' Objections Regarding "Overbroad" Topics

Defendants' overbroad objections could have also been resolved had they met and conferred with Plaintiffs rather than prematurely file their second motion.

**Topic 7** is "Defendants' policies and practices regarding making loans from 2010 to present. To be clear, Plaintiffs do not intend to ask Defendants about the specific term of loans other than the loan they claim existed between the parties." Defendants claim they did not enter into an agreement to partner with Plaintiffs on Thunder, and instead loaned them money, but they have not produced any loan documents or described any terms of the alleged loan. Contrary to Defendants' assertions in their motion, Plaintiffs do not wish to ask about criteria or terms of specific loans Defendants made in the past. Rather, they are only seeking to ask about Defendants' general policies and practices when it comes to loaning money to others. How Defendants structure their loans matters in this case. If Defendants are concerned about time periods at issue, Plaintiffs will limit their questions to general policies and practices for a period of five years before they met Defendants to the present.

**Topic 8** is "Defendants' knowledge of Plaintiffs' work producing Thunder. To be clear, Plaintiffs do not intend to ask Defendants about each employees' knowledge of specific work performed by plaintiffs. Rather, Plaintiffs are seeking to discover Defendants' general knowledge of the type of work Plaintiffs were performing and the approximate amount of time and money Plaintiffs spent." Contrary to Defendants' claim, Plaintiffs are not seeking information regarding every employees' knowledge of every task that Plaintiffs performed. Rather, Plaintiffs only intend to ask about the company's general awareness of the type and amount of work that Plaintiffs were doing to prepare for Thunder, including booking bands, obtaining sponsors, etc.

**Topic 9** is "Defendants' involvement in the production, marketing, and promotion of Thunder. To be clear, Plaintiffs do not intend to ask about each employees' involvement. Rather, Plaintiffs are seeking to discover the company's general level of involvement, the types of activities that they were involved in, and the key players involved." Similar to Topic 8, Plaintiffs are not seeking information regarding every employees' specific participation. Rather, Plaintiffs intend to ask about the company's general level of involvement, the types of activities the company was involved in, the key players, etc.

**Topic 17** is "Investigations, studies and audits by Defendants regarding cancellation of Thunder or Defendants' alleged concerns regarding Plaintiffs' financial condition and projections." Plaintiffs are seeking general information about investigations, studies and audits conducted by the company or its agents regarding Thunder's cancellation or Defendants' concerns regarding Plaintiffs' financial projections. Defendants appear to suggest that there may be a significant number of responsive investigations, studies or audits, which would be unusual in a case such as this, but regardless, they failed to identify the number or otherwise quantify the burden that answering questions on this topic will cause them.

**Topic 23** is "Defendants' reliance on investors in their business from 2010 to present, including the raising of money from investors to purchase businesses or other assets, and how Defendants communicate with their investors." Again, contrary to Defendants' suggestion, Plaintiffs are not seeking to ask Defendants about all their investments or to identify their investors in all projects over the years. Rather, Plaintiffs are simply seeking to discover Defendants' general business practices with respect to raising money from investors to purchase assets, how Defendants communicate with their investors, etc.

**Topics 26 and 27** seek information on "Defendants' affirmative defenses" and "Defendants' counterclaims." "To be clear, Plaintiffs are not seeking disclosure of the substance of any communications Defendants may have had with their counsel." Contrary to the 1996 case cited by Defendants, when this District recently addressed objections to topics like this in 2016, it explained that a plaintiff is entitled to know the basis for a defendant's affirmative defenses and can simply remind the witness not to disclose the substance of any communications they may have had with counsel. *See Miller*, 2016 U.S. Dist. LEXIS 150808, at *23-24. This same, more recent analysis applies to the factual basis for Defendants' counterclaims.

