IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., <br> BACKWOOD ENTERPRISES, LLC, <br> OK PRODUCTIONS, INC., and <br> BRETT MOSIMAN, <br><br> Plaintiffs, <br><br> v. <br><br> THE MADISON COMPANIES, LLC, and <br> HORSEPOWER ENTERTAINMENT, LLC, <br><br> Defendants. | Case No. 5:15-cv-04890-KHV-KGS |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO QUASH DEPOSITION OF BRYAN GORDON OR, IN THE ALTERNATIVE, MOTION FOR PROTECTIVE ORDER STAYING DEPOSITION**

Plaintiffs contacted the Court to request a telephone conference after Defendants threatened to move to quash Bryan Gordon's first deposition, which they did (Doc. 131). After the Clerk informed the parties that Judge Sebelius was out until May 14, 2018, Plaintiffs re-noticed Gordon's deposition for May 16, 2018, hoping they could take the matter up with the Judge upon his return. The parties were later informed that the Judge would not be back until May 21, however, and Defendants quashed Gordon's deposition again (Doc. 142). Defendants' suggestion that Plaintiffs caused them to file two motions here is simply not true. To be clear, Plaintiffs told Defendants that they did not need to file a second motion to postpone the deposition. Rather, Plaintiffs said Defendants could address the renewed deposition notice in their reply to Plaintiffs' response brief (Doc. 140) and even agreed to Defendants making a motion in their reply. (Exhibit 1, Email from McInnes to Kolkey dated May 10, 2018). This would have helped the parties get a decision quicker and saved everyone's time, including the Court's. Defendants, however, chose to file another motion, which still ignores the key cases from this District cited in Plaintiffs' response.

1

Again, this District does not recognize an "apex" doctrine creating a different standard for executives, but even if it did, Gordon would not be protected as an "apex" witness. He is not some uninvolved executive of a company with thousands of employees; **Gordon is the primary witness for Defendants in this case**. His statements and conduct form the basis for Plaintiffs' claims. Defendants' second improper motion (Doc. 142) should be rejected, and Gordon should be ordered to appear for deposition **immediately**.

### I. Statement of Facts

Gordon is the central figure in Defendants' bait-and-switch scheme. He is referenced in Plaintiffs' Amended Complaint (Doc. 56) approximately 20 times. Among other things, Plaintiffs allege that Gordon:

(1) Met Plaintiff Brett Mosiman (¶ 20);

(2) Told Mosiman that Defendants wanted to partner with him and his companies to produce music festivals (*id.*);

(3) Entered into a non-binding letter of intent ("LOI") for Defendants to purchase 51% of Plaintiffs' music festival business (¶ 22);

(4) Gave Mosiman his assurance that Defendants would cover/fund Plaintiffs' Thunder on the Mountain music festival ("Thunder") if the LOI fell apart (¶ 26);

(5) After the LOI expired, agreed that Defendants would pay Plaintiffs $750K for a 51% interest in Thunder, fund $500K of operating capital for the festival, and pay Plaintiffs $80K to produce and operate Thunder (¶ 33);

(6) Approved Mosiman's request to begin making commitments to artists (¶ 34); and

(7) Assumed control of Thunder's operations (¶ 43).

In fact, **<u>Gordon is the first witness identified in Defendants' Initial Disclosures listing individuals likely to have discoverable information</u>**. (Doc 140-1, Defendants' Initial Disclosures, pg. 2). In their disclosures, Defendants state that:

> Mr. Gordon is the Chairman and CEO of the Madison Companies, LLC and was during the time period at issue. Mr. Gordon may have discoverable non-privileged information relevant to Horsepower's defenses, claims, counterclaims, and damages, including discoverable non-privileged information relevant to Horsepower and Pipeline's business dealings and history; Horsepower's negotiations regarding a potential business relationship concerning the ownership, operation and/or promotion of Pipeline's Thunder on the Mountain Music Festival that never culminated ("Proposed Thunder on the Mountain Transaction") and the loan that the parties did agree to ("Completed Loan Transaction"); this action; and certain documents and related exhibits that are relevant to this action.

