**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

PIPELINE PRODUCTIONS, INC.,     )
BACKWOOD ENTERPRISES, LLC,     )
OK PRODUCTIONS, INC., and     )
BRETT MOSIMAN,     )
     )
     Plaintiffs,     )
     )
     v.     )     Case No. 15-4890-KHV
     )
THE MADISON COMPANIES, LLC,     )
and HORSEPOWER ENTERTAINMENT,     )
LLC,     )
     )
     )
     Defendants.     )

**MEMORANDUM AND ORDER**

This matter comes before the court upon plaintiffs' Motion to Compel Discovery Responses (ECF No. 108). For the following reasons, this motion is granted in part and denied in part.

**I.**

This action arises from a failed music concert, the Thunder on the Mountain music festival. Plaintiffs allege that they entered into a joint venture with the defendants to own and produce the music festival. Plaintiffs contend that defendants reneged on the agreement, and the festival had to be cancelled. Plaintiffs assert claims of breach of contract, breach of fiduciary duty related to a joint venture, fraud and tortious interference with a prospective business advantage. Defendants have filed counterclaims against plaintiffs.

**II.**

Plaintiffs propounded their first set of discovery requests to defendants on October 30, 2017.[1]  Defendants served responses on December 22, 2017.[2]  Defendants objected to most of plaintiffs' requests.  The parties then conferred to resolve their disputes.

On January 5, 2018, the court conducted a scheduling conference.[3]  At that time, the parties indicated that they were working on a protective order.  The court imposed a deadline of January 16, 2018 for filing a jointly proposed protective order or a motion and brief concerning a proposed protective order if the parties were unable to agree about the need for and/or scope of the order.[4]  On January 16, 2018, each side filed a motion for protective order.[5]  On February 22, 2018, the court granted in part and denied in part each motion filed by the parties.[6]  A protective order was entered later on that day.[7]

On February 23, 2018, defendants supplemented their discovery responses.[8]  Plaintiffs filed this motion on March 6, 2018.[9]  On March 8, 2018, defendants produced 5,656 documents consisting of more than 26,000 pages.  At the same time, defendants served a privilege log listing 820 privileged documents.

---

[1] ECF No. 67.

[2] ECF No. 85.

[3] ECF No. 87.

[4] ECF No. 88.

[5] ECF Nos. 89 and 90.

[6] ECF No. 100.

[7] ECF No. 101.

[8] ECF No. 103.

[9] ECF No. 108.

Defendants generally responded to plaintiff's discovery with objections that plaintiffs' requests were not relevant, not proportional, overbroad and unduly burdensome.  Defendants also argued that the information sought by plaintiffs on many of the matters was protected by attorney-client and/or work product privilege.  Defendants have also asserted that certain requested information was confidential or private.  Finally, defendants contend that the information sought by plaintiffs on "related entities" was vague and overbroad.

In their motion, plaintiffs contend that (1) defendants' general objections should be ignored; (2) defendants waived any assertion of attorney-client or work-product privilege; (3) defendants' objections based upon relevance are without merit; and (4) defendants' objections that the discovery requests are overbroad are also without merit.   Plaintiffs contend that defendants should be compelled to respond to Interrogatory Nos.  2-5, and 7-11, and Request for Production Nos. 4, 5, 8-10, 12, and 14-19. [10]

## III.

### A.  Motions to Compel

When resolving motions to compel the court is guided by several principles.  First, the moving party must indicate what discovery it seeks to compel.[11]   Second, "when ruling on a motion to compel, the court will consider only those objections that have been (1) timely asserted,

---

[10] In their reply brief, plaintiffs sought to compel answers to Request for Production Nos. 2, 6 and 13.   Plaintiffs also complained that defendants had scrubbed all of the metadata in most of the documents they have produced.  They requested that defendants produce the missing metadata for these documents.  Because all of these matters were first raised in plaintiffs' reply brief, the court will not consider them.   *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n. 7 (D.Kan. Aug. 4, 2008) (court will not consider argument raised for first time in reply brief) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir.2003)).

