# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | | |
|---|---|---|
| PIPELINE PRODUCTIONS, INC., | ) | |
| BACKWOOD ENTERPRISES, LLC, | ) | |
| OK PRODUCTIONS, INC., and | ) | |
| BRETT MOSIMAN, | ) | |
| | ) | Case No. 5:15-cv-04890-KHV-KGS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE MADISON COMPANIES, LLC, and | ) | |
| HORSEPOWER ENTERTAINMENT, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' INITIAL DISCLOSURES

Plaintiffs make the following disclosures pursuant to Fed. R. Civ. P. 26(a)(1) based upon information currently known and available to them. Plaintiffs reserve the right to alter, amend, or supplement these initial disclosures, if necessary, at a later time.

### I.  PERSONS WITH DISCOVERABLE INFORMATION THAT PLAINTIFFS MAY USE TO SUPPORT THEIR CLAIMS AND DEFENSES

1. Brett Mosiman (contact through Plaintiffs' counsel)

Mr. Mosiman has knowledge of the factual allegations in the Amended Complaint, including but not limited to, Defendants' breach of their contract to pay $750,000.00, fund $500,000.00 of operating capital for the Thunder on the Mountain ("Thunder") music festival, and pay $80,000.00 for production of the festival in exchange for a 51% interest in Thunder. He also has knowledge of the devastating impact Defendants' conduct had on Plaintiffs' finances, reputation, and ability to put on music festivals going forward.

2. Matt Gough, Terry Campbell, and Other Attorneys

These lawyers have knowledge of the negotiations that occurred between the parties and Defendants' bait and switch tactics.

3. Lyndsay McElderry, Aaron Stehman, Isaac Flynn, Chelsea Boisen, Nicole Giest, Liz Larimore, and Other Employees of Plaintiffs

These employees have knowledge of Defendants' daily involvement and control in Thunder preparations, including promoting, marketing and ticketing.

4. AJ Niland

Mr. Niland has knowledge of the music festival industry, valuation of music festivals, damage to reputation due to cancellation of concerts, and Defendants' bait and switch tactics.

5. Bob Vogt

Mr. Vogt has knowledge of the music festival industry, valuation of music festivals, damage to reputation due to cancellation of concerts, and Defendants' predatory business practices.

6. Chris Kennedy

Mr. Kennedy has knowledge of Defendants' business practices.

7. Madison Holding Investors

These investors have knowledge of Defendants' business practices.

8. Chris Brown, Bentley Hodges, Max Bischmann, Brian Wingerd, Brian Pilsl, and Other Employees of Defendants

These current and former employees have knowledge of Defendants' daily involvement and control in Thunder preparations and Defendants' bad acts.

9. John Murdock, Gary Burghart, Andrew Kelly, Susan Land, and Defendants' Other Attorneys

These lawyers have knowledge of the negotiations that occurred between the parties and Defendants' bait and switch tactics.

    10.    Todd Coder

Mr. Coder has knowledge of the parties' agreement and knowledge of Defendants' daily involvement and control in Thunder preparations. He also has knowledge regarding valuation of music festivals.

    11.    Barry Shear

Mr. Shear has knowledge of music festivals and valuation.

    12.    Brianna Mosiman

Brett Mosiman's wife has knowledge of the parties' agreement and the devastating impact Defendants' conduct had on Plaintiffs' finances, reputation, and ability to put on festivals going forward. She also has knowledge of the substantial impact Defendants' conduct had on their family.

13. Any person identified by any other party identified in any other party's initial disclosures, documents disclosed, in response to written discovery requests, attached to pleadings, identified by Defendants in support of any to be asserted claims or defenses, or otherwise contained in documents exchanged in this matter.

14. Any expert witness or other person to be later determined and disclosed including, but not limited to any person necessary for impeachment, rebuttal, rehabilitation or expert testimony.

15. Any of Defendants' (past and present) members, investors, managers, partners, joint venturers, attorneys, corporate parents, customers, subsidiaries, divisions, accountants, partners, agents, employees, advisors, representatives, professionals, lenders, consultants, assignees, affiliates, or other persons who may have acted, or purported to act, or are purporting to act, on behalf of Defendants and/or any of the foregoing persons or entities.

This is not an exhaustive list as this case is just beginning. Plaintiffs reserve the right to add, delete, and/or otherwise modify these witnesses.

## II. DOCUMENTS PLAINTIFFS MAY USE TO SUPPORT THEIR CLAIMS AND DEFENSES

1. Emails by and between the parties regarding negotiations and Defendants' control over Thunder preparations

2. Contracts reflecting the parties' negotiations and Defendants' bait and switch tactics

3. Text and phone records between the parties

4. Defendants' marketing materials relating to music festivals

5. Accounting records, CAA deposits, ticketing records and audits, TSYS credit processing reports, property appraisals

6. Documents reflecting Defendants' bait and switch tactics

7. Any and all documents exchanged with any other party in discovery and/or received from any non-party entities related to Thunder

This is not an exhaustive list as this case is just beginning. Plaintiffs reserve the right to add, delete, and/or otherwise modify witnesses.

## III. COMPUTATION OF DAMAGES

Plaintiffs seek damages and/or restitution from Defendants for: failing to make required payments pursuant to the parties' agreement regarding Thunder; denying responsibility for Thunder losses; money owed to Thunder ticketholders and vendors, including classes members in the Arkansas class action lawsuits; Plaintiffs' and related entities' lost profits, value and income; damages to Plaintiffs' reputation; damages relating to Defendants' interference with Plaintiffs' key employees and partners; and punitive damages to prevent Defendants from continuing their bait and switch tactics.

Plaintiffs will calculate damages at trial using Defendants' own valuation of Plaintiffs' festival holdings at approximately $13M; Thunder records and receipts, Plaintiffs' and related entities' financial statements, and industry valuations, among other things. Plaintiffs anticipate using one or more expert to establish the value of Plaintiffs' music festivals, ticketing companies, and land holdings.

## IV. INSURANCE AGREEMENTS

None.

Dated: December 4, 2017                                Respectfully submitted,

|  | MCINNES LAW LLC<br>By: /s/ Jack McInnes<br>Jack D. McInnes (KS #21898)<br>3500 West 75th Street, Suite 200<br>Prairie Village, Kansas  66208<br>Telephone: (913) 220-2488<br>Facsimile: (913) 273-1671<br>jack@mcinnes-law.com<br><br>**ATTORNEY FOR PLAINTIFFS** |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2017, a true and correct copy of the foregoing document was served via email on counsel for Defendants.

By: /s/ Jack McInnes