IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., ) <br> BACKWOOD ENTERPRISES, LLC, ) <br> OK PRODUCTIONS, INC., and ) <br> BRETT MOSIMAN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE MADISON COMPANIES, LLC, and ) <br> HORSEPOWER ENTERTAINMENT, LLC, ) <br> ) <br> Defendants. ) | Case No. 5:15-cv-04890-KHV-KGS |

**PLAINTIFFS' MOTION TO REVIEW MAGISTRATE JUDGE'S ORDER,
AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Plaintiffs respectfully move this Court for a review of Judge Sebelius' Order dated October 31, 2018 (Doc. 314), which prevents Plaintiffs from obtaining necessary discovery regarding their tortious interference claim and Defendants' defenses in this case. In support of their motion, Plaintiffs state as follows:

**I.   INTRODUCTION**

This dispute involves the ability of one party to discover documents and information about another party's related entities.[1] Judge Sebelius has already ruled that Plaintiffs are entitled to discover documents and information regarding Defendants' communications with Plaintiffs' former partners, employees and agents, as well as Defendants' other music festivals. (Doc. 195 at 11-12 and 20). The problem that Plaintiffs face, which is exacerbated by Judge Sebelius' Order, is that Defendants transferred their assets and employees to a related entity, Kaaboo, after this case

---

[1] Plaintiffs have consistently limited the phrase "related entities" to "companies Defendants have control over." *See, e.g.*, Doc. 220 at 1.

1

began. Even though Kaaboo has the same owners, executives, employees, offices and lawyers, Defendants have refused to produce this discovery. In fact, they have even refused to respond to Plaintiffs' discovery regarding their control of the related entities.

Plaintiffs strongly object to Judge Sebelius' Order, which essentially blesses Defendants' legal maneuvering to avoid discovery, and judgment, in this case.

## II.  PROCEDURAL HISTORY

Defendants first raised their "related entities" objection when they objected to 7 of Plaintiffs' 11 interrogatories and 10 of Plaintiffs' 21 document requests on December 22, 2017. (*See* Ex. 1 and 2). Plaintiffs filed a motion to compel discovery responses on March 6, 2018 (Doc. 108), and after the issue was briefed, Judge Sebelius entered an Order on June 20, 2018 (Doc. 195) finding, among other things, that Plaintiffs' definition of "related entities" was vague and burdensome. (*Id*. at 9). However, the Order did not foreclose discovery concerning Defendants' related entities. To the contrary, Judge Sebelius simply stated that Plaintiffs must demonstrate that "related entities" are under Defendants' control, must determine who these related entities are, and "can seek discovery to determine the relationship between companies and whether the requisite control exists." (*Id*.).

Plaintiffs had previously noticed a Rule 30(b)(6) deposition of Defendants on April 30, 2018. (Doc. 127). After Defendants objected to 23 of their 30 topics (Doc. 130), Plaintiffs served an amended 30(b)(6) notice to try to address their concerns on May 8, 2018 (Doc. 137). But Defendants still objected to 19 of the topics, and they filed another motion for protective order. (Doc. 141).

On July 13, 2018, Judge Sebelius entered an Order (Doc. 203) incorporating several rulings from his June 20 Order regarding Plaintiffs' motion to compel discovery responses (Doc. 195), including his finding that the term "related entities" was overly broad. Again, this did not preclude Plaintiffs from conducting discovery on the issue going forward.

Plaintiffs then noticed a second amended Rule 30(b)(6) deposition of Defendants on August 8, 2018 (Doc. 220) to update their topics based on discovery they had obtained since their April/May notices regarding Defendants' control of Kaaboo.[2]

On August 27, 2018, however, Defendants filed yet another motion for protective order to stop discovery regarding Kaaboo (Doc. 246), arguing that Plaintiffs did not have sufficient evidence of control. Incredibly, Defendants were refusing to answer Plaintiffs' discovery requests seeking additional documents and information regarding Defendants' control of Kaaboo and other related entities at the same time, which prompted Plaintiffs to file a second motion to compel discovery responses on October 11, 2018 (Doc. 285).

