IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

PIPELINE PRODUCTIONS, INC. and )
BACKWOOD ENTERPRISES, LLC, )
                                                                 ) Case No. 5:15-cv-04890-KHV-KGS
      Plaintiffs,                 )
                                                                 )
v.                                                              )
                                                              )
THE MADISON COMPANIES, LLC and )
HORSEPOWER ENTERTAINMENT, LLC, )
                                                              )
      Defendants.               )

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO
REVIEW MAGISTRATE JUDGE'S ORDER**

      Madison and its wholly-owned subsidiary, Horsepower, fraudulently transferred their assets and employees after litigation began to related entities owned and operated by the same individuals (Bryan Gordon, Seth Wolkov and Rob Walker). Although Defendants now exist for no purpose other than litigation, other entities owned by Mr. Gordon, Mr. Wolkov and Mr. Walker (and/or shells like WarDawgz, LLC) continue to own and operate KaaBoo-branded music festivals through KaaBoo entities.

      Further, Defendants have used their fraudulent transfers to avoid production of clearly relevant discovery by claiming they not have possession, custody or control of the requested documents or information. These shell games are contrary to the Federal Rules of Civil Procedure and the law of this District. *Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1322 (10th Cir. 2011). Accordingly, Plaintiffs request that the Court modify or set aside Judge Sebelius' Order (Doc. 314), allow them to obtain the discovery necessary to prosecute their case, and enter an order enjoining Defendants from making further transfers.

I.  ARGUMENT

    a. **Judge Sebelius Clearly Erred in Ruling That Plaintiffs' Discovery Requests Were Vague and Overbroad Because They Failed to Identify Specific Related Entities**

Plaintiffs have demonstrated that Defendants transferred all, or almost all, their assets, intellectual property and employees to related entities after this litigation began to avoid liability.[1] (Doc. 261 at 9, 15). But as Defendants were attacking Plaintiffs for allegedly insufficient evidence, they were stonewalling Plaintiffs' efforts to discover their relationship with related entities, refusing to produce even an organizational chart. (Doc. 325, Ex. 7 at ¶ 20 and 21). As a result, Plaintiffs had no choice but to address their requests to the entities they had discovered to date and the "related entities" under Defendants' control.

Judge Sebelius' suggestion that Plaintiffs must specify all entities by name before proceeding is directly contrary to the Rules allowing discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Additionally, requiring Plaintiffs to identify the names of unknown "related entities" rewards, and even incentivizes, Defendants' discovery abuses.

Further, Plaintiffs have already discovered and identified a number of relevant entities, including WarDawgz; LastDawgz, LLC; KaaBoo, LLC; Kaaboo-Del Mar Investment, LLC; Kaaboo-Del Mar, LLC; KaaBooWorks; and KaaBooWorks Services, LLC. Judge Sebelius clearly erred in finding that Plaintiffs "failed to identify any 'related entities'" and "failed to satisfy their

---

[1] Contrary to Defendants' response, the testimony of Chris Brown, a former vice president at Madison, was quite clear. "Q: And when did you start working for KaaBooWorks, LLC?  A: KaaBooWorks, LLC was formed when the Thunder deal fell apart. That's my recollection. . . . I mean, I was told I had a new email address and that was that, we were moving forward with KaaBoo, and Thunder was no longer part of the mix." (Doc. 325, Ex. 10, Brown Dep. 165:9 – 19).

2

burden of describing related entities with reasonable particularity," especially given Defendants' documented delay tactics. (Doc. 314 at 4).

### b. Judge Sebelius Clearly Erred in Ruling that Plaintiffs Failed to Show Defendants Have Control of Discovery Relating to the KaaBoo Entities

The KaaBoo entities[2] do not operate separately or independently, sharing the same owners, executives, employees, offices and even lawyers. Plaintiffs' evidence clearly demonstrates that Defendants have control over KaaBoo under the factors set forth in *Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 655 (D. Kan. 2004).

