## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., *et al.*, ) <br> ) <br> Plaintiffs and Counterclaim Defendants, ) <br> ) <br> v. ) <br> ) <br> THE MADISON COMPANIES, LLC, *et al.,* ) <br> ) <br> Defendants and Counterclaimants. ) | Case No. 15-4890-KHV |

### **MEMORANDUM AND ORDER**

This matter comes before the court upon Plaintiff's Motion for Leave to File Second Amended Complaint, Motion to Extend Discovery, and Memorandum in Support (ECF No. 335). Defendants oppose the motion. Plaintiffs seek leave to assert additional claims and name multiple additional defendants because they contend that they have discovered evidence that the named defendants have transferred assets to avoid paying any potential judgment. They also seek to add two defendants to their existing claim for tortious interference, and they seek two additional months of discovery on these claims. However, plaintiffs' proposed amendments are based on factual allegations known to plaintiffs for months. Their motion is untimely under the scheduling order, and plaintiffs have failed to show good cause to modify the scheduling order. Plaintiffs have also unduly delayed in bringing their motion, and allowing plaintiffs to file an amended pleading at this stage would unduly prejudice defendants. For these reasons, explained in more detail below, plaintiffs' motion is denied.

## I. Background

Plaintiffs filed this action on May 21, 2015.[1] The complaint alleges that plaintiffs formed a joint venture with Defendants The Madison Companies, LLC and Horsepower Entertainment, LLC to own and produce the Thunder on the Mountain music festival. According to the complaint, defendants breached the agreement by withholding money due and ultimately causing the festival's cancelation. Plaintiffs initially asserted claims for breach of contract, breach of fiduciary duty, and they sought declaratory relief. Plaintiffs filed an amended complaint on June 19, 2017, omitting the claim for declaratory relief, adding as plaintiffs OK Productions, Inc. and Brett Mosiman, and naming as a defendant Bryan Gordon, the principal of The Madison Companies.[2] The amended complaint also asserts claims for fraud and tortious interference. The tortious interference claim is based on plaintiffs' allegations that defendants hired plaintiffs' employees for the sole purpose of damaging plaintiffs' business. Defendants subsequently filed a motion to dismiss, which District Judge Kathryn H. Vratil granted as to the claims against Bryan Gordon.[3] Defendants have asserted counterclaims for declaratory relief, breach of contract, promissory estoppel, and quantum meruit/unjust enrichment.[4]

Discovery began in November 2017,[5] and was set to close on August 31, 2018. After a series of extensions, regular discovery closed on December 31, 2018, with multiple motions to

---

[1] Compl., ECF No. 1.

[2] Am. Compl., ECF No. 56.

[3] Mem. & Order, ECF No. 64.

[4] Defs.' Answer to Am. Compl. and Countercls., ECF No. 66.

[5] Scheduling Order at 2, ECF No. 88.

compel still outstanding. The scheduling order imposed a deadline of March 1, 2018,[6] for any additional motions to amend the pleadings, which the court later extended to April 15, 2018.[7] Plaintiffs moved to amend on December 4, 2018. Plaintiffs state that they have discovered evidence that defendants have transferred assets and employees to other related business entities after this litigation began and that to date, defendants have few assets left. Plaintiffs argue that defendants have made these business maneuvers to avoid paying any monetary judgment rendered in this case. Plaintiffs' proposed amended complaint adds claims for fraudulent transfer under the Colorado Uniform Fraudulent Transfer Act, C.R.S. § 38-8-101, *et seq.* and a claim for alter-ego liability/piercing the corporate veil. It adds as defendants: KAABOO, LLC; KAABOOWorks Services, LLC; Does 1-25; Bryan Gordon; Seth Wolkov; Rob Walker; and Wardawgz, LLC.[8] Plaintiffs also seek to add KAABOO, KAABOOWorks Services, and Does 1-25 to their claim for tortious interference, and plaintiffs seek an additional two months for discovery relevant to the proposed amendments.

**II.     Discussion**

Once a party has filed a responsive pleading, the opposing party "may amend its pleading only with the opposing party's written consent or the court's leave."[9] However, when a party moves to amend after the deadline set in the scheduling order, the moving party must also satisfy Fed. R. Civ. P. 16(b)(4)'s good-cause requirement.[10] Therefore, a party seeking leave to amend

---

[6] *Id.*

[7] Order at 1, ECF No. 115.

[8] Prop. Second Am. Compl., ECF No. 335-1.

[9] Fed. R. Civ. P. 15(a)(2).

[10] *Gorsuch, Ltd. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, at 1240 (10th Cir. 2014).

