# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., <br> BACKWOOD ENTERPRISES, LLC, <br> OK PRODUCTIONS, INC., and <br> BRETT MOSIMAN, <br> <br> Plaintiffs, <br> <br> v. <br> <br> THE MADISON COMPANIES, LLC, <br> and HORSEPOWER ENTERTAINMENT, <br> LLC, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 15-4890-KHV <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER

This matter comes before the court upon the Defendants' Motion to Compel Supplemental Responses to Interrogatories (Set One) and Document Requests (Set 5) from Plaintiffs (ECF No. 364) and Plaintiffs' Motion for Leave to File a Sur-Reply (ECF No. 419). Defendants assert that plaintiffs have failed to adequately respond to defendants' first set of interrogatories and fifth set of document production requests. In their initial responses to the requests and in their response brief, plaintiffs argue that defendants' requests are vague, unduly burdensome, irrelevant, and cumulative of other discovery requests.[1] For the reasons stated below, defendants' motion is granted in part and denied in part.

### I. Factual Background

This action arises from a failed country music concert in Arkansas, the Thunder on the Mountain ("Thunder") music festival. Plaintiffs allege that they entered into a joint venture with

---

[1] Pls.' Resps. to Defs.' First Set of Interrogs., ECF No. 364-1 [hereinafter Pls.' Initial Resps.]; Pls.' Suppl. Resps. To Defs.' First Set of Interrogs., ECF No. 407-1 [hereinafter Pls.' Suppl. Resps.]; Pls.' Resp. to Defs.' Mot. to Compel Suppl. Resps. To Interrogs. (Set One) and Doc. Reqs. (Set Five), ECF No. 395 [hereinafter Pls.' Resp. Br.].

the defendants to own and produce the music festival. Plaintiffs contend that defendants reneged on the agreement, which forced plaintiffs to cancel the festival. Defendants assert counterclaims against plaintiffs, seeking declaratory judgments establishing the rights of the parties and recovery from the plaintiffs under the theories of breach of contract, promissory estoppel, and unjust enrichment.[2]

In October of 2018, defendants served on plaintiffs their first set of interrogatories and their fifth set of document production requests.[3] Plaintiffs provided their initial responses and objections to defendants' first set of interrogatories and fifth set of document production requests on December 10, 2018.[4] From December 17, 2018, to January 2, 2019, the parties exchanged numerous emails discussing the plaintiffs' responses and attempting to establish a time to meet and confer.[5] On January 3, the parties met for an hour to confer about the discovery dispute.[6] Thereafter, on January 4, 2019, defendants filed the present motion.[7]

## II. Discussion

### a. Legal Principles for Discovery

Under Fed. R. Civ. P. 26(b), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case

---

[2] Defs.' Answer to Am. Compl. and Countercls., ECF No. 66.

[3] Defs.' Mot. to Compel Suppl. Resps. To Interrogs. (Set One) and Doc. Reqs. (Set 5) from Pls. and Memo in Supp., ECF No. 364, at 4 [hereinafter Defs.' Mot. to Compel].

[4] Pls.' Initial Resps., *supra* note 1, at 13; Pls.' Resps. to Defs.' Fifth Req. for Produc. of Docs., ECF No. 364-2, at 14 [hereinafter Pls.' Doc. Produc. Resps.].

[5] Ex. C to Ex. J, ECF No. 364-3 to 364-10;

[6] Pls.' Mot. to Strike Defs. Mot. to Compel Suppl. Resps. to Interrogs. (Set Ones) and Doc. Reqs. (Set Five), and Mem. in Supp., ECF No. 368-1.

[7] Defs. Mot. to Compel, *supra* note 3.

. . . ."[8] When considering proportionality, the court should consider, among other things, the importance of the issues at stake in the action, the parties' relative access to the relevant information, the importance of the discovery in resolving the issues, and whether the burden of the proposed discovery outweighs its likely benefit.[9] "Unless a request is overly broad, irrelevant, or unduly burdensome on its face, the party asserting the objection has the duty to support its objections."[10] A party responding to an interrogatory must either object with specificity or answer each interrogatory separately and fully in writing under oath.[11] If a party believes that answers to its interrogatories are incomplete or evasive, the party may motion the court for an order compelling supplemental answers.[12]

The court now turns to each interrogatory and document production request at issue in defendants' motion. For the sake of clarity, the court shall group interrogatories that are substantially related.

### b. Interrogatory Nos. 1, 2, and 6

In Interrogatory No. 1,[13] defendants seek specific terms by "agreement name and paragraph number" that plaintiffs found unacceptable in the proposed agreements delivered to

---

[8] Fed. R. Civ. P. 26(b)(1).

[9] Fed. R. Civ. P. 26(b)(1).

[10] *Hammond v. Lowe's Home Ctrs., Inc.*, 216 F.R.D. 666, 670 (D. Kan. 2003).

[11] Fed. R. Civ. P. 33(b)(3) and (4).

[12] Fed. R. Civ. P. 37(a)(1), (3), and (4).

[13] Interrogatory No. 1 reads:

> Describe in detail, including by agreement name and paragraph number, what terms contained in the proposed agreements delivered by John Murdock to Matthew Gough on March 29, 2015 were unacceptable to plaintiffs.

3

plaintiffs on March 29, 2015.[14] Plaintiffs asserted that the interrogatory called for assumptions of fact or law, legal conclusions, and disclosure of attorney-client privileged material.[15] Subject to these objections, plaintiffs answered the interrogatory with general references to terms found in an agreement allegedly reached between the parties sometime between November 3 and November 6, 2014.[16] Without citation to specific terms, paragraphs, or March 29 agreement names, plaintiffs responded that "Defendants' entire March 29, 2015 'proposal' was unacceptable . . . ."[17] In their response brief, plaintiffs failed to articulate or support their objections and instead opted to supplement their response further.[18] Plaintiffs' supplemental response described additional differences in terms, but again failed to identify specific paragraphs that plaintiffs challenged.[19]

Plaintiffs' objections are not persuasive. As this case involves a dispute about the terms of the contractual relationship of the parties, Interrogatory No. 1 is facially relevant. Both plaintiffs' initial response and supplemental response do not fully answer defendants question. Plaintiffs failed to meet their burden to support their objections in their response brief and failed to sufficiently respond to the interrogatory, defendants motion is granted and plaintiffs objections are overruled as to Interrogatory No. 1.

---

[14] Pls.' Initial Resps., *supra* note 1.

[15] *Id*. at 1.

[16] *Id*. at 2.

[17] *Id*. at 2.

[18] Pls.' Resp. Br., *supra* note 1, at 1.

[19] Pls.' Suppl. Resps., *supra* note 1, at 1.

Similar to the first interrogatory, Interrogatory No. 2 asks plaintiffs to identify, by agreement name and paragraph number, "what terms contained in the proposed agreements delivered . . . on March 29, 2015" that plaintiffs determined were different from or inconsistent with the agreement reached between November 4 and November 6, 2014.[20] Plaintiffs again raised a variety of objections that they failed to support in their response brief. Plaintiffs initial response incorporated, without elaboration, their initial response to Interrogatory No. 1. In their response brief, plaintiffs offered to supplement their answer. Plaintiffs' supplemental response goes into greater detail about the broad terms that plaintiffs found problematic, but the supplemental response again does not cite to specific March 29 agreement names, nor does it offer citation to specific paragraph numbers. As Interrogatory No. 2 seeks information that is facially relevant and as plaintiffs have failed to carry their burden, defendants motion is granted, and plaintiffs objections are overruled as to Interrogatory No. 2.

Interrogatory No. 6 asks plaintiffs to describe "any act(s) constituting a breach by any of the Defendants of any agreement with Plaintiffs with respect to a proposed 2015 Thunder on the Mountain festival."[21] Plaintiffs object to this interrogatory and claim it is vague and ambiguous among other objections. Plaintiffs further responded to this interrogatory and qualified their response by stating that the ways the defendants violated agreements between the parties "included, but [was] not limited to . . ." the listed acts. Defendants argued that the "included, but not limited to" language insufficiently answered the interrogatory, and plaintiffs removed that language in their supplemental response.[22]

---

[20] Pls.' Initial Resps., *supra* note 1, at 2.

[21] *Id*. at 5.

[22] Pls.' Suppl. Resps., *supra* note 1, at 7-8.

Plaintiffs supplemental response resolves the dispute for Interrogatory No. 6. Defendants seek an order limiting plaintiffs from asserting additional breaches at trial, but do not support that request beyond its mere assertion. Therefore, the court shall not consider that request here. Defendants' motion to compel with regards to Interrogatory No. 6 is denied as moot.

### c. Interrogatories Nos. 3, 4, 5, and 7

Interrogatory No. 3 asks plaintiffs to "[d]escribe in detail all efforts undertaken by Plaintiffs between March 29, 2015 and June 12, 2015, to hold the 2015 Thunder on the Mountain festival in conjunction or with the assistance of some person or company other than Defendants."[23] Among other objections, plaintiffs asserted that the interrogatory is over broad and unduly burdensome as it seeks "all" efforts made by plaintiffs to hold Thunder. Defendants argue that plaintiffs misconstrued the interrogatory and read it in an intentionally obtuse manner. Defendants further argue that plaintiffs' supplemental reply is not specific enough to satisfy the terms of the interrogatory.

Interrogatory No. 3 is over broad on its face. Despite defendants' arguments to the contrary, the interrogatory is not limited to only a question of what businesses or individuals plaintiffs sought out to replace defendants as an equity partner in Thunder. Instead, by requesting "all efforts undertaken by Plaintiffs . . . to hold [Thunder] in conjunction or with the assistance of some person or company other than Defendants," defendants have sought a response detailing all plaintiffs' business dealings related to Thunder between March 29, 2015 and June 12, 2015. As plaintiffs note, this interrogatory conceivably includes contacts with merchandise, food, or security vendors, as those contacts would constitute an "effort" to "hold Thunder in conjunction"

---

[23] Pls.' Resp. Br., *supra* note 1, at 3-4.

with an individual or business other than defendants. As this interrogatory is facially over broad, defendants motion is denied as to Interrogatory No. 3.

Interrogatory No. 4, similar to the prior interrogatory, is facially over broad. Interrogatory No. 4 seeks, "all efforts by Plaintiffs to hold a Thunder on the Mountain music festival after March 29, 2015."[24] As structured, this interrogatory is broader than Interrogatory No. 3 in scope and fully incorporates Interrogatory No. 3 in its request. Conceivably, this interrogatory asks plaintiffs to list each email, phone call, individual conversation, meeting, planning conference, and any number of additional steps undertaken by plaintiffs with relation to Thunder after March 29, 2015. The scope of this interrogatory incorporates irrelevant and trivial information, well beyond the scope of discovery as permitted by Fed. R. Civ. P. 26(b). Therefore, as the interrogatory is facially over broad, defendants motion to compel is denied as to Interrogatory No. 4.

In a similar fashion, Interrogatory No. 5 is facially over broad. The interrogatory seeks, "all efforts by Plaintiffs to cause a music festival to be held at the (Mulberry Mountain) site of the Thunder on the Mountain music festival after March 29, 2015."[25] Again due to the broad scope of the interrogatory, defendants seek both relevant and irrelevant information pertaining to plaintiffs' activities following March 29, 2015. Defendants construe this interrogatory as asking plaintiffs a limited question regarding their efforts to mitigate losses resulting from defendants' actions. However, the interrogatory as presented does little to limit its scope to mitigation efforts and instead reaches to all actions taken by plaintiffs with relation to any music festival and the Mulberry Mountain location. Like Interrogatories Nos. 3 and 4, this breadth includes facially

---

[24] Pls.' Initial Resps., *supra* note 1, at 4.

[25] *Id*. at 4-5.

7

irrelevant information. Therefore, defendants motion to compel is denied as to Interrogatory No. 5.

Finally, in Interrogatory No. 7, defendants ask plaintiffs to describe, "any efforts undertaken by Plaintiffs to have AEG or Live Nation hold a music festival at the Mulberry Mountain location."[26] This interrogatory is facially over broad. Unlike Interrogatory Nos. 3, 4, or 5, this request does not have a temporal limit. Defendants appear to be asking plaintiffs about any and all communications between AEG, Live Nation, and plaintiffs at any point in history, limited in scope to a specific venue location. The interrogatory does not limit this scope to only efforts to mitigate damages at issue in this case, but incorporates any prior or subsequent contacts. As is the case with Interrogatories Nos. 3, 4, and 5, Interrogatory No. 7 seeks information beyond the scope of discovery permissible under Fed. R. Civ. P. 26(b). Therefore, defendants motion to compel is denied with respect to Interrogatory No. 7.

### d. Interrogatories Nos. 9 and 10

Interrogatories Nos. 9 and 10 relate to plaintiffs' prior business experience operating music festivals. Interrogatory No. 9 asks plaintiffs to describe "the 'more than 10 successful festivals' put on by Plaintiff Mosiman."[27] Interrogatory No. 10 asks plaintiffs to "state how much money was made or lost (the net profit or loss)" for each of the festivals outlined in response to the prior interrogatory.[28] Plaintiffs objected to both interrogatories, arguing the first interrogatory was vague and the second interrogatory was impermissibly over broad as it did not offer a temporal limit.

---

[26] Pls.' Initial Resps., *supra* note 1, at 6.

[27] *Id*. at 8.

[28] *Id*. at 8-9.

Both interrogatories are facially relevant. As defendants note, plaintiffs have made their prior experience operating music festivals a key factual assertion in this case. Interrogatories seeking additional information about those prior music festivals is relevant to factual issues regarding the plaintiffs understanding of the agreement between the parties. Therefore, the burden to resist fully answering the interrogatories falls on the plaintiffs. However, plaintiffs failed to support either of their objections in their response brief. Thus, the plaintiffs have abandoned their objections.

The court recognizes that plaintiffs have provided additional information in response to both of these interrogatories in the form of supplemental answers; however, these supplemental answers are still deficient. Plaintiffs qualified their response to Interrogatory No. 9 with the word "including."[29] Despite plaintiffs' assertions that they have operated more than 10 music festivals, they only identified six in their supplemental response to defendants. While there is some ambiguity in what defendants meant by "describe," defendants clearly asked plaintiffs to identify the name, dates, and locations of the "more than 10 successful festivals" plaintiffs have referenced in their Amended Complaint.[30] Therefore, defendants' motion to compel is granted with respect to Interrogatory No. 9, and plaintiffs are ordered to fully respond to Interrogatory No. 9 without qualification.

Similarly, plaintiffs' supplemental response to Interrogatory No. 10 is deficient. Plaintiffs were requested to provide a net profit or loss for each of the festivals identified in the prior response.[31] Plaintiffs identified the number of years that six of their festivals were profitable, but

---

[29] Pls.' Suppl. Resps., *supra* note 1, 9-10.

[30] Am. Compl., ECF No. 56, at 1, 3.

[31] Pls.' Initial Resps., *supra* note 1, 8-9.

failed to answer the direct request of the defendants. As plaintiffs have failed to answer the interrogatory with a complete reply, defendants motion to compel is granted as to Interrogatory No. 10 and plaintiff.

### e. Interrogatories Nos. 12, 14, and 16

The next set of interrogatories address plaintiffs' relationships with artists and investors both during plaintiffs' attempts to organize Thunder and after Thunder's collapse. Interrogatory No. 12 asks plaintiffs to identify, "each of the 'Artists and investors' who told Plaintiffs that they would no longer work with them because of the cancellation of Thunder on the Mountain for 2015 . . . ."[32] Defendants specifically asked plaintiffs to identify for each artist or investor, "the names of such persons, the person to whom they conveyed this information, the date of which they did so, and the method of this communication."[33] Plaintiffs objected and labeled this interrogatory compound, but plaintiffs failed to maintain this objection in their response brief. Therefore, the court will not consider plaintiffs objection.

This interrogatory is facially relevant. Plaintiffs have raised the damage to their music festival promotion business as a factual and legal issue in this case. Thus, the court must decide if plaintiffs' answer is sufficient. Plaintiffs' initial response to the interrogatory identified only the names of agencies who had contacted plaintiffs and told plaintiffs they were "flagged" or "black-balled" and the approximate timing of those conversations.[34] In their motion to compel, defendants argued that plaintiffs had failed to provide any specific information about these contacts. Plaintiffs supplemented their answer and provided a more specific time for the contacts,

---

[32] Pls.' Initial Resps., *supra* note 1, at 9.

[33] *Id*.

[34] *Id*.

10

individuals representing the three agencies identified who conveyed the information to the plaintiffs, and the method of communication. As this includes all the information defendants sought in the interrogatory, defendants motion with respect to Interrogatory No. 12 is denied.

Interrogatory No. 14 asked the plaintiffs to "[s]tate the date on which Plaintiffs first made an offer of a specific sum to an artist to perform at Thunder on the Mountain 2015, including the name of the artist."[35] The plaintiffs raised no objection to this interrogatory. This request is facially relevant as it goes to a factual assertion by the plaintiffs about the timing of their actions based on their belief of their relationship with the defendants. Turning to the sufficiency of the answer, neither plaintiffs' initial or supplemental answers provide the name of the artist who received the first offer. Plaintiffs further have not provided an exact date; however, plaintiffs note in their supplemental response that they are continuing to search for a narrower date of first offer. As plaintiffs have not sufficiently answered either the date or the artist portion of this interrogatory, defendants motion to compel is granted with respect to Interrogatory No. 14. Plaintiffs are directed to fully answer defendants question and to provide a more certain date of the first offer.

Finally, Interrogatory No. 16 asks plaintiffs to provide, "[f]or each artist [that agreed to perform at Thunder], state the terms of the agreement you reached and whether it was in writing or oral."[36] This interrogatory is facially relevant as it goes to the damages plaintiffs allege following Thunder's failure. Plaintiffs identified over 45 bands that agreed to perform at Thunder in response to Interrogatory No. 15.[37] Plaintiffs' supplemental answer identifies the Bates

---

[35] Pls.' Initial Resps., *supra* note 1, at 10.

[36] *Id.* at 11.

[37] *Id.*

number for the contracts for all bands, except for Moonshine Bandits, JB and the Moonshine Band, Kristen Kelly, Robbie Fulks, Blue Edmondson, Outshyne, Lance Carpenter, the Cleverlys, Matt Stell, Lower 40, and the Trey Hawkins Band.[38] Plaintiffs do not identify whether these artists had written or oral agreements. Thus, defendants' motion to compel is granted with respect to Interrogatory No. 16, and plaintiffs are directed to either identify by Bates number the written contract or existence of an oral agreement for each of the above listed bands.

### f. Interrogatories Nos. 17, 18, and 19

Interrogatories Nos. 17, 18, and 19 all ask plaintiffs to identify specific details about any artists booked by plaintiffs collectively, by Brett Mosiman specifically, or by any entity "in any way affiliated with Brett Mosiman."[39] Interrogatory No. 17 is facially relevant as it goes to the factual assertion that plaintiffs were financially ruined and unable to continue their music promotion business following Thunder's failure. Plaintiffs objected to Interrogatory No. 17 by arguing that it is over broad, irrelevant, and unduly burdensome.[40] While plaintiffs reasserted these objections in their response brief, they failed to articulate how Interrogatory No. 17 specifically is objectionable. Instead, plaintiffs focused their analysis on elements of

---

[38] Pls.' Suppl. Resps., *supra* note 1, at 12-13.

[39] Interrogatory No. 17 asks plaintiffs to "[i]dentify by name, date booked, venue, and terms (e.g., deposit requirements), all artists booked by Plaintiffs, or any of them, for any festival, concert, or venue, regardless of location, from July 1, 2015." Pls.' Initial Resps., *supra* note 1, at 11.

Interrogatory No. 18 asks plaintiffs to "[i]dentify by name, date booked, venue, and terms (e.g., deposit requirements), all artists booked by any entity affiliated in any way with Brett Mosiman (including, without limitation, the Bottleneck and CrossroadsKC) for any festival, concert, or venue from July 1, 2015 to the present." Pls.' Initial Resps., *supra* note 1, at 12.

Interrogatory No. 19 states, "[f]or each booking described in your responses to interrogatory numbers 17 and 18, please state whether the agreement with the artist was oral or in writing, or some combination thereof." Pls.' Initial Resps., *supra* note 1, at 12.

[40] Pls.' Resp. Br., *supra* note 1, at 6.

Interrogatory Nos. 18 and 19. As plaintiffs have failed to support their objections to Interrogatory No. 17, they are deemed abandoned. Plaintiffs further objected by asserting that Interrogatory No. 17 was compound, but plaintiffs abandoned this objection in their response brief.

Turning next to the sufficiency of plaintiffs' response to Interrogatory No. 17, plaintiffs answered that they have not booked any artist for any music festival after Thunder's failure. However, this answer does not fully address the interrogatory. Defendants did not limit their question to only music festivals but instead asked if plaintiffs had booked any artist for "any festival, concert, or venue, regardless of location from July 1, 2015 to the present." By limiting their answer to only music festivals, plaintiffs have failed to address other elements of defendants' request. Therefore, defendants motion to compel with respect to Interrogatory No. 17 is granted.

Interrogatory No. 18 seeks information that is facially irrelevant. This interrogatory seeks information from the plaintiffs related entities without limitation. While defendants named two potentially related entities, they chose to leave this interrogatory unlimited with regard to plaintiffs' related entities. As this court has repeatedly said in this case, seeking information from a broad class of non-party entities, without specific relevant purpose and without specificity of the entities at issue runs beyond the scope of Fed. R. Civ. P. 26(b). Here, defendants argue that entities related to Brett Mosiman have booked artists after Thunder's failure, which defendants assert demonstrates that plaintiffs have not been damaged by Thunder's failure; however, these unnamed related entities are not themselves parties to this case. To the extent that defendants seek information about Mosiman's own activities, the court's order addressing Interrogatory No. 17 should suffice as Mosiman is a party to this case. Therefore, defendants' motion to compel with regards to Interrogatory No. 18 is denied.

Finally, Interrogatory No. 19 seeks additional information about any booking identified in response to Interrogatories Nos. 17 and 18. As the court has denied defendants' motion with respect to Interrogatory No. 18, the court will analyze this interrogatory as if it were limited to only Interrogatory No. 17.

This interrogatory is facially relevant as it goes to plaintiffs' claims of damages to their music promotion business following Thunder's failure. Plaintiffs raised multiple objections in their initial response and maintained their objections for relevance, undue burden, and overbreadth in their response brief; however, as plaintiffs focused their analysis on two entities related to Mosiman, they have failed to maintain their objections specifically related to Interrogatories Nos. 17 and 19. Thus, the court deems the plaintiffs' objections abandoned.

Turning to the sufficiency of the plaintiffs' answer, the plaintiffs again assert that they have not booked any artists for any music festival following Thunder's failure. However, as articulated above, Interrogatory No. 17 seeks more than bookings at music festivals. In light of the court's above order, the defendants' motion with regard to Interrogatory No. 19 is granted. Plaintiffs will supplement their answer to Interrogatory No. 19 subject to their supplemental answer to Interrogatory No. 17.

### g. Document Production Requests 68 & 69

Defendants also seek a motion to compel with regards to Requests 68 and 69 of their Fifth Request for Production of Documents.[41] Defendants sought profit and loss statements and

---

[41] Request 68 asks plaintiffs to produce, "[t]he Profit & Loss statements and other financial statements for Pipeline Productions, Inc., Pipeline Ticketing, LLC, and Pipeline Events, Inc., from January 1, 2004 through the present time." Pls.' Doc. Produc. Resps., *supra* note 4, at 12.

Request 69 asks plaintiffs to produce, "[t]he Profit & Loss statements and other financial statements for Wakarusa from January 1, 2004 through the present time." Pls.' Doc. Produc. Resps., *supra* note 4, at 12.

other financial statements from Pipeline entities and from Wakarusa.[42] Plaintiffs objected to both requests on a variety of grounds, including that the requests were over broad and irrelevant.

These requests are facially overly broad. The requests seek all financial documents from over 10 years from plaintiffs and from non-party organizations. Defendants construe their demands as seeking evidence related to plaintiffs' claim that they operated a successful music promotion business prior to Thunder's failure. However, defendants' requests go beyond mere evidence of plaintiffs' success. Defendants, seemingly without explanation, seek financial statements from non-party organizations and seek "other financial statements" which includes a broader spectrum of information than records relevant to proof of plaintiffs' prior success. As these requests are facially over broad, defendants motion to compel with respect to Requests Nos. 68 and 69 is denied.

### h. Document Production and Privilege Log

Defendants alleged that plaintiffs, at the time of filing their motion, had not produced all documents that plaintiffs had undertaken to produce. Plaintiffs admitted as much in their response brief, but plaintiffs noted that they were working to complete all document production by February 1, 2019. However, defendants assert that plaintiffs had failed to produce all documents or a supplemental written response as of February 8, 2019. At the present time, the court is unclear whether plaintiffs have finished producing documents or have produced a supplemental report. The court notes that all discovery was to be completed by December 31, 2018. As such, the defendants motion to compel is granted with respect to documents plaintiffs undertook to produce in response to defendants' request for production of documents.

---

[42] Wakarusa appears to refer to the Wakarusa Music Festival, which plaintiffs identified as one of their successful music festivals.

Turning to the question of a privilege log, plaintiffs have failed to sufficiently articulate privilege claims. Defendants argue that plaintiffs, by objecting to the production of documents in response to two document production requests are required to produce a privilege log, which plaintiffs have not presently done. The party seeking to assert a privilege has the burden of establishing that it applies.[43] Federal Rule of Civil Procedure 26(b)(5)(A)(ii) provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged ... the party must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged ... will enable the parties to assess the claim.[44]

Parties make this showing by creating a privilege log, and judges in this district have repeatedly outlined the criteria a privilege log must contain:

> 1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
> 2. The date upon which the document was prepared;
> 3. The date of the document (if different from # 2);
> 4. The identity of the person(s) who prepared the document;
> 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"
> 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"
> 7. The number of pages of the document;
> 8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

---

[43] Fed. R. Civ. P. 26(b)(5)(A)(ii).

[44] *Id.*

9. Any other pertinent information necessary to establish the elements of each asserted privilege.[45]

At a minimum, a privilege log must contain sufficient information to enable an opposing party and the court to evaluate the claim of privilege.[46] If a party fails to carry its burden to establish that the withheld documents are privileged, the court may conclude that the privilege is waived.[47] However, courts have reserved waiver as a penalty for only those cases where the offending party committed unjustified delay in responding to discovery.[48]

In this case, plaintiffs have failed to provide any privilege log associated with their claims of privilege. In their response brief, plaintiffs attempt to clarify some of the basis for asserting their privilege claims, stating the requested documents contained communications between plaintiffs' attorneys and plaintiffs' fact and expert witnesses. However, plaintiffs terse statement does not provide the court or defendants sufficient information to evaluate their claims. Therefore, defendants' motion to compel plaintiffs to produce a detailed privilege log for each of their privilege claims is granted.

### i. Motion to File a Sur-Response

Finally, the court will address Plaintiffs' Motion for Leave to File a Sur-Reply (ECF No. 419). Plaintiffs seek the opportunity to file a sur-reply to further argue how their supplemental interrogatory responses impact defendants motion. Plaintiffs argue that, if the court relies on new

---

[45] *Crumpley v. Associated Wholesale Grocers, Inc.*, No. 16-2298-DDC-GLR, 2017 WL 4865689, at **1-2 (D. Kan. Oct. 27, 2017); *New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 448-49 (D. Kan. 2009).

[46] *Crumpley*, 2017 WL 4865689, at *2 (citing *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *5 (D. Kan. Mar. 24, 2017) (internal citations omitted)).

[47] *Id*.

[48] *White v. Graceland Coll. Ctr. For Prof. Dev. & Lifelong Learing, Inc.*, 586 F. Supp. 2d 1250, 1266 (D. Kan. 2008).

arguments or information in defendants' reply brief, it may not forbid the nonmovant from responding to the new materials.[49] In this case, the court is not relying on new information from defendants. Where the court has granted defendants' motion to compel, it has done so either because plaintiffs have failed to maintain and support their objections in their response brief or because plaintiffs own supplemental answers failed to fully answer defendants' interrogatories. The court is not convinced that plaintiffs should now be granted the opportunity to rectify their own deficient briefing in a subsequent brief. Therefore, plaintiffs motion is denied.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Compel Supplemental Responses to Interrogatories (Set One) and Document Requests (Set 5) from Plaintiffs (ECF No. 364) is granted in part and denied in part. Plaintiffs are ordered to serve on defendants supplemental interrogatory answers to Interrogatories Nos. 1, 2, 9, 10, 14, 16, 17, and 19 by no later than **March 29, 2019**. Furthermore, plaintiffs are ordered to produce and serve on defendants a privilege log for all documents withheld in response to defendants Fifth Request for Production of Documents by no later than **March 29, 2019**. Finally, plaintiffs are ordered to complete production all documents identified by plaintiffs in response to defendants Fifth Request for Production of Documents and to serve a supplemental written response identifying all documents produced by no later than **March 29, 2019**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File a Sur-Reply (ECF No. 419) is denied.

**IT IS SO ORDERED.**

---

[49] *See Halsey v. United Parcel Service, Inc.*, No. 14-CV-02312-JAR-KMH, 2015 WL 73685, at *2 (D. Kan. Jan. 6, 2015).

Dated March 21, 2019, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge