# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., <br> BACKWOOD ENTERPRISES, LLC, <br> OK PRODUCTIONS, INC., and <br> BRETT MOSIMAN, <br><br> Plaintiffs, <br><br> v. <br><br> THE MADISON COMPANIES, LLC, <br> and HORSEPOWER ENTERTAINMENT, <br> LLC, <br><br> Defendants. | Case No. 15-4890-KHV |

## **MEMORANDUM AND ORDER**

This matter comes before the court upon Plaintiffs' Motion to Compel Defendants to Respond to Their Fourth Request for Production of Documents (ECF No. 384). Plaintiffs argue that defendants have improperly objected to document production requests seeking information about defendants' financial history and seeking communications between email addresses associated with defendants and individuals associated with a non-party entity. Defendants assert that this court has already ruled that plaintiffs are not entitled to either category of information. For the reasons stated below, plaintiffs motion is granted in part and denied in part.

### I.  Factual Background

This action arises from a failed country music concert in Arkansas, the Thunder on the Mountain ("Thunder") music festival. Plaintiffs allege that they entered into a joint venture with the defendants to own and produce the music festival. Plaintiffs contend that defendants reneged on the agreement, which forced plaintiffs to cancel the festival. Defendants assert counterclaims against plaintiffs, seeking declaratory judgments establishing the rights of the parties and

recovery from the plaintiffs under the theories of breach of contract, promissory estoppel, and unjust enrichment.[1]

Plaintiffs served their fourth request for production of documents on November 2, 2018.[2] On December 21, 2018, defendants served their initial responses and objections to plaintiffs document production requests.[3] Following the defendants' response, the parties met and conferred to resolve their discovery disputes.[4] During the meet and confer process, the parties agreed to narrow the scope of plaintiffs' Requests 6, and 19 through 21 to only "emails discussing a potential job and/or consulting work."[5] On January 21, 2019, plaintiffs filed this motion.

## II. Discussion

### a. General Objections

The court first turns to defendants' general objections to plaintiffs' document production requests. In the District of Kansas, "general objections are considered 'overly broad and worthless unless the objections are substantiated with detailed explanations.'"[6] This court has consistently held that "a general objection that objects to a discovery request 'to the extent' that it asks the responding party to provide documents or information protected by the attorney-client

---

[1] Defs.' Answer to Am. Compl. and Countercls., ECF No. 66.

[2] Pls.' Fourth Reqs. for Produc. of Docs. to Defs., ECF No. 386-1, at 7.

[3] Defs.' Resps. to Pls.' Fourth Reqs. For Produc. of Docs., ECF No. 386-2, at 24.

[4] ECF No. 386-3; ECF No. 403-1.

[5] ECF No. 403-1, at 1.

[6] *Bettis v. Hall*, No. 10-2457-JAR, 2015 WL 1268014, at *2 (D. Kan. Mar. 19, 2015) (quoting *Terracon Consultants Inc. v. Drash*, No. 12–2345-EFM, 2013 WL 1633572, at *2 (D. Kan. Apr. 16, 2013)).

privilege or work product immunity is tantamount to asserting no objection at all."[7] Furthermore, this court has held that boilerplate objections, without explanation or specific analysis, are insufficient to substantiate an objection, even when applied to individual discovery requests.[8] In response to plaintiffs' document production requests, defendants listed twenty generic objections.[9] Following prior caselaw in this jurisdiction and in this case, the court overrules these generic objections to the extent that these objections are not raised and supported in response to specific document production requests.

### b. Requests for Production Nos. 1 through 5

In Requests Nos. 1 through 5, plaintiffs seek from defendants a variety of financial documents from 2014 to 2018.[10] In full, Request No. 1 reads:

> All monthly, quarterly, annual and year-end financial statements of Madison and Horsepower for the years 2014, 2015, 2016, 2017, and 2018 to date, including but not limited to, balance sheets, statements of profit and loss, statement of cash flows, statement of changes in equity, general ledgers, accounts receivable and accounts payable.

Request No. 2 reads:

> All monthly, quarterly, or annual statements or reports from financial institutions pertaining to Madison and Horsepower's financial assets of any type whatsoever (including bank accounts, savings accounts, checking accounts, investment accounts) for the years 2014, 2015, 2016, 2017, and 2018 to date.

Request No. 3 reads:

> All federal and state tax returns including all schedules, attachments, and worksheets filed by Madison and Horsepower in years 2014, 2015, 2016, 2017, and 2018 to date.

---

[7] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 667 (D. Kan. 2004).

[8] *Williams v. CoreCivic, Inc.*, No. 17-cv-2310-JAR-GLR, 2018 WL 3075867, at *3 (D. Kan. June 21, 2018).

[9] Defs.' Resps. to Pls.' Fourth Reqs. for Produc. of Docs., ECF No. 386-2, at 2-6.

[10] *Id.* at 6-7.

Request No. 4 reads:

> All documents relating to any debts of Madison or Horsepower for the past four years, including but not limited to all notes, loan agreements, deeds of trust, mortgages, loan guarantees, bond agreements and trust indentures.

Request No. 5 reads:

> All documents prepared or submitted by Madison or Horsepower to obtain a loan, lease, deed of trust, or mortgage in the years 2014, 2015, 2016, 2017, and 2018 to date.

In response, defendant argued that that the requests were "overbroad, compound, unduly burdensome," sought irrelevant and disproportional information, and sought confidential financial information.[11] In response to Requests Nos. 2 and 4, defendants also argued the requests were vague and ambiguous.[12] These document production requests are nearly identical to those found in *Accountable Health Solutions, LLC v. Wellness Corp. Solutions, LLC*.[13] As such, the court will adopt the legal analysis framework from *Accountable Health*.

### i. Legal Principles

As a general matter, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."[14] When evaluating whether a discovery request is within the scope, this court must consider, among other things, "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[15] Furthermore, this

---

[11] *Id.* at 6-8.

[12] *Id.* at 6-7.

[13] No. 16-cv-2494-DDC-TJJ, 2017 WL 3229071 (D. Kan. July 31, 2017).

[14] Fed. R. Civ. P. 26(b)(1).

[15] *Id.*

4

court must limit discovery when the frequency or extent of that discovery is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . ."[16] A party may request copies or access to inspect documents in the responding party's possession, custody, or control, provided that request is within the scope of discovery.[17] A responding party may object to any document production request, but such objections must be made with particularity.[18]

In a motion to compel, the moving party need only file the motion and draw the court's attention to the relief sought.[19] However, discovery requests must, at a minimum, seek facially relevant discovery before a court will order compliance.[20] If a request seeks documents or information that is not facially relevant, the party seeking discovery has the burden to show the relevancy of the requested discovery.[21] If a request seeks facially relevant discovery, the burden then shifts to the defendant to reassert and support any objections initially asserted in response to the plaintiff's discovery request.[22]

### ii. Plaintiffs' Punitive Damages Claims

The court first must address whether plaintiffs are allowed to seek financial documents in this case. As the court has noted previously, discovery about a litigant's ability to pay a judgment

---

[16] Fed. R. Civ. P. 26(b)(2)(C)(i).

[17] Fed. R. Civ. P. 34(a).

[18] Fed. R. Civ. P. 34(b)(2)(B) & (C).

[19] *Ehrlich v. Union Pacific R.R. Co.*, 302 F.R.D. 620, 624 (D. Kan. 2014).

[20] *Williams v. Bd. of Cty. Comm'rs*, 192 F.R.D. 698, 702-03 (D. Kan. 2000).

[21] *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).

[22] *Ehrlich*, 302 F.R.D. at 624.

is generally not permissible until a judgment is entered.[23] However, information about a party's net worth or financial condition is relevant to the issue of punitive damages.[24] "When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages."[25] But a plaintiff seeking discovery of the defendant's financial condition in support of a claim for punitive damages must show the claim is not spurious.[26] To prove a claim is not spurious, a party must provide specific factual allegations to support its claim for punitive damages.[27]

In determining whether plaintiffs' punitive damages claim is spurious, the Court looks to whether plaintiffs have made sufficient allegations—short of those needed to establish a *prima facie* case—to support a claim for punitive damages under the applicable law. In this case, plaintiffs' are seeking punitive damages based upon their state law claims for breach of fiduciary

---

[23] *See Sanderson v. Winner*, 507 F.2d 477, 480 (10th Cir. 1974) ("there is no right to discovery of assets until judgment is obtained"), cert. denied, 421 U.S. 914(1975); ECF No. 204, n. 6.

[24] *Gust v. Wireless Vision, L.L.C.*, No. 15-2646-KHV, 2015 WL 9462078, at *5 (D. Kan. Dec. 24, 2015) (citing *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 152 (D. Kan. 1990)). See also *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. 00-2099-CM, 2001 WL 395397, at *2 (D. Kan. Apr. 11, 2001) ("[I]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages."); *see also Accountable Health*, 2017 WL 3229071, at *2.

[25] *Mid Continent Cabinetry*, 130 F.R.D. at 151; *Accountable Health*, 2017 WL 3229071, at *2.

[26] See *id*. at 152 (plaintiff must show that his claim for punitive damages was not spurious in order to be entitled to discovery of the defendant's financial condition). See also *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007) ("[T]he Court need only find that the claims for punitive damages are not spurious for discovery [of the defendants' financial information] to proceed."); *Accountable Health*, 2017 WL 3229071, at *2.

[27] *Gust*, 2015 WL 9462078, at *5; See also *McCloud v. Bd. of Geary Cty. Comm'rs*, No. 06-1002-MLB-DWB, 2008 WL 1743444, at *4 (D. Kan. Apr. 11, 2008) (finding plaintiffs provided sufficient factual background to establish that their claim for punitive damages was not spurious); *Heartland*, 2007 WL 950282, at *13 (finding plaintiff made allegations sufficient to support its punitive damages claims); *Accountable Health*, 2017 WL 3229071, at *2.

duty (Count II), fraud based on a promise of future events (Count III), and tortious interference (Count IV). Under Kansas law, a plaintiff making a claim for punitive damages has the "burden of proving, by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful conduct, wanton conduct, fraud or malice."[28]

Here, plaintiffs' punitive damages claims are not spurious. In their amended complaint, plaintiffs alleged that defendants repeatedly offered financial assistance to plaintiffs to produce Thunder, offered assurances of the existence of this financing even if the initial agreements fell apart, and encouraged plaintiffs to promote Thunder and book artists while negotiations for the financial agreement continued.[29] Plaintiffs further assert that after Thunder failed, defendants began targeting plaintiffs partners and employees in an effort to "further destroy Plaintiffs' business . . ." that led to plaintiffs tortious interference claim.[30] In support of their breach of fiduciary duty claim, plaintiffs' asserted that defendants pressured plaintiffs into a new agreement with the threat of a lawsuit.[31] To support their fraud claim, plaintiffs further assert that defendants intentionally deceived plaintiffs with their offer to support Thunder in an effort to force plaintiffs into a lopsided deal.

As plaintiffs note, the court has already ruled on defendants' motion to dismiss, and plaintiffs' claims for punitive damages have survived. To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be

---

[28] K.S.A. 60-3701(c).

[29] Am. Compl., ECF No. 56, at 4-6.

[30] *Id*. at 9, ¶ 57.

[31] *Id*. at 11, ¶ 73.

7

true, "raise a right to relief above the speculative level"[32] and must include "enough facts to state a claim for relief that is plausible on its face."[33] Defendants appear to wish to relitigate the motion to dismiss with regards to punitive damages; however, this court need not disturb the prior order here. Plaintiffs' factual allegations are sufficient to establish more than spurious claims for punitive damages. As defendants note, the punitive damages claims shall likely be addressed in a subsequent motion for summary judgment; however, such arguments likewise need not be addressed now.

### iii. Scope of Requests

While plaintiffs' claims for punitive damages opens the door to financial discovery, plaintiffs are not entitled to violate the Fed. R. Civ. P. 26(b) scope of discovery limits to reach their desired information. Typically, discovery of financial information for punitive damages purposes is limited to the defendant's most recent annual reports and current financial statements.[34] Plaintiffs cite *N. Ala. Fabricating Co., Inc., v. Bedeschi Mid-West Conveyor Co., LLC*,[35] to suggest they should be entitled to more than one year of records relevant to their fraud claim. In that case, the court determined that seeking deposition testimony about a defendant's financial ability at the time the defendant made promises to pay plaintiff a debt was relevant to

---

[32] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ).

[33] *Id.* at 570, 127 S.Ct. 1955.

[34] *Accountable Health*, 2017 WL 3229071, at *4; See *Heartland*, 2007 WL 950282, at *15 (limiting financial information required from the defendants concerning the issue of punitive damages to their most recent annual reports and current financial statements measured at the time set for defendants to produce such information); *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625962, at *4 (D. Kan. Oct. 5, 1995) (finding the most recent annual reports and current financial statements of the plaintiffs suffice to determine punitive damages).

[35] No. 16-cv-270-DDC-TJJ, 2017 U.S. Dist. LEXIS 120236, at * 3 (D. Kan. Aug. 1, 2017).

plaintiff's fraud claims.[36] Specifically, the court allowed questioning about a defendant's financial state from September 2015 to July 2016.[37] Here, however, plaintiffs are not alleging defendants were factually unable to fund Thunder, but instead, plaintiffs allege that defendants had no interest in funding Thunder.[38] Thus, plaintiffs reliance on *N. Ala. Fabricating* is misplaced.

Plaintiffs' discovery requests must be modified to come within the scope of discovery. Following other decisions in this district, the court finds that only records of defendants' present financial state are relevant within the scope of discovery, and all other records are facially overbroad. As plaintiffs' requests are nearly identical to those found in *Accountable Health*, the court will further adopt and incorporate the *Accountable Health* analysis with regards to relevance.[39] Specifically, plaintiffs' Requests No. 2, 3, and 4, which seek statements from financial institutions about defendants' assets, defendants' tax returns, and documents relating to any debts incurred by defendants for the past four years, all seek information beyond what is reasonably necessary for plaintiffs to demonstrate defendants current net worth and financial condition. Thus, plaintiffs motion is denied with respect to Requests No. 2, 3, and 4.

Turning next to the timeframe of the records sought, Requests Nos. 1 and 5 seek information from an overly broad time range. As in *Accountable Health*, the court will limit this time range to the one-year period prior to the date defendants produce records responsive to the requests.

---

[36] *Id.*

[37] *Id.*

[38] Pls.' Reply in Supp. of their Mot. to Compel Defs. to Resp. to their Fourth Set of Doc. Reqs., ECF No. 418, at 6.

[39] *See Accountable Health*, 2017 WL 3229071, at *5.

9

Requests No. 1 and 5 seek information that is reasonably necessary for plaintiffs to prove their punitive damages claims. However, Request No. 1 also seeks more records than is reasonably necessary for this case, as cash flow statements, statements of changes in equity, general ledgers, accounts receivable, and accounts payable all are excessive to prove defendants' current financial state. Therefore, as in *Accountable Health*, the court will limit Request No. 5 to only defendants monthly, quarterly, annual, and year-end financial statements, consisting of its balance sheets and statements of profits and loss.[40] Subject to these modifications, plaintiffs' motion to compel with respect to Requests No. 1 and No. 5 is granted.

### iv. Delay of the Requests

Defendants next argue that, should the court grant plaintiffs' motion to compel with respect to any of Requests Nos. 1 through 5, that order should be stayed pending any ruling on a potential motion for summary judgment. Defendants argue that the facts in this case are analogous to those in *Accountable Health*, and thus, the court should stay the enforcement the motion to compel until after the resolution of any dispositive motions.[41] Plaintiffs argue that these issues may be submitted to a jury, and thus, this court should not stay enforcement of the motion to compel as it may lead to a bifurcated trial or prejudice of the plaintiffs.[42]

Enforcement of plaintiffs' motion to compel should be stayed. Courts in Kansas have sometimes delayed discovery of financial information in support of a punitive damages claim until after a jury determines liability for the underlying claim, while other courts have allowed

---

[40] *See Accountable Health*, 2017 WL 3229071, at *5.

[41] Defs.' Opposition to Doc. No. 386 – Pls.' Mot. to Compel Further Produc. Pursuant to Pls.' Fourth Set of Doc. Reqs., ECF No. 403, at 11-13.

[42] Pls.' Reply in Supp. of their Mot. to Compel Defs. to Resp. to their Fourth Set of Doc. Reqs., ECF No. 418, at 7.

pretrial discovery.[43] Other cases from this District have justified delaying discovery of financial records relevant to a punitive damages claim when the parties are business competitors and disclosure of one party's financial records to the other, even with a protective order, could harm the disclosing party.[44]

In *Accountable Health*, the court noted that defendants had argued that plaintiffs' punitive damages claims would not survive summary judgment, that the parties were business competitors, and that the early discovery of defendants' financial information could potentially harm defendants regardless of the outcome of the case.[45] Furthermore, the court noted that delaying discovery would lead to disclosure of more recent financial information.[46] The *Accountable Health* analysis is applicable here. Defendants have argued that they will challenge plaintiffs' punitive damages claims in their summary judgment motion and noted that the parties are competitors. Thus, the court stays enforcement of plaintiffs' motion to compel with regards to Requests No. 1 and 5 until after the resolution of all dispositive motions. The court notes that, at this time, there is no pending motion for summary judgment.

---

[43] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 950282, at *13 (D. Kan. Mar. 26, 2007) (citing multiple cases in the jurisdiction that have taken a variety of approaches to pretrial discovery of financial records on punitive damages claims).

[44] *Accountable Health*, 2017 WL 3229071, at *5; *see also Audiotext*, 1995 WL 625962, at *3 (finding certain circumstances, such as harm from disclosing financial information to a competitor, would justify delaying discovery of financial records until trial or until the requesting party has proved a prima facie case for punitive damages); *Mid Continent Cabinetry*, 130 F.R.D. at 152 ("For example, if a plaintiff and defendant were business competitors, disclosure of defendant's financial records to the plaintiff, even with a protective order, could cause the defendant great harm. In such circumstances, a delay in discovery until a prima facie showing of entitlement to punitive damages is shown might be justified.").

[45] *Accountable Health*, 2017 WL 3229071, at *6.

[46] *Id*.

### c. Requests for Production Nos. 6, 19, 20, and 21

The court now turns to Requests Nos. 6, 19, 20, and 21. These requests seek emails between defendants and four of plaintiffs' former employees from defendants' email domains and servers. Request No. 6[47] seeks:

> All communication between Madison, Horsepower, or any individual who use a Madison or Horsepower server or domain address, and Nathan Prenger. If it is Defendants' position that some or all of these documents have been produced, please provide a list of bates [sic] for all documents previously produced. If additional documents are produced, please provide the bates [sic] numbers for all documents produced in response to this Request.

Requests Nos. 19, 20, and 21 are identical, except they seek communications with Brian Wingerd, Brian Pilsl, and Taylor Gustafson respectively.[48] Following plaintiffs service of their fourth requests for production of documents, the parties appear to have agreed to limit these requests to a time range of October 1, 2014 to October 31, 2015.[49] While the parties appear to have agreed to also limit these requests to emails discussing a potential job and/or consulting work,[50] the parties now dispute whether defendants need to produce emails discussing potential jobs or consulting work at defendants' related entities. Defendants further indicate they have already, in their view, fully complied with these requests.[51] Defendants raised a number of

---

[47] Defs.' Resps. to Pls.' Fourth Reqs. for Produc. of Docs., ECF No. 386-2, at 8.

[48] Defs.' Resps. to Pls.' Fourth Reqs. for Produc. of Docs., ECF No. 386-2, at 20-22.

[49] Pls.' Mot. to Compel Defs. to Resp. to their Fourth Req. for Produc. of Docs. and Mem. in Supp., ECF No. 386, at 4; Pls.' Reply in Supp. of their Mot. to Compel Defs. to Resp. to their Fourth Set of Doc. Reqs., ECF No. 418, at 2. Defendants claim that plaintiffs refused to agree to this limitation, but based on the statements made by plaintiffs in their motion and their reply brief, it appears the parties have reached an agreement nonetheless.

[50] Pls.' Mot. to Compel Defs. to Resp. to their Fourth Req. for Produc. of Docs. and Mem. in Supp., ECF No. 386, at 4; Pls.' Reply in Supp. of their Mot. to Compel Defs. to Resp. to their Fourth Set of Doc. Reqs., ECF No. 418, at 2; ECF No. 403-1, at 1.

[51] Defs.' Opposition to Doc. No. 386 – Pls.' Mot. to Compel Further Produc. Pursuant to Pls.' Fourth Set of Doc. Reqs., ECF No. 403, at 13-14.

objections in their initial response, including an objection that the court has already ruled that plaintiffs are not entitled to discovery relevant to defendants' related entities. The court will address the related entities objection next; however, as the defendants have already complied in large part with these requests, as modified by the agreement of the parties, the court overrules defendants' other objections.

First, Plaintiffs requests are facially relevant. Plaintiffs argue that they do not seek documents from defendants' related entities nor is it relevant whether their former employees ended up at one of defendants' related entities.[52] Plaintiffs seek only documents within defendants' control, using defendants' email addresses, and discussing work or job opportunities with someone other than plaintiff. Plaintiffs argue that these claims are facially relevant to their tortious interference claims as plaintiffs have alleged defendants hired plaintiffs' employees, partners, and agents for the sole purpose of damaging plaintiffs. By limiting their requests to emails within defendants' control and using defendants' email domains, plaintiffs have limited their request to defendants' apparent actions. The court finds that these requests, as modified by the agreement of the parties, are facially relevant.

As noted above, the only objection the court is considering is the objection that any email discussing an opportunity to work at one of defendants' related entities violates prior court orders. As this court has repeatedly stated,[53] defendants' related entities are not parties to this case, and thus, their documents are not relevant to the claims at issue in this case. The court previously ruled that plaintiffs would not be entitled to access a related entity's documents as

---

[52] Pls.' Mot. to Compel Defs. to Resp. to their Fourth Req. for Produc. of Docs. and Mem. in Supp., ECF No. 386, at 6.

[53] Mem. and Order, ECF No. 423; Mem. and Order, ECF No. 314; Mem. and Order, ECF No. 203.

13

plaintiffs had failed to demonstrate the existence of any related entities,[54] failed to identify the related entities,[55] and failed to demonstrate defendants controlled any related entity's documents.[56] Each prior order addressed plaintiffs seeking information about related entities through defendants without demonstrating the relevance of the related entities. Here, plaintiffs' requests seek email communications coming from defendants, through their email domains and servers, rather than from related entities. By narrowing the focus to defendants' servers, domains, and actions, plaintiffs have eliminated the concern the court had with their prior requests, and thus, do not run afoul of prior orders.

However, the court agrees that the requests should be limited to job or work offers with defendants, rather than with other individuals or entities. The plaintiffs do not have claims that other individuals or entities attempted to recruit their employees, partners, or agents. Therefore, any communications about employment with non-defendant entities do not appear relevant. Thus, the court grants plaintiffs motion to compel with respect to Requests Nos. 6, 19, 20, and 21, subject to the following limitations: defendants need only produce email communications from October 1, 2014 to October 31, 2015, discussing job and/or work opportunities with defendants.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel Defendants to Respond to Their Fourth Request for Production of Documents (ECF No. 384) is granted in part and denied in part. The motion is denied as to Request Nos. 2, 3, and 4. The request is granted as

---

[54] Mem. and Order, ECF No. 195, at 8-9.

[55] Mem. and Order, ECF No. 203, at 4.

[56] Mem. and Order, ECF No. 314, at 6-9.

to Requests Nos. 1 and 5, subject to the following modifications: Request No. 1 will be limited to defendants' monthly, quarterly, annual, and year-end financial statements, consisting of its balance sheets and statements of profits and loss. Both Requests Nos. 1 and 5 will be limited to defendants' most recent financial information, which the court defines as the one-year period prior to the date defendants produces such information. Defendants shall produce documents and information responsive to Requests Nos. 1 and 5 and in accordance with this Memorandum and Order either within 14 days after either the court rules on defendants' motion for summary judgment, or, should defendants decline to file a motion for summary judgment, by **May 7, 2019.**

**IT IS FURTHER ORDERED** that plaintiffs motion is granted as to Requests Nos. 6, 19, 20, and 21, subject to the following limitations: defendants shall produce all responsive emails created between October 1, 2014 and October 31, 2015 discussing job and/or work opportunities with defendants. To better facilitate production, defendants shall provide supplemental answers to these requests identifying each responsive email previously produced by Bates number. Defendants shall serve any unproduced, responsive emails and their supplemental answers by **April 5, 2019.**

**IT IS SO ORDERED.**

Dated March 22, 2019, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge