# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., *et al.*, | ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) |
| v. | ) Case No. 15-4890-KHV |
| THE MADISON COMPANIES, LLC, *et al.*, | ) ) |
| Defendants and Counterclaimants. | ) ) |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiffs' Renewed Motion to Compel Suzanne Land Documents (ECF No. 441). Therein, plaintiffs Pipeline Productions, Inc., Backwood Enterprises, LLC, OK Productions, Inc., and Brent Mosiman (collectively "Pipeline") renew their motion to compel defendants The Madison Companies, LLC and Horsepower Entertainment, LLC (collectively "Madison") to produce documents to and from Suzanne Land found on Madison's July 5 and 6 privilege logs. For the reasons set forth below, the court grants Pipeline's motion as to Privilege Log Entry Nos. 126, 129, 130, 132, 139-148. The court also grants the motion insofar as it has conducted an *in camera* inspection of Defendants' Privilege Log Entry Nos. 127 and 134-136. The motion is denied in all other respects.

I.   **BACKGROUND**

The court has previously summarized the facts giving rise to this case. *See Pipeline Prod., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV, 2019 WL 1206786, at *1 (D. Kan. Mar. 14, 2019). The case arises out of the parties' business dealings relating to the Thunder on the Mountain country music festival ("Thunder") in 2015. According to the Complaint, Pipeline is a well-known

producer of live music festivals, including Thunder. Madison is a venture capital firm that was looking to invest in Pipeline's music festival business. In 2014-2015, the parties engaged in various business dealings trying to structure a deal, but that deal fell through shortly before the Thunder festival was scheduled to occur in 2015. Pipeline was financially devastated, was forced to cancel Thunder 2015, and filed this lawsuit. In this lawsuit, the parties dispute whether and the extent to which they incurred legally binding obligations to one another before the deal fell through. Pipeline asserts claims for breach of contract, breach of fiduciary duty, fraud, and tortious interference. Madison seeks a refund of the money it advanced for Thunder 2015.

Pipeline previously moved to compel Madison to produce the documents at issue in this motion to compel. (ECF No. 302.) At the time, this case was assigned to U.S. Magistrate Judge K. Gary Sebelius, who denied Pipeline's motion without prejudice to refiling a renewed motion directed to this particular category of documents. *See Pipeline Prod., Inc.*, No. 15-4890-KHV, 2019 WL 1206786, at *3. Since then, Madison produced certain documents, narrowed its claim of privilege to 154 documents, and served a supplemental privilege log and supporting declarations. Pipeline now moves to compel Madison to produce the remaining documents that appear on the supplemental privilege log. The subject documents all involve Ms. Land, who was at all relevant times an independent contractor of Madison.

Pipeline's arguments are essentially threefold.[1] First, Pipeline argues Madison waived the attorney-client privilege as to all of the documents by including Ms. Land in the communications

---

[1] The privilege log contains three types of objections. Madison withheld all documents based on an attorney-client privilege objection, withheld a smaller category of those documents based on attorney work product, and redacted account numbers in seven sets of documents based on a "confidentiality objection." Madison's response does not address its confidentiality or work-product objections, so the court will not address them either. *See Black & Veatch Corp. v. Aspen*

because she was an independent contractor, not an agent or employee. Second, Pipeline argues Madison should be compelled to produce 14 of the documents that include Marcee Rondon because (1) Madison waived privilege because Ms. Rondon is an outside public relations executive and/or (2) these communications were not made for the purpose of giving or receiving legal advice. Third, Pipeline argues Madison has not provided sufficient information to enable Pipeline to evaluate Madison's privilege claims as to four sets of documents that include the subject line of the "Kaaboo Del Mar" music festival.[2]

## II. LEGAL STANDARD

FED. R. EVID. 501 provides that "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501; *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc*, 136 F.3d 695, 699 (10th Cir. 1998). In this case, the court has diversity jurisdiction over common law claims, which are governed by Kansas law. Therefore, Kansas law applies to the privilege claims at issue.

In Kansas, the attorney-client privilege is codified at KAN. STAT. ANN. § 60-426. Under the statute, with few exceptions, "communications found by the judge to have been between a lawyer and his or her client in the course of that relationship and in professional confidence, are privileged." *See State v. Gonzalez*, 234 P.3d 1, 10 (Kan. 2010). The party asserting attorney-client privilege bears the burden to establish that it applies. *In re Grand Jury Proceedings*, 616 F.3d

---

*Ins. (UK) Ltd.*, 297 F.R.D. 611, 614 (D. Kan. Feb. 28, 2014) (objections not supported in response to a motion to compel are deemed abandoned).

[2] Madison also argues that certain portions of Pipeline's motion to compel are untimely, constitute inappropriate attempts to reconsider Judge Sebelius' prior discovery orders, or that Pipeline failed to meet and confer about certain issues. The undersigned overruled these objections during the final pretrial conference on April 9, 2019, for the reasons stated on the record.

1172, 1183 (10th Cir. 2010); *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 693 (Kan. 2000). This burden includes showing the privilege has not been waived. *See Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

## III. ANALYSIS

To support Madison's privilege claims, it submitted a privilege log (ECF No. 441-1) and affidavits from defense counsel Benjamin Scheibe (ECF No. 444-1), Ms. Land (ECF No. 441-2), and Bryan Gordon, who is Madison's chairman and CEO (ECF No. 330-6). Madison also submitted the documents that are the subject of the motion to compel for *in camera* inspection, but the court finds it largely unnecessary to review those documents for purposes of assessing Madison's privilege claims. The court has therefore reviewed and considered the documents submitted for *in camera* review only to the extent expressly set forth below.

### A. Documents Involving Ms. Land[3]

All of Madison's privilege log entries include documents sent to or received by Ms. Land. Pipeline argues that including Ms. Land in these communications waived privilege because she was an independent contractor of Madison. Pipeline focuses on the language in her Independent Contractor Agreement that provides that she "does not have the authority to act for Madison, or to bind Madison in any respect whatsoever."[4] (ECF No. 442-2 ¶ 10, at 3.) Pipeline also argues that Ms. Land was not the functional equivalent of an employee, and therefore her inclusion on the emails waives the privilege.

---

[3] Ms. Land is also known as Suzanne Bowman.

[4] Pipeline points out that Ms. Land's Agreement with Madison provides that she "will not provide legal services to Madison or practice law for or on behalf of Madison." (ECF No. 442-2, at 1.) But Madison states it is not asserting Ms. Land was present in these communications in her capacity as an attorney, but rather as a representative of the "client"—*i.e.*, on Madison's behalf.

4

KAN. STAT. ANN. § 60-426(c)(1) defines the "Client" for purposes of the attorney-client privilege to include "a corporation or other association that, directly or through an authorized representative, consults an attorney . . . for the purpose of . . . securing legal advice from the attorney in a professional capacity." Kansas courts have not construed the scope of "authorized representative" as it applies to non-employee consultants. However, by the statute's plain terms, "client" includes a representative who is authorized by the corporation to "consult[] an attorney . . . for the purpose of . . . securing legal advice" for the corporation. Thus, contrary to Pipeline's arguments, the statute does not distinguish between a corporation's agents and employees, versus its independent consultants, so long as the corporation authorizes the individual to consult with the attorney to secure professional advice for the corporation.

Pipeline's argument attempting to distinguish between an employee and an independent contractor is also contrary to the leading circuit-level authority on this issue—*In re Bieter Company*, 16 F.3d 929 (8th Cir. 1994). In that case, the magistrate judge ruled that an independent contractor's communications with the client's attorney were not privileged because he was not an employee. *Id.* at 931, 933, 941. On appeal, the Eighth Circuit granted the extraordinary remedy of a writ of mandamus, vacating the district court's order and holding that "when applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead and for whatever reason employed as independent contractors." *Id.* at 937. The court reasoned that this distinction was inappropriate because non-employee representatives may have the "very sort of information that the privilege envisions flowing most freely," which is the information the corporation's attorneys need in order to adequately advise the client. *Id.* at 937-38. The court finds this reasoning persuasive, and consistent with the applicable Kansas statute.

5

Madison has met its burden to prove that Pipeline authorized Ms. Land to consult with attorneys to secure legal advice for the corporation. Madison submitted a detailed factual record that establishes Ms. Land was an authorized representative for purposes of seeking and receiving the legal advice at issue. Mr. Gordon's affidavit explains that he brought Ms. Land on board in the winter of 2014-2015 as his "right hand person" to oversee negotiating certain proposed business transactions, including the dealings with Pipeline that are the subject of this litigation. According to Mr. Gordon, Ms. Land took the lead on certain due diligence aspects of the transaction, including those involving real estate and alcohol permits. He authorized and asked Ms. Land to communicate with counsel and other Madison representatives in order to obtain information needed or requested by Madison's attorneys, he authorized Ms. Land to act in this capacity as Madison's representative, and he relied upon her to do so. When Pipeline withdrew from the proposed transaction, Ms. Land interfaced with Madison's counsel regarding litigation between the parties. Ms. Land's affidavit confirms the salient facts and provides further details. She elaborates that she worked as a project manager on the companies' corporate transactions, including working with Madison's in-house and outside counsel. This included working with counsel on various aspects of the Thunder transaction. After litigation ensued between Madison and Pipeline, Ms. Land spoke to the Pipeline principals to attempt to resolve the dispute and communicated with counsel about the pending lawsuits. Based on this record, there is no principled basis to find that Ms. Land was not acting as an authorized representative in seeking legal advice for Pipeline, regardless of whether she was an independent consultant.

Pipeline's arguments to the contrary are without merit. Pipeline mainly argues that Ms. Land was not the "functional equivalent of an in-house employee" under *Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.*, No. 08 Civ. 7508, 2011 WL 4716334 (S.D.N.Y Oct. 4, 2011).

But *Abu Dhabi* is not binding on this court, nor is it persuasive. There, the Special Master cited New York law for its version of the functional-equivalent test.[5] *Id.* at *3 n.23 (relying on *Export-Import Bank of the U.S. v. Asia Pulp & Paper Co., Ltd.* 232 F.R.D. 103, 113 (S.D.N.Y. 2005)). New York law does not apply here. Kansas law does, and Pipeline does not cite or discuss the governing Kansas statute. Furthermore, the Special Master in *Abu Dhabi* found the evidence was insufficient to establish the third party was the functional equivalent of an employee, but the party advocating privilege presented no affidavits in support of its position. *Id.* at *5 n.50. That is unlike this case, where Madison presented detailed factual affidavits supporting its privilege claim.

Pipeline also relies on *Stallings v. Werner Enterprises, Inc.*, where the court found an independent contractor was not an authorized representative for purposes of the attorney-client privilege. No. 07-1387-WEB, 2008 WL 4078783, at *2 (D. Kan. Aug. 28, 2008). But *Stallings* merely stands for the proposition that the existence of privilege is determined on a case-by-case basis, based on the facts presented. There, communications with the independent contractor were not privileged not only because he was an independent contractor, but also because (1) there was no evidence that he was retained to provide advice or expertise to in-house attorneys, but rather

---

[5] Courts applying the functional-equivalent test have adopted varying constructions, with *Abu Dhabi* representing the narrower application. Under that approach, the court considers whether the consultant was responsible for a key corporate job; the nature of the working relationship between the consultant and the principals, including whether the relationship was critical to the company's position in litigation; and whether the consultant possessed information not held by others in the company. Other courts have declined to apply these factors, opting instead for "a broad practical approach" that considers whether the consultant acts for the corporation and possesses the information needed to so that the attorney may render legal advice. *See, e.g., In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 459-60 (E.D. Pa. 2012); *see also United States v. Ormat Indus., Ltd.*, No. 3:14-cv-00325-RJC-VPC, 2016 WL 4107682, at *7 (D. Nev. Aug. 1, 2016) (recognizing the disagreement). Notably, the circuit courts that have adopted the functional-equivalent test have not set forth the same criteria considered in *Abu Dhabi. See United States v. Graf*, 610 F.3d 1148, 1158-59 (9th Cir. 2010); *In re Bieter Co.*, 16 F.3d at 937-38.

7

was merely one of a number of fact witnesses to an accident, and (2) there was no evidence that he was aware that his communications with counsel were confidential in nature. *Id.* at *3-*4. Unlike the independent contractor in that case, the very nature of Ms. Land's role involved consulting with counsel on Madison's behalf about the relevant legal matters in question. *Stallings* is therefore merely consistent with other judges in this District who, applying Kansas law, have resolved the issue on a case-by-case basis by analyzing the factual record in a particular case. *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 2017 U.S. Dist. LEXIS 92606, at *294-95 (D. Kan. June 13, 2017) (finding presence of third-party consultants did not destroy privilege based on the record presented); *Coffeyville Res. Refining & Mktg. v. Liberty Surplus Ins. Corp.*, No. 08-1204-WEB, 2009 WL 790180, at *3 (D. Kan. Mar. 24, 2009) (rejecting conclusory assertions that a consultant engineering firm was an authorized representative of the client); *W. Res., Inc. v. Union Pacific R.R. Co.*, No. 00-2043-CM, 2002 WL 181494, at *7 (D. Kan. Jan. 31, 2002) (finding a consultant's preparation or review of documents was not tantamount to disclosing privileged materials to an outside third party).

Likewise, Pipeline's reliance on the fact that Ms. Land's Independent Contractor Agreement specifies that she cannot act for or bind Madison is not persuasive. The third party in *Bieter* also had an independent contractor agreement that expressly stated he was not an agent, employee, or partner. 16 F.3d at 933-34. Nevertheless, he was retained to provide advice and guidance regarding commercial and retail development, including working to develop the parcel of land that was the subject of the litigation and the resulting litigation. *Id.* So, too, Madison retained Ms. Land to provide services regarding certain business transactions and due diligence, including the parties' business dealings that resulted in this litigation.

### B. Documents Involving Ms. Rondan

Fourteen entries on Madison's privilege log involve Ms. Rondan, a public relations executive with an outside firm—specifically, those appearing on Privilege Log Entry Nos. 126, 129, 130, 132, 139-148. For these documents, Pipeline argues that (1) Madison waived the privilege by including Ms. Rondan, and (2) these communications involve business advice, not legal advice. Turning to the second argument first, the court finds Madison has not met its burden to prove that these communications involve legal advice. Accordingly, they must be produced.

The attorney-client privilege does not apply to all communications between an attorney and client. *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 690 (Kan. 2000). For the privilege to apply, the communication must be made for the purpose of giving or receiving legal advice. *Id.* at 689-90. Legal advice must predominate for the communication to be protected. *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 444 (D. Kan. 2009) (applying federal common law).

In support of Madison's privilege claim, it points to Ms. Land's affidavit, which explains that the purpose of the communications with Ms. Rondan was so that Ms. Rondan could help guide the company and its attorneys "concerning public relations issues" that might result from a class-action complaint filed on behalf of Thunder ticket buyers. Ms. Land states that several entries involve communications "as we sought to set up a call with counsel and Ms. Rondan so that Ms. Rondan could help guide the company and its counsel concerning public relations issues that might arise from the lawsuit." (ECF No. 441-2 ¶ 12.) These descriptions suggest only that the predominant purpose of the communications was to obtain public relations advice from Ms. Rondan and, even further afield, as they sought to set up a call about that advice. Although Madison argues counsel was included on all communications and that the communications would not have occurred "but for the fact that a lawsuit was filed," these considerations are insufficient

9

to show that Ms. Rondan provided any information to Madison's attorneys to enable them to render legal advice or to provide legal services. Furthermore, these descriptions fall short of demonstrating that legal advice predominated in these communications between Ms. Rondan and Madison's attorneys.

Madison relies on *In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1225 (D. Kan. 2015), to argue that plaintiffs might include statements in pleadings for public relations purposes rather than for the purpose of stating a cognizable claim. But the court in *Syngenta* made this observation in the context of deciding a motion to dismiss, not resolving a privilege dispute. The fact that a lawyer might include statements in a pleading for public relations purposes is insufficient to establish that Ms. Rondan was involved in communications helping to formulate a response to a class action for predominantly legal purposes.

## C. Documents With the "KAABOO Del Mar" Subject Line

Pipeline argues Madison has provided insufficient information to evaluate Madison's privilege claim as to four emails containing the subject line "KAABOO Del Mar." Pipeline argues Madison's description of these document is too vague to show that the emails were created for a predominantly legal purpose versus a predominantly business purpose. Pipeline also questions Madison's assertion that the documents are related to this litigation because Madison previously argued that KAABOO is unrelated to the named defendants in this action for discovery purposes. Madison argues Ms. Land's affidavit establishes that these documents are requests for legal advice from counsel and that counsel provided legal advice in response. Madison also argues that whether it fought to keep Pipeline from expanding this litigation to include KAABOO has no bearing on whether these documents are privileged.

The court has conducted an *in camera* inspection of the emails listed in Privilege Log Entry Nos. 127 and 134-136. These are all communications between Mr. Gordon, Ms. Land, and Stacey S. Chapman, Madison's in-house counsel. Several individuals with Madison are copied on the emails between Mr. Gordon and Ms. Chapman. The emails involve a request for legal advice from Mr. Gordon, a response from counsel, a request from counsel to Ms. Land for additional information so that counsel could provide additional legal advice to Mr. Gordon, and a response from Ms. Land with the requested information. The court agrees with Madison that these emails are attorney-client privileged communications. The court also agrees with Madison that its prior positions concerning discovery relating to KAABOO do not go to any of the elements of the attorney-client privilege.

## IV. CONCLUSION

For the reasons stated above, the court finds that Madison has not established its claim of attorney-client privilege as to emails sent to or received by Ms. Rondan, Privilege Log Entry Nos. 126, 129, 130, 132, 139-148. The court therefore grants Pipeline's motion to compel as to these documents. The court also grants the motion insofar as it has conducted an *in camera* inspection of Privilege Log Entry Nos. 127 and 134-136. The motion is denied in all other respects.

**IT IS THEREFORE ORDERED** that Plaintiffs' Renewed Motion to Compel Suzanne Land Documents (ECF No. 441) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Madison shall produce unredacted copies of the documents sent to or received by Marcee Rondan (Privilege Log Entry Nos. 126, 129, 130, 132, 139-148) on or before **May 3, 2019**.

**IT IS SO ORDERED.**

Dated April 29, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge