IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PIPELINE PRODUCTIONS, INC., *et al.*,  )
                                                                           )
       Plaintiffs and  )
       Counterclaim Defendants,  )
                                                                   )
     v.  )               Case No. 15-4890-KHV
                                                                  )
THE MADISON COMPANIES, LLC, *et al.*,  )
                                                                  )
       Defendants and  )
       Counterclaimants.  )

**<u>MEMORANDUM AND ORDER</u>**

This matter comes before the court on Plaintiffs' Motion for Sanctions for Defendants' Violation of Discovery Orders and Failure to Timely Correct False Discovery Responses (ECF No. 462). Plaintiffs Pipeline Productions, Inc., Backwood Enterprises, LLC, OK Productions, Inc., and Brent Mosiman (collectively "Pipeline") seek sanctions because The Madison Companies, LLC and Horsepower Entertainment, LLC (collectively "Madison") untimely produced what Pipeline suggests is a key document—a draft consulting agreement. As explained below, the court finds Madison committed multiple discovery violations, but Pipeline is not entitled to most of the sanctions it seeks. Instead, the court will consider the possibility of allowing limited additional discovery and will award Pipeline its reasonable attorneys' fees and costs incurred in filing the instant motion. Accordingly, Pipeline's motion is granted in part and denied in part.

**I.     RELEVANT BACKGROUND**

The case arises out of the parties' business dealings relating to the Thunder on the Mountain country music festival ("Thunder") in 2015. According to the Complaint, Pipeline is a well-known

producer of live music festivals, including Thunder. Madison is a venture capital firm that was looking to invest in Pipeline's music festival business. The parties engaged in business dealings leading up to the then-planned Thunder festival in 2015. Shortly before the festival was scheduled to occur, those business dealings fell through. This lawsuit centers around whether, when, and the extent to which the parties incurred legally binding obligations to one another before the deal fell through. Pipeline asserts claims for breach of contract, breach of fiduciary duty, fraud, and tortious interference. Madison seeks a refund of the money it advanced for Thunder 2015.

As relevant to the current dispute, Pipeline alleges that, after the Thunder deal fell apart, Madison hired away key Pipeline partners, employees, and agents to drive Pipeline out of business. One of these key individuals was Nathan Prenger. Pipeline's motion for sanctions stems from Madison's untimely production of a draft "Consulting Agreement" between Mr. Prenger and Horsepower for work on the Kaaboo Del Mar music festival ("the draft agreement"). A Madison consultant emailed the draft agreement to Mr. Prenger on May 29, 2015. (Defs.' Ex. 4 at 2, ECF No. 472-4.) The draft agreement is not executed by Mr. Prenger or Horsepower.

Pipeline contends the draft agreement is responsive to its Request for Production ("RFP") No. 9. It sought "[d]ocuments reflecting communications and/or negotiations between Defendants and/or related entities and individuals that previously worked for Plaintiffs and/or related entities regarding potential employment." This RFP was previously the subject of a motion to compel. On June 20, 2018, U.S. Magistrate Judge K. Gary Sebelius directed Madison to produce documents responsive to this RFP No. 9. *See Pipeline Prods., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV, 2018 WL 3055869, at *8 (D. Kan. June 20, 2018).

Pipeline also contends the draft agreement is responsive to RFP No. 24. It sought "all contracts . . . and/or drafts thereof by and between Defendants and Nate Prenger." Madison served

its response to this RFP No. 24 on September 6, 2018. That response stated that "there are no responsive documents."

Discovery closed on December 31, 2018. Madison produced the draft agreement on January 31, 2019. Pipeline first brought the issue of the belatedly produced draft agreement to the court's attention immediately before the reconvened final pretrial conference on April 16, 2019. At that conference, the court directed the parties to submit briefing on this matter. (ECF No. 457.)

Pipeline now moves for sanctions under Rules 26(g), 37(b)(2)(A)(i) and (ii), and 37(c) of the Federal Rules of Civil Procedure. Pipeline asks the court to sanction Madison because it failed to timely (1) comply with Magistrate Judge Sebelius's June 20 order compelling Madison to produce documents responsive to RFP No. 9, and (2) supplement or correct its response to RFP No. 24. Pipeline asks that the court impose the following sanctions: (1) allow Pipeline to file an amended complaint adding claims against the Kaaboo entities (which, as explained below, are related to Madison) and reopen discovery on the newly added claims; (2) declare it established that Madison and Kaaboo tortiously interfered with Pipeline's business and prevent them from defending against this claim; and (3) award Pipeline its attorneys' fees and expenses incurred in preparing this and other motions.

## II.     MADISON COMMITTED DISCOVERY VIOLATIONS

The record before the court establishes that Madison committed at least two and possibly three discovery violations. First, Madison's untimely production of the draft agreement violated Judge Sebelius's June 20 order granting Pipeline's motion to compel as to RFP No. 9. Madison did not produce the draft agreement until January 31, 2019, a month after discovery closed. Madison does not dispute that it violated the court's order, and instead tries to sidestep this issue by focusing its arguments on the fact that Pipeline is not entitled to the sanctions it has requested—

3

essentially, a "no harm, no foul" argument. The court is persuaded that Madison failed to comply with the court's order compelling discovery, particularly given the lack of any explanation to justify the belated production. This triggers sanctions under Rule 37(b)(2).

Madison committed another discovery violation when it responded to RFP No. 24 by incorrectly stating that no responsive documents existed and/or when it failed to timely supplement that response once it learned that information was incorrect. Contrary to Madison's representation in its response to RFP No. 24, a draft agreement existed that was responsive to the request. This constituted a violation of Rule 26(g)(1) if Madison knew that its response to RFP was incorrect or deficient at the time of service, triggering sanctions under Rule 26(g)(3). But regardless of whether Madison knew its response was incorrect at the time, Madison also failed to timely supplement this discovery response once Madison learned the response was incorrect. This constituted a violation of Rule 26(e). Based on the record, it is not clear whether Madison violated Rule 26(g)(1) or 26(e), or both—largely because Madison does not offer any explanation for this incorrect response. Instead, Madison attempts to excuse this violation by pointing out (in a footnote, no less) that RFP No. 24 was not subject to a court order compelling discovery. (ECF No. 472 n.3.) But this argument misses the mark. Madison was obliged to submit accurate discovery responses and, once it learned that the discovery response was incorrect, to timely supplement the incorrect discovery response pursuant to Rule 26(e). *See, e.g.*, *EEOC v. Dogencorp, LLC*., 196 F. Supp. 3d 783, 796, (E.D. Tenn. 2016) (noting that courts are likely to determine that a party violates Rule 26(e) when a party supplements disclosures or responses after the discovery deadline).

### III. SANCTIONS

The court next considers the types of sanctions Pipeline seeks. When a discovery violation occurs, the district court has discretion to determine the appropriate sanction, provided the sanction

is both just and related to the particular claim at issue. *Proctor & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005). In making this determination, the court must be mindful of the purposes for sanctions, which include: "(1) deterring future litigation abuse, (2) punishing present litigation abuse, (3) compensating victims of litigation abuse and (4) streamlining court dockets and facilitating case management." *White v. Gen. Motors Corp.,* 908 F.2d 675, 683 (10th Cir. 1990) (considering Rule 11 sanctions); *see also Unites States v. Perea*, No. 08-20160-08-KHV, 2010 WL 11583172, at *5 n.13 (D. Kan. Jan. 7, 2010) ("While *White* involved sanctions under Rule 11, its principles apply equally to sanctions under other rules . . . ."). The primary goal of sanctions is to deter misconduct. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990).

### A. Amending the Pleadings and Reopening Discovery

The first form of sanctions Pipeline seeks is a court order allowing Pipeline to file an amended complaint adding claims against the Kaaboo entities and reopening discovery on the newly added claims. (ECF No. 462, at 5.) Pipeline sought this same relief previously, and Magistrate Judge Sebelius denied Pipeline's motion. *See Pipeline Prods., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV, 2019 WL 1081781, at *1-*4 (D. Kan. Mar. 6, 2019). The court therefore construes this aspect of Pipeline's motion as a motion to reconsider the court's prior order. So construed, Pipeline is not entitled to this form of sanctions for essentially two reasons.

First, Pipeline has filed objections to Magistrate Judge Sebelius's order denying Pipeline leave to amend. (ECF No. 427.) Consequently, the relief Pipeline seeks is presently an issue to be decided by the district judge, not the undersigned.

Second, even if the undersigned were to decide this aspect of Pipeline's motion as a motion to reconsider, it would be denied. Procedurally, Pipeline's motion was untimely. Madison produced the draft agreement on January 31, 2019. At the time, Pipeline's motion to amend was pending before Magistrate Judge Sebelius, but Pipeline did not bring this draft agreement to the

court's attention. Furthermore, Magistrate Judge Sebelius issued the court order denying leave to amend on March 6, 2019. Therefore, the deadline for filing a motion to reconsider would have been March 20, 2019. D. KAN. RULE 7.3(b) (motion to reconsider non-dispositive order must be filed within 14 days). Yet Pipeline did not first raise the issue with the court until nearly a month later on April 16, 2019.

Substantively, Pipeline's motion also would be without merit. "A motion to reconsider must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." *Id.* Here, Pipeline's arguments are essentially based on the availability of new evidence (the draft agreement) and the need to prevent manifest injustice (*i.e.*, the court would have granted the prior motion to amend if Madison would have produced it sooner). Both arguments fail.

Pipeline argues Madison previously made representations to the court that documents like the draft agreement did not exist and that the Kaaboo entities were separate entities with no involvement in this case; and Pipeline argues that Magistrate Judge Sebelius relied on these representations in ruling on discovery disputes and in denying Pipeline leave to amend. However, Magistrate Judge Sebelius's order on Pipeline's motion to amend does not reference these types of statements, let alone rely on them. Furthermore, Pipeline's proposed amendment is not reasonably related to the discovery violations because this document, standing alone, does not appear to change the landscape of Pipeline's tortious interference claim in a way that would justify asserting this claim against the Kaaboo entities. Plaintiffs already knew Mr. Prenger had a consulting agreement with Kaaboo because he testified as much in his deposition on December 19, 2018. (ECF No. 472-3.) The belatedly produced draft agreement does not change that.

Furthermore, the draft agreement is between Mr. Prenger and Horsepower (not Kaaboo) and it is merely a draft agreement, not a signed contract.

Pipeline also argues that if Madison had timely produced the draft agreement, Pipeline could have moved to amend sooner. But Magistrate Judge Sebelius denied Pipeline's motion on the basis that: (1) the motion was untimely under the scheduling order, and Pipeline did not show good cause for an extension; (2) Pipeline unduly delayed in bringing the motion; (3) Madison would be unduly prejudiced by allowing Pipeline to amend at the eleventh hour. In denying Pipeline's motion to amend, Magistrate Judge Sebelius largely based his ruling on his finding that "[t]he key factual allegations giving rise to plaintiffs' proposed amendments were known to plaintiffs by the summer of 2018, at the latest," but Pipeline failed to move to amend until December 4, 2018. *See Pipeline Prods., Inc. v. Madison Cos., LLC*, No. 15-4890-KHV, 2019 WL 1081781, at *8 (D. Kan. Mar. 6, 2019). In other words, the court concluded that Pipeline had enough information to move to amend by the summer of 2018. It is therefore illogical to assume that Pipeline would have been prompted to move to amend earlier if Madison had produced the draft agreement after the court issued its June 20 order compelling documents responsive to RFP No. 9, which was also in the summer of 2018. Pipeline's lack of diligence on this front is also borne out by the fact that Pipeline had this document in its possession for nearly two and a half months before it raised the present issue with the court.

### B. Declaring It Established That Madison and Kaaboo Interfered With Pipeline's Business

The next form of sanctions Pipeline seeks is declaring it established that Madison and Kaaboo tortiously interfered with Pipeline's business and preventing Madison and Kaaboo from defending against this claim. Such sanctions are among the enumerated forms of possible sanctions set forth in Rule 37(b)(2)(A)(i) and (ii). But these sanctions seek to avoid resolving
7

certain aspects of Pipeline's tortious interference claim on the merits, which is akin to a default judgment. As such, the court is guided by the Tenth Circuit's analysis in *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992). Although *Ehrenhaus* involved the extreme sanction of dismissal, the Tenth Circuit's reasoning centered around whether "aggravating factors outweigh[ed] the judicial system's strong predisposition to resolve cases on their merits." *Id.* at 921.

> Before imposing such a sanction, the court must consider the following factors:
>
> > (1) the degree of actual prejudice to the [moving party]; (2) the amount of interference with the judicial process; ... (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Id.* (internal citations and quotations omitted). Such sanctions are "extreme" and are only appropriate in cases of willful misconduct. *Id.* at 920.

On balance, these factors counsel against the requested sanction. As to the first factor, Madison's untimely production prejudiced Pipeline. By the time Madison produced the document, discovery was closed, and Pipeline was therefore unable to question deponents about the document or serve any follow-up discovery based on the document. Turning to the second factor, the amount of interference with the judicial process is minimal. The district judge's recent order allowing for a broader scope of Rule 30(b)(6) deposition testimony means that at least some additional discovery will occur, and the undersigned is prepared to allow Pipeline to some leeway to take additional discovery related to the draft agreement. On the third factor, Madison appears culpable. The fourth factor weighs against sanctions because the court has not previously warned Madison that it would issue these types of sanctions. And, fifth, the court believes that lesser sanctions (the additional discovery plus Pipeline's attorneys' fees and costs) would prove effective and would mitigate the prejudice to Pipeline. Although Madison committed the discovery violations at issue,

Madison's belated production of this document does not justify the extreme sanction of resolving Pipeline's tortious interference claim in its favor, regardless of the actual merits of that claim.

Furthermore, to the extent Pipeline seeks sanctions against Kaaboo, those sanctions are unavailable under the Federal Rules. Kaaboo is not a party to this litigation. It did not commit the discovery violations at issue, and it has not had notice or opportunity to be heard on this motion.

### C. Discovery Related to the Draft Agreement

Before turning to the last form of sanctions Pipeline seeks (attorneys' fees and expenses), the court considers alternative forms of sanctions. During discovery, Magistrate Judge Sebelius ruled on multiple disputes involving Pipeline's attempts to take discovery concerning Madison's related business entities, including those involved with putting on the Kaaboo Del Mar music festival (collectively, "the Kaaboo entities"). On May 1, 2019, the district judge granted Pipeline's motion for review of one of those orders, finding Magistrate Judge Sebelius erred by limiting the scope of the topics in Pipeline's Rule 30(b)(6) deposition notice to Madison. (ECF No. 479.) The district judge ruled that Pipeline is entitled to Rule 30(b)(6) deposition testimony regarding Madison's related business entities, including the Kaaboo entities. Pipeline will therefore have an opportunity to conduct further targeted discovery related to the Kaaboo entities and its tortious interference claim. To the extent that Pipeline believes the draft agreement warrants further discovery, the court will endeavor to allow Pipeline limited additional discovery to put Pipeline in the same position it would have been in if Madison had complied with its discovery obligations. Pipeline shall be prepared to address that issue at the upcoming status conference. (ECF No. 482.)

### D. Attorneys' Fees and Expenses

The last form of sanctions Pipeline seeks is its fees and expenses incurred in preparing its motion for sanctions "and all other motions resulting from Defendants' violations." (Pls.' Mot at 5, ECF No. 462.) Given Madison's failure to comply with the court's order with respect to RFP

No. 9, "the court **must** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the [violation], unless the [violation] was substantially unjustified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C) (emphasis added). Likewise, the court "may order" fees and expenses for Madison's incorrect response to RFP No. 24. FED. R. CIV. P. 26(g)(3). This includes Madison's failure to timely supplement its incorrect response to RFP No. 24 "unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1)(A). The court has broad discretion to determine whether the violation is substantially justified or harmless. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017).[1] The party facing sanctions bears the burden to show substantial justification or harmlessness. *R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 271-72 (6th Cir. 2010).

Madison has not shown that the subject discovery violations were substantially justified or harmless. Nor has Madison shown that it would be unjust to award Pipeline its reasonable attorneys' fees and expenses for the instant motion. Madison does not raise even a colorable argument that it did not commit the discovery violations at issue. Instead, the overarching theme of Madison's response is that: (1) the draft agreement is just that—*i.e.*, "an *unsigned, draft* consulting agreement" (ECF No. 472, at 2, 4 (emphasis in original)), and (2) Pipeline is not entitled to the sanctions that it seeks. While it may be true that Pipeline's motion for sanctions largely

---

[1] In the context of determining whether to exclude evidence as a sanction under Rule 37(c), the Tenth Circuit has directed that the court should consider "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). Because Pipeline's requested sanctions do not involve exclusion of evidence and because Madison has failed to set forth any reason for its untimely production of the draft agreement, the court need not consider these factors to determine that Madison has failed to show substantial justification or harmlessness.

overreaches in terms of the types of sanctions Pipeline seeks, that does not change the fact that Madison committed multiple discovery violations that prejudiced Pipeline from seeking discovery surrounding this document and caused the briefing on the instant motion.

"[T]he primary purpose of sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for its costs." *White*, 908 F.2d at 684. Here, merely awarding Pipeline limited additional discovery is not enough to deter misconduct because it would do no more than place the parties in the same positions they would have been in if Madison had timely produced the document. Therefore, some additional sanction is needed to deter similar future litigation abuse and punish the discovery violations at issue. Awarding Pipeline its reasonable attorneys' fees and expenses accomplishes that. It will also have the ancillary effect of compensating Pipeline for the resources it was forced to devote to the instant motion so that the court could decide how to handle the discovery violations at issue. The court will therefore grant Pipeline's reasonable attorneys' fees and expenses incurred in filing the instant motion.

The court declines to award Pipeline its requested fees and expenses as to "all other motions resulting from Defendants' violations." (Pls.' Mot at 5, ECF No. 462.) Such an undefined scope does not appear to be tailored to the discovery violations at issue. The relief the court is awarding is sufficient to serve the purposes for which sanctions were intended. *See White*, 908 F.2d at 685 ("[T]he limit of any sanction award should be that amount reasonably necessary to deter the wrongdoer.").

## III.    CONCLUSION

For the reasons stated above, Madison has committed multiple discovery violations. The court will not impose the substantive sanctions Pipeline has requested, but it will award Pipeline its reasonable attorneys' fees and costs incurred in filing the instant motion. In addition, the court

is prepared to allow some limited additional discovery to put Pipeline in the same position it would have been in if Madison had complied with its discovery obligations.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Sanction for Defendants' Violation of Discovery Orders and Failure to Timely Correct False Discovery Responses (ECF No. 462) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Pipeline shall submit its request for attorneys' fees and costs incurred in filing the instant motion on or before **May 10, 2019**. Its memorandum in support shall not exceed three pages. Madison may file a response on or before **May 15, 2019**, not to exceed four pages. Pipeline may file a reply on or before **May 17, 2019**, not to exceed two pages.

**IT IS SO ORDERED.**

Dated May 7, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge