**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

PIPELINE PRODUCTIONS, INC., *et al.*,      )
             )
    Plaintiffs and          )
    Counterclaim Defendants,    )
             )
    v.                  )      Case No. 15-4890-KHV-ADM
             )
THE MADISON COMPANIES, LLC, *et al.*,    )
             )
    Defendants and       )
    Counterclaimants.      )

## MEMORANDUM AND ORDER

This matter comes before the court on Defendants' Motion to Compel Production of Selected Documents Identified on Plaintiffs' Privilege Log (ECF No. 511). Defendants The Madison Companies, LLC and Horsepower Entertainment, LLC (collectively "Madison") seek production of certain communications between litigation counsel for Plaintiffs Pipeline Productions, Inc., Backwood Enterprises, LLC, OK Productions, Inc., and Brett Mosiman (collectively "Pipeline") and two witnesses whom Pipeline disclosed as both fact and non-retained expert witnesses. For the reasons explained below, the court finds that Pipeline has met its burden to demonstrate that work-product protection applies, and Madison has not met its burden to establish waiver. Madison's motion is, therefore, denied.

## I.     BACKGROUND

The case arises out of the parties' business dealings relating to the Thunder on the Mountain country music festival ("Thunder") in 2015. According to the Complaint, Pipeline is a well-known producer of live music festivals, including Thunder. Madison is a venture capital firm that was looking to invest in Pipeline's music festival business. The parties engaged in business dealings

leading up to the then-planned Thunder festival in 2015. Shortly before the festival was scheduled to occur, those business dealings fell through. This lawsuit centers around whether, when, and the extent to which the parties incurred legally binding obligations to one another before the deal fell through. Pipeline also alleges that Madison hired away key employees and partners. Pipeline asserts claims for breach of contract, breach of fiduciary duty, fraud, and tortious interference.

The communications that are the subject of the current motion are from Pipeline's litigation counsel to non-party witnesses, Todd Coder and AJ Niland, and some also include Coder's attorney. Pipeline disclosed Coder and Niland as potential fact witnesses and, later, as non-reporting expert witnesses. (ECF No. 511-2, at 3.)

Pipeline disclosed Coder as a potential fact witness because he booked artists for the 2015 Thunder festival. Pipeline also disclosed him as a non-reporting expert witness because, according to Pipeline's Rule 26(a)(2)(C) disclosures, he is "a veteran of the live music industry who has booked bands for 20 years." (*Id.*) He is expected to testify "about the deposits that promoters are required to pay to book bands, as well as how deposit amounts are dramatically increased for promoters after canceled events, when testifying about deposits paid in this case, Mosiman's ability to book bands for festivals after the cancelation of Thunder, and the effect the cancelation of Thunder had on Plaintiffs' music festival business." (*Id.*) According to Pipeline's Rule 26(a)(2)(C) disclosures, Coder's testimony will be based on his experience booking bands and dealing with promoters who have canceled events. He may testify about industry standards based on his experience dealing with the aftermath of canceled events. (*Id.*)

Pipeline later supplemented Pipeline's Rule 26(a)(2)(C) disclosures and stated that Coder would provide the following opinions:

> a. Promotors work hard to establish and maintain a reputation with artists and agencies to keep the amount they are required to

deposit when booking bands as low as possible. 10 to 25% down is an outstanding percentage.

    b. Canceling a festival can have a devastating effect on a promoter's ability to keep low deposit percentages and destroy the cash flow required to operate a festival. Percentages can be as high as 90 to 100% down after cancelation;

    c. The cancelation of Thunder has likely made it difficult for Mr. Mosiman to put on festivals going forward;

    d. Regardless of the language on a ticket, it is industry standard to reimburse ticket holders for the price they paid for their tickets to a cancelled festival; and

    e. Fans who purchased tickets to Thunder should be reimbursed for the amount they paid.

(ECF No. 511-3, at 2-3.)

Pipeline disclosed Niland as a potential fact witness because he previously discussed music festival joint ventures with Madison, and Niland "witnessed the fallout" after Thunder's cancelation. Pipeline's Rule 26(a)(2)(C) disclosures describe him as "a veteran of the live music industry who has created, produced and marketed several highly regarded music festivals." (ECF No. 511-2, at 2.) According to Pipeline, Niland will testify about his own experiences in the music-festival business, including canceling his own festival "when testifying about the effect Thunder's cancelation had on Plaintiffs' music festival business." (*Id.* at 3-4.)

Underlying the current motion are Madison's Request for Production ("RFP") Nos. 63 and 64. These RFPs sought "[a]ll documents Plaintiffs provided" to Coder and Niland. (ECF No. 470-2, at 10.) Pipeline responded, objecting to RFP Nos. 63 and 64 as "seeking documents protected from disclosure by the work product doctrine." (*Id.*)

This is Madison's third discovery motion related to RFP Nos. 63 and 64. Madison previously moved to compel Pipeline to provide a privilege log for documents withheld in response to RFP Nos. 63 and 64, which the court granted. *See Pipeline Prods. v. The Madison Cos.*, No. 15-4890-KHV, 2019 WL 1304428, at *8 (D. Kan. Mar. 21, 2019). After Pipeline served its privilege log, Madison moved to compel production of the logged documents, which the court

denied without prejudice.  *See Pipeline Prods., Inc. v. Madison Companies, LLC*, No. 15-4890-KHV, 2019 WL 2106111, at *4 (D. Kan. May 14, 2019).  In denying the motion, the court found that Madison's briefs largely confused attorney-client privilege with work-product protection, and therefore set forth incorrect legal standards and inapplicable arguments.  *Id*. at *3 (explaining that Madison had set forth the legal standard for waiver of attorney-client privilege, not work-product protection).  The court noted that the logged communications appeared to meet at least the basic the elements of attorney work product but that Madison's failure to raise any applicable legal standard in its opening brief resulted in Pipeline responding to inapplicable arguments.  *Id.*  The court directed Pipeline to serve a revised privilege log and granted Madison leave to file a renewed motion to compel.  *Id.* at *4.

Pipeline served its revised privilege log.  It includes communications from Pipeline's counsel to Niland and Coder, some also including Coder's attorney.  (ECF No. 511-1.)  Madison states that it does not seek documents that relate to nothing more than setting or changing meeting dates, times or locations.  Madison says this includes Entry Nos. 21-24, 30-31, 39-40, 51-52, 57, 65-66, 90-106, 110-111, 113-117, 123, 127-128,[1] 132-136, 138, 140-142, and 144-158.  (ECF No. 511, at 2.)  Madison also does not seek communications that merely attach documents Pipeline previously produced, which Madison says include Entry Nos. 68-84, and potentially 85.  (*Id.*)  Madison characterizes the remainder of the entries as involving substantive communications, and Madison moves to compel those.  Madison divides these documents into two main categories: (1)

---

[1] Entry No. 128 is a text message from McInnes to Niland regarding "draft opinions discussed re: non-retained witness' expert disclosures" and would appear to fit into the category Madison seeks to compel—documents involving Pipeline's non-retained expert witness disclosures. However, because Madison states that it does not seek to compel production of this entry, the court will not include it in the discussion of these materials.

those involving Pipeline's non-retained expert witness disclosures, which Madison says include Entry Nos. 5-9, 53-56, 58, 61, 107-109, 112, 118-122, 129-131, 137, 139, and 143[2]; and (2) those involving preparing and making changes to affidavits, which Madison says include, as examples, Entry Nos. 10-13, 32-38, and 41-49. (*Id.*) Madison also seeks to compel other communications but does not separately address them. These include emails regarding depositions, opposing counsel, and subpoenas; text messages regarding calls from opposing counsel, follow-up calls, the date of a deposition, speaking with the witness and/or counsel; and a Dropbox document. (ECF No. 511-1, Entry Nos. 1-3, 14-20, 25-29, 50, 60, 62-64, 67, 85-89, and 124-126.)

## II. THE SUBJECT DOCUMENTS ARE PROTECTED WORK-PRODUCT

Federal law governs application of the work-product doctrine in federal court. *See Frontier Ref. Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998). The doctrine was first recognized in *Hickman v. Taylor*, 329 U.S. 495, 509-11 (1947). It is a practical doctrine that is grounded in the realities of litigation in our adversary system because, when an attorney performs his or her various duties, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510. The doctrine was subsequently incorporated into Federal Rule of Civil Procedure 26(b)(3). It provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3). The

---

[2] Entry Nos. 4 and 60 also appear to fall into this category, although Madison does not identify them as such. The privilege log states that Entry No. 4 is an email regarding "non-retained witness expert disclosures." Entry No. 60 is a text message regarding "speaking with witness and counsel, specific opinions re: non-retained expert witnesses' disclosures." (ECF No. 511-1, at Entry Nos. 4 and 60.)

court interprets the doctrine under both *Hickman* and Rule 26(b)(3). *In re Qwest Commc'ns Int'l, Inc.*, 450 F.3d 1179, 1186 (10th Cir. 2006).

The party asserting work-product protection bears the burden to demonstrate that it applies. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1185 (10th Cir. 2010); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984). In order to establish work-product protection, the party must show that (1) the materials sought are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party. FED. R. CIV. P. 26(b)(3); 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2024 (3d ed. 2019).

Pipeline's privilege log and brief establish that the subject documents meet these elements. First, the privilege log entries are all for documents. Second, they were all created while litigation was underway, and the record shows that they concern this litigation. Third, the documents were all created by Pipeline's litigation counsel, who is a party representative.

Madison's only argument that Pipeline has not met its burden to establish work-product is a cursory statement in a footnote that Pipeline's "new privilege log is insufficient because it contains no evidence, and evidence is required for work product as well as privilege objections." (ECF No. 511, at 1 n.1.)[3] But Madison does not identify what additional "evidence" should be required. Pipeline's privilege log and brief demonstrate all three elements set forth above. The court therefore rejects Madison's argument about the sufficiency of Pipeline's evidence.

---

[3] The court rejected a similar argument in its previous order denying Madison's motion to compel without prejudice. *Pipeline*, 2019 WL 2106111, at *2 ("But the proper inquiry is whether Pipeline made the showing necessary to support its work-product claim, not necessarily the format by which Pipeline makes the showing. Here, the documents at issue were all created by the same attorney who signed Pipeline's response brief. In this context, it makes little difference whether his representations are presented in an affidavit or in the brief itself.").

## III.    MADISON HAS NOT MET ITS BURDEN TO SHOW WAIVER

Madison's arguments primarily focus on the issue of waiver.  Once the party objecting to discovery establishes that the materials are protected work product, the burden shifts to the party asserting waiver to establish that a waiver has occurred.  *See Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 379 & n.10 (5th Cir. 2010); *see also In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL, 2017 WL 2555834, at *3 n.28 (D. Kan. June 13, 2017); *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000) (in contrast to the attorney-client privilege, "a party asserting work-product immunity is not required to prove non-waiver"); *see also Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 899 (N.D. Ill. 2018) ("Where work product is claimed, the party asserting waiver has the burden to show that a waiver occurred."); *United States Sec. & Exch. Comm'n v. Herrera*, 324 F.R.D. 258, 262 (S.D. Fla. 2017) (after the party asserting work-product protection meets its initial burden, "the burden shifts to the party asserting waiver"); *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 467 (N.D. Tex. 2016) ("Unlike the attorney-client privilege, the burden of proving waiver of work product immunity falls on the party asserting waiver.").

Madison contends that Pipeline waived work-product protection by: (1) voluntarily disclosing materials to Coder and Niland because they are nonparties; (2) designating them as non-retained expert witnesses; (3) refreshing their recollections with protected material; and (4) allowing Madison's counsel to question these witnesses about their communications with Pipeline's counsel.[4]  The court evaluates these arguments exactly as Madison has raised them—specifically, whether Pipeline effected a blanket waiver of work-product protection as to all of the

---

[4] Madison characterizes its motion as raising only the first two waiver grounds.  (ECF No. 511, at 1-2.)  However, Madison makes additional arguments in the body of its brief, each of which trigger different legal frameworks.  Because of this, the court addresses each argument separately.

documents in question based solely on the broad-brush, categorical legal principles asserted by Madison. Construed as such, the court cannot find waiver. Madison largely overlooks key governing legal principles, many of which trigger different waiver analyses that Madison also has not addressed. And this is especially problematic because Madison has not addressed potentially meaningful distinctions amongst the individual privilege log entries themselves, and the court will not parse through the individual documents in any more granular detail than Madison has. Thus, for the reasons explained below, Madison has not met its burden to establish waiver.

### A. Pipeline's Voluntary Disclosure to Coder and Niland

Madison's broadest argument is that Pipeline waived any work-product protection by voluntarily disclosing documents to two nonparties. This is the same underdeveloped argument the court previously considered and rejected. *Pipeline*, 2019 WL 2106111, at *3. As the court explained then, although voluntary disclosure waives the attorney-client privilege, it does not necessarily waive work-product protection. *United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010). Rather, the court generally considers whether the voluntarily disclosure was "to an adversary or a conduit to an adversary[.]" *Id.* at 40.

The rationale for this general waiver rule is simple: "[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). So "[i]n the context of work product, the question is not, as in the case of attorney-client privilege, *whether* confidential communications are disclosed, but to *whom* the disclosure is made—because the protection is designed to protect an attorney's mental processes from discovery by *adverse* parties." *United States Securities & Exchange Comm'n v. Herrera*, No. 17-20301, 324 F.R.D. 258, 262 (S.D. Fl. 2017).

Madison still conspicuously avoids discussing whether Coder and Niland were adversaries or conduits to adversaries. Clearly, they are not. They were coordinating with Pipeline's litigation efforts. Madison has now had the opportunity to establish waiver via voluntary disclosure to a non-party adversary (or conduit to an adversary)—twice—and this time Madison had the benefit of the court's prior guidance on this issue. Instead of addressing the governing legal standard, Madison continues to insist that *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006), stands for the broader proposition that *any* voluntary release constitutes a waiver. The court rejected this argument previously and rejects it again now. In *Grace United Methodist Church*, the court found waiver because the plaintiff voluntarily produced a document *to its adversary* in litigation. 451 F.3d at 664, 668. The Tenth Circuit reiterated this in *In re Qwest Communications International, Inc.*, where the court recognized that *Grace United Methodist Church* involved production of work-product material in discovery, 450 F.3d 1179, 1186 (10th Cir. 2006)—*i.e.*, to an adversary. Likewise, the Tenth Circuit in *In re Qwest* noted Qwest had waived work product for materials it released to federal government agencies that were investigating Qwest, 450 F.3d 1179, 1181-82, 1186 (10th Cir. 2006)—*i.e.*, again, adversaries. The court also recognized prior Tenth Circuit case law that indicates work-product is affected "when a disclosure is *to an adversary*." *Id.* (emphasis added) (citing *Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1272 (10th Cir. 1999)).

Madison also overlooks the fact that one of the two main categories of documents it seeks is classic work-product—draft non-party affidavits and communications with counsel relating to those draft affidavits. *See, e.g.*, *Booth v. Galveston County*, No. 3:18-CV-00104, 2018 WL 5276265, at *4 (S.D. Tex. Oct. 10, 2018) (collecting cases); *Schoenmann v. FDIC*, 7 F. Supp. 3d 1009, 1014 (N.D. Cal. Jan. 6, 2014) (same); *Randleman v. Fid. Nat. Title Ins. Co.*, 251 F.R.D. 281,

285 (N.D. Ohio 2008) (observing that the majority rule "is to consider draft affidavits and communications with counsel relating to affidavits as covered by the attorney work product doctrine"); *see also, e.g.*, *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities, LLC*, No. 08-01789, 2017 WL 4685525, at \*4-\*5 (S.D.N.Y. Oct. 17, 2017) (finding drafts of Bernard Madoff's declaration prepared by his sister-in-law's husband's attorney were protected work product).

Several of Pipeline's privilege log entries fall into this category. Madison itself identifies Entry Nos. 10-13, 32-38, and 41-49 as examples of documents involving preparing and making changes to affidavits. Entry No. 10 is for a PDF prepared by Pipeline's counsel and sent to Coder, and the file name indicates that it is Coder's revised affidavit. Entry Nos. 9-12 are emails from McInnes to Coder with copies of a revised version of Coder's affidavit, including a redline version prepared by McInnes. Multiple other entries are for text messages between McInnes and Coder concerning the draft affidavit. (ECF No. 511-1, Entry Nos. 32-38, 41-43.) These entries not only reveal back-and-forth between McInnes and Coder as the affidavit evolved, but they also include McInnes's proposed modifications.

These affidavit materials are clearly work-product covered by Rule 26(b)(3)(A). As such, the applicable waiver standards are set forth in Rules 26(b)(3)(A) and (B). *See Frontier*, 136 F.3d at 704 (finding the district court erred in finding at-issue waiver without applying the Rule 26(b)(3) substantial need/undue burden test). Madison could potentially discover factual work product within these materials upon showing a "substantial need for the materials to prepare its case" and that it "cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii). And even greater protection is given to opinion work product that contains "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or

other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B); *see In re Qwest*, 450 F.3d at 1186 ("Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances."); *see also Frontier*, 136 F.3d at 704 n.12 (recognizing that a heightened showing is required to obtain core work product but declining to articulate a test). But despite these governing waiver principles, Madison does not even mention the Rule 26(b)(3)(A) substantial need/undue burden standard or the distinction in waiver standards between fact and opinion work product, which is separately governed by Rule 26(b)(3)(B).

In short, Madison's waiver-by-voluntary-disclosure-to-a-nonparty argument is the same legally unsupported and underdeveloped waiver argument that the court previously rejected. Madison also overlooks the body of case law extending work-product protection to the very types of documents Madison seeks to compel. And Madison ignored the governing waiver standards under Rule 26(b)(3)(A) and (B), including any distinctions between factual work product versus opinion work product. Madison has therefore failed to meet its burden to show that Pipeline waived work-product protection by virtue of voluntary disclosure to Coder and Niland.

**B. Designating Coder and Niland as Non-Retained Expert Witnesses**

Madison also argues Pipeline waived work product as to counsel's communications with Coder and Niland by designating them as non-reporting experts. Specifically, Madison advocates a per se rule that "communications between a party's counsel and such non-retained experts are discoverable." (ECF No. 511, at 2.) The court certainly recognizes that communications between a party's counsel and non-retained experts may be discoverable in certain circumstances. But Madison's problem here is that it raises the argument in a categorical and cursory fashion, seeking

a broad waiver as to all of the documents, which Madison clearly is not entitled to. Madison has overlooked a myriad of governing legal principles. The court addresses these below.

### 1. Waiver by designation

Madison's sole basis for its argument that Pipeline waived work-product protection by designating these individuals as non-reporting experts is the fact that Rule 26 was amended in 2010 to extend work-product protection to certain communications between a party's attorney and a reporting expert. *See* FED. R. CIV. P. 26(b)(4)(C). Madison notes that this amendment did not likewise extend work-product protection to counsel's communications with non-reporting experts like Coder and Niland. Madison reasons that, because this rule does not protect counsel's communications with non-reporting experts, no such protection exists. (ECF No. 511, at 2-3.)

Madison's argument is contrary to the 2010 advisory committee notes. Those notes explain that although the amended rule does not expressly cover non-reporting experts, it "does not exclude protection under other doctrines, such as privilege or independent development of the work-product doctrine." FED. R. CIV. P. 26(b)(4) advisory committee's note to the 2010 amendments. The seminal case that first analyzed this issue after the 2010 amendments was *United States v. Sierra Pacific Industries*, No. Civ S-09-2445, 2011 WL 2119078, at *1 (E.D. Cal. May 26, 2011). There, the court considered the background behind this aspect of the 2010 amendments and concluded that, although Rule 26(b)(4) does not expressly provide protection for communications between non-reporting experts and counsel, it does not disturb any existing protections, such as the common law. *See id.* at *5-*7 ("It is clear that the amended rule neither created a protection for communications between counsel and non-reporting expert witnesses, nor abrogated any existing protections for such communications."). Yet Madison does not articulate what common law waiver standard it contends applies to counsel's communications with Coder and Niland by

virtue of Pipeline designating them as non-reporting experts. For that reason alone, Madison has failed to meet its burden to establish waiver.

The court further notes that it is unpersuaded by Madison's argument that Pipeline's designation of Coder and Niland as non-reporting expert witnesses necessarily resulted in automatic waiver. The court in *Sierra Pacific* explained that the Federal Rules committee "did not intend that such communications with non-reporting expert witnesses be discoverable in all cases." *Id.* at *7. Consequently, courts have largely declined to adopt a bright-line rule that designating an individual as a non-reporting expert results in automatic waiver. For example, the court in *Sierra Pacific* declined "to hold that designating an individual as a non-reporting expert witness waives otherwise applicable privileges and protections in all cases, or even for all cases involving non-reporting employee expert witnesses." *Id.* at *8-*10; *see also, e.g.*, *Garcia v. Patton*, No. 14-CV-01568-RM-MJW, 2015 WL 13613521, at *4 (D. Colo. July 9, 2015) (finding waiver "in this particular case"); *PacifiCorp v. Nw. Pipeline GP*, 879 F. Supp. 2d 1171, 1213 (D. Or. 2012) (observing that, in *Sierra Pacific*, "the Court fashioned a somewhat flexible rule about the effect of designating a non-reporting witnesses, based on policy considerations voiced during the debate over the 2010 amendments"); *City of Wyoming, Minn. v. Procter & Gamble Co.*, No. 15-CV-2101 (JRT/TNL), 2019 WL 245607, at *5 (D. Minn. Jan. 17, 2019) ("[D]esignating an individual as Rule 26(a)(2)(C) expert may not waive any and all protections in every case and under all circumstances."). Thus, even courts that have found waiver have not applied a per se waiver rule.

*Sierra Pacific* is a persuasive example of the type of thoughtful analysis that should govern the determination of whether work-product protection is waived for communications between counsel and non-reporting experts. *Sierra Pacific* involved damages caused by a fire. 2011 WL 2119078, at *1. The non-reporting experts (White and Reynolds) investigated the fire and

prepared an origin and cause report. *Id.* The United States later designated them as experts. *Id.* The court found this waived work-product protection, but only after the court first considered the policy reasons as to why the 2010 amendments to Rule 26(b)(4)(B) do not cover non-reporting experts. *Id.* at \*7-\*10. "The committee recognized that the term 'non-reporting' encompassed a varied class of experts who present unique policy considerations." *Id.* at \*9. The court focused on advisory committee meeting notes that suggested the committee did not want to protect communications with "accident investigators" or "employee expert[s]" who are "important fact witness[es]." *Id.* at \*10. In that case, White and Reynolds were just that—employees (current and former) and fire investigators who were important fact witnesses with first-hand knowledge about the cause of the fire. *Id.*

Unlike in *Sierra Pacific*, Madison does not advance any policy reasons that would shed light on where Coder and Niland fall among the spectrum of non-reporting experts, which encompass "a varied class of experts who present unique policy considerations." *Id.* at \*9. Unlike the experts in *Sierra Pacific*, Coder and Niland are not and never were party employees. Furthermore, they do not appear to be particularly important fact witnesses in the grand scheme of this lawsuit. Instead, they appear to have tangential factual knowledge based on the record presented to the court. There is certainly not a sufficient record from which the court could find that they are like the important employee accident investigators opining on the key issue of causation, as was the case in *Sierra Pacific*. The court therefore cannot tell from the record whether policy reasons favor of treating them more like employee witnesses with important factual knowledge or more like reporting experts whose testimony would be more akin to that of an industry expert opining on damages. If the latter, then counsel's communications with them would have been protected under Rule 26(b)(4)(C) if Pipeline had simply paid them $1 and formally

"retained" them.  Madison does not discuss any of these policy considerations as they relate to Coder and Niland, but instead relies on a per se waiver rule that is erroneous as a matter of law. Madison has therefore failed to meet its burden to establish waiver under *Sierra Pacific* or similar case law because it has not advanced any cogent policy argument or established a record from which the court could find that policy considerations weigh in favor of waiver.

### 2.  Scope of the waiver sought

Madison's waiver argument is further complicated (and undermined) by the broad scope of documents Madison seeks.  Madison does not distinguish among the logged documents.  This missing distinction is significant because the main category of documents is related to communications involving "non-retained expert disclosures" or similar expert communications that may be separately protected under Rule 26(b)(4)(B).  According to Madison, these are reflected in Entry Nos. 5-9, 53-56, 58, 61, 107-109, 112, 118-122, 129-131, 137, 139, and 143 of Pipeline's privilege log.  This category also likely includes Entry Nos. 4 and 60, which contain similar descriptions.  As to these documents, Madison has overlooked an important Federal Rule.

This category of documents relates to non-reporting expert witness disclosures pursuant to Rule 26(a)(2)(C).  Drafts of such disclosures are entitled to work-product protection the same as draft reports for reporting experts.  Specifically, Rule 26(b)(4)(B) provides protection for "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded."  FED. R. CIV. P. 26(b)(4)(B).  This rule "provides work product protection for drafts under either Rule 26(a)(2)(B) [for reporting experts] or Rule 26(a)(2)(C) [for non-reporting experts]. . . . It also applies to drafts of any supplementation under Rule 26(e)."  FED. R. CIV. P. 26(b)(4) advisory committee's note to the 2010 amendment.  Drafts of non-reporting expert witness disclosures are therefore protected work product.  *See City of Wyoming*, 2019 WL 245607,

at *7; *Cadence Education, LLC*, 2018 WL 2926442, at *2 n.7; *Soukhaphonh v. Hot Topic, Inc.*, No. CV 16-5124-DMG, 2017 WL 10378493, at *5 (C.D. Cal. Sept. 14, 2017); *Republic of Ecuador v. Bjorkman*, No. 11-cv-01470, 2012 WL 12755, at *4 (D. Colo. Jan. 4, 2012).

Even courts that have found waiver have not extended waiver to these types of documents. For example, there was no suggestion in *Sierra Pacific* or *Garcia v. Patton* (another case Madison cites[5]) that the moving party was seeking to compel Rule 26(a)(2)(C) draft expert disclosures. And, in *City of Wyoming, Minnesota*, the court found waiver via a party's designation of an expert but still made clear that documents relating to draft expert disclosures were separately protected because Rule 26(b)(4)(B) shields draft expert disclosures and reports "regardless of [the expert's] designation under Rule 26(a)(2)(C)." 2019 WL 245607, at *7; *see also Luminara Worldwide, LLC v. Liown Elecs. Co.*, No. 14CV03103SRNFLN, 2016 WL 6774229, at *5 (D. Minn. Nov. 15, 2016) (scope of waiver implicated by designating an individual as a non-reporting expert extends to documents and information the expert considered in connection with the proposed testimony); *PacifiCorp*, 879 F. Supp. 2d at 1213 (same).

The rule does not define what constitutes a draft, and the few courts that have addressed this issue have largely done so in the context of draft expert reports. *See, e.g.*, *Salazar v. Ryan*, No. CV-96-00085-TUC-FRZ, 2017 WL 2633522, at *2 (D. Ariz. June 19, 2017) (recognizing the lack of case law). Determining whether a document constitutes a "draft" for purposes of Rule 26(b)(4)(B) protection is a fact-specific inquiry. *Id.* In making this determination, "the label

---

[5] Madison's reliance on *Cadence Education, LLC v. Vore*, 17-CV-2092-JWB-TJJ, 2018 WL 2926442, at *1 (D. Kan. June 7, 2018), is also misplaced. There, the court considered whether a hybrid fact and expert witness was required to provide a written report under Rule 26(a)(2)(B) and therefore whether Rule 26(b)(4)(C) applies to protect attorney-expert communications. *Id.* at *2. The court did not reach the issue of whether a party waives work-product protection by designating a non-reporting expert, so that case is inapposite here.

attached to the underlying document is not necessarily determinative, as the rule applies to drafts, regardless of the form of the draft." *In re Nat'l Hockey League Players' Concussion Injury Litig.*, No. MDL142551SRNJSM, 2017 WL 684444, at *1 (D. Minn. Feb. 21, 2017); *see also Deangelis v. Corzine*, No. 1:11-CV-07866-VM-JCF, 2016 WL 93862, at *3 n.5 (S.D.N.Y. Jan. 7, 2016) ("[I]t is the substance of the document and the circumstances of its creation, not its label, that dictate whether it is, in fact, a draft."). When determining whether documents constitute a draft, it is helpful to consider whether the documents were created for the purpose of including information in the final report and whether the final report actually included that information. *Salazar*, 2017 WL 2633522, at *2 (addressing the issue in the context of draft expert reports). However, the draft may or may not include information contained in the final disclosure or report, given the nature of the drafting process. *Deangelis*, No. 2016 WL 93862, at *3 n.7 ("[T]he very nature of a draft [is] to change through the addition and/or subtraction of material." (internal quotations omitted)). Afterall, "[a] rule that shields draft reports while requiring the disclosure of material excluded from the final report would be self-defeating." *Id.*

It appears that at least some of the documents Madison seeks to compel include some form of draft disclosures that Rule 26(b)(4)(B) protects as work product. Not only does Madison expressly identify this category of documents as "'non-retained witness' expert disclosure' or similar expert communications" (ECF No. 511, at 2), but the dates of many of these documents coincide with Pipeline's Rule 26(a)(2)(C) disclosures and subsequent Rule 26(e) supplementation. Pipeline served those disclosures on September 19, 2018, and a supplemental disclosure via email on October 17, 2018. Several of the documents on Pipeline's privilege log consist of emails and text messages communications from McInnes to Coder or Niland regarding "non-retained witness' expert disclosures" on or shortly before those dates. (ECF No. 511-1, Entry Nos. 4-8, 53-55, 118-

17

121, 129-130.) That category of documents includes emails from McInnes to Coder and/or Coder's attorney (sent the day before McInnes served his supplemental disclosure) containing the subject line, "Specific opinions." (ECF No. 511-1, Entry Nos. 4-9.) Based on these descriptions alone, it appears these communications may have formed the basis for Pipeline's supplemental disclosures served the following day and would be protected under Rule 26(b)(4)(B).

Moreover, materials covered by Rule 26(b)(4)(B) trigger the general work-product protections set forth in Rule 26(b)(3)(A) and (B). FED. R. CIV. P. 26(b)(4)(B) ("Rules 26(b)(3)(A) and (B) protect drafts . . . ."). Madison can therefore obtain discovery of these materials only by showing "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent." *See* FED. R. CIV. P. 26(b)(4)(B); FED. R. CIV. P. 26(b)(3)(A)(ii). The advisory committee indicated that it "will be rare for a party to be able to make such a showing given the broad disclosure and discovery otherwise allowed regarding the expert's testimony." FED. R. CIV. P. 26(b)(4)(B), advisory committee's note to the 2010 amendment. As mentioned previously, Madison does not even mention the "substantial need" standard, let alone make the required showing. And even if Madison had, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories" of the attorney. FED. R. CIV. P 26(b)(3)(B). This would likely constitute much of the information contained within the documents—all of which were authored by Madison's counsel.

Again, Madison has failed to meet its burden to establish waiver. The main category of documents Madison seeks trigger analysis of Rule 26(b)(4)(B) and associated waiver rules—issues that Madison does not even address.

### C. Refreshing a Witness's Recollection

Madison also argues that Pipeline waived work-product protection by presenting materials to Coder and Niland "possibly to influence their upcoming testimony." (ECF No. 511, at 7.) Madison cites case law applying FED. R. EVID. 612, which applies to writings used to refresh a witness's recollection. The rule requires a proponent of discovery to meet three conditions before it may obtain documents relied upon by a witness prior to testifying: (1) the witness must use the document to refresh his or her memory; (2) the witness must use the document for the purpose of testifying; and (3) the court must determine that production is necessary in the interests of justice. *Sporck v. Peil,* 759 F.2d 312, 317 (3d Cir. 1985); *Northern Natural Gas Co. v. Approximately 9117.53 acres in Pratt, Kingman, and Reno Ctys., Kan.*, 289 F.R.D. 644, 650 (D. Kan. 2013). Madison fails to cite Rule 612, much less attempt to satisfy any of these three requirements. To the contrary, the deposition excerpts Madison submitted indicate that these individuals largely testified about industry standards based on their personal knowledge. Coder separately testified that he relied on conversations with Mosiman to testify about the effects of Thunder's cancelation on Pipeline. Because Madison failed to show that the deponents used these documents to refresh their recollection, relied on the documents when testifying, or that that the interests of justice favor production, Madison has not shown that Rule 612 requires production.

### D. Waiver by Disclosure During Deposition

The closing paragraph of Madison's motion argues that Pipeline "further waived whatever privilege might otherwise have existed by permitting deposition examination as to communications with plaintiffs' counsel." (ECF No. 511, at 7.) Madison cites no legal authority in support of this proposition, and it cites only generally to portions of Coder's deposition in which Madison's counsel questioned Coder about his general communications with Pipeline's counsel.

Madison is correct that work-product protection may be waived by voluntary release of protected materials to an adversary. *See Grace*, 451 F.3d at 668. However, for waiver to apply, the disclosed information must be protected. Coder's testimony does not reveal any privileged or work-product-protected information. Rather, Coder testified that he had conversations with counsel prior to the deposition that included both Coder's recollection of case-related events and the logistics concerning testifying at trial. (Coder Dep. 14:13-16:11, ECF No. 511-4.) Nothing in his testimony revealed any legal advice, strategy, mental impressions, or opinions of counsel. Therefore, there is no waiver based on Coder's deposition testimony.

## IV.    CONCLUSION

The court therefore denies Madison's motion to compel. Pipeline has established the documents constitute work product. Madison has not come forward with any meritorious waiver theory. Madison overlooked important issues of law, considerations that apply to the different categories of documents on the privilege log, and the associated burdens Madison must meet to establish waiver. The court recognizes that Pipeline's privilege log contains other entries not pertaining to affidavits or expert disclosures—matters that may not implicate mental impressions or draft disclosures. However, Madison has lumped the documents together and addressed them categorically without raising any arguments directed to individualized documents or smaller subsets of materials. The court will not come up with more particularized arguments and spring them on Pipeline, thus depriving Pipeline of a fair opportunity to respond.

## V.    REASONABLE EXPENSES

Because the court denies the motion in full, it must consider whether to award Pipeline its reasonable expenses, including attorneys' fees, incurred in responding to this motion. *See* FED. R. CIV. P. 37(a)(5)(B) (requiring the court to impose fees unless "the motion was substantially justified or other circumstances make an award of expenses unjust"). Litigating whether fees and

expenses are warranted and, if so, the appropriate amount, often results in the parties spending as much time and resources as they did litigating the underlying discovery motion.  For this reason, the court orders that by **September 4, 2019**, Pipeline shall file a notice informing Madison and the court whether it intends to seek fees.  If Pipeline intends to seek fees, the notice shall provide the dollar amount Pipeline seeks.  Thereafter, the parties must confer to attempt reach agreement regarding the issue of fees and expenses.  If necessary, Pipeline must file its motion seeking fees by **September 18, 2019**.  Madison's response brief is due **September 25, 2019**, and Pipeline's reply brief is due **October 2, 2019**.  Pipeline's motion and Madison's response brief are limited to five pages each.  Pipeline's reply brief is limited to three pages.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Production of Selected Documents Identified on Plaintiffs' Privilege Log (ECF No. 511) is denied.

**IT IS SO ORDERED.**

Dated August 22, 2019, at Topeka, Kansas.

<u>s/ Angel D. Mitchell</u>
Angel D. Mitchell
U.S. Magistrate Judge