# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., *et al.*, | ) |
| Plaintiffs and Counterclaim Defendants, | ) ) ) |
| v. | ) Case No. 15-4890-KHV-ADM |
| THE MADISON COMPANIES, LLC, *et al.*, | ) ) |
| Defendants and Counterclaimants. | ) ) |

## **MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiff Pipeline Productions, Inc., Backwood Enterprises, LLC, OK Productions, Inc., and Brett Mosiman's (collectively "Pipeline") Motion for Leave to Amend Complaint (ECF No. 552). Pipeline asserts claims in this lawsuit against The Madison Companies, LLC and Horsepower Entertainment, LLC (collectively "Madison"). Pipeline now seeks leave to file a Second Amended Complaint that adds KaabooWorks, LLC, KaabooWorks Services, LLC, Kaaboo Del Mar, LLC, and Wardawgs (collectively, the "Kaaboo entities") as defendants. The Kaaboo entities are related to Madison as part of the same corporate family. Pipeline seeks to assert a tortious interference claim against the Kaaboo entities and also seeks to hold them liable for Pipeline's claims against Madison under successor liability theories. Madison argues the court should deny the motion because Pipeline unduly delayed in seeking to amend, Madison would be unduly prejudiced by the late amendments, and the amendments are futile. As explained below, the court finds no valid grounds to deny the motion given the liberal standards governing leave to amend, the procedural posture of this case, and the gist of Madison's futility arguments. Pipeline's motion is therefore granted.

I.     BACKGROUND

Pipeline asserts claims against Madison for breach of contract, breach of fiduciary duty, fraud, and tortious interference arising from the parties' business dealings relating to the Thunder on the Mountain country music festival ("Thunder") in 2015. (Pretrial Order, ECF No. 477 ¶ 4(a)(1)-(4), at 18-20.) Pipeline alleges that it formed a joint venture with Madison to put on Thunder but shortly before the festival was scheduled to occur, Madison pulled out. Pipeline contends this "left [Pipeline] holding the bag for all artist payments and festival expenses" and, furthermore, that Madison tried to further destroy Pipeline's business, reputation, and financial condition by hiring away Pipeline's partners and employees. (*Id.* at 14-15.) Because of this, Pipeline claims that it was unable to provide ticket refunds, had to divert funds to other businesses, and effectively destroyed Pipeline's festival-related businesses. (*Id.*) Meanwhile, Pipeline contends that Madison tried to make its entities "judgment proof by scheming and 'transitioning' their interests, assets, and businesses to other entities in the hopes of preventing Plaintiffs from obtaining fair and just remuneration." (*Id.*)

This case has an unusually protracted procedural history. Pipeline filed suit on May 21, 2015. (ECF No. 1.) Madison promptly moved to dismiss for failure to state a claim or, alternatively, to transfer to the District of Delaware, where a related case was pending. (ECF No. 6.) The case was then tied up with motion practice relating to issues in the Delaware litigation, and Madison's related motion to stay the proceedings. (ECF Nos. 16, 20.) On February 22, 2017, U.S. District Judge Kathryn H. Vratil denied Madison's motion to dismiss or transfer. (ECF No. 37.) Madison then moved for reconsideration of the order, which the district judge denied on April 27, 2017. (ECF Nos. 46, 50.)

Meanwhile, the previously assigned Magistrate Judge K. Gary Sebelius set this case for a scheduling conference on February 15, 2017. (ECF No. 33.) But the court postponed the scheduling conference at Pipeline's request because it was in the process of securing new counsel. (ECF Nos. 34.) After Pipeline's new counsel entered his appearance, Pipeline was granted leave to file an amended complaint that included new allegations and added fraud and tortious interference claims. (ECF No. 56.) On June 21, 2017, Pipeline moved to compel Madison to participate in a Rule 26(f) conference and begin discovery. (ECF No. 57.) Madison promptly filed another motion to dismiss (this time, directed at the amended complaint) and opposed Pipeline's discovery motion because its second motion to dismiss was pending. (ECF No. 58, 59.) At Madison's request, Magistrate Judge Sebelius stayed discovery pending the district court's determination of Madison's motion to dismiss. (ECF No. 61.) On October 11, 2017, the district judge largely denied Madison's motion to dismiss. (ECF Nos. 59, 64.) In doing so, the court ordered Magistrate Judge Sebelius to expedite pretrial proceedings. (ECF No. 64.)

Magistrate Judge Sebelius conducted the initial scheduling conference on January 5, 2018 (ECF No. 88)—over two and a half years into the case. The court set a discovery deadline of August 31, 2018, and a pretrial conference in September of 2018. (*Id.*) Discovery disputes ensued almost immediately. Without belaboring the minutiae, suffice it to say for purposes of the present motion that many of these discovery disputes centered around Pipeline's attempts to obtain discovery from and regarding Madison's related business entities, including the Kaaboo entities. These included Pipeline's motions to compel Madison to respond to certain requests for production ("RFPs"), Madison's motions for protective order(s) limiting Pipeline's Rule 30(b)(6) topics, and multiple telephone calls to the court during depositions. According to Pipeline, Madison was "never more obstinate than when it came to Kaaboo-related discovery." (ECF No. 552, at 2.)

Magistrate Judge Sebelius largely ruled in favor of Madison on these issues in June, July, and October of 2018. (ECF Nos. 195, 203, 314.) So, Madison was successful in preventing Pipeline from obtaining discovery regarding the Kaaboo entities during the original discovery period. After a series of extensions, discovery closed on December 31, 2018, with several motions outstanding.

Pipeline moved to amend on December 4, 2018. (ECF No. 335.) According to Pipeline, it did the best it could with discovery stalled regarding the relationship between Madison and the Kaaboo entities, which Pipeline contends remained "shrouded" at that time. (ECF No. 552, at 3.) Pipeline sought to add as defendants Kaaboo LLC; KaabooWorks Services, LLC; Wardawgs, LLC; Bryan Gordon (who had been previously dismissed from this suit); Rob Walker; and 25 Doe defendants. The proposed pleading sought to assert claims of fraudulent transfer, alter ego/piercing the corporate veil, and it sought to add the Kaaboo entities to its tortious interference claim. On March 6, 2018, Judge Sebelius denied the motion to amend, largely based on Pipeline's failure to establish good cause to extend the scheduling order deadline for motions to amend, which was April 15, 2018. (ECF No. 421, at 4-7.) Judge Sebelius found that "the key factual allegations giving rise to plaintiffs' proposed amendments were known to plaintiffs by the summer of 2018, at the latest." (*Id.* at 5.) Because the good cause analysis is similar to the Rule 15(a) undue delay analysis, Judge Sebelius also found that Pipeline had unduly delayed. (*Id.* at 8.) And he found that Madison would be unduly prejudiced because of the procedural posture of the case. (*Id.* at 8-9.) By that time, discovery was closed. The court reasoned that plaintiff's suggestion that all discovery on the new issues could be completed in two months was unrealistic, and that Pipeline's proposed amendment to include Doe defendants foreshadowed yet *another* amended pleading formally naming them, causing "significant additional delays." (*Id.* at 9.) With discovery

ostensibly closed, the undersigned convened a pretrial conference and entered a pretrial order on April 30, 2019. (ECF No. 477.)

Meanwhile, Pipeline had filed objections to Magistrate Judge Sebelius's orders denying discovery into the Kaaboo entities and denying Pipeline's motion to amend. (ECF Nos. 325, 427, 429.) On May 1, 2019, Judge Vratil sustained Pipeline's objections to Judge Sebelius' ruling striking "related entities" from Pipeline's Rule 30(b)(6) deposition notice. (ECF No. 479.) Among other things, Judge Vratil found that discovery related to the Kaaboo entities was relevant to multiple issues in the case. Judge Vratil recognized that this ruling "significantly altered the landscape of pretrial proceedings in this case" and that other pending motions for review were premised on changed circumstances. (ECF No. 493, at 2.) She therefore vacated those related rulings—including Magistrate Judge Sebelius's order denying Pipeline leave to amend—and referred the case to the undersigned to conduct further pretrial proceedings "given the new parameters of discovery." (*Id.*)

Separately, and within days of Judge Vratil's discovery rulings, the undersigned granted in part Pipeline's motion for sanctions stemming from Madison's belated production of a draft consulting agreement. (ECF No. 486.) Among other things, the court found that Pipeline should have the opportunity to take limited additional discovery to put it in the same position it would have been in had Madison complied with its discovery obligations. (*Id.* at 9.)

Given the new discovery parameters, the undersigned reopened discovery in order to make sure that Pipeline had a full and fair opportunity to conduct discovery into the related-entities issue, beginning with a status conference on May 9, 2019. (ECF Nos. 482, 487.) The court ultimately allowed the written discovery at issue in Pipeline's objections to Judge Sebelius' prior discovery order, as well as other discovery relating to the Kaaboo entities. During this additional period of

5

discovery, Pipeline produced additional documents and served subpoenas on the Kaaboo entities. Pipeline also took the FED. R. CIV. P. 30(b)(6) deposition of Madison and the Kaaboo entities, and reopened depositions of certain key witnesses. The court oversaw this process in May, June, and July via numerous discovery conferences (ECF Nos. 492, 501, 506, 515, 516, 529-532, 535, 539, 540, 543-545, 549, 551) and amendments to the schedule (ECF Nos. 488, 506, 518).

Meanwhile, Judge Vratil's order vacating Magistrate Judge Sebelius's order denying Pipeline leave to amend effectively reinstated Pipeline's motion to amend. The undersigned denied that motion for essentially the same reasons stated by Judge Sebelius based on the record before him at the time. (ECF No. 501, at 1.) In doing so, the court noted that discovery had been reopened since Judge Sebelius' ruling. "Plaintiffs were previously denied access to certain information that the district judge and the undersigned have now expressly ordered" and, because of this, the court noted that it would set a new deadline for Pipeline to move to amend. (*Id.* at 501.) The court ultimately gave Pipeline until August 2, 2019, to file a renewed motion to amend. (ECF No. 540, at 2.)

Pipeline timely filed its motion to amend on August 2, 2019. Pipeline argues the court should allow the amendments because they are largely based on information discovered during the reopened discovery period and that information could not have been obtained previously because Madison had effectively stalled discovery into the Kaaboo entities. Pipeline now seeks leave to file a second amended complaint naming the four Kaaboo entities as defendants, asserting a tortious interference claim against them, and asserting they are liable for Pipeline's claims against Madison based on a successor liability theory. In response, Madison argues that Pipeline has essentially filed the same motion to amend that was before Judge Sebelius and that his conclusions were correct—that Pipeline had all of the evidence it needed to be able to bring these amendments

sooner, and therefore, Pipeline has unduly delayed. Madison also contends the proposed amendments are futile.

## II. LEGAL STANDARD

Once a party has filed a responsive pleading, the opposing party may amend its pleading only with the opposing party's written consent or the court's leave, which "shall be freely given when justice requires." FED. R. CIV. P. 15(a)(2). The court may refuse leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same). The purpose of the rule "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotations omitted).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted. *See Wilkerson*, 606 F.3d at 1267. (stating that in the absence of such a showing, amendment should be allowed); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden to show undue prejudice and that absent such a showing "or a strong showing of the remaining *Forman* factors," there is a presumption in favor of amendment); *see also Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 642 (D. Kan. 2017) ("As the party opposing amendment, Defendant bears the burden of establishing its futility."). Whether to grant a motion to amend is within the court's sound discretion. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

Here, Madison argues that Pipeline unduly delayed in seeking to amend, that Madison would be unduly prejudiced, and that Pipeline's proposed amendments are futile.[1] The court addresses each of these arguments below.

### III.     THE RECORD DOES NOT ESTABLISH UNDUE DELAY

Delay alone is not enough to deny a motion to amend. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006). At some point, however, delay becomes undue when it places an unwarranted burden on the court or when it becomes prejudicial by placing an unfair burden on the opposing party. *Id.* The Tenth Circuit has directed that the district court must focus primarily on the reasons for the delay. *Id.* Denial of leave to amend is appropriate when the movant lacks an adequate explanation for the delay. *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010

Madison's undue delay argument essentially rehashes the arguments it raised previously in response to Pipeline's prior motion to amend, which Magistrate Judge Sebelius denied. Highly summarized, Madison argues that Pipeline had all of the information it needed to add these additional defendants by the summer of 2018, at the latest. The court disagrees. Pipeline may have had some of the information needed, but certainly not the visibility it obtained during the recent period of reopened discovery into the Kaaboo entities. There is a meaningful difference

---

[1] When a party moves to amend after the deadline set in the scheduling order, the moving party must satisfy Rule 16(b)(4)'s good cause requirement. *Gorsuch,* 771 F.3d at 1240. Both parties seem to suggest that this standard is potentially implicated, but neither side asserts any substantive arguments regarding this specific issue. For purposes of the record, the court wishes to reiterate that the undersigned extended the scheduling order deadline for Pipeline to seek leave for this very amendment, and Pipeline moved to amend by the August 2 deadline imposed. Accordingly, Rule 16(b)(4) is not implicated. But, even if it were, the court would still find good cause for largely the same reasons set forth in the section addressing undue delay—that is, that Pipeline learned new information during this reopened discovery period that justifies the proposed amendment. *See id.* ("Rule 16's good cause requirement may be satisfied . . . if a [party] learns new information through discovery . . . .").

8

between the scope and timing of the amendment Pipeline previously sought as compared to its current motion to amend.

Pipeline's prior motion to amend was unwieldy in scope. Pipeline sought to add more defendants, including one defendant that Judge Vratil had previously dismissed, as well as 25 Doe defendants. The amendment would have caused yet additional delays because Pipeline would have needed to amend again to formally name the Doe defendants once it obtained. (Notably, this is the very discovery Pipeline finally obtained into Madison's related entities during the reopened discovery period, which allowed Pipeline to identify the relevant entities.) The undersigned therefore believes that Magistrate Judge Sebelius properly denied leave to amend in the context of the discovery record before him at that time. It revealed no meaningful developments since the summer of 2018. Furthermore, Pipeline filed the motion the same month discovery was set to close, when a summary judgment deadline was imminent.

But that all changed on May 1, 2019. Judge Vratil vacated Magistrate Judge Sebelius's rulings that foreclosed Pipeline from obtaining discovery into the Kaaboo entities. Pipeline has now had an opportunity to conduct that discovery, and its proposed amendments are now more narrowly tailored. Pipeline has justified the belated amendments by pointing to a robust discovery record from the reopened discovery period. For example, Pipeline contends that it discovered evidence of inadequate consideration for Madison's transfer of assets and music festival business to the Kaaboo entities, which is an element of the successor liability claim. Madison also produced a "teaser" that advertised the Kaaboo Del Mar music festival as an event put on by Horsepower, one of the current defendants. Madison produced organizational charts showing how the Kaaboo entities came into creation and how they fit into the Madison family of companies. Madison also produced transfers and assignments of interests that show how Horsepower transferred its rights

9

to the Kaaboo marks to KaabooWorks, LLC. Pipeline obtained deposition testimony that payment was not exchanged as part of the reorganization and that Madison employees who went to work for Kaaboo kept the same offices and had access to the same materials. Pipeline also argues that this reopened discovery period allowed Pipeline to gather evidence aimed at the intentional nature of the tortious interference claim—namely, that the same Madison principal was negotiating with a Pipeline associate on behalf of both Madison and the Kaaboo entities before Madison walked away from the Thunder negotiations.

Pipeline clearly knew at least some of the facts on which the proposed amendments are based during the regular discovery period, such as some the facts giving rise to the tortious interference claim. But, unlike the motion before Judge Sebelius, the period of reopened discovery gave Pipeline additional information it needed in order more narrowly tailor its proposed amendments, especially the identity of the corporate defendants it seeks to add. Therefore, the undersigned cannot conclude that Pipeline could have sought the proposed amendment that it now seeks any sooner than it did. Pipeline did not unduly delay in seeking to amend.

IV. **MADISON HAS NOT SHOWN IT WOULD SUFFER UNDUE PREJUDICE**

Undue prejudice is the most important factor in determining whether to allow an amendment to the pleadings. *See Minter*, 451 F.3d at 1207. A party may be unduly prejudiced when an amendment unfairly affects a party preparing its defense—for example, when the amendments "arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.* However, the fact that a party must defend against new or better-pleaded claims does not equate to undue prejudice. *See Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party."); *Patton v. Guyer*, 443 F.2d

10

79, 86 (10th Cir. 1971) (recognizing that there is always practical prejudice resulting from an amendment but that this is not the test); *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1168 (D. Kan. 2018) ("While any amendment invariably causes some practical prejudice, undue prejudice means that the amendment would work an injustice to the defendants.") (internal quotations omitted); 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (recognizing a plaintiff typically will not be precluded from amending "simply because that amendment may increase defendant's potential liability").

Madison argues it would suffer undue prejudice if the court grants Pipeline's motion to amend for the following reasons: (1) this case is more than four years old and has been expensive to litigate; (2) there will be additional delays with the newly named defendants, who will likely file Rule 12 motions, including jurisdictional challenges, and be entitled to their own discovery; and (3) Madison would need additional discovery "on the stealth claims of defamation, malicious prosecution, and breaches of separate contracts Plaintiffs have slipped into their Proposed Second Amended Complaint" (ECF No. 555, at 8).[2] Madison's arguments amount to practical prejudice caused by amendment rather than an injustice by a late change in legal theory. The fact that newly named defendants may file Rule 12 motions and the amended claims may require additional discovery are routine considerations on most motions to amend. Madison does not describe what

---

[2] In a footnote, Madison lists Pipeline's proposed modifications to existing claims and argues they are not based on new information. The court directed Pipeline to file a redline version of its proposed second amended complaint to assess Pipeline's proposed amendments to existing factual allegations and claims. The redline version reveals both minor modifications to existing language (*e.g.*, striking the word "allege" from the opening paragraph, which states that plaintiffs "state and allege") and substantive modifications (*e.g.*, adding a section of factual allegations pertaining to Madison filing other lawsuits against Pipeline). But in the absence of any specific briefing from Madison about which portions of the proposed pleading it finds objectionable and why, the court has no record from which it could properly limit the amendments.

11

discovery it or the related Kaaboo entities require or estimate the length of time it would take to complete discovery on the amendments. The court will continue to work with the parties to facilitate the just, speedy, and inexpensive determination of this case as it relates to the newly added claims and defendants.

But the most important consideration, from the court's perspective, is that the court cannot find undue prejudice resulting from undue delay because the current predicament is a product of Madison's chosen litigation strategy. Although this case was filed in 2015 and has been hotly litigated, Madison bears some responsibility for the way this case progressed. Madison successfully stayed the case pending rulings on two motion to dismiss. In fact, this case was on file for over two-and-a-half years before the court held a scheduling conference. Moreover, as the court previously recognized, Madison has adopted an aggressive litigation strategy that resulted in protracted proceedings because of numerous discovery disputes. (ECF No. 546, at 11.) That includes discovery relating to the currently proposed amendment. Madison could have simply provided discovery into the Kaaboo entities during the regular discovery period—just as it did when the court ordered it to do so during the reopened discovery period these past few months. If Madison had done so, discovery would have closed in December of 2018, and Pipeline would not have had the benefit of the recently reopened discovery period. But, instead, Madison chose to bury Pipeline and the court with a flurry of motions seeking to avoid providing discovery into the Kaaboo entities. To be clear, the undersigned does not fault Madison for this litigation strategy. After all, it worked for a period of time. Madison has a right to aggressively litigate this case and to rely on prior discovery rulings until they are reversed or vacated. But, by the same token, Madison rolled the dice, and its chosen litigation strategy now has consequences. Importantly, the

court notes that Madison does not argue that any of the proposed amendments come as a surprise to Madison or the Kaaboo entities.

If Magistrate Judge Sebelius had granted Pipeline leave to amend previously, it would have derailed the case schedule. But that case schedule has already been derailed by the reopened discovery period. The court therefore finds that Madison's claim of undue prejudice rings hollow.

V.     THE AMENDMENTS ARE NOT FUTILE

"A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In the context of futility, the court considers whether the amended complaint could withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases). To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing whether dismissal is appropriate, the court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

Madison argues that the proposed tortious interference claim is futile as to certain Kaaboo entities and that the successor liability claim is futile as to all parties. It bears noting that Madison devoted only a small portion of its response brief to the issue of futility. As set forth below, the court finds them to be without merit.

1. **Tortious Interference Claim**

Madison argues Pipeline's tortious interference claim is futile as to KaabooWorks, Kaaboo Del Mar, and Kaaboo because Pipeline has no evidence that these entities hired the individuals in question. In ruling on Madison's previous motion to amend, Judge Vratil outlined the elements of Pipeline's tortious interference claim:

> In Kansas, plaintiffs must prove the following to recover based on tortious interference with a prospective business advantage: (1) a business relationship or expectancy existed with probable future economic benefit to plaintiffs; (2) defendants knew of the relationship or expectance; (3) but for defendants' conduct, plaintiffs were reasonably certain to have continued the relationship or realized the expectancy; (4) defendants engaged in intentional misconduct and (5) plaintiffs sustained direct and proximate damages.

*Pipeline Prods., Inc. v. Horsepower Entm't*, No. CV 15-4890-KHV, 2017 WL 4536420, at *5 (D. Kan. Oct. 11, 2017) (citing Byers v. Snyder, 237 P.3d 1258, 1269 (Kan. Ct. App. 2010)).

Madison contends that certain Kaaboo entities did not employ the former Pipeline associates. However, Madison does not identify any element of the tortious interference claim that requires this. Judge Vratil already concluded that substantially similar factual allegations were sufficient to state a claim against Madison (which also apparently never employed the former Pipeline associates). The undersigned therefore finds that Madison has likewise failed to establish that Pipeline's proposed tortious interference claim is futile as to certain Kaaboo entities.

2. **Successor Liability**

In support of Pipeline's successor liability claim, Pipeline cites *Wells Fargo Vendor Fin. Servs., LLC v. Nationwide Learning, LLC*, which recognizes the equitable doctrine of successor liability under Kansas Law. 429 P.3d 221, 229–30 (Kan. Ct. App. 2018), *review granted* (June 24, 2019). Kansas recognizes the general rule of corporate successor non-liability, which applies

"only where the contracting corporations and their representatives are dealing with each other at arm's length, and where each side is looking out for the interest of its own corporation." *Id.* at 229. The rule of non-liability "cannot be applied when the negotiators for both corporations are the same or virtually the same, and the transfer of assets is made merely for their own convenience and advantage." *Id.* (citing *Avery v. Safeway Cab, T. & S. Co.*, 80 P.2d 1099 (Kan. 1938)). The four exceptions to the general rule of corporate successor non-liability are as follows:

> (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the corporations; (3) the purchasing corporation is merely a continuation of the selling corporation; and (4) the transaction is entered into fraudulently in order to escape liability for the seller's debts.

*Id.* (citing *Comstock v. Great Lakes Distributing Co.*, 496 P.2d 1308, 1311 (Kan. 1972)). Pipeline's proposed second amended complaint asserts that the last three of the four exceptions apply in this case—that the transaction amounts to a merger or consolidation of Madison's business; that the Kaaboo entities are a continuation of Madison; and that the transaction was entered into fraudulently to escape liability for Madison's debts.

Madison argues the court should deny Pipeline's motion on futility grounds because the Kansas Supreme Court has granted review of *Wells Fargo*, and therefore it is of no force or effect. This position misses the mark for at least two obvious reasons. First, Pipeline is not required to offer legal authority in support of its amendment. Rather, Madison bears the burden to establish futility. Second, Pipeline relies on a portion of *Wells Fargo* that cites a 1972 Kansas Supreme Court decision that has not been overturned.

The rest of Madison's arguments about Pipeline's proposed successor liability claim amount to factual disputes. Madison argues this claim is not supported by the evidence. It

contends Pipeline has failed to show that any Kaaboo entity agreed to assume Madison's debts. However, Pipeline does not argue that theory of successor liability.

Madison also contends that Pipeline has not shown that any Kaaboo entity acquired Madison's assets and continued its operations. This argument is more in the vein of a denial of the facts alleged in support of Pipeline's successor liability claim—*e.g.*, that the Kaaboo entities are not successors but are instead separate business entities formed to keep Madison's music festival business separate from its real estate business. These disputes are more appropriately resolved on summary judgment or at trial. They do not establish that Pipeline's proposed successor liability claim is subject to dismissal at the pleading stage. Generally, the court declines to resolve factual disputes on a motion to amend given the liberal amendment rules. *See, e.g., Indep. Country Club v. Magellan Pipeline Co., LP*, No. 07-1196-MLB, 2008 WL 750526, at *3 (D. Kan. Mar. 18, 2008) ("Because the court does not resolve factual disputes when considering a motion to amend, defendant has failed to carry its burden of showing that the addition of a claim for punitive damages is a futile act."). This is especially appropriate in the context of a successor liability claim, which involves a fact-specific inquiry with the underlying goal of determining "whether justice between the real parties to the transaction requires imposition of successor liability." *Wells Fargo*, 429 F.3d 266. Madison fails to point to any pleading deficiency that goes to an essential element of Pipeline's proposed successor liability claim. The court therefore cannot find that the claim would be subject to dismissal.

## VI. JOINDER PURSUANT TO RULE 20

Lastly, the court notes that Federal Rules of Civil Procedure 15 and 20 govern when a motion to amend seeks to add parties that are not indispensable. *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001); *AKH Co., Inc. v. Universal Underwriters Ins. Co.*, No. 13-

2003-JAR-KGG, 2018 WL 2008860, at *3 (D. Kan. Apr. 30, 2018). Rule 20(a)(2) provides that defendants may be joined (1) if the claims against them "arise out of the same transaction or occurrence, or series of transactions or occurrences"; and (2) there are questions of law and fact common to all defendants. As with Rule 15, the court liberally construes Rule 20 "to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *AKH Co.*, 2018 WL 2008860, at *5; *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 724, (1966) ("Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.").

Pipeline's proposed amendments meet the test for joinder pursuant to Rule 20(a)(2). The proposed claims arise from the same series of transactions or occurrences and would require determination of common questions of law and fact. Pipeline's tortious interference claim against the Kaaboo entities arises out of the same set of facts previously pleaded, with heavily overlapping factual and legal issues. Pipeline's successor liability claim also arises out of the same set of transactions or occurrences because Pipeline essentially contends that the Kaaboo entities are the same company as Madison, just operating under different corporate umbrellas in an attempt to thwart liability. *See generally AKH Co.*, 2018 WL 2008860, at *6 (finding that the test was met with a proposed amended pleading alleging that the opposing party had attempted to shield the company from liability in the underlying suit by looting the named corporation and creating new corporate entities to hold all assets). The successor liability claim also hinges on resolution of overlapping factual and legal disputes. For example, if Madison is not found liable for any of the previously pleaded claims, that would also moot the successor liability claim.

## VII. CONCLUSION

The interests of justice require allowing Pipeline to file its Second Amended Complaint. Pipeline filed its motion by the court-ordered deadline of August 2, 2019. The record does not establish undue delay, undue prejudice, futility of the amendments, or any other grounds on which the court could properly deny amendment. The court therefore grants Pipeline's motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Leave to Amend Complaint (ECF No. 552) is granted. Pipeline shall file its Second Amended Complaint (ECF No. 552-1) as a separate docket entry in this case within two business days from the date of this order.

**IT IS SO ORDERED.**

Dated August 28, 2019, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge