# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| PIPELINE PRODUCTIONS, INC., *et al.*, | ) | |
| | ) | |
|     Plaintiffs and | ) | |
|     Counterclaim Defendants, | ) | |
| | ) | |
| v. | ) | Case No. 15-4890-KHV-ADM |
| | ) | |
| THE MADISON COMPANIES, LLC, *et al.*, | ) | |
| | ) | |
|     Defendants and | ) | |
|     Counterclaimants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the court on Plaintiff's Motion to Compel Production of Certain Documents from Defendants' Privilege Log (ECF No. 556). Plaintiffs Pipeline Productions, Inc., Backwood Enterprises, LLC, OK Productions, Inc., and Brett Mosiman (collectively "Pipeline") argue that Defendants The Madison Companies, LLC and Horsepower Entertainment, LLC (collectively "Madison") waived the attorney-client privilege by putting certain matters at issue in the case. Madison opposes the motion. For the reasons explained below, the court finds that Madison has not waived the attorney-client privilege, and therefore Pipeline's motion is denied.

## I.    BACKGROUND

Pipeline asserts claims against Madison for breach of contract, breach of fiduciary duty, fraud, and tortious interference arising from the parties' business dealings relating to the Thunder on the Mountain country music festival ("Thunder") in 2015. (Pretrial Order, ECF No. 477 ¶ 4(a)(1)-(4), at 18-20.) Pipeline alleges that it formed a joint venture with Madison to put on Thunder, but Madison pulled out shortly before the festival was scheduled to occur. Pipeline contends this "left [Pipeline] holding the bag for all artist payments and festival expenses" and, furthermore, that Madison tried to destroy Pipeline's business, reputation, and financial condition

by hiring away Pipeline's partners and employees. (*Id.* at 14-15.) Because of this, Pipeline claims that it was unable to provide ticket refunds, it had to divert funds to other businesses, and its festival-related businesses were essentially destroyed. (*Id.*) Meanwhile, Pipeline contends that Madison tried to make its entities "judgment proof by scheming and 'transitioning' their interests, assets, and businesses to other entities in the hopes of preventing Plaintiffs from obtaining fair and just remuneration." (*Id.*) After the parties fully briefed this motion, the court granted Pipeline's motion to amend its complaint to add Defendants KaabooWorks, LLC, KaabooWorks Services, LLC, Kaaboo Del Mar, LLC, and Wardawgs (collectively "the Kaaboo entities"). Pipeline alleges the Kaaboo entities are essentially an extension of Madison, organized as different corporate entities but largely owned and operated by the same individual. Pipeline asserts a successor liability claim against the Kaaboo entities.

Pipeline contends that Madison waived the attorney-client privilege by putting at issue the transfer of Madison's music-festival business to Kaaboo by making suspect statements about the switch, including why and when Madison made the transfer and by failing to produce any documents to support Madison's theory (ECF No. 556, at 1). Because of this, Pipeline seeks to compel the production of documents listed in 53 entries on Madison's privilege log and certain documents listed in Madison's litigation counsel's declaration in further support of Madison's privilege claim.[1] Madison's declaration establishes that the communications involve giving or seeking legal advice. (ECF No. 556-1.) The bulk of the documents involve communications by Madison's outside transactional counsel with Madison officials (in some instances, Madison's in-house counsel) regarding a consulting agreement with Nathan Prenger, a former Pipeline minority

---

[1] Madison clarifies that many of these entries are duplicates and that the number of unique entries at issue is 35.

partner whom Pipeline claims Madison poached. (ECF Nos. 556-1, 556-2.) In a few instances, the communications concern revisions to the agreement in light of impending litigation with Pipeline. And one entry involves communications between outside transactional counsel and a Madison consultant regarding a proposed settlement with Mr. Mosiman. Other entries involve communications between Madison officials and outside counsel concerning a Horsepower letter.

## II.     LEGAL STANDARD

"[S]tate law governs privilege regarding a claim or defense for which state law supplies the rule of decision." FED. R. EVID. 501; *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc*, 136 F.3d 695, 699 (10th Cir. 1998). In this case, the court has diversity jurisdiction over common law claims, which are governed by Kansas law. Additionally, both parties cite Kansas law in support of their arguments, so the court will also apply Kansas law.

In Kansas, the attorney-client privilege is codified at KAN. STAT. ANN. § 60-426. Under the statute, with few exceptions, communications "between a lawyer and his or her client in the course of that relationship and in professional confidence, are privileged." *See State v. Gonzalez*, 234 P.3d 1, 10 (Kan. 2010). The party asserting privilege bears the burden to establish that it applies. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010); *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 693 (Kan. 2000). This includes showing the privilege has not been waived. *See Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

Pipeline argues Madison waived privilege by putting certain matters at issue—*i.e.*, "at issue" waiver. Under Kansas law, a party waives privilege when "it puts the fact of the communication at issue." *See State ex rel. Stovall v. Meneley*, 22 P.3d 124, 142 (Kan. 2001) (citing *Hearn v. Rhay,* 68 F.R.D. 574, 579–81 (E.D. Wash. 1975). Kansas appellate courts have not adopted (or declined to adopt) a more specific test for at-issue waiver.

3

Other courts commonly employ one of three approaches to determining whether a party waived privilege by putting the fact of communication at issue. The first approach is the automatic waiver rule. It provides that a party automatically waives privilege by asserting an affirmative claim or defense that raises as an issue a matter to which otherwise privileged information is relevant. *See Indep. Prods. Corp v. Loew's, Inc.,* 22 F.R.D. 266, 276–77 (S.D.N.Y. 1958) (originating automatic-waiver rule). An intermediate approach provides that a party waives privilege when (1) asserting the privilege is a result of an affirmative act, such as filing suit, by the party asserting it; (2) through the affirmative act, the party has put protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to vital information to its own case. *See Hearn v. Rhay,* 68 F.R.D. 574, 579–81 (E.D. Wash. 1975) (originating the intermediate test, often known as "the *Hearn* test"). The Tenth Circuit has not adopted an approach for assessing at-issue waiver, but it has applied the *Hearn* test in addressing state law privilege claims. *See Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014) (recognizing the Oklahoma Supreme Court had not adopted a test but applying *Hearn* because both parties agreed that Oklahoma courts would apply a version of the *Hearn* test); *see also Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 701 (10th Cir. 1998) (applying Wyoming law). In more recent decisions, courts have criticized the *Hearn* test and adopted a more conservative test, finding waiver only in cases where a litigant directly puts its attorney's advice at issue in the litigation. *See In re Itron, Inc.*, 883 F.3d 553, 561-62 (5th Cir. 2018) ("[F]or this type of waiver to occur, the client "must *rely* on privileged advice from his counsel to make his claim or defense."); *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ("We hold that a party must *rely* on privileged advice from his counsel to make his claim or defense."); *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.,* 32 F.3d 851 (3d Cir. 1994) ("The advice of

4

counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication.").

## III. ANALYSIS

The court need not predict which test the Kansas Supreme Court would apply because Madison has not placed the material Pipeline seeks "at issue" under any test. Pipeline contends that Madison put various Kaaboo-related documents[2] at issue by making suspect statements about Madison transitioning its music-festival business to Kaaboo, "including why they did it and when it happened, and failing to produce any documents to support their statements." (ECF No. 556, at 1.) Pipeline identifies three "defenses" to support at-issue waiver. (*Id.* at 2.) First, Madison argues the Kaaboo entities cannot be liable for Madison's conduct because they are separate entities. Second, Madison argues it cannot be liable for tortious interference because Kaaboo (not Madison) employs the former Pipeline associates. Third, Madison CEO Bryan Gordon testified that he did not discuss a consulting agreement with Mr. Prenger until after the Thunder deal blew up. In support, Pipeline cites Mr. Gordon's affidavit filed in conjunction with Madison's motion for a protective order (ECF No. 246-12, at 3-4), Madison's response to Pipeline's motion for sanctions (ECF No. 472, at 1), and Gordon's deposition transcript (ECF No. 534-1).

Pipeline misunderstands at-issue waiver. Pipeline does not articulate any way in which Madison is asserting any legal advice it may have received as a "sword" while trying to "shield" that very legal advice from discovery, thereby depriving Pipeline of the opportunity to test the nature, legitimacy, or veracity of that legal advice. It is not enough that a party may have consulted

---

[2] This description is a stretch. The bulk of the documents Pipeline seeks include attorney-client communications involving changes to the Prenger consulting agreement. It does not appear that any of the documents necessarily reveal anything about the reasons why Madison transitioned its music-festival business to the Kaaboo entities.

5

an attorney on an issue that later becomes relevant in litigation. Such a broad proposition would defeat the purposes of and largely eviscerate the attorney-client privilege. Rather, the party must put "the fact of the communication at issue." *Stovall*, 22 P.3d 142. Madison has not put the fact of any attorney-client communication at issue that would, in fairness, require Pipeline to be allowed to examine those protected communications.

The classic at-issue waiver scenario occurs when a party injects the issue of affirmative reliance on counsel's advice. 1 EDNA SELAN EPSTEIN, THE ATTORNEY–CLIENT PRIVILEGE AND THE WORK–PRODUCT DOCTRINE, 666-67 (6th ed. 2017). This commonly arises in legal malpractice actions, when proof of a party's legal contention implicates legal advice (*e.g.*, when a client asserts a good-faith defense), or when the client relies on a portion of a privilege-protected document while testifying. *Id.*; *see also Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014) (involving an issue of reliance on advice of counsel); *Doe v. USD 237*, No. 16-2801-JWL, 2019 WL 2612941, at \*5 (D. Kan. June 26, 2019) (affirming the magistrate judge's finding that a party puts its counsel's investigation at issue by asserting a *Faragher* affirmative defense based on that investigation); *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1116 (D. Kan. 2006) (finding no waiver where defendant's witnesses did not voluntarily raise advice of counsel and instead merely responded to questions from plaintiffs' counsel concerning privileged communications).

The cases Pipeline relies on further illustrate this. Pipeline cites *IMC Chemicals, Inc. v. Niro Inc.* for its statement that "[e]ven if a party does not attempt to use privileged communication, it may waive the privilege if it asserts a factual claim the truth of which can only be assessed by examination of a privileged communication." No. CIV.A.98-2348-JTM, 2000 WL 1466495, at \*23 (D. Kan. July 19, 2000). But *IMC Chemicals* also found that the plaintiff placed at issue its

6

attorney's advice regarding a contract by introducing extrinsic evidence of both the plaintiff's and the plaintiff's *attorney's* intentions. *Id.* Pipeline also relies on *Browne of New York City, Inc. v. AmBase Corp.* for its statement that conversations regarding "the legality of schemes" were important to determining the extent of the client's knowledge and resulting intent. 150 F.R.D. 465, 487 (S.D.N.Y. 1993). That portion of *Browne* discusses *United States v. Bilzerian*, in which the defendant sought to invoke a good-faith defense to securities fraud charges. 926 F.2d 1285 (2d Cir.1991). Like *IMC Chemicals*, *Bilzerian* is distinguishable from this case because *Bilzerian* involved waiver by placing an attorney's advice at issue. The defendant in *Bilzerian* requested that the trial court rule that the defendant could testify on his own behalf that he believed his conduct complied with securities laws without waiving the attorney-client privilege, provided that he did not claim to have relied on any advice by his attorney. *Id.* at 1292. The Second Circuit found that it was only fair that the government be allowed to examine the basis for this good-faith belief, including any protected communications. *Id.* ("This waiver principle is applicable here for Bilzerian's testimony that he thought his actions were legal . . . [because it] put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly *relevant* in determining the extent of his knowledge and, as a result, his intent."). In other words, "the privilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications." *Id.* at 1292.

Here, Madison has not put "the fact of the communication at issue" because it has not asserted any claim or contention that implicates legal advice. *See Stovall*, 22 P.2d at 142 (defining at-issue waiver). In other words, Madison is not attempting to use the attorney-client privilege as both a sword and shield as it relates to creating the Kaaboo entities. Rather, Pipeline has come

7

forward with a laundry list of statements Madison and its CEO made via a brief, an affidavit, and deposition testimony and contends that those are enough to put the matters at issue for waiver purposes. Pipeline's argument is essentially that the documents might be relevant to test certain positions that Madison has taken in this litigation, but the fact that material might be relevant does not equate to putting the material at issue for purpose of waiving privilege.

The Fifth Circuit recently addressed why relevance is not the standard for determining whether material should be protected as privileged. *See In re Itron*, 883 F.3d at 561-62; *see also Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 11121848, at *3 (D. Kan. Apr. 16, 2015) ("Courts in this district have held that when a litigant's mental state is placed at issue via the assertion of an affirmative defense, the mere fact that privileged material is relevant to . . . an issue in connection with the assertion of the affirmative defense is insufficient to trigger a waiver.") (internal quotations omitted). The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients and "thereby promote broader public interests in the observance of law and administration of justice." *Itron*, 883 F.3d at 561 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389, (1981)). These goals are not met when a privilege "gives way whenever its contents become relevant or even 'highly relevant' to an opposing party's arguments[.]" *Id.* at 562; *see also United States v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004) ("[W]hat a 'privilege' means is an entitlement to withhold information even if it would bear on the merits of a disputed issue."). This is because "the rule's unpredictability would impair the client's ability to safely confide in counsel." *In re Itron, Inc.*, 883 F.3d at 562; *see also Rhone–Poulenc*, 32 F.3d at 864 ("[B]ecause the definition of what may be relevant and discoverable from those consultations may depend on the facts and circumstances of as yet unfiled litigation, the client will have no sense of whether the

communication may be relevant to some future issue, and will have no sense of certainty or assurance that the communication will remain confidential.").

Madison has not waived the privilege. The court therefore denies Pipeline's motion.

## IV. REASONABLE EXPENSES

Because the court denies Pipeline's motion in full, it must consider whether to award Madison its reasonable expenses, including attorneys' fees, incurred in responding to this motion. *See* FED. R. CIV. P. 37(a)(5)(B) (court must impose fees unless "the motion was substantially justified or other circumstances make an award of expenses unjust"). Litigating whether fees and expenses are warranted and, if so, the appropriate amount, often results in the parties spending as much time and resources as they did litigating the underlying discovery motion. For this reason, the court orders that by **September 9, 2019**, Madison shall file a notice informing Pipeline and the court whether it intends to continue to seek fees. If Madison intends to continue to seek fees, the notice shall provide the dollar amount Madison requests. Thereafter, the parties must confer to attempt to reach agreement regarding the issue of fees and expenses. If necessary, Madison must file its motion seeking fees by **September 23, 2019**. Pipeline's response brief is due **September 30, 2019**, and Madison's reply brief is due **October 7, 2019**. Madison's motion and Pipeline's response brief are limited to five pages each. Madison's reply brief is limited to three pages.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Production of Certain Documents from Defendants' Privilege Log (ECF No. 556) is denied.

**IT IS SO ORDERED.**

Dated August 30, 2019, at Topeka, Kansas.

s/Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge