IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., ) <br> BACKWOOD ENTERPRISES, LLC, ) <br> OK PRODUCTIONS, INC., and ) <br> BRETT MOSIMAN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE MADISON COMPANIES, LLC, ) <br> AND HORSEPOWER ENTERTAINMENT ) <br> LLC, KAABOO, LLC, KAABOOWORKS ) <br> SERVICES, LLC, KAABOOWORKS, LLC, ) <br> KAABOO DEL MAR, LLC and ) <br> WARDAWGZ, LLC ) <br> ) <br> Defendants. | CIVIL ACTION <br> CASE NO. 5:15-cv-04890-KHV ADM |

**DEFENDANTS' MOTION IN LIMINE NO. 9 TO EXCLUDE EXPERT TESTIMONY OF PLAINTIFFS' NON-RETAINED EXPERT TODD CODER AND TO LIMIT SUCH WITNESS TESTIMONY TO THE CONFINES OF FEDERAL RULE OF EVIDENCE 701**

NOW COME defendants The Madison Companies, LLC, Horsepower Entertainment, LLC, KAABOO, LLC, KAABOOWorks Services, LLC, KAABOOWorks, LLC, KAABOO DEL MAR, LLC, and respectfully move this Court to enter an order *in limine* excluding from trial expert testimony from plaintiffs' non-retained expert Todd Coder and to limit such witness testimony to the confines of Federal Rule of Evidence 701.

### I.    INTRODUCTION

Todd Coder is a classic expert disguised in the sheep's clothing of a lay witness and/or a non-retained expert witness. Defendants bring this motion to preclude plaintiffs' plan to call at trial Todd Coder – a non-retained witness who prepared no written report – to testify and to offer opinions of a specialized nature and about events for which he has no personal knowledge. Plaintiffs must abide by their decision to avoid the expert reporting requirements of Rule 26 and

1

be limited to the confines of FRE 701.  Most of the "opinions" or testimony Coder intends to offer, however, are admissible under FRE 701.

## II.     FACTS

Plaintiffs designated Todd Coder as both a fact witness and a non-retained expert.  (*See* Declaration of Benjamin Scheibe ["Scheibe Decl."], Ex. 589 and 590.)  In their supplemental disclosures, plaintiffs stated that Mr. Coder "has knowledge regarding valuation of music festivals and damage to reputation due to cancellation of concerts" despite the fact that such a topic is not the testimony of a factual witness.  (*Id*. at Ex. 590.)  In their disclosure of expert witnesses, plaintiffs identified Mr. Code's anticipated opinions as:  (1) "deposits that promoters [of music festivals] are required to pay to book bands;" (2) "how deposit amounts are dramatically increased for promoters after cancelled events;" (3) "Mr. Mosiman's ability to book bands for festivals after the cancellation of Thunder;" (4) "the effect that cancellation of Thunder had on Plaintiffs' music festival business;" and (5) "industry standards for reimbursing fans who purchased tickets for events that are cancelled when testifying about unpaid artist, ticketholders and vendors in this case."  (*Id*. at Ex. 589.)

Following the *Daubert* hearing on January 15, 2020, and pursuant to this Court's order to identify the scope of Coder's testimony, plaintiffs proffered that Coder would testify to the following at trial:

> 1.      He will testify about **facts** he knows regarding the process of booking artists and how deposits are paid, including typical percentages of deposits;
>
> 2.      He will **testify about affects** that canceling a festival can have on a promoters reputation, on the deposit terms a promoter is able to secure for artists going forward, and on cash flow (Section IV.A, C of Defendants Motion);
>
> 3.      He will testify about the effects of Thunder's cancelation on Plaintiffs;

2

   4. He will testify that he experienced increased deposit requirements following the cancelation of festivals;

   5. He will testify that promoters experience higher deposit terms after a festival or event is canceled;

   6. He will testify that ticketholders are repaid if a festival or event is canceled and he'll discuss his knowledge of the chargeback process. (Section IV.B);

   7. He will testify that ticket counts are confidential information using his basic knowledge of the industry;

   8. He will testify that one consequence of festival cancelled festivals to promoters is that they get blackballed by certain agencies.

("Scheibe Decl.", Ex. 591 [email from OPC].)

### III. THIS COURT HAS THE AUTHORITY TO CONSIDER AND ENTER ORDERS UPON MOTIONS IN LIMINE TO EXCLUDE EVIDENCE AND OTHER STATEMENTS THAT ARE NOT RELEVANT AND/OR TO AVOID CONFUSION AND UNDUE PREJUDICE

As this Court previously stated, "[t]he purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Mendelsohn v. Sprint/United Management Co.*, 587 F. Supp. 1201, 1208 (D. Kan. 2008) (internal citations omitted). "Pretrial rulings often may save time at trial, as well as save the parties time, effort and cost in preparing their cases." *Id*.

Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States,* 469 U.S. 38, 41 n. 4 (1984) (citing Fed.R.Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")); *see also Ohler v. United States,* 529 U.S. 753, 758 (2000); *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (stating

that a motion *in limine* "gives a court the chance to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial").

The trial court has broad discretion to rule on exclusion of evidence issues. *Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533 (10th Cir. 1994).

### IV.  CODER'S TESTIMONY CONSTITUTES IMPERMISSIBLE LAY OPINION TESTIMONY INADMISSIBLE UNDER FRE 701

Plaintiffs claim that Coder's opinions are admissible as lay opinion testimony. (Scheibe Decl., Ex. 591 [email].)  Plaintiffs are wrong.

Federal Rule of Evidence 701 permits a lay witness to offer opinion testimony only when it is: (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  "The perception requirement stems from F.R.E. 602 which requires a lay witness to have first-hand knowledge of the events he is testifying about so as to present only the most accurate information to the finder of fact."  *United States v. Hoffner,* 777 F.2d 1423, 1425 (10th Cir. 1985).  "The primary purpose of Rule 701 is to allow nonexpert witnesses to give opinion testimony when, as a matter of practical necessity, events which they have personally observed cannot otherwise be fully presented to the court or the jury."  *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979)

The majority of Coder's opinions are inadmissible because (1) Coder cannot give lay opinion testimony based on facts he has not personally perceived and (2) his testimony is based on specialized knowledge.

4

### A.     FRE 701 LIMITS LAY OPINION TESTIMONY TO TESTIMONY BASED ON THE WITNESS'S PERSONAL INVOLVEMENT IN THE FACTS OF THE CASE

A lay witness may not give an opinion based on facts he has not personally perceived. As explained in *United States v. Garcia*, 413 F.3d 201, 211-12 (2d Cir. 2005): "Rule 701 requires lay opinion testimony to be based on the witness's personal perceptions. See Fed.R.Evid. 701(a). … In short, Rule 701 represents no departure from Fed.R.Evid. 602: 'A witness may not testify to a matter until evidence is introduced sufficient to support a finding that the witness had personal knowledge of the matter.' Rather, Rule 701 simply recognizes lay opinion as an acceptable "shorthand" for the "rendition of facts that the witness personally perceived." (Citations omitted.) For example, the court in *United States v. Johnson*, 617 F.3d 286 (4th Cir. 2010), excluded a law enforcement agent's attempt to interpret wiretapped telephone calls between defendant and an alleged co-conspirator. The testimony did not satisfy the personal knowledge requirement for admissibility as lay opinion testimony because the agent had not participated in the surveillance that produced the wiretapped calls, did not personally observe the events and activities discussed in recordings, and his opinions were based on post-hoc assessments of the calls rather than his own perceptions. *Id*. at 293.

Similarly, in a case with strong parallels to this one, the District Court in *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1178 (D. Colo. 2006), considered the admissibility under Rule 701 of proffered lay opinion testimony by local real estate agents that the operation by defendants of a nuclear weapons plant had depressed the market value of the neighboring properties. Although the agents had handled individual sales in the area, this was not enough to permit them to testify as to the impact on the market in general. The District Court agreed with defendants that "opinion testimony extrapolating the personal experience of these real estate agents to the market for Class Area properties as a whole does not meet Rule 701's requirements because the agents would then be giving opinions about transactions in which they did not

5

participate, ….." *Id*. at 1178.  As a result, "their opinions would not be 'rationally based on the perception of the witness,'" and their "extrapolation from personal experience to generalized conclusions would require these witnesses to use their specialized knowledge as real estate agents."  *See also Bingham v. Adobe Equip. Holdings, Ltd.*, No. 08-CV-056-D, 2008 WL 11379933, *3 (D. Wyo. Oct. 8, 2008) ("Once a treating physician begins to extrapolate his opinions beyond those made in the immediate course of care to issues such as, for example, causation of injury, reasonableness of care, degree and permanency of disability, and the need for future medical care, the opposing party would be unduly prejudiced if it did not receive an advance designation complete with expert report detailing the opinions and how they were arrived at.").

The same is true of Coder's opinions here.  The only testimony he offers that relates to Thunder is his testimony about the "effects of Thunder's cancelation on plaintiffs."  (Scheibe Decl., Ex. 591 [email].)  Coder, however, by his own admission did not witness or perceive the (supposed) effect the cancelation of Thunder had on plaintiffs because he did not work with plaintiffs after the cancelation.  (Ex. 592 [Coder Depo] at 46:12-47:6.)  He cannot rely on hearsay statements given to him after-the-fact to develop testimony in anticipation of litigation.  Nor, as in *Cook*, may he extrapolate from any experience he has had with *other festivals* that have been canceled because this is precisely what Rule 701 prohibits.  Coder similarly admitted that, *because he had done no work with plaintiffs after the cancelation of Thunder*, he had (a) no knowledge that plaintiffs were "blackballed" after canceling Thunder (Ex. 592 [Coder Depo], at 53:22-54:7), (b) no knowledge that plaintiffs' deposit requirements changed after the cancelation (*id*. at 102:2-103:9), and (c) no knowledge of plaintiffs' ability or inability to book artists after the cancelation (*id*. at 104:18-105:10).  As in *Cook*, any opinion Coder might have on how the cancelation of Thunder affected *plaintiffs* "would not be 'rationally based on the perception of

6

[Coder].'"  It instead would instead be an improper "extrapolation from personal experience to generalized conclusions" that would require Coder "to use [his] specialized knowledge as [a booking agent[]."  Even if Coder could say, for example, that the cancelation affected *him*, he would not be permitted to extrapolate that experience to *plaintiffs* because that would require him to draw on his specialized knowledge as a booking agent.

None of his testimony is admissible as lay opinion testimony under Fed. R. Evid. 701

### B. CODER'S TESTIMONY IS BASED ON HIS PROFESSIONAL EXPERIENCE AND FALLS WITHIN THE SCOPE OF FRE 702

Generally, Fed. R. Evid. 701 "does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness.  *Randolph*, 590 F.2d at 846; *see also James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) ("[A] person may testify as a lay witness only if his opinions or inferences ... could be reached by any ordinary person.").  The example given by *Randolph* was that "persons of reasonable intelligence and ordinary experience are uniformly permitted to express opinions as to matters such as the speed of an automobile under their observation[.]"  *Id*. at 848.  "*[K]nowledge derived from previous professional experience* falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701."  *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011).

Contrary to plaintiffs' claims, the following are *beyond* the realm of common experience and are based specifically on Coder's professional experience:  (1) producers who cancel music festivals have to pay higher deposits; (2) a festival cancellation will lead deposit percentages to rise and destroy cash flow; (3) promoters experience higher deposit terms after a festival or event is canceled; (4) ticketholders are repaid if a festival or event is canceled; (5) the chargeback process; (6) ticket counts are confidential information; and (7) a consequence of festival cancellations to promoters is that they get blackballed by certain agencies.  Plaintiffs have

admitted that Coder's opinions are derived from his "career for over fifteen years." (Doc. 729 at 6; *see also* Scheibe Decl., Ex. 591 [email] [stating that Coder "will testify that ticket counts are confidential information *using his basic knowledge of the industry*" (emphasis added)].)

Coder seeks to testify about precisely that kind of knowledge. As plaintiffs previously argued, "the jury does not have significant experience in the music industry" and does not have "knowledge of the *intricacies of music festival business*…." (Doc. 731 at 7 (emphasis added).) Coder, himself, admits that his opinions are based on "knowledge of the industry over the last 20 years." (Scheibe Decl., Ex. 592 at 114:3-115:2.) The bulk of Coder's opinions fall under Rule 702 because they require specialized knowledge and decades of experience in the music festival industry. Permitting Coder to offer testimony as a lay witness would "do exactly what Rule 701(c) prevents: circumvent Rule 702 by offering expert testimony as lay opinion." *James River*, 648 F.3d at 1143.

## V. CODER'S DISCLOSED TESTIMONY EXCEED HIS PERCIPIENT KNOWLEDGE AND ARE SUBJECT TO RULE 26(a)(2)(B)'S REPORT REQUIREMENT

"The distinguishing characteristic between expert opinions that require a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others or in a manner other than by being a percipient witness to the events in issue." *United States v. Sierra Pac. Indus.*, No. CIV S-09-2445, 2011 WL 2119078, at *4 (E.D. Cal. May 26, 2011). "Non-retained experts must only testify about opinions that were formed during the course of their participation in the *relevant events of the case*, and only to those opinions which were properly disclosed." *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) (emphasis added); *see also Tarter v. Throne Law Office, P.C.*, No. CV 17-123-BLG-SPW, 2019 WL 609337, at *3 (D. Mont. Feb. 13, 2019)

(stating that courts have limited the exemption from Rule 26(a)(2)(B) to the expert's percipient opinions).

In *Trulove v. D'Amico*, the court excluded plaintiff's non-retained expert because the expert lacked "any personal knowledge about the events giving rise to the litigation, but were only given information later and asked to form opinions solely for the purposes of litigation." 2018 WL 1090248, at *3 (N.D. Cal. Feb. 27, 2018).

In *United States v. Fletcher*, 47 F.3d 1176, 1995 WL 77416, *7 (9th Cir. Feb. 24, 1995), the Ninth Circuit affirmed the district court's exclusion of a defense expert's testimony. It found no error because the proposed expert lacked personal knowledge of the events about which he intended to testify, and thus could not serve as a non-retained, percipient expert witness. *Id.* ("Altona is an attorney who specializes in telemarketing law. He was not connected to AmTel. The district court excluded his testimony because he could not testify from personal knowledge that AmTel employees had attempted to comply with the law; neither could his testimony support their advice-of-counsel defense. We conclude that because Altona was not a percipient witness, the district court did not abuse its discretion by excluding his testimony. Whether AmTel participants attempted to comply with California telemarketing law or relied on advice of counsel could only have been attested to by a witness who had personal knowledge of the pertinent events. Altona did not. His 'expert' testimony was properly excluded").

Coder was a talent booking agent for plaintiffs and did not work with plaintiffs after Thunder was cancelled. Other than providing testimony about booking talent – which is irrelevant to the issues in this case – he cannot provide *expert* testimony because he lacks personal knowledge of the events he to which he intends to testify. Given that Coder's opinions are based on consequences *following* the cancellation of Thunder and he stopped being involved once Thunder was cancelled, Coder's opinions were clearly formed outside the course of his

9

participation in the *relevant events of the case*. If a "percipient expert witness" bases his opinions on information acquired outside of his own personal knowledge, it triggers the requirements of Rule 26(a)(2)(B) – something with which plaintiffs obviously did not comply. *See Shapardon v. West Beach Estates,* 172 F.R.D. 415, 417 (D.Haw.1997) (opinions based on information outside the scope of the treatment of Plaintiff is of a consulting nature and subject to the report requirement of Rule 26(a)(2)(B)). Even if Coder could be perceived as a percipient expert witness, the testimony plaintiffs offer is clearly outside his personal knowledge, and thus should be excluded.

## VI. CODER'S TESTIMONY SHOULD BE EXCLUDED

| Coder's Testimony | Grounds for Exclusion |
|---|---|
| He will testify about affects that canceling a festival can have on a promoters reputation, on the deposit terms a promoter is able to secure for artists going forward, and on cash flow (Section IV.A, C of Defendants Motion) | This is not lay testimony as it is based on specialized knowledge Coder obtained through decades in the music festival business.<br><br>Coder is a non-retained expert who did not submit a written report. Coder does not have personal knowledge of the events following the cancellation of Thunder and thus the expert matter is not embedded in and incidental to Coder's fact testimony. (*See* Scheibe Decl., Ex. 592 at 46:12-47:6 [stating that he has *no personal knowledge* about whether there were increases in deposit structure for Mr. Mosiman as a result of cancellations of Thunder].) |
| He will testify about the effects of Thunder's cancelation on Plaintiffs | This is not permissible fact or lay opinion testimony as he has no personal knowledge |

| Coder's Testimony | Grounds for Exclusion |
|---|---|
| | given that he admitted that he did not work with plaintiffs after the cancellation. |
| He will testify that promoters experience higher deposit terms after a festival or event is canceled | This is not lay testimony as it is based on specialized knowledge Coder obtained through decades in the music festival business.<br><br>Coder is a non-retained expert who did not submit a written report.  Coder does not have personal knowledge of the events following the cancellation of Thunder and thus the expert matter is not embedded in and incidental to Coder's fact testimony. |
| He will testify that ticketholders are repaid if a festival or event is canceled and he'll discuss his knowledge of the chargeback process.  (Section IV.B) | This is not lay testimony as it is based on specialized knowledge Coder obtained through decades in the music festival business.<br><br>Coder is a non-retained expert who did not submit a written report.  Coder does not have personal knowledge of the events following the cancellation of Thunder and thus the expert matter is not embedded in and incidental to Coder's fact testimony. |
| He will testify that ticket counts are confidential information using his basic knowledge of the industry | This is not lay testimony as it is based on specialized knowledge Coder obtained through decades in the music festival business. |

| Coder's Testimony | Grounds for Exclusion |
|---|---|
| He will testify that one consequence of festival cancelled festivals to promoters is that they get blackballed by certain agencies | This is not lay testimony as it is based on specialized knowledge Coder obtained through decades in the music festival business.<br><br>Coder is a non-retained expert who did not submit a written report.  Coder does not have personal knowledge of the events following the cancellation of Thunder and thus the expert matter is not embedded in and incidental to Coder's fact testimony. |

## VII.  **CONCLUSION**

Accordingly, defendants respectfully request that this court issue an order excluding from trial expert testimony from plaintiffs' non-retained expert Todd Coder and to limit such witness testimony to the confines of Federal Rule of Evidence 701.

Respectfully submitted this
22nd day of January 2020

/s/ *Whitney L. Casement*

Whitney L. Casement #25466
Timothy A. Shultz #16060
Goodell, Stratton, Edmonds & Palmer, LLP
515 S. Kansas Ave.
Topeka, KS 66603-3999
Tel.: 785.233.0593
Fax: 785.233.8870
wcasement@gseplaw.com
tshultz@gseplaw.com

 /s/ *Eric M. George*

Eric M. George (Cal. Bar No. 166403)
(admitted pro hac vice)
Benjamin D. Scheibe (Cal. Bar No. 101327)
(admitted pro hac vice)

12

Browne George Ross LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Tel.: 310.274.7100
Fax: 310.275.5697
bscheibe@bgrfirm.com

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 22nd day of January 2020, a true and correct copy of the foregoing was filed with the Clerk of Court via CM/ECF and served on counsel for Plaintiffs through the Notice of Electronic Filing.

Jack D. McInnes, #21898
McInnes Law LLC
4300 Shawnee Mission Parkway, Suite 100
Fairway, KS 66205
Phone: 816.508.7588
Email: jack@mcinnes-law.com
Attorney for Plaintiffs

Anthony W. Bonuchi (KSD #78567)
Bonuchi Law, LLC
601 Walnut, Suite 300
Kansas City, MO 64106
Tel.: 816-944-3232
Fax: 816-944-3233
Email: anthony@bonuchilaw.com
Co-Counsel for Plaintiffs

Sean Cooper (KSD #26517)
PAUL LLP
601 Walnut Street, Suite 300
Kansas City, Missouri 64106
Tel: (816) 984-8100
FAX (816) 984-8101
Email:  Sean@PaulLLP.com
Counsel for Interested Non-Parties Grant Williams
and Settlement Class:

                                      /s/ *Whitney L. Casement*