# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PIPELINE PRODUCTIONS, INC., et al., | ) |
| Plaintiffs, | ) CIVIL ACTION |
| v. | ) No. 15-4890-KHV |
| THE MADISON COMPANIES, LLC, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

On January 31, 2020, pursuant to the Court's order, U.S. Magistrate Judge Teresa J. James conducted a supplemental pretrial conference at which she required all parties to articulate factual and legal bases for their claims.[1] Amended Order Setting Hearing (Doc. #785) filed January 29, 2020. At that conference, defendants agreed to limit their counterclaims to certain parties, and Judge James found that in some respects, plaintiffs could not articulate actionable claims for liability and/or damages. Id. As a result, consistent with her rulings, she omitted such claims from the Second Amended Pretrial Order (Doc. #795), which she entered on January 31, 2020.[2] On February 7, 2020, Judge James entered an Order And Report And Recommendation (Doc. #813), which memorialized her findings and recommendations. This matter is before the Court on plaintiffs' Objections To Order And Report And Recommendation

---

[1] The supplemental pretrial conference was necessary because as the Court prepared for trial, it became manifestly apparent that even though trial was less than ten days away, the parties had not yet articulated cogent theories of liability and damages. See Amended Pretrial Order (Doc. #660) filed November 15, 2019.

[2] On February 2, 2020, Judge James entered a Nunc Pro Tunc Order (Doc. #801), which amended the Second Amended Pretrial Order (Doc. #795) to include plaintiffs' damage claims for fees, costs and interest that had been inadvertently omitted from the Second Amended Pretrial Order (Doc. #795).

(Doc. #824) filed February 13, 2020, which the Court also construes as a timely objection to the Second Amended Pretrial Order (Doc. #795) and the Nunc Pro Tunc Order (Doc. #801). For reasons explained below, the Court overrules plaintiffs' objections and adopts in its entirety Judge James' Order And Report And Recommendation (Doc. #813).

## Procedural Background

On January 28, 2020, approximately a week before trial in this matter, the Court ordered plaintiffs to show cause by January 30 why the Court should not enter judgment on the pleadings and/or judgment as a matter of law on several of their claims. Order To Show Cause (Doc. #779). The Court noted the seriously convoluted and incomprehensible manner in which plaintiffs had previously articulated their claims, see Amended Pretrial Order (Doc. #660) filed November 15, 2019, and explained that these deficiencies rendered their claims wholly inadequate to proceed to trial. Specifically, plaintiffs had advanced four claims – breach of contract, breach of fiduciary duty, tortious interference and successor liability – which they pursued as if plaintiffs were conjoined,[3] without the slightest effort to assign specific claims to specific plaintiffs who might be entitled to bring them. This style of pleading was convenient, in that it was simple and allowed plaintiffs to dodge serious factual problems in their theories of liability, but it created monumental problems for the Court in trying to draft jury instructions and perform other trial management responsibilities.

---

[3] The claims in the Amended Pretrial Order (Doc. #660) were actually even more complicated than this: they involved two additional plaintiffs (OK Productions and Brett Mosiman) and one additional claim (fraud), which further multiplied the number of claims that plaintiffs asserted. For the sake of simplicity, because the Court later dismissed OK Productions and Mosiman as plaintiffs, Memorandum And Order (Doc. #712) filed December 19, 2019, and granted summary judgment on the fraud claims, Memorandum And Order (Doc. #735) filed January 9, 2020, the Court does not discuss them here. These additional plaintiffs and claims further highlight, however, the confusion that plaintiffs created by conflating their claims in the Amended Pretrial Order (Doc. #660).

In addition to conflating which particular plaintiffs were asserting which particular claims, plaintiffs further muddied the waters by collectively advancing factual allegations against "defendants" (of which there were seven) without describing the conduct of particular defendants that might actually give rise to viable claims. For example, Pipeline and Backwood each asserted breach of contract, breach of fiduciary duty and tortious interference claims separately against The Madison Companies, LLC and Horsepower Entertainment, LLC. In the <u>Amended Pretrial Order</u> (Doc. #660), however, plaintiffs treated "Madison/Horsepower" as a single entity despite undisputed evidence that Madison and Horsepower were distinct legal entities which were not jointly and severally liable under any theories which plaintiffs advanced. In short, as the <u>Amended Pretrial Order</u> (Doc. #660) stood on January 28, 2020, two distinct plaintiffs were attempting to assert four different causes of action against seven distinct defendants, without specifying who was suing whom, on what legal theory and for what relief.

Claims of this incoherent nature could not be properly tried to a jury. Therefore, in addition to ordering a supplemental pretrial conference, <u>see</u> <u>Amended Order Setting Hearing</u> (Doc. #785), the Court ordered plaintiffs to show cause why the Court should not enter judgment on the pleadings and/or judgment as a matter of law on their claims against Horsepower Entertainment, LLC. <u>Order To Show Cause</u> (Doc. #779). Although the Court limited its order to the claims against Horsepower, it noted that plaintiffs should be prepared to also make that showing with respect to their claims against the Madison Companies, LLC. In addition, the Court ordered plaintiffs to prepare four charts as a short-hand reference to clarify their claims. Specifically, the Court requested one chart for each of the following: (1) claims that Pipeline asserted against Madison, (2) claims that Pipeline asserted against Horsepower, (3) claims that Backwood asserted against Madison, and (4) claims that Backwood asserted against Horsepower. Finally, because the

Amended Pretrial Order (Doc. #660) demanded a lump sum of $12,001,267 in damages with no supporting breakdown, computation or verbal explanation of what this figure represented, the Court ordered plaintiffs to provide factual bases for any damages which they sought.[4]

On January 29, 2020, the Court ordered counsel for the parties to appear before Judge James on January 31, 2020 for a supplemental pretrial conference to remedy the problems in the Amended Pretrial Order (Doc #660). Amended Order Setting Hearing (Doc. #785). The Court explained that given the deficiencies in plaintiffs' claims, the purpose of the conference was to finalize a new pretrial order which the Court could actually use for trial management purposes, including jury instructions. The Court also explained that counsel had to arrive with full authority to address and cure any issues that the Court had identified in the Order To Show Cause (Doc. #779) filed January 28, 2020. The Court's concerns also included defendants, and it noted that in many of their affirmative defenses and counterclaims, defendants had also conflated the applicable parties into conjoined entities. The Court explained that defendants were required to state with specificity the factual and legal bases for their counterclaims. Finally, the Court explained that Judge James would prepare a report and recommendation which advised whether any lawyer and/or party should be sanctioned under Rule 11, Fed. R. Civ. P., for asserting legally frivolous or factually unsupported claims or defenses.

---

[4] Prior to January 15, 2020, plaintiffs had sought this amount ($12,001,267) in damages, based solely on the testimony of their expert Steven York. On January 15, 2020, in response to defendants' motion under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Court struck York's testimony. Motion Hearing/Final Pretrial Conference (Doc. #740). On January 30, 2020, in response to the Court's show cause order, plaintiffs made a new demand for various damages which totaled $23,148,500. Plaintiffs' Response To Show Cause Order (Doc. #791). This number was completely new, and was based on non-expert testimony which plaintiffs had not previously disclosed and for which plaintiffs had failed to disclose pertinent computations under Rule 26(a) and (e), Fed. R. Civ. P.

On January 31, 2020, Judge James conducted the supplemental pretrial conference. Order And Report And Recommendation (Doc. #813). During the hearing, defendants agreed to withdraw all of Madison's counterclaims (breach of contract, promissory estoppel, quantum meruit and unjust enrichment) and to limit Horsepower's counterclaims to Pipeline and Backwood, effectively dismissing Horsepower's counterclaims against Mosiman and OK Productions for breach of contract, promissory estoppel, quantum meruit and unjust enrichment.

With respect to plaintiffs' damages claims, Judge James orally ruled that plaintiffs had not timely disclosed their computations of certain categories of damages[5] in accordance with Rule 26(a) and (e), Fed. R. Civ. P. Accordingly, pursuant to Rule 37(c), Fed. R. Civ. P., Judge James did not include these particular damages claims in the Second Amended Pretrial Order (Doc. #795), which she filed late that night. With respect to plaintiffs' substantive claims, Judge James orally ruled that plaintiffs could not articulate a non-frivolous claim that Madison was a party to the alleged oral agreement to produce the Thunder on the Mountain music festival. Consistent with this ruling, Judge James recommended that the Court dismiss the breach of

---

[5] Judge James specifically found that plaintiffs had not disclosed computations for the following damages claims:

Backwood: Loss of a 49% interest in the joint Thunder festival, in the amount of $3.116 million; lost profits of $3.356 million over seven years; consequential damages consisting of (a) $1.45 million in losses and debts Backwood incurred when Thunder festival failed, (b) $660,000 in monies Backwood owed in debts incurred to Mosiman, and (c) minimum of $400,000 Backwood owes under settlement in Arkansas class action.

Pipeline: $230,000 in unreimbursed overhead and expenses incurred by Pipeline on Thunder festival.

Order And Report And Recommendation (Doc. #813) at 3-4.

contract claims by Backwood and Pipeline against Madison. Order And Report And Recommendation (Doc. #813).

As explained, late on January 31, 2020, Judge James entered a Second Amended Pretrial Order (Doc. #795) that was consistent her rulings. Specifically, it did not include the breach of contract claims against Madison or the particular damages at issue.

On February 3, 2020, the Court began what would become an eight-day trial. On February 7, 2020, Judge James filed her Order And Report And Recommendation (Doc. #813), which memorialized her oral rulings and recommendations. On February 13, 2020, plaintiffs filed Objections to Order And Report And Recommendation (Doc. #813), which the Court construes as also objecting to the Second Amended Pretrial Order (Doc. #795) and the Nunc Pro Tunc Order (Doc. #801). Later on February 13, the jury returned a verdict which found defendants liable on all claims except plaintiffs' claims against Madison for tortious interference with a business relationship or expectancy.[6] Jury Verdict (Doc. #830).

## **Legal Standards**

Pursuant 28 U.S.C. § 636(b)(1)(A), the Court can designate a magistrate judge to hear and determine any pending pretrial matters that are non-dispositive. See Fed. R. Civ. P. 72(a). Within 14 days after being served with a copy, a party may serve and file objections to the magistrate's order. Id. The Court must consider timely objections and modify or set aside any part of the magistrate's order that is clearly erroneous or is contrary to law. Id.

For dispositive matters, including judgment on the pleadings and summary judgment, the Court can "designate a magistrate judge to conduct hearings, including evidentiary hearings, and

---

[6] Specifically, the jury found that (1) Horsepower was liable to both Pipeline and Backwood for breach of contract, breach of fiduciary duty and tortious interference and (2) Madison was liable to both Pipeline and Backwood for breach of fiduciary duty.

to submit to [the Court] proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636(b)(1)(B). The magistrate judge must file her proposed findings and recommendations with the Court and mail copies to all parties. 28 U.S.C. § 636(b)(1)(C). The parties have 14 days to serve and file written objections to the magistrate's proposed findings and recommendations. The Court must then make "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id.; see Fed. R. Civ. P. 72(b)(3) (Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). The Court may accept, reject or modify, in whole or in part, the magistrate's findings or recommendations.

### Analysis

On February 13, 2020, plaintiffs filed their <u>Objections To Order And Report And Recommendation</u> (Doc. #813), in which they make several objections to Judge James' report and recommendations. Specifically, plaintiffs argue that (1) the supplemental pretrial conference on January 31, 2020 was procedurally improper and unfair, (2) they asserted viable breach of contract claims against Madison and (3) the Court should allow certain evidence of damages.

### I. Pretrial Conference

Plaintiffs assert that the supplemental pretrial conference that Judge James conducted on January 31, 2020 was procedurally improper and unfair. In this respect, plaintiffs are not challenging Judge James' findings or recommendations, but instead challenging the process itself. According to plaintiffs, Judge James effectively made dispositive rulings when she recommended that the Court dismiss their breach of contract claims against Madison and when she struck their damages claims for the lost value of Thunder, lost profits from Thunder and consequential damages. They argue that as a result, Judge James omitted these claims from the <u>Second Amended</u>

Pretrial Order (Doc. #795), and the Court did not permit plaintiffs to introduce evidence or make arguments about these claims at trial. Accordingly, the Court effectively turned a permissible Section 636(b)(1)(B) hearing into a dispositive hearing for judgment on the pleadings or summary judgment, which is improper under Section 636(b)(1)(A). See 28 U.S.C. § 636(b)(1). Plaintiffs argue that this substantially prejudiced their ability to prosecute their claims.

Preliminarily, the Court notes that plaintiffs did not lodge this objection until the trial had concluded and jury deliberations were in progress. While plaintiffs had 14 days to file their objection, the fact that they waited until February 13 suggests that their objections are more strategic than substantive. If they seriously challenged the limiting provisions of the Second Amended Pretrial Order (Doc. #795), they would have been well advised to object to the District Court before they rested their case in chief.

Judge James' supplemental pretrial conference and recommendations were not improper, nor were they unfair. Under Section 636(b)(1)(A), the Court cannot designate a magistrate judge to hear and determine a motion for judgment on the pleadings or summary judgment. But contrary to plaintiffs' characterization, that did not happen here. Pursuant to Section 636(b)(1)(B), Judge James found that for a variety of reasons, plaintiffs could not articulate non-frivolous claims. Specifically, because plaintiffs had not properly disclosed computations of particular damages claims, Judge James did not include them in the Second Amended Pretrial Order (Doc. #795). Moreover, because plaintiffs could not make a non-frivolous claim that Madison was a party to the allege contract, Judge James recommended that the Court dismiss the breach of contract claims against Madison. As explained below, the Court agrees with Judge James' findings and holds that as a matter of law, both the breach of contract and damages claims must fail. This Court – not Judge James – is making the dispositive determinations on those claims. Moreover, this process

did not "substantially prejudice" plaintiffs' ability to prosecute their claims. That is, plaintiffs were not prejudiced when this Court prohibited them from presenting at trial claims that as a matter of law were factually and legally deficient.

Plaintiffs' assertion that the process was unfair is also wholly unpersuasive. Their primary grievance seems to be the timing of the conference, which took place a few days before trial began. Plaintiffs specifically point to the Court's order that they provide four charts which explained who was suing whom, under which causes of action and for what damages. According to plaintiffs, this was "a significant undertaking that diverted [their] limited attorney resources away from critical trial preparation."[7] Objections To Order And Report And Recommendation (Doc. #813) at 2. This problem was allegedly "compounded" when the Court ordered them to appear in front of Judge James for the supplemental pretrial conference. Plaintiffs complain that the conference went from 8:30 a.m. to approximately 9:00 p.m., and plaintiffs were only given a recess of approximately 1.5 hours to "gather and submit record evidence in support of their damage calculations, the viability of their breach of contract claim against Madison, and the viability of their tortious interference claims." Id. Plaintiffs believe that the timing was unfair because the conference occurred after five years of litigation.

Plaintiffs seem to miss the obvious point: the fact that this process was necessary – a few days before trial after five years of litigation – is exactly why it was not "unfair." In both the Order To Show Cause (Doc. #779) and the Amended Order Setting Hearing (Doc. #785), the Court asked

---

[7] This assertion leaves the Court almost speechless. How can it be that seven days before trial, plaintiffs could not state whom they were suing, why and for what – without a "significant undertaking" that interfered with trial preparation? Taking plaintiffs and all three of their attorneys at their word, however, their inability to easily articulate viable claims during the week before trial proves the point as to why the Court was so deeply concerned about its ability manage the trial and instruct the jury.

plaintiffs to clarify their substantive claims (who was suing whom, why and for what) and their damages claims (the bases for their damage numbers). On the Friday before a Monday trial – after they had been litigating the matter for over five years – it should not have been a "significant undertaking" for plaintiffs to chart the most basic elements of their lawsuit. It defies reason to claim that plaintiffs were "substantially prejudiced" because they only had 1.5 hours to locate evidence that they had disclosed damages computations under Rule 26(a) and (e), Fed. R. Civ. P., that Madison was a party to the contract with Pipeline or Horsepower or that they had viable claims for tortious interference. In other words, plaintiffs' complaint is that they had to show evidence for the claims that they would have to prove at trial less than three days later. This was not "unfair." The Court overrules plaintiffs' objection on this issue. See Fed. R. Civ. P. 16(a) (Court may order attorneys to appear for one or more pretrial conferences for such purposes as expediting disposition of action and improving quality of trial through more thorough preparation).

## II. Breach Of Contract Claims Against Madison

Plaintiffs assert that Judge James erred when she recommended that the Court find that their breach of contract claims against Madison failed as a matter of law.

To succeed on a breach of contract claim under Kansas law, plaintiff must prove the existence of a contract between it and defendant. Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc., 265 F. Supp. 2d 1179, 1187 (D. Kan. 2003). As explained above, Judge James found that plaintiffs had failed to produce non-frivolous evidence that Madison was a party to the alleged oral contract to partner in the production of the Thunder on the Mountain music festival. Plaintiffs argue that this finding was erroneous. In support, they cite the Court's summary judgment order, which held that the evidence established a genuine issue of material fact whether Madison was a party to the agreement. See Memorandum And Order (Doc. #735) filed January 9, 2020 at n.8.

Plaintiffs' argument might have solid footing if they had not changed their breach of contract theory after the Court's summary judgment order. Defendants sought summary judgment in favor of Madison, arguing that if a contract existed, Horsepower – not Madison – was the party to it. Plaintiffs responded by pointing out that Mosiman explicitly mentioned Madison in an email which offered so-called "Option B" to Bryan Gordon. Accordingly, the Court held that a reasonable jury could find that Madison was a party to the contract and denied summary judgment in favor of Madison.[8]

On January 28, 2020, the Court addressed this issue in its Order To Show Cause (Doc. #779), explaining that plaintiffs' breach of contract claims in the Amended Pretrial Order (Doc. #660) conflated the parties on both sides of the alleged contract: they asserted that "Backwood/Pipeline" had entered into a contract with "Madison/Horsepower" – even though all four were legally distinct entities and plaintiffs did not allege any theories which would support findings of joint and several liability. Accordingly, the Court ordered plaintiffs to show cause why the Court should not dismiss the contract claims against Horsepower. Order To Show Cause (Doc. #779) at 2. Specifically, the Court noted that the Amended Pretrial Order (Doc. #660) did not allege that Horsepower in particular had entered into any agreement with Backwood, Pipeline or "Backwood/Pipeline" (whatever that was). Id. The Court also informed the parties that it would later address those issues with respect to Madison.

In response to the Court's show cause order, plaintiffs explained the parties to the contract as follows:

> Horsepower agreed to purchase (with Madison's capital) 51% percent of Thunder from Backwood for $750,000.00. Horsepower also agreed to pay Pipeline $80,000.00 per year to stage and produce Thunder. The evidence confirming the

---

[8] Defendants did not argue alternatively that Horsepower was not the party to the contract, and the Court did not address this issue.

-11-

>verbal contract is found in the parties' substantial performance, in Exhibit 103, and in documents like Exhibit 301, which states Horsepower was the entity through which Madison was purchasing 51% of Thunder.

<u>Plaintiffs' Response To Show Cause Order</u> (Doc. #791) filed January 30, 2020 at 5-6. In other words, plaintiffs changed their breach of contract theory: in response to defendants' summary judgment motion, plaintiffs had claimed that Madison was the purchaser. In response to the order to show cause, they said that Horsepower was the purchaser (using Madison's money). Plaintiffs did not advance any theory how Madison's role as banker would make it a party to the underlying contract. Accordingly, on and after January 30, 2020, plaintiffs did not articulate non-frivolous breach of contract claims against Madison.

At the pretrial conference with Judge James, plaintiffs had yet another opportunity to explain how Madison was a party to the alleged contract. They still could not do so. Having had five years to perfect their contract claims – including a show cause order in which the Court expressly asked them to clarify this exact issue – plaintiffs still could not answer two simple questions: (1) what would Madison *get* under the contract? and (2) what would Madison *give* under the contract? Consistent with their prior pleadings, plaintiffs continued to conflate Madison and Horsepower (two distinct legal entities). In other words, after litigating the matter for over five years, plaintiffs themselves could not articulate how Madison was a party to the alleged contract. Because plaintiffs failed to articulate a non-frivolous theory that Madison had entered into a contract with either Pipeline or Backwood, their breach of contract claims against Madison failed as a matter of law. The Court agrees with Judge James' recommendation and overrules plaintiffs' objection on this issue.

**III.    Damages**

Plaintiffs assert that Judge James erred when she struck some of plaintiffs' damage claims. Judge James was in and out of court throughout the supplemental pretrial conference, and she gave plaintiffs' counsel extended breaks to find evidence that they had timely disclosed their computations of certain categories of damages in accordance with Rule 26(a) and (e), Fed. R. Civ. P. When they could not, Judge James found that they had failed to comply with Rule 26, and therefore did not include particular damages claims in the Second Amended Pretrial Order (Doc. #795). Specifically, she found that plaintiffs had not adequately disclosed the following:

> Backwood: Loss of a 49% interest in the joint Thunder festival, in the amount of $3.116 million; lost profits of $3.356 million over seven years; consequential damages consisting of (a) $1.45 million in losses and debts Backwood incurred when Thunder festival failed, (b) $660,000 in monies Backwood owed in debts incurred to Mosiman, and (c) minimum of $400,000 Backwood owes under settlement in Arkansas class action.
>
> Pipeline: $230,000 in unreimbursed overhead and expenses incurred by Pipeline on Thunder festival.

Order And Report And Recommendation (Doc. #813) at 3-4.

The Federal Rules of Civil Procedure require parties to initially disclose computations for each category of damages, and to timely supplement that disclosure when it becomes incomplete or incorrect. Fed. R. Civ. P. 26(a)(1)(A)(iii) & (e)(1)(A). If a party fails to disclose computations in violation of Rule 26, it cannot use those computations at trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

Here, plaintiffs challenge Judge James' recommendations with respect to (1) plaintiffs' business valuation ($3.116 million) and lost profits ($3.356 million) and (2) certain debts that Backwood and Pipeline incurred ($1.45 million, $660,000, $400,000 and $230,000, for a total of $2,740,000). According to plaintiffs, they disclosed the computations for these figures in compliance with Rule 26(a) and (e), and even if they did not, the error was harmless.

-13-

### A. Compliance With Rule 26

With respect to the business valuation ($3.116 million) and lost profits ($3.356 million), plaintiffs argue that they complied with Rule 26(a) and (e) because in their initial disclosure from December 4, 2017, see Plaintiffs' Initial Disclosures (Doc. #824-1), and in their most recent damage calculation disclosure from October 24, 2018, see Plaintiffs' Third Supplemental Disclosures (Doc. #824-2), they listed Mosiman as a witness with knowledge of their damages. With respect to Mosiman, the latter disclosure[9] reads in full:

> Mr. Mosiman has knowledge of the factual allegations in the Amended Complaint, including but not limited to, Defendants' breach of their contract to pay $750,000.00, fund $500,000.00 of operating capital for the Thunder on the Mountain ("Thunder") music festival, and pay $80,000.00 for production of the festival in exchange for a 51% interest in Thunder. He also has knowledge of Defendants' bait and switch tactics, as well as Defendants' pilfering of Plaintiffs' key partners and employees. Finally, Mr. Mosiman has knowledge of the devastating impact Defendants' conduct had on Plaintiffs' finances, reputation, and ability to put on music festivals going forward.

Id. at 1. Neither of these disclosures mention the specific numbers at issue ($3.116 million and $3.356 million), let alone the underlying computations. Accordingly, they do not satisfy the disclosure requirements of Rule 26(a) and (e), Fed. R. Civ. P.

Plaintiffs argue that they complied with Rule 26 because the Amended Pretrial Order (Doc. #660) filed November 15, 2019 incorporated the calculations of Steven York – plaintiffs' damages expert whose testimony the Court struck on January 15, 2020. See Motion Hearing/Final Pretrial Conference (Doc. #740). This argument is bizarre in various respects. First, plaintiffs cite no authority for the proposition that because an earlier pretrial order summarily referred to calculations from a stricken damages expert, plaintiffs complied with Rule 26. Second, plaintiffs'

---

[9] With respect to Mosiman, the disclosure of October, 24 2018 repeats the information in the disclosure of December 4, 2017, with additional assertions.

premise is false: the Amended Pretrial Order (Doc. #660) did not "incorporate" York's calculation – it did not mention York, any of his calculations or even his final numbers. Finally, York valued plaintiffs' business enterprise at $6,734,925. York Report (Doc. #732-1) filed January 6, 2020. In the section discussing damages, the Amended Pretrial Order (Doc. #660) simply lists a lump sum of $12,001,267 – without any further explanation – and it is not York's number. This so-called disclosure does not satisfy Rule 26(a) and (e), Fed. R. Civ. P.

With respect to debts that Backwood and Pipeline incurred ($2,740,000 in all), plaintiffs' argument seems to miss the point entirely. Plaintiffs explain what each number designates, but make no serious effort to show when and where they disclosed the computation of these numbers in compliance with Rule 26(a) and (e), Fed. R. Civ. P.

**B.     Harmless Error**

Plaintiffs assert that even if they did not comply with Rule 26, any error was harmless. Fed. R. Civ. P. 37(c)(1). Under Rule 37, the Court has broad discretion in determining the harmfulness of a Rule 26 violation, and it considers four factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. Jayhawk Capital Mgmt., LLC v. LSB Indus., Inc., No. 08-2561-EFM, 2011 WL 1626581, at *9 (D. Kan. Apr. 28, 2011) (citations omitted).

Plaintiffs primarily focus on the first factor, arguing that defendants were not prejudiced by their Rule 26 violation because "Mr. Mosiman's damages calculations are simple math." Objections To Order And Report And Recommendation (Doc. #813) at 7. To explain this "simple math," plaintiffs assert as follows:

> For his valuation of 49% of Thunder [$3.116 million], he makes a conservative projection for attendance, sales and profits based on a 7-year period using Wakarusa

> as a comparator, similar to Defendants' valuation of their first-year Kaaboo festival set forth in their investor committee memo that has been introduced into evidence, based on numbers contained in Defendants' investor committee memos about Thunder and the parties' working budgets for Thunder 2015. For lost profits [$3.356 million], Mr. Mosiman simply takes 49% of the profits Backwood, as owner of Thunder, would have received using the same 7-year projection.

Id. This explanation fails to shed any light on the numbers to which Mosiman proposed to testify. In other words, even after this additional attempt to explain their calculations, plaintiffs still have not clarified where the following numbers come from:

> Backwood: Loss of a 49% interest in the joint Thunder festival, in the amount of $3.116 million; lost profits of $3.356 million over seven years.

The same is true with respect to the debts that Backwood and Pipeline allegedly incurred (totaling $2,740,000). As the Court explained above, plaintiffs explain what each number designates but not the computation of those numbers. This is not a case where plaintiffs' failure to comply with Rule 26 was harmless because their damages calculations were "simple math." Plaintiffs still cannot explain where these numbers come from. The Court addressed this very issue with plaintiffs, as follows:

> Plaintiffs' damage claims have been the paradigmatically moving target, and plaintiffs have had multiple chances to iterate, re-iterate and re-re-iterate their damage claims. E.g., Second Amended Pretrial Order (Doc. #795); Steven York Report (Doc.#761-1); Amended Pretrial Order (Doc. #660) filed November 15, 2019; Plaintiffs' Response To Show Cause Order (Doc.#791) filed January 30, 2020. After days of uninterrupted opportunity to make their best case on their theories and amounts of damages, they have almost entirely failed to satisfy the two relevant threshold inquiries: (1) whether they breached their duties to initially disclose a computation for each category of damages claimed under Rule 26(a)(1)(A)(iii) and to supplement those computations under Rule 26(e), Fed. R. Civ. P.; and (2) whether notwithstanding said breach, they should be allowed to testify about their damage computations at trial.

Order (Doc. #815) filed February 7, 2020.

Plaintiffs' argument that their violations of Rule 26 were harmless does not pass the laugh test. After five years of litigation, days before trial, they launched new damages claims exceeding

$10.5 million.  Defendants had no way of discerning the underlying computations and no opportunity to conduct discovery on the new claims.  Because their violation of Rule 26(a) and (e), Fed. R. Civ. P. was not harmless, the Court overrules plaintiffs' objection on this issue.

The Court agrees with and adopts in their entirety the determinations that Judge James made in her Order And Report And Recommendation (Doc. #813) filed February 7, 2020.

**IT IS SO ORDERED.**

Dated this 16th day of March, 2020 at Kansas City, Kansas.

                                              s/ Kathryn H. Vratil
                                              KATHRYN H. VRATIL
                                              United States District Judge