### v. Defendants' Objections Regarding "Related Entities"

Just like when they objected to Plaintiffs' interrogatories and requests for production, **Defendants ignore common sense** and claim they cannot possibly prepare a witness to testify because the term "related entities" is so vague. Based on their filings to date, however, Defendants **are selectively choosing when the term is vague or not for their own benefit**. For example, Defendants submitted an affidavit from their Vice President, Dave Lionette (Doc. 111-1), in opposition to Plaintiffs' motion to compel discovery responses stating that:

> The Madison Companies, LLC are among a group of companies operated under the Madison name that invest(ed) in and/or manage(d) numerous businesses, investments and ventures throughout the United States. The definition of "related entities" proposed by Plaintiffs would include a multitude of businesses in which The Madison Companies have or have had a significant interest, investment and/or contractual relationship.

*Id.*, at ¶ 3. Further, the subpoena that Defendants recently served on a business partner of Plaintiffs defines Defendants to include "any and all of their members, investors, officers, managers, partners, joint venturers, … corporate parents, subsidiaries, affiliates, … or other persons who have acted, or purported to act, or are acting or purporting to act, on their behalf …" (Doc. 129-6).

9

Moreover, **the subpoenas that Defendants served on Plaintiffs' bank and accountant (Docs. 129-1 and-7) do not even define the term "related entities."** Defendants are hypocritically seeking broad financial records of Plaintiffs, their subsidiaries and affiliates, and "any and all companies or other entities owned in whole or in part by Mosiman or Prenger or entities owned in whole or in part by **any Pipeline-related entity** (including those entities owning music festivals)," (*id.*) (emphasis added), while at the same time pretending they do not know what "related entities" means when it is asked of them.

Defendants have not revealed how many entities are included in the "group of companies" Lionette is referencing or the number of business they have significantly invested in (nor have they ever filed a corporate disclosure statement), but this appears to be a reasonable and workable application of the term "related entities." Further, if the number of business Defendants have significantly invested in is too high, Plaintiffs are open to further limiting the query to businesses in which they have an even higher ownership interest than 25%. But they need Defendants' participation to resolve this, not just a generalized statement about the requests being overly broad and undue burdensome. Plaintiffs tried to get into these issues in the deposition of Defendants' Chief Financial Officer, Rob Walker, but **Defendants improperly ended the deposition** citing privacy and relevancy concerns.

### vi.   Defendants' "Relevance" Objections

Defendants continue to ignore the standard for discovery, claiming that 9 of the topics are irrelevant. As this Court explained in *Cotton*, relevance is broadly construed in discovery, including at a 30(b)(6) deposition, and "**a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party**.'" 2013 U.S. Dist. LEXIS 103367, at *6-7 (emphasis added). Defendants' conclusory

statements about relevance are not sufficiently specific to warrant a protective order limiting or prohibiting inquiry into any of these topics. *Id*., at *7.

**Topic 13** is "The lawsuit Defendants filed in Delaware against Plaintiffs on April 15, 2015. To be clear, Plaintiffs are not seeking disclosure of the substance of any communications Defendants may have had with their counsel." Far from irrelevant, Defendants threatened Plaintiffs with the lawsuit if they did not agree to re-do their deal and filed it when Plaintiffs refused. Plaintiffs do not intend to ask questions involving attorney-client privileged communications, but they are entitled to ask questions about the lawsuit, which was thrown out for lack of jurisdiction.

**Topic 18** is "Any changes to Defendants'/related entities' policies or practices because of Thunder or this case." Defendants argue, without any support, that after-the-fact changes have no bearing on Plaintiffs' claims. Setting aside their conclusory statement, there are a multitude of ways in which changes to policies or practices may lead to the discovery of admissible evidence, including changes to policies and practices regarding oral agreements, making loans, etc.

**Topics 19 and 20** relate to negotiations – not discussions – that Defendants/related entities have had regarding purchasing 25% or more of a music festival or concert or starting a new music festival or concert since 2010. Plaintiffs are entitled to discovery of similar transactions to determine whether Defendants engaged in the same bad acts they used when negotiating with Plaintiffs in this case. As Plaintiffs explained in their Reply in Support of their Motion to Compel Discovery Responses (Doc. 115, pg. 11), which is incorporated herein by reference, information regarding similar transactions is relevant to establish fraudulent intent and a pattern and practice of deceitful negotiations. Plaintiff cited Kansas cases for this proposition, which Defendants have failed to address, let alone refute.

**Topic 21** is "Negotiations that Defendants/related entities have had regarding the purchase of 25% or more of a business since 2010." As with Topics 19 and 20, Plaintiffs are entitled to discovery of related transactions. Again, Plaintiffs are open to further limiting the query to businesses in which they have an even higher ownership interest than 25%. But they need Defendants' participation to resolve this.

**Topic 22** is "Other lawsuits, arbitration claims and complaints involving Defendants/related entities alleging breach of contract, breach of fiduciary duty, fraudulent misrepresentation or tortious interference since 2010." As Plaintiffs explained in their Reply in Support of their Motion to Compel Discovery Responses (*id*., pg. 13), which is incorporated herein by reference, the law in this District is clear that Plaintiffs are entitled to discovery regarding similar lawsuits and complaints. The fact that Defendants continue to object to these questions after reviewing cases cited by Plaintiffs is extremely troublesome.

**Topics 23, 24 and 25** relate to investors, specifically Defendants' reliance on investors, communications with investors regarding Thunder and/or this lawsuit, and complaints by investors. Plaintiffs do not intend to ask Defendants to identify all investors at the deposition or bully those investors identified. Rather, they are seeking to discover: how Defendants generally use investors in their business; the types and frequency of communications they have with investors; whether Defendants have informed their investors about Thunder and/or this case; and whether investors have complained about Thunder, this case, and/or any similar conduct.

### vii.  Defendants' "Privacy" Objections

Finally, despite the fact that there is a Protective Order in place that permits them to designate portions of the deposition as "confidential," Defendants object to 4 noticed topics – **Topic 15** regarding their negotiation, hiring and employment of employees that previously worked

for Plaintiffs; and **Topics 23, 24, and 25** regarding the investor topics immediately above – on grounds that they improperly seek "private information." As Plaintiffs explained in their Reply in Support of their Motion to Compel Discovery Responses (*id.*, pg. 7) which is incorporated herein by reference, **the fact that discovery may invade a party's privacy rights does not make it objectionable, especially when there is a protective order in place**. Defendants' objections are frivolous and should not be tolerated any longer.

### III.    CONCLUSION

By filing another motion for protective order, Defendants have now prevented Plaintiffs from deposing a corporate representative twice this month. Defendants did not have good cause to file their second motion; and they did not meet and confer about the revised topics either.

This Court should not let Defendants' frivolous arguments delay a Rule 30(b)(6) deposition any longer. Despite Plaintiffs' attempts to meet and confer in good faith, Defendants continue to push the boundaries of advocacy in the name of delay and obstruction.

If Defendants were serious about limiting the scope of Gordon's deposition, as they claim in their second motion to quash his deposition (Doc. 142), they would not have filed their motion for protective order here, nor would they have refused to meet and confer with Plaintiffs about their continually narrowing topics.

Dated:        May 21, 2018                        Respectfully submitted,

|  | **MCINNES LAW LLC**<br>By:  */s/ Jack McInnes*<br>Jack D. McInnes (KS #21898)<br>3500 West 75th Street, Suite 200<br>Prairie Village, Kansas  66208<br>Telephone: (913) 220-2488<br>Facsimile: (913) 273-1671<br>jack@mcinnes-law.com |
|---|---|

|  |  |
|---|---|
|  | **ATTORNEY FOR PLAINTIFFS** |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 21st day of May 2018, a true and correct copy of the foregoing document was filed with the Clerk of Court via CM/ECF and served on counsel for Defendants through the Notice of Electronic Filing.

By: <u>*/s/ Jack McInnes*</u>

14