(*Id*.) This affirmatively establishes Gordon's involvement in this case.

While it should not have come as a surprise, Plaintiffs informed Defendants that they intended to take Gordon's deposition in April but have only been given a date after the 4th of July. (Doc. 140-2, Email from McInnes to Kolkey dated April 26, 2018). Since Plaintiffs were already having difficulty getting depositions scheduled with Defendants, Plaintiffs asked Defendants to provide their available dates (*id*.), which they gave (Doc. 140-3, Email from Kolkey to McInnes dated April 27, 2018). Defendants stated the only days they were unavailable were May 18, 21 and 30, and June 4, 6 and 7. (*Id*.)

On April 30, 2018, Plaintiffs noticed the deposition of Gordon for May 7, 2018 (Doc. 126), one of Defendants' available dates. Despite objecting that Gordon was an "apex" witness, Defendants refused to answer Plaintiffs' questions about the issue, including:

(1) The number of employees Defendants have;

(2) Who at the company has more knowledge about the claims than Gordon; and

(3) Why Gordon couldn't appear for deposition for more than two months.

(Doc. 140-4, Emails between McInnes and Kolkey dated May 2, 2018; Doc. 140-5, Email from McInnes to Court dated May 3, 2018).

Defendants stated they would only allow Gordon to testify on limited topics not covered in other depositions. **They refused to provide alternative dates for him until after July 4, even though Plaintiffs' expert deadline is June 11, 2018**. (Doc. 140-4). Further, Defendants refused to move the expert deadline, despite the fact that there is currently eight months between the close of discovery and trial of this case.

Plaintiffs informed Defendants they would move the deposition a short time, but Defendants insisted that Gordon is an "apex" witness and filed a motion to quash the deposition or, in the alternative, motion for a protective order continuing the deposition until "less intrusive" discovery is taken (Doc. 131). Plaintiffs filed a response to Defendants' motion (Doc. 140) and re-noticed the deposition of Gordon for May 16, 2018, another one of Defendants' available dates. Rather than reply to Plaintiffs' response, Defendants filed a second motion to quash the deposition, (Doc. 142) making the same misguided legal points.

**II.    INTRODUCTION**

Defendants raise few, if any, new arguments. Just like before, none of them warrant quashing Gordon's deposition, delaying it until July after Plaintiffs' expert deadline is past, or limiting the deposition in any other way.

   a. **Plaintiffs' Notice of Gordon's Deposition Was Timely**

Defendants' suggestion that Plaintiffs' amended notice did not give them sufficient time ignores Local Rule 30.1, which expressly states that "[t]he reasonable noticed provided by Fed. R. Civ. P. 30(b)(1) for the taking of depositions is **seven days**." D. Kan. Rule 30.1 (emphasis added). The amended notice actually provided 11 days between the notice and deposition date. It also

scheduled Gordon's deposition after the corporate representative deposition to potentially limit or narrow some of Plaintiffs' questions directed to Gordon. Defendants claimed that Gordon could not be deposed because he was in California, but Plaintiffs offered to take the deposition there. Defendants' arguments also ring hollow given Plaintiffs' repeated invitation for reasonable alternative dates for the deposition and Defendants' refusal to specify what Gordon is doing that prevents him from testifying other than to say he is traveling for two months.

### b. This District Does Not Recognize the "Apex" Doctrine

Just like their first motion to quash, Defendants do not cite any case law from this District to support their argument that a limited deposition should only occur after other depositions are taken since Gordon is an "apex" witness. At least two cases from this District hold that the "apex" doctrine does not apply. *See Certain Underwriters at Lloyd's London v. Garmin, Int'l*, 2012 U.S. Dist. LEXIS 126631, at *8-9 (D. Kan. Sept. 6, 2012) (finding no Tenth Circuit opinion has adopted "apex" doctrine); *Van Den Eng v. The Coleman Co.*, 2005 U.S. Dist. LEXIS 40720, at *6 (D. Kan. Oct. 21, 2005) (rejecting assertion that high-level corporate executives cannot be deposed unless party seeking deposition can show executive has unique or special knowledge of facts and has exhausted other less burdensome avenues for obtaining information sought). Shockingly, **Defendants do not even attempt to address these cases in their second motion**.

They again wrongly assert that the "apex" witness doctrine was established in *Thomas v. IBM,* 48 F.3d 478 (10th Cir. 1995). The court in *Van Dan Eng* found that the opinion in *Thomas* suggests that "motions for protective orders for Apex Officials are treated under the same standards of any other protective order" *See Van Dan Eng.*, 2005 U.S. Dist. LEXIS 40720, at *8. Defendants may argue that special factors apply to Gordon, but there is no different standard that applies to their first or second motion. *Id*. at 8.

5

Instead of addressing cases from this District that are directly on point, Defendants rely on several cases from other districts. Even if the "apex" witness doctrine from Defendants' cases applied, they contain facts establishing an "apex" witness that are substantially different to Gordon's involvement here. *See, e.g., EchoStar Satellite, LLC v. Splash Media Partners, L.P.*, 2009 U.S. Dist. LEXIS 43555, at *7-8 (D. Colo. May 11, 2009) (deponent had no personal knowledge of the circumstances at issue in the case and provided identities of those that did); *Carter v. Atty. Liab. Prot. Soc'y*, 2009 U.S. Dist. LEXIS 133770, at *8-9 (D. Wyo. Sept. 25, 2009) (deponent had no personal knowledge of plaintiff or the claims and identified several lower-level employees who possessed the same knowledge); *United Auto. Ins. v. Stucki & Rencher, LLC*, 2017 U.S. Dist. LEXIS 163610, at *18 (D. Utah Oct. 2, 2017) (too early to determine whether executive had unique personal knowledge).

In this case, not only was Gordon involved, he was the primary agent for Defendants. Although they are disingenuous about the extent of his involvement, **Defendants admitted in their first motion** that Gordon possesses personal knowledge about communications with Mosiman and the alleged reasons for "not consummating the business arrangement" with Plaintiffs. (Doc. 131, pg. 10). **They also listed him as the first individual likely to have discoverable information that they may use to support their defenses or claims in their initial disclosures**. Contrary to Defendants' assertions about depositions to date, Chris Brown, Defendants' former Vice President, identified Gordon as having the most knowledge about negotiations regarding the Thunder on the Mountain music festival. Simply stated, Gordon possesses unique knowledge of Plaintiffs' claims and Defendants' defenses that cannot be obtained through deposing others. His deposition is critical in this case.

### c. Gordon Is Not Entitled to a Protective Order Under *Thomas*

*Thomas* does not mention the term "apex" anywhere. In the case, the 10th Circuit simply upheld a protective order under Rule 26(c). 48 F.3d at 482-483.

Did Defendants even read the District of Kansas cases cited in Plaintiffs' earlier response? In *Garmin*, this District stated as follows:

> This Court finds no Tenth Circuit opinion that adopts the ['apex'] doctrine. Considering it a few years ago, one judge in this District rejected the notion that there is "an absolute threshold test that must be met before Apex Officials can be deposed" and further noted that "the Tenth Circuit has never adopted any special test for such executives." That characterization appears accurate. Contrary to Garmin's arguments, the Tenth Circuit did not adopt the apex doctrine in *Thomas v. International Business Machines*, 48 F.3d 478, 479 (10th Cir. 1995). As recognized in *Van Den Eng*, [plaintiff] suggests that the lower courts properly address motions for protective order to preclude depositions of high-level officials or executives under the standard of Rule 26(c), while also considering special factors that may apply to such officials.

2012 U.S. Dist. LEXIS 126631, at *8-9.

If the *Thomas* factors are applied in this case, a protective order clearly is not warranted. Gordon's situation is a far cry from the IBM executive's situation:

In *Thomas*, the plaintiff failed to notice the executive's deposition within the five-day local rule. 48 F.3d at 483. Here, Plaintiffs easily noticed Gordon's deposition within the seven-day local rule, with four extra days to spare.

In *Thomas*, the deposition was scheduled to take place in Oklahoma City rather than IBM's principal place of business in White Plains, New York. *Id*. Here, Gordon's deposition was scheduled to take place in Denver, Colorado, where he lives and works. Further, Plaintiffs volunteered to travel to California, where he was purportedly scheduled to be.

In *Thomas,* the executive submitted an affidavit in which he testified that he lacked personal knowledge of the plaintiff's situation and was unaware she even worked for the company. *Id*. Here, Defendants submitted no such affidavit because Gordon could not say anything demonstrating a lack of involvement without lying. In fact, Defendants admit that Gordon has important knowledge of this case and listed him as the first witness in their initial disclosures.

Finally, in *Thomas*, an age discrimination case, the Court recognized the fact that plaintiff did not seek to depose her direct supervisors before noticing the executive as a factor weighing in favor of a protective order. *Id*. Gordon is not some far-removed executive of a Fortune 500 company who does not know the parties at issue here. Defendants' own pleadings and motions acknowledge Gordon is a critical witness in this case.

### d. The Court Should Not Enter a Protective Order Staying Gordon's Deposition Until After Other Depositions

Recognizing there is no authority in this District for the "apex" doctrine, Defendants again alternatively move for a protective order staying Gordon's deposition until Plaintiffs depose other employees of the company.

As explained by this District in *Certain Underwriters*, however, Defendants must show good cause for entry of such an order. 2012 U.S. Dist. LEXIS 126631, at *9-10. Plaintiffs do not have the burden to justify their decision to depose Gordon early, *id*., although he clearly wants to avoid testifying. To establish good cause, Defendants must make "a particular and specific demonstration of fact," *id*. at *10, which they have **failed to do here, despite having a second bite at the apple**. "Stereotyped and conclusory statements" about Gordon's availability and obligations are insufficient. *Id*. at *16-17. Not only do Defendants admit that Gordon has knowledge relating to key elements of the claims and defenses, they failed to submit evidence in their second brief outside the broad statement that he travels a lot.

8

For these reasons, the Court should deny Defendants' motion for protective order staying Gordon's deposition until after other depositions. To the contrary, the Court should compel him to testify immediately.

### III. CONCLUSION

By filing another motion to quash, Defendants have now prevented Plaintiffs from deposing Gordon twice this month. Defendants did not have good cause to file their second motion; it appears that they did not even read the key cases from this District after Plaintiffs cited them in response to Defendants' first motion.

This Court should not let Defendants' frivolous arguments delay Gordon's deposition a day longer. Despite Plaintiffs' attempts to meet and confer in good faith, Defendants continue to push the boundaries of advocacy in the name of delay and obstruction. Gordon possess highly relevant information that Plaintiffs are unable to obtain through other methods of discovery.

Dated: May 21, 2018              Respectfully submitted,

|  | **MCINNES LAW LLC**<br>By: */s/ Jack McInnes*<br>Jack D. McInnes (KS #21898)<br>3500 West 75th Street, Suite 200<br>Prairie Village, Kansas  66208<br>Telephone: (913) 220-2488<br>Facsimile: (913) 273-1671<br>jack@mcinnes-law.com<br><br>**ATTORNEY FOR PLAINTIFFS** |
|---|---|

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May 2018, a true and correct copy of the foregoing document was filed with the Clerk of Court via CM/ECF and served on counsel for Defendants through the Notice of Electronic Filing.

By: */s/ Jack McInnes*