[11] *See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL, 2005 U.S.Dist. LEXIS 5170 at *13 (D. Kan. Mar. 30, 2005)(moving party need not address each objection in its motions to compel, but requiring '[i]n most cases, the moving party need only file its motion to compel and draw the court's attention to the relief the party seeks").

and (2) relied upon in response to the motion to compel."[12]   "Objections initially raised but not

relied upon in response to the motion to compel will be deemed abandoned."[13]

Third, as a general matter, the court "looks with disfavor on conclusory or boilerplate

objections."[14]   Specifically,

> [w]hen a party files a motion to compel and asks the Court to overrule certain objections, the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for production or interrogatory is objectionable. By failing to address these types of objections in response to a motion to compel, a party fails to meet its burden to support its objections. [15]

Because of such a failure, "[t]he Court is then left without any basis to determine whether

the objections are valid and applicable in light of the particular circumstances of the case."[16]   Thus,

while the court will examine defendants' objections, the court will not consider its boilerplate

objections to the extent defendants have failed to support them.[17]

B.   Relevancy and Proportionality

Rule 26(b)(1) of the Federal Rules of Civil Procedure outlines the scope of discovery

as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in

---

[12] *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n. 15 (D.Kan. 2005)(citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 641 (D. Kan. 2004)); *Contracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999).

[13] *Id.*

[14]  *Sonnino*, 221 F.R.D. at 670.

[15] *Id.*

[16] *Id.*

[17] *See Horizon Holdings Inc. v. Genmar Holdings, Inc.*, 209 F.R.D. 208, 213 (D.Kan. 2002)(citing *Snowden v. Connaught Lab., Inc.*, 137 F.R.D. 325, 327 (D.Kan. 1991)).

controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Considerations of both relevance and proportionality now govern the scope of discovery.[18] Relevance is still to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[19] Information still "need not be admissible in evidence to be discoverable."[20] The 2015 amendment to Rule 26 deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase, however, because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[21]

The consideration of proportionality is not new, as it has been part of the federal rules since 1983.[22] Moving the proportionality provisions to Rule 26 does not place on the party seeking discovery the burden of addressing all proportionality considerations. If a discovery dispute arises that requires court intervention, the parties' responsibilities remain the same as under the pre-amendment Rule.[23]  In other words, when the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery

---

[18] See Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[19] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[20] Fed. R. Civ. P. 26(b)(1).

[21] See Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

[22] *Id*.

[23] *Id*.

would outweigh the ordinary presumption in favor of broad disclosure.[24] Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[25] Relevancy determinations are generally made on a case-by-case basis.[26]

Whether any discovery request is proportional is to be determined by considering, to the extent applicable, the following six factors: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.[27]

C. Overly Broad and Unduly Burdensome

As the party objecting to discovery, defendants have "the burden of showing facts justifying their objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[28] This requires the opposing party to provide sufficient detail in terms of time, money and procedure in responding to the requested discovery.[29] The mere fact that responding to a request will require significant time and expenses, or even

---

[24] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[25] *McBride v. Medicalodges, Inc.*, 250 F.R.D 581, 586 (D. Kan. 2008).

[26] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

[27] Fed. R. Civ. P. 26(b)(1).

[28] *Horizon Holdings,* 209 F.R.D. at 213.

[29] *Cory v. Aztec Building, Inc.*, 225 F.R.D. 667, 672 (D.Kan. 2005).

considerable hardship or injury to business, does not alone warrant a denial of a motion to compel discovery responses.[30]

Defendants' failure to specify its potential burden is not dispositive of its objection. An objecting party's "failure to meet its evidentiary burden is not necessarily fatal to its claim that the requests are unduly burdensome" because "an exception ... applies when the discovery request is unduly burdensome on its face."[31] Courts often ask whether the request's wording "requires the answering party to 'engage in mental gymnastics to determine what information may or may not be remotely responsive.'"[32]

In support of their opposition to plaintiffs' requested discovery, defendants produced an affidavit from David Lionette, Executive Vice-President with the The Madison Companies, LLC. In his affidavit, he states:

> To date, I have spent countless hours searching for documents to be produced pursuant to defendants' initial disclosure obligations and in responding to plaintiffs' interrogatories. Given the extreme breadth of plaintiffs' discovery requests in their original form, I estimate that searching for, locating, reviewing, and producing all responsive, non objectionable documents called for plaintiffs would take thousands more man-hours.

The court is not persuaded that Mr. Lionette's affidavit meets the burden required to show that any discovery request is unduly burdensome. Mr. Lionette fails to provide information concerning any particular discovery request. Moreover, he fails to provide any details for his estimate. He has not provided a breakdown of the basis for his estimate. He has an obligation to

---

[30] *Id.*

[31] *Aikens v. Deluxe Fin. Servs.*, 217 F.R.D. 533, 537–38 (D.Kan.2003).

[32] *Id.*

provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure.

With this background, the court turns some of the specific issue raised by the parties.

IV.

A.  Related-Entities

In their interrogatories and requests for production, plaintiffs ask defendants to provide information or documents pertaining not only to defendants, but to defendants' "related entities." Defendants objected to this term as vague and overbroad.  After meeting and conferring, plaintiffs clarified that "related entities" meant "any parent, subsidiary, or affiliated company, and any business corporation, partnership, LLC or other entity in which the parent, subsidiary, or affiliated company, including officers, directors, executives, or employees, hold a substantial interest, directly or indirectly."  Defendants maintained their objections even after the clarification.

Discovery requests under Rules 33 and 34 may encompass information of nonparty entities if they are under the control of a named party.[33]  Control means not only possession, but also the right, authority, or ability to obtain the information.[34]  The party seeking production of the information has the burden of proving that the opposing party has control.[35]  Discovery may be necessary and proper to determine the relationship between the parties and whether the requisite control may exist.[36]

---

[33] See *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 516 (D.Kan. 2007).

[34] *Id.*

[35] *Id.*

[36] *Id.*, at 517.

The court finds plaintiffs' request for information on defendants' related entities is vague and unduly burdensome.[37]  Plaintiffs have not demonstrated that there any "related entities" that defendants control.  The burden rests with plaintiffs to determine who the "related entities" are.[38]  They, of course, can seek discovery to determine the relationship between the companies and whether the requisite control exists.  But, without any identification of the "related entities," these requests are vague and unduly burdensome.  The court will consider plaintiffs' requests without any reference to "related entities."

B.  Waiver of Privilege of Attorney-Client and/or Work-Product

The Federal Rules of Civil Procedure provide that

[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.[39]

The failure to follow the Federal Rules of Civil Procedure may result in waiver of protection under the work product doctrine or the attorney-client privilege.[40]

"Acknowledging the harshness of a waiver sanction, however, courts have reserved such a penalty for only those cases where the offending party committed unjustified delay in responding

---

[37] See *Stoneeagle Services, Inc. v. Gillan*, No. 3:11-cv-2408-P, 2013 WL 12124329, at *8((N.D. Tex. Dec. 23, 2013).

[38] *Id.*

[39] Fed.R.Civ.P. 26(b)(5)(A).

[40] *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.*, No. 05–2433–JWL–DJW, 2007 WL 1347754, at *2 (D. Kan. May 8, 2007) (citing 8 Charles A. Wright, Federal Practice and Procedure § 2016. 1, at 228–29 (2d ed.1994)).

to discovery."[41]  "In the few cases where the court found waiver based upon the untimely submission of a privilege log, the privilege log had been prepared after the court was asked to rule on the issue and after entry of an order directing production of the documents."[42]

Here, the privilege log was not provided until after plaintiffs filed their motion to compel. The log, however, was produced prior to full briefing on the motion.  The log was also produced shortly after the court entered a Protective Order.  The defendants had advised plaintiffs that they would produce documents responsive to the requests for production on March 8, 2018, at the same time documents identified in defendants' initial Rule 26 disclosures were produced.  That date was triggered by the timing of the court's issuance of the Protective Order.

Under these circumstances, the court does not find that defendants' actions were unreasonable.  The court does not find that the delay was unjustifiable or in bad faith.  Moreover, plaintiffs have not suffered any prejudice by the defendants' slight delay in producing the privilege log.  In this regard, the court notes that plaintiffs did not even mention this argument in their reply brief.   The court shall not impose waiver here.

The court now turns to the specific interrogatories and requests for production.

## V.

INTERROGATORY NO. 2.  Specify in detail any experience Defendants and/or related entities had owning, promoting, selling marketing, and/or starting music festivals and/or concerts prior to January 1, 2014.
RESPONSE:  Responding Party responds that through other ancillary businesses it has had prior management and operational experience with a winery investment that put on music events as well as sponsored and/or marketed itself via certain music events.

---

[41] *White v. Graceland Coll. Ctr. for Prof. Dev. & Lifelong Learning, Inc.*, 586 F.Supp.2d 1250, 1266 (D. Kan. 2008).

[42] *Id.*, at 1267.

As explained previously, the court finds no merit to the general objections that defendants have asserted here.  The court also finds that defendants have failed to specifically respond to this interrogatory.  The answer provided by defendants lacks any detail.   Thus, plaintiffs' motion to compel a complete response to this interrogatory is granted.  Defendants shall respond with an answer that provides the necessary details—the who, when and where of their experience with a music festival or concert prior to January 1, 2014.

INTERROGATORY NO. 3. Identify all persons Defendants and/or any related entities have employed (as employees, contractors, and/or vendors) that previously worked for Plaintiffs and/or any related entities, including which defendant and/or related entity employed them, the dates they were employed, and the positions they held.
RESPONSE:  Responding party responds as follows:
● Brian Wingerd:  Mr. Wingerd was employed by KAABOOWorks Services, LLC from October 1, 2015 to September 30, 2017 as SVP-Marketing.
● Brian Pilsl:  Mr. Pilsl was employed by KAABOOWorks Services, LLC from October 1, 2015 to October 11, 2017 as SVP-Business Development.
● Taylor Gustafson:  Mr. Gustafson was employed by KAABOWWorks Services, LLC from July 20, 2105 to July 10, 2017 as Box Office Manager & Operations Assistant.

Defendants contend this interrogatory seeks irrelevant information.  They further contend they have sufficiently answered it. Plaintiffs contend this interrogatory seeks information relevant to its tortious interference to a prospective business advantage claim.   Plaintiffs argue that defendants' response is too limited.  Plaintiffs point out that defendants limited their response to direct employees despite the plain language of the interrogatory.  The court agrees. Plaintiffs are entitled to this information based upon their tortious interference claim.  Defendants shall provide plaintiffs with all employees, contractors and vendors that they employed after they worked for plaintiffs.  Of course, if defendants are unaware that any employee, contractor or vendor previously worked for plaintiffs, then they are not required to list them. Defendants shall also provide the dates they were employed and the positions they held.

INTERROGATORY NO. 4. For each person identified in Your answer to Interrogatory No. 3 above, state the date on which Defendants and/or any related entities first communicated with them about potential employment.

INTERROGATORY NO. 5. For each person identified in Your answer to Interrogatory No. 3 above, state the amount Defendants agreed to pay them in salary or hourly compensation, bonuses, and/or benefits.

Defendants contend that they should not be required to respond to these interrogatories because they seek information that is irrelevant, and private and personal. They further argue that they are overbroad. Initially, the court finds that the requested information is relevant. As noted concerning Interrogatory No. 3, plaintiffs seek this information based upon their tortious interference claim. They have alleged that defendants sought to destroy their business by hiring away key partners and employees. The court is not persuaded that the interrogatories are overbroad. In addition, the court finds no merit to defendants' contention that they do have to produce this information because it seeks private, personal information. Discovery that may invade a party's privacy rights does not make it objectionable.[43] At best, such objections, if substantiated, may serve as a basis for a protective order. The Protective Order in this case adequately protects the information sought by plaintiffs. Defendants shall respond to these interrogatories.

INTERROGATORY NO. 7. Identify all persons Defendants and/or any related entities have communicated and/or negotiated with in the last 10 years about purchasing an interest in, owning, promoting, selling, marketing, and/or starting any music festivals and/or concerts.

INTERROGATORY NO. 8. Identify all persons Defendants have communicated and/or negotiated with to purchase all and/or part of any business in the last 10 years, including, but not limited to: the nature of the business at issue; the dates of communications and/or negotiations; and whether an agreement was reached.

---

[43] *Cory*, 225 F.R.D. at 673.

Defendants contend that these interrogatories seek irrelevant information and compliance would be "extremely onerous."  Defendants argue that the requests are not proportional to the needs of the case.  They also contend that plaintiffs have "speciously and without foundation" alleged they have engaged in a pattern and practice of defrauding others.  They argue:  "They are not entitled under the Federal Rules to assert, with no basis whatsoever, that defendants make a habit of defrauding people and then demand the identities of every person defendants . . . have spoken to over the past five years in hopes of finding some disgruntled would be joint venturer to support their baseless allegation."  Finally, they contend that such character evidence is inadmissible under Fed. R. Evid. 404(a).

Plaintiffs contend that the information sought in these interrogatories is relevant to their fraud claim where they have alleged that defendants have engaged in pattern and practice of fraudulent business dealings.  Plaintiffs suggest that defendants have not provided any detail sufficient to support their objection that producing the required information would be unduly burdensome.  Nevertheless, plaintiffs have indicated that they are willing to limit Interrogatory No. 7 to a time frame of 5 years and to persons that defendants have communicated and/or negotiated with about purchasing, owning and/or starting a music festival or concert.  They have also indicated they are willing to narrow Interrogatory No. 8 to a time frame of five years and to persons defendants have negotiated with about purchasing at least a 25 percent ownership in a business.

The court is not persuaded that these interrogatories seek irrelevant information.  In actions involving fraud, evidence of the same or similar fraudulent misrepresentations made to someone

other than the injured party is competent and relevant for establishing the elements of knowledge, malice, and intent to defraud.[44]   Thus, discovery of such evidence is appropriate.[45]

Moreover, defendants' suggestion that this information might be inadmissible does not preclude discovery.[46]   "Information within the scope of discovery need not be admissible in evidence to be discoverable."[47]

With the limitations noted by plaintiffs, the court overrules the objections asserted by defendants and compels responses to these interrogatories.

INTERROGATORY NO. 9. Identify all persons that have invested money, property, and/or other assets with Defendants in the last 10 years.

Plaintiffs seek the identity of defendants' investors.  The court is not persuaded that the relevance of this interrogatory is plain on its face.  As a result, the burden is shifted to plaintiffs to establish its relevance.  Plaintiffs have responded as follows:  "How Defendants characterized their involvement in Thunder to investors is important, as is investors' knowledge and complaints regarding similar transactions."   The court finds this limited explanation fails to adequately demonstrate why this information would be relevant here.  Although plaintiffs suggest "[h]ow Defendants' characterized their involvement in Thunder to investors is important," they have failed to provide any additional explanation for the importance of this information.  Moreover, the court

---

[44] *Brunett v. Albrecht*, 248 Kan. 634, 810 P.2d 276, 639 (1991); *U.S.D. No. 490 v. Celotex Corp.*, 6 Kan.App.2d 346, 359, 629 P.2d 196 (1981).

[45] See *Fisher v. Household Life Ins. Co.*, No. 10-2547-KHV, 2012 WL 966043, at *7 (D. Kan. Mar. 21, 2012) ("Requests for the names and nature of similar complaints and lawsuits are relevant discovery, particularly in a case alleging fraud.").

[46] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, No. 09-2516-JAR, 2010 WL 4340457, at *3 (D.Kan. Oct. 27, 2010).

[47] Fed. R. Civ. P. 26(b)(1).

is at a loss on the relevance of investors' knowledge and complaints about similar transactions.

Accordingly, plaintiffs' request for this information is denied.

INTERROGATORY NO. 10. Identify all lawsuits, claims, and/or complaints against Defendants and/or related entities alleging that they breached a contract, breached their fiduciary duties, made negligent and/or fraudulent misrepresentations, tortuously interfered, and/or otherwise acted in an unlawful manner in the last 10 years. For each, state: the caption of the case (if any), including the parties, the case number (if applicable), the court that heard the case (if any), and the date that the complaint was lodged and/or the case was filed; the allegations; and how it was resolved, including the amount of any verdict or settlement, and the date.

INTERROGATORY NO. 11. Identify all persons that have been fired, forced to resign, and/or asked to resign their employment as a result of any lawsuit and/or complaint referenced in Your answer to Interrogatory No. 10 above.

Defendants contend these two interrogatories are vague and ambiguous. With regard to Interrogatory No. 10, defendants suggest it is unclear whether the request seeks information related only to matters that actually went to litigation or arbitration or is "intended to include every allegation ever made against any of the defendants." If plaintiffs seek the latter, defendants suggest that it is overbroad and "virtually impossible to answer." Defendants assert that the requested time frame of ten years is overbroad and unreasonable. Finally, defendants contend that the interrogatory seeks improper character evidence and goes beyond similar lawsuits. Concerning Interrogatory No. 11, defendants raise similar arguments plus they suggest that it is overboard, harassing, and violates the right of privacy of defendants' employees.

Plaintiffs have agreed to limit these interrogatories to a time frame of five years.

Although these interrogatories are overly broad, plaintiffs may discover information concerning lawsuits and arbitration that have been filed against the defendants. Plaintiffs' request shall be limited to five years.

Request No. 4: Copies of all agreements between the parties.

Defendants contend that they have produced all actual agreements between the parties concerning the music festival involved in this case.  They suggest that any other agreements between the parties concerning other matters or other music festivals are not relevant here.

Plaintiffs seek only "agreements" that have been reached by the parties, not oral agreements or draft agreements.  Plaintiffs suggest that all aspects o the relationship between the parties, including all agreements entered into, are relevant and may lead to the discovery of admissible evidence.  The court agrees.  Defendants shall produce copies of all agreements between the parties.

Request No. 5: Documents sufficient to show all payments made by Defendants to Plaintiffs, Creative Artists Agency, and/or any other person relating to the Thunder on the Mountain music festival.

Defendants contend that they have properly responded to this request and provided all documents showing payments made by them to plaintiffs, the Creative Artists Agency and another entity not mentioned in the request related to the Thunder on the Mountain music festival.

Plaintiffs assert that defendants' response is too limited.  They point out that they seek payments made by defendants to "any other person" relating to the Thunder on the Mountain music festival.

The court agrees with plaintiffs' contention.  If there are other persons to which payments have been made concerning the Thunder on the Mountain music festival, defendants must provide those documents.  If the only persons or entities to whom payments were made consist of plaintiffs, the Creative Artists Agency and William Morris, then defendants have sufficiently responded to this request.

Request No. 8: Documents sufficient to show Defendants' and/or related entities' employment (as employees, contractors, and/or vendors) of individuals that previously worked for Plaintiffs.

Request No. 9: Documents reflecting communications and/or negotiations between Defendants and/or related entities and individuals that previously worked for Plaintiffs and/or related entities regarding potential employment.

Request No. 10: The personnel files of individuals that have been employed by Defendants and/or related entities after working for Plaintiffs and/or related entities.

Defendants raise the same arguments that they asserted concerning Interrogatory Nos. 4 and 5. For the reasons noted previously, the court shall require defendants to produce the documents sought in Request Nos. 8 and 9.

Defendants, relying on several decisions from other jurisdictions, contend that the court should apply a "heightened standard" of relevance to personnel files requested in Request No. 10. The court recognizes that some jurisdictions have applied what they have termed as a heightened standard" of relevance to personnel files. Judges in this district have not articulated a higher standard of relevance for personnel files, but they have been guided by the thoughts of the Tenth Circuit. Personnel files are regarded as private and contain material which employees regard as confidential, and a court must be cautious in ordering their disclosure.[48] The Tenth Circuit explained the caution which must be exercised in determining whether the personnel file of a non-party should be disclosed in discovery:

> [P]ersonnel files often contain sensitive personal information, ... and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly. Indeed, the Supreme Court has underscored that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression....'" Herbert v. Lando, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979) (quoting Fed.R.Civ.P. 26(c)(1)); see also Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir.1994) (no abuse of discretion where "privacy interests, coupled with [the district court's] determination to keep the trial focused ..., justified limiting [plaintiff's discovery of] personnel files").[49]

---

[48] *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648 (10th Cir.2008).

[49] *Id.,* at 648-649.

However, the Circuit added, "[t]his is not to say personnel files are categorically out-of-bounds."[50]

With this guidance, the court is not persuaded that plaintiffs need the entire personnel file of defendants' employees. Rather, a "more narrowly tailored" request would be allowed under *Regan-Touhy*. At this point, plaintiffs are limited to receiving documents from the personnel files that reflect the information requested in Interrogatory Nos. 3, 4 and 5.

Request No. 12. Documents sufficient to show persons Defendants have communicated and/or negotiated with to purchase all and/or part of any business in the last 10 years, including documents ending the communications and/or negotiations, or agreements reached between the parties.

Request No. 14. Documents reflecting Defendants' communications and/or negotiations with any other music promotors and/or other persons relating to purchasing and/or starting any music festivals and/or concerts.

Defendants raise the same arguments that they asserted concerning Interrogatory Nos. 7 and 8. These requests appear to seek discovery relevant to plaintiffs' claim that defendants have engaged in a pattern and practice of fraud. As noted previously, the information sought by plaintiffs is relevant toward establishing that claim. Defendants' relevancy objections to these requests are overruled.

Defendants have also suggested that requests are overly broad, extremely onerous, and "vastly" disproportional to the needs of the case. Defendants point to the affidavit of Mr. Lionette as support for this contention. For the reasons previously stated, the court finds no merit to this argument.

Defendants' objections are overruled, and plaintiffs' motion to compel responses to these requests is granted.

Request No. 15. Documents sufficient to show all persons that have invested money, property, and/or other assets with Defendants in the last 10 years.

---

[50] *Id.*, at 649.

Defendants raise the same arguments that they asserted concerning Interrogatory No. 9. For the same reasons set forth previously on Interrogatory No. 9, this request is denied.

Request No. 16. Documents relating to complaints (formal and informal) within the last 10 years by investors of Defendants and/or related entities that Defendants mishandled, misused, and/or misappropriated their investments.

Request No. 17. Copies of the pleadings, depositions, and/or settlement agreements in all lawsuits, claims, and/or complaints (formal or informal) against Defendants and/or related entities alleging they breached a contract, breached fiduciary duties, made negligent and/or fraudulent misrepresentations, tortiously interfered, and/or otherwise acted in an unlawful manner in the last 10 years.

Request No. 18. The personnel files of all persons that have been fired, forced to resign, and/or asked to resign their employment by Defendants in whole or part because of any lawsuit and/or complaint referenced above.

Defendants raise the same arguments that they asserted concerning Interrogatory Nos. 10 and 11. Defendants note these requests go beyond the information sought in Interrogatory No. 10 by requesting "the entire litigation file" for all such lawsuits. Defendants also point out that Request No. 18 improperly seeks the "entire personnel file" for any employee who resigned or lost their jobs due to such complaints, claims and lawsuits.

For the reasons stated in the court's ruling concerning Interrogatory No. 9, the court finds plaintiffs' Request No. 16 seeks documents that are not relevant. Accordingly, this request for documents shall be denied.

Concerning Request No. 17, plaintiffs have indicated that they do not seek the entire litigation file for the similar lawsuits. Rather, they seek only the pleadings, depositions and settlement agreements. They are willing to examine these matters on PACER if they are available rather than having defendants produce them. The court overrules defendants' objections, and directs defendants to comply with plaintiffs' request.

Concerning Request No. 18, the court again finds that plaintiffs are not entitled to the entire personnel files of these employees for the reasons stated previously.

Request No. 19. Documents sufficient to show the annual profits, revenues, and expenses of any music festival that Defendants have owned, promoted, sold, marketed, and/or started.

Defendants initially objected to this request based on relevance. Defendants further contend that the information sought is confidential and proprietary. Plaintiffs contend that this evidence is relevant because it contradicts defendants' assertion that they elected not to proceed with an agreement with plaintiff because ticket sales for the festival were far below what was represented by plaintiffs. The court is persuaded that, based upon the allegations contained in the amended complaint, this request is relevant. The fact that documents contain proprietary or confidential does not shield them from discovery.[51] The protective order entered in this case has adequate provisions for the protection of any confidential or proprietary business information produced during discovery. Defendants' objections are overruled. Defendants shall produce the documents requested by plaintiffs.

## VI.

Based upon the foregoing decisions, the court finds that justice requires that each party be responsible for their own costs and expenses incurred in briefing this motion.[52]

**IT IS THEREFORE ORDERED** that plaintiffs' Motion to Compel Discovery Responses (ECF No. 108) is granted in part and denied in part.

**IT IS SO ORDERED.**

---

[51] *McKillips v. Kumho Tire Co., Inc.*, 305 F.R.D. 655, 661(D.Kan. 2015).

[52] Federal Rule of Civil Procedure 37(a)(5)(c) allows a court to impose sanctions where a motion to compel is granted in part and denied in part. Under that rule, the court "may apportion the reasonable expenses for the motion."

Dated this 20th day of June, 2018, at Topeka, Kansas.


                                        s/ K. Gary Sebelius
                                        K. Gary Sebelius
                                        U.S. Magistrate Judge