Plaintiffs responded to Defendants' motion for protective order with substantial evidence reflecting Defendants' control of Kaaboo (Doc. 261), but on October 31, 2018, Judge Sebelius granted Defendants' motion in large part (Doc. 314). Among other things, Judge Sebelius ruled that: Plaintiffs failed to demonstrate the necessary control obligating Defendants to produce evidence from Kaaboo; Plaintiffs failed to explain how discovery concerning Kaaboo is relevant; and the requested discovery was not proportional.

---

[2] "Kaaboo" refers to Kaaboo, LLC; Kaaboo-Del Mar Advisors, LLC; Kaaboo Del Mar Investment, LLC; Kaaboo Del Mar Management, LLC; Kaaboo-Del Mar, LLC; Kaaboo Acquisition Sub, LLC: Kaaboo Cayman Advisors, LLC; Kaaboo Cayman Eventco, LLC; Kaaboo Investco, LLC; Kaaboo Cayman Management, LLC; Kaaboo Cayman, LLC; Kaaboo Contract Services, LLC; Kaaboo Management, LLC; Kaaboo Texas Eventco, LLC; Kaaboo Texas Investco, LLC; Kaaboo Texas Investments, LLC; Kaaboo Texas JV, LLC; Kaaboo Vail, LLC; KaabooWorks Services, LLC; and KaabooWorks, LLC.

Each of these findings warrants reversal here. Plaintiffs respectfully request that this Court set aside, or at least modify, Judge Sebelius' Order pursuant to Rule 72(a) and deny Defendants' motion for protective order regarding Kaaboo.

## III.  ARGUMENT

### a.  Standard for Objections to Magistrate Judge's Order Regarding Discovery

Judge Sebelius' Order is clearly erroneous and contrary to the law on several grounds. This Court has previously explained the standard for reviewing a magistrate judge's order regarding discovery matters as follows:

> A party may object to a magistrate judge's order pertaining to a discovery matter. *See* Fed. R. Civ. P. 72(a). Upon objection, the district court may "modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see* 28 U.S.C. § 636(b)(1)(A). Under this standard, the district court must affirm the magistrate's rulings "unless it on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (citation and quotation omitted). Because a magistrate is afforded broad discretion in the resolution of non-dispositive discovery disputes, the court will overrule the magistrate's determination only if this discretion is abused. *Comeau v. Rupp*, 762 F. Supp. 1434, 1450 (D. Kan. 1991).

*Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 453 (D. Kan. 2004).

### b.  Judge Sebelius Clearly Erred in Ruling that Plaintiffs' Discovery Requests Were Vague and Overbroad Because They Failed to Identify Specific Related Entities

To begin, Judge Sebelius clearly erred when he ruled that Plaintiffs' discovery regarding Defendants' related entities—nonparties who are controlled by Defendants—were vague and overbroad because they "failed to identify any 'related entities.'" (Doc. 314 at 4). Contrary to Judge Sebelius' ruling, Plaintiffs identified the related entities they were aware of at the time. Specifically, Plaintiffs' response brief listed the following categories of related entities:

4

1. The "Madison-family companies," as referenced by Bryan Gordon in his July 11, 2018 deposition;

2. KAABOO, LLC, KAABOO-Del Mar Investment, LLC, KAABOO-Del Mar, LLC, KAABOOWorks, and KAABOOWorks Services, LLC; and

3. WarDawgz, LLC, LastDawgz, LLC, and/or other entities owned, operated and/or managed by Madison, Horsepower and/or their owners.

(Doc. 261 at 7; *see also* Doc. 220 at 2 (Plaintiffs' Second Amended Rule 30(b)(6) Notice, which included topics regarding the "Madison-family companies" and the Kaaboo entities)).

Further, Plaintiffs respectfully disagree with Judge Sebelius' suggestion that they must identify specific entities before receiving any discovery on nonparty entities. The rules of discovery allow Plaintiffs to obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Plaintiffs are entitled to discovery about Defendants' "family" of nonparties and "related entities," within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

Judge Sebelius' June 20 Order expressly stated that Plaintiffs "can seek discovery to determine the relationship between companies and whether the requisite control exists." (Doc. 195, at 8). In light of this decision, Plaintiffs propounded discovery asking Defendants to identify "related entities" that Defendants have control over. (Doc. 220 at 2-6). The remainder of Plaintiffs' requests sought information and documents regarding entities for which Defendants contested control. (*Id*. at 2). Judge Sebelius's Order deemed this insufficient, but what were Plaintiffs supposed to do when Defendants deliberately refused to identify the companies? For example, during Plaintiffs' deposition of Defendants' founder and CEO, Mr. Gordon, he indicated there were hundreds of entities within Madison's "family" of companies. But when Plaintiffs pressed, Mr. Gordon refused to identify them. (Ex. 3, Gordon Dep. 60:16 - 62:18).

Plaintiffs' discovery requests were as particular as possible based upon the information Defendants provided. Neither Defendants, nor Judge Sebelius cited case law requiring discovery to name specific nonparty entities within the parties' control, and Plaintiffs are not aware of any. Factually, Plaintiffs have limited knowledge of Defendants' related entities since they have repeatedly refused to provide any discovery on this point, not even an organizational chart. This has created a Catch-22 for Plaintiffs that the Court should not permit: Defendants were unwilling to respond to discovery requests or answer deposition questions to allow Plaintiffs to determine the relationship between Defendants and their related entities, but the Court insisted that Plaintiffs were required to identify Defendants' specific "related entities."

Based on Judge Sebelius' guidance in his June 20 and July 13 discovery orders, Plaintiffs sought the following items specifically designed to identify Defendants' related entities:

1. Topic No. 2 in Plaintiffs' Second Amended Rule 30(b)(6) Notice: "The "Madison-family companies" referenced by Bryan Gordon in his deposition on July 11, 2018 that are or were in existence any time from January 2014 to the present." (Doc. 220 at 2).

2. Topic No. 4 in Plaintiffs' Second Amended Rule 30(b)(6) Notice: "Madison and/or Horsepower's control over the companies identified in response to Topics 2 and 3 above as described in the Court's Order dated June 20, 2018." (*Id*. at 2).

3. Interrogatory No. 4 in Plaintiffs' Second Set of Interrogatories: "Identify the Madison-family companies that Mr. Gordon referenced during his deposition on July 11, 2018. (*See* pages 60-62) (Ex. 3). Defendants may limit their answer to Madison-family companies that have been or were in existence at any time from January 1, 2014 to present." (Ex. 4 at 4).

4. Interrogatory No. 5 in Plaintiffs' Second Set of Interrogatories: "For each company identified in your answer to No. 4 above, state whether you have possession, custody and/or control of its documents and/or information and/or the right to obtain documents and/or information from them." (*Id*.)

6

5. Interrogatory No. 6 in Plaintiffs' Second Set of Interrogatories: "For each company identified in your answer to No. 4 above for which your answer to No. 5 above is anything other than 'Yes,' state its: primary business purpose; principal place of business; state of incorporation or registration; owners, executives and/or board members; when it was formed; if it is still in existence; if it is not still in existence, when it was dissolved; relationship to Madison, Horsepower, Kaaboo and/or companies listed in your answer to No. 4 above; whether any of its assets were transferred from Madison and/or Horsepower; and whether any of its employees previously worked for Madison, Horsepower, Kaaboo and/or companies listed in your answer to No. 4 above." (*Id*. at 5).

6. Request No. 20 in Plaintiffs' Second Request for Production of Documents: "Organizational charts reflecting owners, executives and/or employees of Madison, Horsepower and/or Kaaboo from January 2014 to present." (Ex. 5 at 7).

7. Request No. 21 in Plaintiffs' Second Request for Production of Documents: "Organizational charts reflecting Madison-family companies (referenced by Brian Gordon during his deposition on July 11, 2018) and/or their relationship to Defendants from January 2014 to the present." (*Id*.).

Defendants objected to each of these discovery requests in their entirety. (Exs. 6 & 7). Plaintiffs were therefore unable to obtain any discovery to determine the identity of Defendants' related entities, the Kaaboo entities, or the "Madison-family companies," even though the Court previously indicated they could "seek discovery to determine the relationship between companies and whether the requisite control exists." (Doc. 195, at 8). While Plaintiffs believe they proffered more than enough evidence of control to warrant discovery regarding Kaaboo, Judge Sebelius clearly erred in finding that Plaintiffs "failed to identify any 'related entities,'" and in holding that Plaintiffs failed to satisfy their burden of describing Defendants' related entities with reasonable particularity, especially given Defendants' discovery tactics.

### c. Judge Sebelius Clearly Erred in Ruling that Plaintiffs Failed to Show Defendants Have Control of Discovery Relating to the Kaaboo Entities

Judge Sebelius also clearly erred when he ruled that Plaintiffs failed to demonstrate necessary control obligating Defendants to produce evidence from Kaaboo.

7

The well-established factors used by courts in this District to determine whether a party has control over a related entity for discovery include:

> "(a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and [e] involvement of the non-party corporation in the litigation." "These factors focus on the other corporation's actual control or inferred control, including any 'complicity' in the storing or withholding documents."

*Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 655 (D. Kan. 2004) (Sebelius, J.) (citations omitted).

Even without the benefit of discovery responses, Plaintiffs easily demonstrated that Defendants control the Kaaboo entities, citing evidence linking Defendants' and Kaaboo's common ownership, management, employees eand offices. (Doc. 261 at 7-8). Judge Sebelius conceded that "[t]he record shows there is some overlap in ownership and management between the defendants and the KAABOO entities," but he appeared to weigh the evidence at discovery, even accepting Mr. Gordon's self-serving affidavit, in stating that "[t]he Kaaboo entities are separate entities with separate operations that manage separate products." (Doc. 314 at 7).

Although the Kaaboo entities may be legally separate entities, Plaintiffs' evidence of Defendants' control far outweighs these facts, especially at the discovery stage. It clearly demonstrates an "exchange or intermingling of directors, officers or employees," *Super Film*, 219 F.R.D. at 655, as shown by the fact that Defendants and Kaaboo share executives - Mr. Gordon, Seth Wolkov, and Robert Walker (Doc. 261 at 7-8), Defendants no longer have employees, and all of Defendants' former employees that still work for a Madison-family company work for Kaaboo. (Doc. 261 at 8, ¶ 4 (citing Ex. 8, Walker Dep. 48:1-52:23; Ex. 3, Gordon Dep. 14:15-23)).

Sharing executives logically means that Defendants share their corporate knowledge with the Kaaboo entities and vice-versa.

Plaintiffs also demonstrated that Defendants have "commonality of ownership" with Kaaboo and its entities, *Super Film*, 219 F.R.D. at 655, a fact that Defendants themselves admitted in their motion. (Doc. 246 at 3 ("[T]here is, indirectly, an overlap in ownership between [Madison] and "KAABOO," and that the members of [Madison] have an indirect interest in "KAABOO.")). Specifically, Defendants' owners—Mr. Gordon, Mr. Wolkov and Mr. Walker—own WarDawgz, which is the primary inside owner of Kaaboo, LLC. (Ex. 8, Walker Dep. 54:19 – 55:4, 11-12).

Defendants and the Kaaboo entities even share the same offices. (Doc. 261 at 8, ¶ 3). Plaintiffs' evidence reflects an "exchange of documents between the corporations in the ordinary course of business," *Super Film*, 219 F.R.D. at 655, including an investment opportunity packet that Defendants sent to potential investors of the Kaaboo Del Mar music festival stating: "Presented by: Horsepower Entertainment, a Madison Company." (Ex. 9, Thunder Investment Opportunity Packet, at 1).

Further, Plaintiffs have uncovered evidence that Defendants transferred all, or almost all, of their assets, intellectual property, and employees to Kaaboo entities after this litigation began.[3] (Doc. 261 at 9, 15). Defendants admit that Madison's music festival business was "transitioned" to Kaaboo (Ex. 3, Gordon Dep. 32:25 – 33:9), clearly establishing that Kaaboo had an "indirect benefit or involvement . . . in the transaction," *Super Film*, 219 F.R.D. at 655, since the same owners and executives who agreed to partner on Thunder made the decision to transfer

---

[3] Plaintiffs intend to file a motion for leave to amend their complaint to add Kaaboo, LLC, KaabooWorksService, LLC, WarDawgz, LLC, LastDawgz, LLC, and Defendants' owners, and add claims for fraudulent transfer, piercing the corporate veil, malicious prosecution and/or abuse of process, and defamation.

9

information, assets, and ideas from Horsepower to Kaaboo after litigation arose. (Doc. 261 at 20). The owners of the Kaaboo entities obviously stand to benefit from this litigation since they overlap substantially with the owners of Defendants. *Super Film*, 219 F.R.D. at 655.

Plaintiffs clearly demonstrated that Defendants have possession, custody or control over the requested discovery pursuant to Rule 34(a)(1). "Control comprehends not only possession, but also the right, authority, or ability to obtain the documents." *Id*. at 651 (quoting *Lone Star Steakhouse & Saloon, Inc*., 2003 U.S. Dist LEXIS 12160, * 5-6)). Defendants have not once argued that they do not have the right, authority, or ability to obtain discovery about the Kaaboo entities. In fact, Defendants initially answered some discovery regarding Kaaboo, but they walked it back in later discovery responses after Judge Sebelius found Plaintiffs' definition of "related entities" overbroad. (*Cf.* Ex. 14, Response to Interrogatory No. 3 in Defendants' Responses to Plaintiffs' First Set of Interrogatories *with* Ex 15, Response to Interrogatory No. 3 in Defendants' Amended Supplemental Responses to Plaintiffs' First Set of Interrogatories). This also reflects "involvement of the non-party corporation in the litigation." *Super Film*, 219 F.R.D. at 655.

The fact that the Kaaboo entities are legally separate entities is overwhelmed by Plaintiffs' evidence of control. The other reasons listed by Judge Sebelius in denying Plaintiffs' discovery are irrelevant to whether Defendants control Kaaboo and/or improperly weigh the evidence at the discovery stage.

The fact that the KAABOO entities are involved in music festivals of other genres in locations much different than Thunder is a complete red herring. (Doc. 317 at 7). It is wholly unrelated to whether Defendants control Kaaboo.

Finally, Judge Sebelius clearly erred when he stated that at least one of Plaintiffs' control factors lacks evidentiary support, specifically that "Madison transitioned its musical festival business from defendant Horsepower to KAABOO and defendants changed their structure because of this litigation." (Doc. 314 at 7). Plaintiffs cited the deposition testimony of five current or former employees of Defendants in making the following assertions:

1. Defendants' employees became Kaaboo employees. (Ex. 8, Walker Dep. 48:1-52:23; Ex. 3, Gordon Dep. 14:15-23);

2. Madison transitioned its musical festival business from Horsepower to Kaaboo. (Ex. 3, Gordon Dep. 33:1-4, 35:2-13, 35:14-25, 36:20-37:5, 37:20-24; Ex. 10, Brown Dep. 165:11-12; Ex. 12, Pilsl Dep. 148:24-149:2; Ex. 13, Byer Dep. 7:23-8:4, 34:4-5, 22-24, 38:24-25); and

3. Defendants changed their structure because of this litigation. (Ex. 10, Brown Dep. 169:24-170:8).

(Doc. 261 at 8).

The testimony cited by Plaintiffs is clear on this point. For example, Mr. Gordon testified that Horsepower transitioned to Kaaboo:

> Q   At some point after the Kansas case was filed, Madison's music festival business became KAABOO rather than Horsepower; is that correct?
>
> A   Of a fashion, yes.  Our strategy changed. We decided to migrate from an initial strategy of investing and in partnering with existing businesses, management teams, and festivals to basically developing ground-up events ourselves under a common brand, that being the KAABOO brand.

(Ex. 3, Gordon Dep. 32:25 – 33:9). Ignoring their self-serving reasons for the "transition," Defendants do not dispute they changed their music festival business from Horsepower to Kaaboo after this case was filed.

Judge Sebelius' ruling goes against the evidence, especially considering that Mr. Gordon's affidavit, used to support Defendants' motion for protective order, admits that Horsepower negotiated to invest in Thunder but later "decided to stop pursuing investments in existing festivals," (Doc. 246-11 at 3), Kaaboo and its entities were conceived to create new music and culture festivals, (*id*. at 4), and after Horsepower was "wound up and liquidated," "a number of" Defendants' employees took positions with KAABOOWorks Services, LLC. (*Id*. at 5). At the very least, the Kaaboo entities hold Defendants' collective knowledge regarding music festivals. (Doc. 261 at 15.)

### d. Judge Sebelius Clearly Erred in Ruling That Plaintiffs' Discovery Requests Are Not Relevant

Perhaps most egregiously, Judge Sebelius clearly erred in ruling that Plaintiffs' discovery regarding Kaaboo is not relevant to this case. As this Court is well aware, "[r]elevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Waters v. Union Pac. R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) (internal quotations and citation omitted). Not only did Judge Sebelius previously rule that the substance of Plaintiffs' discovery requests—Defendants' communications with Plaintiffs' former partners, employees and agents, and Defendants' other music festivals—are relevant, Plaintiffs easily met their burden at the discovery stage by providing specific reasons why their requests concerning Kaaboo are relevant to their claims and Defendants' defenses.

Contrary to Judge Sebelius' Order, Plaintiffs explained how the Kaaboo entities interfered with their relationships. (*See* Doc. 314 at 8). Plaintiffs' response to Defendants' motion for protective order expressly argued that Defendants tortiously interfered with Plaintiffs' former partners, employees and agents, many of whom now work for Kaaboo. (Doc. 261 at 16). After

Defendants reneged on their agreement to partner on Thunder, Plaintiffs allege that Defendants hired away Plaintiffs' key personnel in order to destroy Plaintiffs' business and help them win this litigation. (*Id*.). Although Defendants deny that they tortiously interfered with Plaintiffs' business, they admit that several of Plaintiffs' key partners, employees and agents now work for unidentified Kaaboo entities. (*See* Doc. 261 at 3; Ex. 3, Gordon Dep. 299:3-12, discussing Plaintiffs' former partner Nate Prenger who now works for Kaaboo). Without discovery on Kaaboo's communications with and personnel files for Plaintiffs' former personnel (Ex. 6 & 7), their ability to prove their tortious interference claim will be substantially impaired. (Doc. 261 at 16).

Judge Sebelius also improperly credited Defendants' arguments highlighting differences between their Kaaboo music festivals and Thunder. (Doc. 314 at 7). The music festival industry, like the live music industry, is very small. While the type of music genre, the location, and even the average audience member for a music festival may vary, multiple-day events like Kaaboo are certainly relevant to both Thunder and this litigation. In fact, Defendants used another one of Pipeline's music festivals, Wakarusa, which involved jam bands, at the same location as Thunder, with similar fans as Thunder, when trying to sell Kaaboo to their investors. (Ex. 16, Kaaboo Investment Opportunity Packet, at 10-11). Even without this, however, Defendants' arguments go to weight at trial, not relevancy at the discovery stage.

Both Plaintiffs' and Defendants' experience in the music festival business is relevant here. An important question in this case is how the industry estimates the value, future ticket sales, and profit and losses of new music festivals. (*See* Doc. 261 at 15-16). Plaintiffs claim that Defendants breached their agreement to partner on Thunder, while Defendants claim they decided not to enter into a joint venture with Plaintiffs after "it became clear that Thunder ticket sales would be exponentially lower" than Plaintiffs led them to believe. (Doc. 66 at 12). Defendants go so far as

13

to accuse Plaintiffs in their affirmative defenses of fraudulently inducing them to enter any agreement the Court deems binding. (Doc. 66, Affirmative Defense 16 at 19-20). Plaintiffs must be permitted to rebut this defense by establishing that Defendants knew, based on their own experience in the music festival business, that ticket sales are predictably low during the first years of a new music festival. (*See* Doc. 261 at 15-16). Defendants' knowledge of the industry is clearly relevant to this case, regardless of whether it was gained before, during, or after Thunder. (*Id*.) They should not be permitted to "transition" their music festival business from Horsepower to Kaaboo after litigation began and then attempt to shield their "new" business from discovery.

With all due respect, Judge Sebelius' suggestion that none of Plaintiffs' arguments support their contention that discovery concerning the KAABOO entities is relevant to their claims is contrary to both the facts and the law. The Order holds Plaintiffs to a standard far greater than is appropriate at this stage. Giving Defendants all benefits of the doubt, Plaintiffs, at minimum, demonstrated a "possibility" that their requests "may be relevant" to this case.

In addition to tortious interference and music festival experience, discovery about Kaaboo is relevant to proving Plaintiffs' damages. Defendants repeatedly argue that Plaintiffs overestimated Thunder's projected growth, anticipated revenues, and value. (Doc. 261 at 16). Plaintiffs must be permitted to rebut this argument with evidence of Defendants' valuation of Kaaboo, which lost significantly more money in its early years than Thunder, as well as Kaaboo's projected ticket sales, actual ticket sales, profits and losses, and other relevant comparisons between the festivals. (*Id*.).

Discovery regarding Kaaboo-related lawsuits and failed business negotiations is also relevant to establish a pattern and practice of similar conduct by Defendants. (*Id*. at 17). Again, although Defendants are no longer involved in the music festival business, they conduct their music festival business through the Kaaboo entities. (*Id.* at 15-16). Plaintiffs intend to show that Defendants have repeatedly reneged on contracts and engaged in bait-and-switch practices. (*Id*. at 17). In fact, Plaintiffs have already learned of at least one similar suit against Defendants and Kaaboo in which another music producer alleges that Mr. Gordon, Madison, Horsepower and Kaaboo reneged on a contract to partner on a music festival. (*Id*., citing Ex. 11, *BeachRock v. Gordon*, alleging breach of contract, fraud, and other claims)). Plaintiffs must be permitted to discover any other lawsuits like this.

e. **Judge Sebelius Clearly Erred in Ruling that Plaintiffs' Discovery Requests Are Not Proportional**

Further, Judge Sebelius clearly erred in finding that Plaintiffs' discovery is not proportional to the needs of the case. Without any evidence, Judge Sebelius stated that Plaintiffs' requests "concerning the Kaaboo entities would expand discovery significantly," and any benefit would be outweighed by the burden or expense of responding. (Doc. 314 at 9).

At most, Defendants broadly argued in their motion for protective order that discovery about Kaaboo would expand the scope of the lawsuit, increase litigation costs, and lead to additional motion practice. (Doc. 246 at 22). Defendants did not: dispute that the amount in controversy in this case is substantial enough to warrant additional discovery; suggest that they could not access Kaaboo's documents and information; or claim a lack resources to undergo additional discovery. (Doc. 261 at 18). In fact, Defendants failed to raise any specific arguments about any alleged burden of providing Kaaboo-related discovery. (*Id*.)

Judge Sebelius' acceptance of Defendants' unsupported undue burden arguments and other blanket proportionality assertions is directly contrary to the law of this District. "Objections based on undue burden must be clearly supported by an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." *Panel Specialists, Inc. v. Tenawa Haven Processing, LLC*, No. 16-4140-SAC, 2017 U.S. Dist. LEXIS 130167, at *7 (D. Kan. Aug. 16, 2017) (citing *Waddell & Reed Fin., Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004)) (reversing magistrate judge's order and finding that defendants' description of alleged burden was "not sufficiently specific to sustain any conclusion that relevance of. . . information is significantly outweighed by burden imposed on defendants") (Vratil, J.).

### f. Judge Sebelius Clearly Erred in Ruling that Discovery Seeking the Identity of the "Madison-Family Companies" Is Not Relevant

Finally, Judge Sebelius clearly erred in holding that Plaintiffs are not entitled to discovery to determine the identities of the "Madison-family companies." (Doc. 314 at 10). In his deposition, Mr. Gordon used the phrase "our family of companies." (Ex. 3, Gordon Dep. 58:24-59:8). When Plaintiffs asked him to elaborate, he testified that it describes "a variety of legal entities to pursue its investment strategies" which are all under the Madison "umbrella." (*Id*. at 59:21-60:15). Although Plaintiff asked Mr. Gordon to identify the companies under this umbrella, he could not even provide an estimate. (*Id*. at 61:2-8, 62:8-18). In fact, Mr. Gordon testified that he did not know the specific entities within the Madison family of companies, (*id*. at 64:6-11), and pointed to Mr. Walker, the long-time CFO of Madison and Kaaboo, as someone who might know. (*Id*. at 64:6 - 65:2; Ex. 8, Walker Dep. 6:23 – 7:4).

As this Court will remember, Mr. Walker testified in his deposition that he was unaware whether Horsepower was even in existence (Ex. 8, Walker Dep., 58:7-14) before walking out of his deposition.

Defendants are clearly playing shell games, and this Court should not let them get away with it any longer. Nearly every time Plaintiffs have attempted to inquire about related entities, their relationship with Madison, Horsepower or Kaaboo, or Defendants' control over them, Defendants have stonewalled them.

Despite ruling in June that Plaintiffs' first definition of "related entities" was overbroad, Judge Sebelius advised Plaintiffs how they could obtain discovery of related entities, citing applicable Kansas law. But after Plaintiffs noticed a corporate representative deposition and propounded discovery requests pursuant to his guidance, Defendants obstructed discovery yet again. For Judge Sebelius now to suggest this discovery is off-limits rewards Defendants' abusive discovery tactics and encourages parties in future litigation to do the same. That is surely not what Judge Sebelius intended, nor is it a fair or just outcome in this case.

## IV.   CONCLUSION

Plaintiffs do not object to Judge Sebelius' Order lightly. But Kaaboo is too important of an issue in this case, and the Order makes too many rulings that run contrary to the law to ignore. Respectfully, Plaintiffs request that this Court: (1) set aside Judge Sebelius' Order, or, at minimum, modify it; (2) order Defendants to produce a corporate representative for a full-day deposition to answer Plaintiffs' questions regarding Kaaboo and other related entities within two weeks; (3) order Defendants to supplement all previous and outstanding interrogatories and requests for production regarding Kaaboo and any other related entity Defendants have control over; and grant them any other relief the Court deems appropriate.

Dated:   November 14, 2018                        Respectfully submitted,

|  | **MCINNES LAW LLC**<br>By: */s/ Jack McInnes* |
|---|---|

|  | Jack McInnes (KS #21898) <br> Joann Woltman (KS #26603) <br> 1900 West 75th Street, Suite 120 <br> Prairie Village, Kansas 66208 <br> Telephone: (913) 220-2488 <br> Facsimile: (913) 273-1671 <br> jack@mcinnes-law.com <br> joann@mcinnes-law.com <br><br> **ATTORNEYS FOR PLAINTIFFS** |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of November 2018, a true and correct copy of the foregoing document was filed with the Clerk of Court via CM/ECF and served on counsel for Defendants through the Notice of Electronic Filing.

By: */s/ Jack McInnes*