Specifically, Defendants cannot dispute commonality of ownership here. Their owners – Mr. Gordon, Mr. Wolkov, and Mr. Walker – own WarDawgz, which is the primary inside owner of KaaBoo. (Doc. 325, Ex. 8, Walker Dep. 54:19 – 55:4, 11-12). Further, Plaintiffs' evidence demonstrates an "exchange or intermingling of directors, officer or employees" between Defendants and KaaBoo entities. Among other things:

- Mr. Gordon is one of the Managing Directors of Madison and the Chairman and Chief Executive Officer of KaaBoo (Doc. 246-11, Gordon Aff., ¶ 2, 4);

- Mr. Wolkov is the President of Madison and KaaBoo (Exhibit 1, Walker Dep. 22:8 – 10; Exhibit 2, Screenshot of Wolkov's Profile on KaaBoo's Website, https://kaaboollc.com/leadership/seth-wolkov, taken Dec. 20, 2018); and

- Mr. Walker is the Chief Financial Officer of both Madison and KaaBoo. (Doc. 325, Ex. 8, Walker Dep. 7:2 - 20).

---

[2] Plaintiffs know of at least 20 different KaaBoo entities at this time, including: KaaBoo, LLC; KaaBooWorks Services, LLC; KaaBooWorks, LLC; KaaBoo-Del Mar Advisors, LLC; KaaBoo Del Mar Investment, LLC; KaaBoo Del Mar Management, LLC; KaaBoo-Del Mar, LLC; KaaBoo Acquisition Sub, LLC: KaaBoo Cayman Advisors, LLC; KaaBoo Cayman Eventco, LLC; KaaBoo Investco, LLC; KaaBoo Cayman Management, LLC; KaaBoo Cayman, LLC; KaaBoo Contract Services, LLC; KaaBoo Management, LLC; KaaBoo Texas Eventco, LLC; KaaBoo Texas Investco, LLC; KaaBoo Texas Investments, LLC; KaaBoo Texas JV, LLC; and KaaBoo Vail, LLC.

Defendants do not dispute that they shared offices with KaaBoo. And Defendants transferred all, or almost all, their assets, intellectual property and employees to KaaBoo entities after this litigation began. (Doc. 261 at pp. 8, 9, and 15; Exs. 3, 8, and 9).Plaintiffs have also demonstrated that Defendants and KaaBoo exchanged documents in the ordinary course of business. (Doc. 325, Ex. 16, KaaBoo Investment Opportunity Packet).[3] And the owners of the KaaBoo entities obviously benefit from this litigation since they overlap substantially with Defendants' owners. *See Super Film*, 219 F.R.D. at 655.

### c. Judge Sebelius Clearly Erred in Ruling that Plaintiffs' Discovery Requests Are Not Relevant

Importantly, Judge Sebelius clearly erred in ruling that Plaintiffs' discovery regarding KaaBoo is not relevant to this case. Again, "[r]elevance is broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." *Waters v. Union Pac. R.R. Co.*, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) (internal quotations and citation omitted). Plaintiffs easily met their burden at the discovery stage when they provided specific reasons why each of their requests concerning KaaBoo are relevant to the claims and defenses in this matter.

Defendants' self-serving assertions that "KaaBoo had no involvement in the contemplated transaction between Plaintiffs and Defendants," "did not have any contact with Plaintiffs concerning Thunder," and "[did not] stand to benefit from the transaction" are simply dishonest. (Doc. 339 at 14). KaaBoo Del Mar, the music festival put on by a "KaaBoo entity," was held in

---

[3] Plaintiffs' motion inadvertently cited the wrong Investment Opportunity Packet as evidence that Defendants and KaaBoo exchanged documents in the ordinary course of business, including an Investment Opportunity Packet that Defendants sent to investors of the KaaBoo Del Mar festival that stated: "Presented by: Horsepower Entertainment, a Madison Company." (Doc. 325 at 9). The correct citation is Doc. 325, Ex. 16, KaaBoo Investment Opportunity Packet, at 1.

4

September 2015, just five months after Defendants breached the Thunder agreement. But large music festivals require months, if not years, of prior planning.

Defendants do not dispute that KaaBoo Del Mar was being planned at the same time preparation for Thunder occurred, involved the work of Plaintiffs and their employees and agents, and involved the employees of Defendants who were involved in the planning of Thunder. (*See* Doc 339 at 19). In fact, many of Defendants' employees were working with Plaintiffs on Thunder while simultaneously working on KaaBoo Del Mar.

In his affidavit, Mr. Gordon admits that: "While [Horsepower] pursed investments in existing festivals [including Thunder], a KaaBoo concept was developed and pursued." (*See* Doc. 246-11 at 4, ¶ 10). Defendants attempt to distinguish the simultaneous pursuit of Thunder and KaaBoo by arguing that "[Horsepower's] focus" was on "existing festivals" while "Kaaboo's focus" was on "development a unique brand." (*Id*.). But the individuals working on both festivals were largely the same, and, at minimum, shared corporate knowledge.

Unfortunately, Defendants were concerned how backing out of the Thunder agreement would affect Kaaboo Del Mar. On April 9, 2015, five days before Defendants preemptively sued Plaintiffs in Delaware, Suzanne Land, a consultant for Defendants, emailed Mr. Wolkov that: "Thunder has completely disintegrated . . . Bryan does not think Kaaboo will be adversely affected . . ." (Exhibit 3, Email from Ms. Land to Mr. Wolkov dated April 9, 2015; *see also infra* n.7).

That is because Defendants touted KaaBoo Del Mar as a music festival "Presented by Horsepower, a Madison Company." (Doc. 325, Ex. 16, Thunder Investment Opportunity Packet, at 1). Screen shots from Madison's website, which has been mysteriously "under construction" since Defendants were questioned about its contents during deposition, show that KaaBoo is Madison's live music and entertainment company and lists KaaBoo as one of Madison's assets.

(Exhibit 4, Screenshots of Madison's Website, http://madisoncos.com, dated July 8, 2018, which lists KaaBoo in their portfolio of assets).

It is important to note that on October 16, 2018, in a separate case pending in this District, Brian Wingerd, a former partner of Plaintiffs who Defendants hired away, alleges that KaabooWorks Services and Madison wrongfully terminated him after he was diagnosed with cancer. (*See Wingerd v. Kaabooworks Services, LLC, and The Madison Companies, LLC*, Case No. 2:18-cv-02024-JAR-KGG (D. Kan.)). In moving for summary judgment, Madison stated the following facts:

- Madison no longer has any employees; and

- Madison sponsored KaaBoo's formation and "incubated" its business plan.[4]

(Exhibit 5, Memorandum in Support of Motion for Summary Judgment, Doc. 118 at 24, ¶¶ 130 and 132).

A review of the *Wingerd* docket further reveals that the defendants in that case had previously filed a motion to dismiss on the grounds that the plaintiff did not have personal jurisdiction over Madison. (Exhibit 6, Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction, Doc. 25). In support, they submitted a declaration from Mr. Gordon, in which he admitted that:

- KaaBooWorks Services, the KaaBoo entity that employs all KaaBoo employees, was formed on June 18, 2015;

- From the time of its formation through January 1, 2017, Madison was the sole member of KaaBooWorks Services; and

---

[4] This is yet another example of the control that Defendants asserted over KaaBoo and contradicts a number of arguments that Defendants advanced in their response brief (Doc. 339). (*See also* Exhibit 2, Screenshots of Madison's Website, http://madisoncos.com, dated July 8, 2018, which shows KaaBoo listed in their portfolio of assets).

- Madison ceased to have a membership interest in KaaBooWorks Services effective January 2, 2017.

(*Id*. at Doc. 25-1, at 2, ¶ 6).

Incredibly, Defendants' response brief misrepresented that: (1) TMC [Madison] and HPE [Horsepower] have no ownership stake in Kaaboo (Doc. 339, p. 19), when Madison owned KaaBooWorks Services at least until January 1, 2017[5]; and (2) the KaaBoo entities were already in existence and working to produce the first KaaBoo festival before Defendants backed out of the Thunder agreement in April 2015 (Doc. 339 at 19), when in fact KaaBooWorks Services was formed two months later on June 18, 2015. (*See also* Exhibit 7, Delaware Business Entity Search re: KaabooWorks Services, LLC).

KaabooWorks Services is a key entity among the KaaBoo companies. Mr. Gordon testified that KaaBoo is the holding company, while KaaBooWorks Services is the employer for KaaBoo entities. (Doc. 325, Ex. 3, Gordon Dep. 15:2-4, 16:2-5). Mr. Walker similarly testified that KaaBooWorks Services is the payroll company for KaaBoo. (Doc. 325, Ex. 8, May 18, 2018 Walker Depo., 6:23 - 7:6). Further, the court in *Wingerd* denied Madison's motion to dismiss, finding, among other things, that Mr. Wingerd had provided substantial evidence that Mr. Gordon and Shawnna Earnest, senior vice president of HR for Madison and KaaBooWorks Services, dealt with him in their capacities as officers for *both* companies. (Exhibit 8, Memorandum and Order denying Motion to Dismiss, Doc. 100 at 9-12).

Despite the dual roles held by owners, officers and employees of Defendants and KaaBoo, as well as the control they had over KaaBoo, Defendants have steadfastly refused to respond to

---

[5] Currently, Defendants' owners – Mr. Gordon, Mr. Wolkov, and Mr. Walker – own WarDawgz, LLC, which is the primary inside owner of KaaBoo, LLC. (Doc. 325, Ex. 8, Walker Dep. 48:18-21; 54:19 – 55:4, 11-12).

relevant discovery requests. For example, Defendants' employees were negotiating and preparing the consulting agreement for Nate Prenger, Plaintiffs' minority partner, prior to the cancellation of Thunder.[6] Mr. Prenger was heavily involved in every aspect of Thunder, yet Defendants refuse to produce any consulting agreements with Mr. Prenger, or any communications with Mr. Prenger about a job, because those documents are under the control of one or more of the KaaBoo entities who purportedly hired him. (Exhibit 9, Defendants' Responses to Plaintiffs' Second Request for Productions, Request No. 24). Defendants cannot be allowed to withhold this relevant discovery simply because Mr. Prenger now works for a KaaBoo entity.[7]

Plaintiffs met their burden of demonstrating that the discovery sought has "any possibility" of being relevant to their case and/ or their defenses. *Waters v. Union Pac. R.R. Co*., No. 15-1287-EFM-KGG, 2016 U.S. Dist. LEXIS 80813, at *4 (D. Kan. June 21, 2016). Plaintiffs explained why discovery regarding the KaaBoo entities is relevant to Plaintiffs' tortious interference claim, demonstrated Defendants' experience in the music festival business, proved Plaintiffs' damages,

---

[6] Mr. Gordon directed Ms. Land to coordinate the terms of a deal with Mr. Prenger before Thunder was canceled, evidenced by an email from Ms. Land to Mr. Wolkov on April 9, 2015, which states that:

> Thunder has completely disintegrated and if Bryan [Gordon] has not had a chance to fill you in I will when you are available. Bryan does not think KaaBoo will be adversely affected but if Bryan has not discussed with you I can whenever you are available. Nate [Prenger] should be receiving a draft of his consulting agreement by midweek. His base pay has increased to 180k, 190k, then 200k in 2017. The same 2.5 percent incentive provisions are in place.

(Exhibit 3, Email from Ms. Land to Mr. Wolkov dated April 9, 2015).

[7] Plaintiffs took Mr. Prenger's deposition on December 19, 2018, one day prior to filing this reply. Although Mr. Prenger's deposition transcript is not yet available as of the time of filing, Plaintiffs believe it is important to note that Mr. Prenger refused to answer requests regarding whether his consulting agreement(s) with a KaaBoo entity refer to Brett Moisman, Pipeline or this lawsuit.

8

and sought to establishing a pattern and practice of similar conduct by Defendants. (Doc. 325 at 12-14). Judge Sebelius clearly erred in finding that discovery concerning the KaaBoo entities is not relevant to Plaintiffs' claims.

### d. Judge Sebelius Clearly Erred in Ruling that Plaintiffs' Discovery Requests are Not Proportional

Defendants do not dispute that the amount in controversy in this case is substantial enough to warrant additional discovery. Further, Defendants do not argue they cannot access to KaaBoo's documents and information. Moreover, Defendants do not claim a lack of resources to undergo additional discovery. In fact, Defendants do not raise any specific arguments about any burden of providing the requested discovery. Defendants' assertions exaggerating the extent of information sought and their liberal use of exclamation points is insufficient to meet their burden to clearly support their claim of undue burden by "affidavit or other evidentiary proof of the time or expense involved in responding to the discovery requests." *Panel Specialists, Inc. v. Tenawa Haven Processing, LLC*, 2017 U.S. Dist. LEXIS 130167, at *7 (D. Kan. Aug. 16, 2017).

## II. SANCTIONS ARE NOT WARRANTED

Defendants' request that this Court sanction Plaintiffs for "multiplying the proceedings" by requesting a review expressly permitted under the Federal Rules of Civil Procedure is absurd, especially considering that Defendants actually multiplied the proceedings in this litigation by filing not one, but two, separate cases against Plaintiffs in other jurisdictions that were dismissed for lack of personal jurisdiction after substantial effort. Moreover, Plaintiffs have repeatedly sought interrogatory answers, documents and deposition testimony, including but not limited to the 30(b)(6) topics that were the subject of Defendants' motion for protective order, regarding KaaBoo and other topics discussed herein. (*See* Doc. 285 at 2-3 and Doc. 261 at 4-7 for a procedural history of Plaintiffs' discovery requests on these topics).

After Judge Sebelius granted Defendants' motion (Doc. 314), that same day they threatened to move for sanctions if Plaintiffs did not withdraw their third-party subpoenas of KaaBoo entities and withdraw their motion to compel (Doc. 285) with respect to to KaaBoo or related entities. (<u>Exhibit 10</u>, October 31, 2018 email from Benjamin Scheibe to Jack McInnes). Agreeing that the Court's October 31, 2018 Order could be read to broadly cover all discovery regarding KaaBoo, Defendants' "related entities," and the "Madison family companies," Plaintiffs withdrew their subpoenas and motion to compel with respect to KaaBoo-related discovery. (Docs. 319 and 320). But Plaintiffs clearly did so without waiving their right to re-issue the discovery on these topics if and when the Court grants their motion to review.

Sanctions are obviously not warranted here. Plaintiffs' motivation in withdrawing their subpoenas and motion to compel was not to "multipl[y] the proceedings." To the contrary, Plaintiffs took this action to avoid unnecessary conflict, only taking action after Defendants threatened sanctions against them yet again. Defendants did not offer any precedent for their assertion that this Court lacks the authority to grant Plaintiffs' motion for review and/or require Defendants to respond to Plaintiffs' outstanding discovery requests on specific topics, nor are Plaintiffs aware of any.

### III. CONCLUSION

For all these reasons, in addition to the reasons set forth in their motion for review, Plaintiffs respectfully request that the Court set aside, or at least modify, Judge Sebelius' Order and deny Defendants' request for sanctions. Further, Plaintiffs request that the Court instruct Defendants to supplement their discovery responses, enter an order enjoining Defendants from further transfers, and for any other relief the Court deems just and appropriate.

Dated: December 20, 2018                               Respectfully submitted,

|  | MCINNES LAW LLC<br><br>By: */s/ Jack McInnes*<br>Jack D. McInnes (KS #21898)<br>1900 West 75th Street, Suite 120<br>Prairie Village, Kansas 66208<br>Telephone: (913) 220-2488<br>Facsimile: (913) 273-1671<br>jack@mcinnes-law.com<br><br>**ATTORNEY FOR PLAINTIFFS** |
|---|---|

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December 2018, a true and correct copy of the foregoing document was filed with the Clerk of Court via CM/ECF and served on counsel for Defendants through the Notice of Electronic Filing.

By: */s/ Jack McInnes*