3

its pleadings after the expiration of the scheduling order deadline must demonstrate both: "(1) good cause for seeking modification [of the scheduling order's deadline] under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."[11] The court addresses each part of the two-step analysis below.

### A. Good cause to modify a scheduling order under Rule 16(b)(4)

The court first determines whether the movant has shown good cause within the meaning of Rule 16(b)(4) to justify allowing the untimely motion. Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[12] The good-cause standard under Rule 16(b)(4) considers the diligence of the party seeking to amend.[13] To establish good cause, the moving party must show that despite due diligence, it could not have reasonably met the deadline for amendments to the pleadings.[14] "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[15] Similarly, lack of prejudice to the nonmovant does not constitute good cause.[16] The party seeking an extension is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline.[17]

---

[11] *Id.*

[12] Similarly, the scheduling order in this case also provides that it "shall not be modified except by leave of the court upon a showing of good cause." Scheduling Order at 12, ECF No. 88.

[13] *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

[14] *Carefusion 213 LLC v. Prof'l Disposables, Inc.*, No. 09-2616-KHV, 2010 WL 4004874, at *3 (D. Kan. Oct. 22, 2010).

[15] *Deghand*, 904 F. Supp. at 1221.

[16] *Id.*

[17] *Id.*

4

The facts giving rise to plaintiffs' proposed amendments were discovered—at best—months before they moved for leave to amend. Plaintiffs' proposed claims for fraudulent transfer and alter ego/piercing the corporate veil are based on allegations that the current defendants and the proposed individual defendants transferred assets and employees from the current defendants to KAABOO, KAABOOWorks Services, and other related business entities. But by plaintiffs' own account, they took multiple depositions in the spring and summer of 2018 that alerted them to the possibility that defendants had liquidated and/or transferred assets. Plaintiffs point to their May 9, 2018 deposition of Chris Brown, one of defendants' former vice presidents. Mr. Brown testified that KAABOOWorks Services "was formed when the Thunder deal fell apart."[18] On May 18, 2018, plaintiffs deposed Mr. Walker, a proposed defendant and the CFO of The Madison Companies and KAABOO. Mr. Walker testified that The Madison Companies was a holding company and that he thought it currently had no employees.[19] He further testified that in the past 24 months, The Madison Companies had ceased to hold any investments.[20] He stated that while he believed Horsepower Entertainment was still in existence, he was "not aware of any employees there" or any assets held by the business.[21] He also testified that Wardawgz was a member of KAABOO and that the members of Wardawgz were the same members of The Madison Companies.[22] On July 11, 2018, plaintiffs deposed Bryan Gordon, the founder and CEO

---

[18] Brown Dep. 165:11-2, ECF No. 335-2.

[19] Walker Dep. 23:14-18, ECF No. 336-1 (sealed).

[20] *Id.* at 26:18-24.

[21] *Id.* at 44:5-20.

[22] *Id.* at 55:11-12.

of The Madison Companies. Mr. Gordon's testimony was largely consistent with Mr. Brown's and Mr. Walker's.

Plaintiffs' proposed addition of KAABOO, KAABOOWorks Services, and Does 1-25 to their claim for tortious interference is also based on alleged information discoverable before December 2018. Plaintiffs allege defendants—and now the KAABOO and Doe entities—interfered with plaintiffs' business relationships by poaching key employees, partners, and agents, including Nathan Prenger, Sprocket Marketing Partners, Brian Pilsl, Brian Wingard, and Taylor Gustafson. Plaintiffs' proposed addition of the KAABOO entities stems largely from their discovery that the KAABOO entities employ some of these individuals. Plaintiffs point to defendants' December 2017 interrogatory responses, which state that KAABOOWorks Services employs Mr. Wingerd, Mr. Pilsl, and Mr. Gustafson. During Mr. Gordon's July 11, 2018 deposition, he testified that Mr. Prenger was a consultant to KAABOO.[23] On August 6, 2018, defendants served amended interrogatory responses stating that they had not employed any individuals who had previously worked for plaintiffs.[24]

The key factual allegations giving rise to plaintiffs' proposed amendments were known to plaintiffs by the summer of 2018, at the latest. Plaintiffs state that they only recently learned enough information about the proposed new claims and parties to move to amend. They argue that the court should not fault them for waiting to file their motion to amend until they had an opportunity to conduct sufficient discovery and to make an informed decision about whether to bring new claims and add new parties. The record does not support this conclusion. Defendants themselves supplied plaintiffs with the information that forms the basis for the proposed

---

[23] Gordon Dep. 299:9-12.

[24] Defs.' Am. Suppl. Resps. to Pls.' First Set of Interrog. at 3, ECF No. 335-15.

amendments, either through discovery responses or depositions of key individuals with defendants or related business entities. In other words, there was no dispute about the facts that form the basis for the claims because defendants themselves provided the information, and therefore, no need for plaintiffs to delay while evaluating these potential claims. In fact, plaintiffs fail to point to any key facts discovered after the summer of 2018. While plaintiffs may not have been able to have met the April 15, 2018 deadline for amendments to the pleadings, they have not established good cause sufficient to warrant extending the deadline to December 4, 2018, the date they filed their motion to amend.[25] Because plaintiffs have failed to demonstrate good cause, the court could deny their motion on this basis alone.[26] However, the court separately finds that the amendments should not be permitted under Rule 15(a), as discussed below.

### B. Leave to amend under Rule 15(a)

When leave of the court is required to amend under Rule 15(a)(2), the court may refuse leave "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[27] "The court should freely give leave when justice so requires."[28] Here, defendants argue that plaintiffs unduly delayed in bringing their motion; they would be unduly prejudiced if the amended pleading is allowed; and they argue that the amendments are futile. Because the

---

[25] *See Gorsuch*, 771 F.3d at 1242 (considering whether a motion to amend could have been made at an earlier date even if that date was still untimely under the scheduling order).

[26] *Id.*

[27] *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (quoting *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005)).

[28] Fed. R. Civ. P. 15(a)(2).

court agrees that plaintiffs unduly delayed and that defendants would be unduly prejudiced, it declines to address defendants' futility argument.

Rule 15(a)'s undue-delay analysis is similar to the good-cause analysis discussed above.[29] When considering whether a party has unduly delayed, the Tenth Circuit has directed that the court should focus primarily on the reasons for the delay.[30] For example, if the movant was or should have been aware for some time of the facts on which the amendment is based, the court may properly deny leave to amend.[31] Moreover, the longer the delay, the more likely the court will deny the motion to amend.[32] Undue delay alone is a sufficient reason to deny leave to amend.[33] As explained above, plaintiffs knew of the facts supporting their proposed amendments for months before they moved to amend their complaint, and they have offered no reasonable explanation for the delay. For these reasons, the court finds plaintiffs have unduly delayed in seeking to amend their complaint.

The Tenth Circuit has determined that undue prejudice is the most important factor considered when ruling on a motion to amend a pleading.[34] Undue prejudice "means undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the other

---

[29] *Five Rivers Ranch Cattle Feeding, LLC v. KLA Envtl. Servs.*, No. 08-2185-EFM, 2010 WL 2609426, at *3 (D. Kan. June 25, 2010).

[30] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

[31] *See id.*; *see also Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993).

[32] *Minter*, 451 F.3d. at 1205.

[33] *Frank*, 3 F.3d at 1365-66 ("It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend . . . especially when the party filing the motion has no adequate explanation for the delay[.]").

[34] *Minter*, 451 F.3d at 1207.

party."[35] "Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues."[36]

Plaintiffs proposed amendments involve claims arising out of the transfer of assets and employees from one corporate entity to another. They differ factually and legally from the claims currently pled, and plaintiffs' suggestion that all discovery on these issues can be completed in two months is unrealistic. For one, plaintiffs seek to name 25 Doe defendants, which would necessitate not only discovery regarding the Doe defendants' identities, but a subsequent amended complaint formally naming them. The Doe defendants would also need sufficient time to conduct their own discovery. This case has been on file for more than three years, and plaintiffs waited until the close of discovery to bring this motion. The addition of new claims against new parties at this stage of the case represents a significant shift in legal theories at the close of discovery and would cause significant additional delays. For these reasons, the court finds defendants would be unduly prejudiced if the court allowed plaintiffs' amended complaint.

### C. Conclusion

Plaintiffs filed their motion to amend nearly eight months after the scheduling-order deadline for amendments had passed, and they failed to show good cause under Rule 16(b)(4) to modify the scheduling order. Additionally, plaintiffs unduly delayed in bringing their motion to amend, and defendants would be unduly prejudiced if the court allowed the amendments. For these reasons, plaintiffs' motion is denied. Because the court will not allow plaintiffs to amend their complaint, plaintiffs' request for an additional period of discovery on those claims is moot.

Accordingly,

---

[35] *Welch v. Centrex Home Equity Co.*, 323 F. Supp. 2d 1087, 1091 (D. Kan. 2004).

[36] *Minter*, 451 F.3d at 1208.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to File Second Amended Complaint, Motion to Extend Discovery, and Memorandum in Support (ECF No. 335) is denied.

**IT IS SO ORDERED.**

Dated March 6, 2019, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge