**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

PIPELINE PRODUCTIONS, INC., et al., )
)
                        Plaintiffs, )    CIVIL ACTION
)
v. )    No. 15-4890-KHV
)
THE MADISON COMPANIES, LLC, et al., )
)
                        Defendants. )
)

**MEMORANDUM AND ORDER**

On February 3, 2020, the Court began an eight-day trial in this matter. On February 10, 2020, after plaintiffs rested their case in chief, defendants orally moved for judgment as a matter of law pursuant to Rule 50(a), Fed. R. Civ. P. Oral Motion (Doc. #825). The Court took that motion under advisement. On February 13, 2020, after defendants had completed their case in chief, defendants filed written authorities in support of their oral motion of February 10. Defendants' Memorandum In Support Of Motion For Judgment As A Matter Of Law (Doc. #822). Later on February 13, the jury returned a verdict which found defendants liable on all claims except plaintiffs' claims for tortious interference with a business relationship or expectancy against Madison Companies, LLC ("Madison").[1] Jury Verdict (Doc. #830). Specifically, the jury found (1) Horsepower Entertainment, LLC ("Horsepower") liable to Pipeline Productions, Inc. ("Pipeline") for breach of contract, breach of fiduciary duty and tortious interference,

---

[1] Because the jury found that Madison is not liable to either Pipeline or Backwood for tortious interference, defendants' motion for judgment as a matter of law is moot. See Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc., No. 09-2518-JAR, 2015 WL 13642257, at *1 (D. Kan. Sept. 11, 2015) (overruling as moot defendant's motion for judgment as matter of law because jury found in its favor).

(2) Horsepower liable to Backwood Enterprises, LLC ("Backwood") for breach of contract, breach of fiduciary duty and tortious interference and (3) Madison liable to Pipeline and Backwood for breach of fiduciary duty.  This matter is before the Court on defendants' Oral Motion (Doc. #825) filed February 10, 2020 and Defendants' Memorandum In Support Of Motion For Judgment As A Matter Of Law (Doc. #822) filed February 13, 2020.  For the reasons below, the Court overrules defendants' motion.

**Legal Standards**

Under Rule 50(a)(1), Fed. R. Civ. P., the Court may grant judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the [C]ourt finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  A moving party is entitled to judgment if the evidence "points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."  Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1268 (10th Cir. 2000) (internal quotations and citations omitted).  The question "is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party."  Herrera v. Lufkin Indus., Inc., 474 F.3d 675, 685 (10th Cir. 2007).

In considering a motion for judgment as a matter of law, the Court reviews all of the evidence in the record and construes it in the light most favorable to the nonmoving party.  Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 812 (10th Cir. 2000) (citations omitted).  In doing so, the Court must refrain from making credibility determinations and weighing the evidence: the jury "has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the

evidence, and reaching ultimate conclusions of fact." United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1227 (10th Cir. 2000) (internal quotations and citation omitted).

## Analysis

Defendants assert that they are entitled to judgment as a matter of law on all of plaintiffs' claims. Specifically, defendants argue that a reasonable jury could not find for plaintiffs because (1) plaintiffs' evidence regarding actual damages is speculative and conjectural, (2) plaintiffs' evidence does not satisfy the necessary elements of each claim and (3) plaintiffs cannot recover punitive damages.

### I.   Actual Damages

Defendants assert that plaintiffs did not present concrete, non-speculative evidence of actual damages. Because actual damages are an essential element of plaintiffs' claims for breach of contract, breach of fiduciary duty and tortious interference, defendants argue that no reasonable jury could find in favor of plaintiffs on these claims.

Under Kansas law, actual damages are an essential element of breach of contract, breach of fiduciary duty and tortious interference claims. Gateway Fin. Grp., Inc. v. Mission Bank, No. 95-2428-GTV, 1997 WL 567791, at *5 (D. Kan. Aug. 15, 1997) (actual damages essential element of breach of contract claim); Fergus v. Faith Home Healthcare, Inc., No. 18- 2330-JWL, 2019 WL 3817961, at *10 (D. Kan. Aug. 14, 2019) (actual damages essential element of breach of fiduciary duty and tortious interference claims). To satisfy this element, plaintiffs must provide evidence of actual damages that is "based on more than mere speculation, conjecture, or surmise." Sibley v. Sprint Nextel Corp., No. 08-2063-KHV, 2017 WL 8944042, at *4 (D. Kan. Apr. 21, 2017), report and recommendation adopted, No. 08-2063-KHV, 2017 WL 2471304 (D. Kan. June 8, 2017) (citations omitted). Plaintiffs' evidence of actual damages can be adequately concrete even if they

-3-

do not quantify or place a specific dollar amount on them.  Fergus, 2019 WL 3817961, at *10 (evidence of actual damages from tortious interference and breach of fiduciary duty insufficient where counterclaimant failed to show "any injury whatsoever" – not because he failed to quantify or monetize actual damages); Sunlight Saunas, Inc. v. Sundance Sauna, Inc., 442 F. Supp. 2d 1160, 1170 (D. Kan. 2006) (actual damages do not require actual dollar value for injury).  In other words, where it is an essential element of a claim, Kansas law requires plaintiffs to prove the existence of non-speculative, actual damages – but not necessarily the dollar amount of such damages.

Defendants' argument focuses on plaintiffs' claims for tortious interference and breach of fiduciary duty.[2]  In that regard, defendants argue that plaintiffs failed to provide non-speculative evidence of specifically-quantifiable damages, and plaintiffs therefore failed to establish the fact of damage.  As the Court explained above, however, Kansas law does not support this rigid test for actual damages.  Plaintiffs need only prove the existence of non-speculative, actual damage.  They have done so here.  With respect to the tortious interference claims, Mosiman testified that Horsepower stole several employees (Nate Prenger, Brian Pilsl, Brian Wingerd and Taylor Gustafson) from Backwood and Pipeline, which cost Backwood and Pipeline their value and forced them to hire and train new ones.  Mosiman likewise testified that when Horsepower and Madison breached their fiduciary duties to Backwood and Pipeline by trying to force them to accept different deals, suing and threatening more litigation, sending defamatory letters and

---

[2] Defendants also argue that plaintiffs did not adequately quantify damages for their breach of contract claim.  Specifically, they take issue with the damage claims for $750,000 and $80,000 –amounts that Horsepower allegedly owed under the purported contract.  In support, defendants cite the Court's Order (Doc. #815) filed February 7, 2020, which found that the Second Amended Pretrial Order (Doc. #795) filed January 31, 2020 did not disclose plaintiffs' damage calculations in compliance with Fed. R. Civ. P. 26(a)(1)(A)(iii).  This observation clearly did not refer to the claims for $750,000 and $80,000, which were always part of plaintiffs' breach of contract damage claims and were not damage claims that needed computation.

stealing their employees, Horsepower and Madison severely damaged their reputation and viability as music festival business.  As a result, Backwood and Pipeline have been unable to produce any more music festivals.  Because plaintiffs provided non-speculative evidence of actual damages, the Court overrules defendants' motion on this issue.

## II.     Substantive Claims

### A.     Breach Of Contract

Horsepower asserts that it is entitled to judgment as a matter of law on the breach of contract claims because no reasonable jury could find that a contract existed between it and Pipeline and/or Backwood.  Specifically, Horsepower argues that any alleged agreement omitted too many key provisions to be binding, which shows that the parties only intended to enter a future contract.

Under Kansas law, parties form a binding contract – which can be written or oral – when they reach a meeting of the minds on all essential elements of the agreement.  See Ludwikoski & Assocs., Inc. v. Yeti Coolers, LLC, No. 13-2649-EFM, 2014 WL 3767684, at *5 (D. Kan. July 31, 2014); see also RLI Ins. Co. v. Russell, No. 14-2479-EFM, 2015 WL 9455569, at *5 (D. Kan. Dec. 23, 2015).  For the parties to reach a meeting of the minds, "there must be a fair understanding between [them] which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same manner and agreed upon the terms of the contract."  Felling v. Hobby Lobby, Inc., No. 04-2374-GTV, 2005 WL 928641, at *3 (D. Kan. Apr. 19, 2005) (citations omitted).  To determine whether the parties did so, the Court applies an objective test that asks whether they manifested their intent to be bound by the agreement.  Sw. & Assocs., Inc. v. Steven Enterprises, LLC, 32 Kan. App. 2d 778, 781, 88 P.3d 1246, 1249 (2004).  In other words, the relevant inquiry is the "manifestation of a party's

intention, rather than the actual or real intention." Id. Accordingly, the Court looks to the parties' "outward expression[s] of assent." Pierce v. PrimeRevenue, Inc., No. 17-2233-JWB, 2018 WL 4749331, at *2 (D. Kan. Oct. 2, 2018). Parties can manifest an intent sufficient to form a binding contract even if they "contemplate the subsequent execution of a formal instrument as evidence of their agreement," and even if they "know[ ] that there are other matters on which the have not agreed and on which they expect further negotiation." Phillips & Easton Supply Co. v. Eleanor Int'l, Inc., 212 Kan. 730, 735, 512 P.2d 379, 384 (1973); Storts v. Martin K. Eby Const. Co., 217 Kan. 34, 40, 535 P.2d 908, 913 (1975).

Here, a reasonable jury could find that Backwood, Pipeline and Horsepower entered into an agreement to partner in the production of Thunder on the Mountain. Specifically, a reasonable jury could find that (1) Pipeline agreed to produce and operate Thunder, for which Horsepower agreed to pay Pipeline $80,000 and (2) Backwood agreed to give Horsepower a 51% interest in Thunder, for which Horsepower agreed to pay Backwood $750,000. The record contains evidence that on November 4, 2014, Mosiman emailed Gordon a proposed framework for this deal, and approximately two days later Gordon orally agreed to a slightly modified version of it. Soon after they entered into the alleged agreement, Mosiman emailed Gordon to discuss booking a specific artist for Thunder, to which Gordon responded, "Do it, please!" Moreover, Horsepower later funded $272,000 in artist deposits and created four entities with variations of the name "Thunder on the Mountain." Finally, Horsepower – through Gordon – continued to exercise significant control over various aspects of the operation, including deciding which bands to book. Based on this evidence, a reasonable jury could find that Horsepower entered into an agreement with Backwood and Pipeline to produce the Thunder on the Mountain music festival. The Court therefore overrules Horsepower's motion on this issue.

### B. Breach Of Fiduciary Duty

Defendants assert that they are entitled to judgment as a matter of law on the breach of fiduciary duty claims because the economic loss doctrine bars them.[3] Specifically, defendants argue that plaintiffs' damages under the breach of fiduciary duty claims are the same as those under the breach of contract claim.

Kansas courts have adopted the economic loss doctrine, which "sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." Freedom Transportation, Inc. v. Navistar Int'l Corp., No. 18-02602-JAR, 2019 WL 4689604, at *23 (D. Kan. Sept. 26, 2019), motion to certify appeal denied, No. 18-02602-JAR, 2020 WL 108670 (D. Kan. Jan. 9, 2020). The doctrine prevents parties "from asserting a tort remedy in circumstances governed by the law of contracts." BHC Dev., L.C. v. Bally Gaming, Inc., 985 F. Supp. 2d 1276, 1287 (D. Kan. 2013) (citations omitted). In effect, this means that plaintiffs cannot recover under tort theories when their claims are actually based in contract. In other words, if plaintiffs' claims arise under the contract – "as opposed to an independent duty arising by operation of law" – plaintiffs cannot assert tort claims to recover economic damages. Rand Const. Co. v. Dearborn Mid-W. Conveyor Co., 944 F. Supp. 2d 1042, 1062 (D. Kan. 2013);

---

[3] Defendants also argue that the breach of fiduciary duty claims fail as a matter of law because plaintiffs did not provide evidence that quantified their damages. The Court rejected this argument above.

Finally, defendants argue that some of their actions do not constitute breaches. Specifically, they assert that (1) filing the Delaware lawsuits was privileged and (2) the letters that they sent to talent agents were not defamatory and did not harm plaintiffs. Defendants do not cite any authority or record evidence to support their assertions. Even if both propositions are true, however, plaintiffs asserted four different actions by which defendants violated their fiduciary duties. Specifically, in addition to filing lawsuits and sending letters, plaintiffs claimed that defendants breached their fiduciary duties by stealing their employees and trying to force plaintiffs to accept different deals. The evidence supports these theories and defendants are not entitled to judgment as a matter of law on the breach of fiduciary duty claims.

see Andrewjeski v. Bimbo Foods Bakeries Distribution, LLC, No. 18-2425-KHV, 2019 WL 2250068, at *13 (D. Kan. May 24, 2019).

As the Court has recently explained, the economic loss doctrine is still developing under Kanas law, and Kansas courts have largely limited its application to the commercial product liability sphere. Andrewjeski, 2019 WL 2250068, at *12. According to the Kansas Supreme Court, determining when the doctrine should apply outside of this limited context "has proven difficult, and there is some sense the doctrine's application has expanded too far." Rinehart v. Morton Bldgs., Inc., 297 Kan. 926, 934, 305 P.3d 622, 628 (2013). Indeed, no Kansas court has found that the doctrine applies to claims for breach of fiduciary duty.

Against this backdrop, the Court declines to expand the economic loss doctrine to the breach of fiduciary duty claims in this case. The fiduciary duties at issue arose by virtue of an alleged joint venture agreement. See Underground Vaults & Storage, Inc. v. Cintas Corp., 632 F. App'x 917, 922 (10th Cir. 2015) (parties to joint venture owe each other fiduciary duties). Under defendants' argument, joint venturers could never enforce those fiduciary duties: if their agreement explicitly imposed fiduciary duties, the economic loss doctrine would bar their breach of fiduciary duty claims because they arose under the contract. If their agreement did not explicitly impose fiduciary duties (as in this case), the economic loss doctrine would still bar their breach of fiduciary duty claims because the duties nonetheless arose under the joint venture agreement. In other words, because the fiduciary duties would always arise under the joint venture – which is established by the agreement of the parties – the economic loss doctrine would always bar recovery for breaches of those duties. Accordingly, defendants' proposal would effectively abolish remedies for the well-established law that joint venturers owe each other fiduciary duties. The Court declines to do so.

## C. Tortious Interference

Horsepower asserts that it is entitled to judgment as a matter of law on the tortious interference claims by Pipeline and Backwood.[4] To succeed on a claim for tortious interference with a prospective business advantage under Kansas law, plaintiffs must show (1) a business relationship or expectancy with probable future economic benefit to plaintiffs, (2) defendants' knowledge of the relationship or expectancy, (3) that but for defendants' conduct, plaintiffs were reasonably certain to have continued the relationship or realized the expectancy, (4) that defendants engaged in intentional misconduct and (5) plaintiffs sustained direct and proximate damages. Pipeline Prods., Inc. v. Horsepower Entm't, No. 15-4890-KHV, 2017 WL 4536420, at *5 (D. Kan. Oct. 11, 2017) (citations omitted).

Here, Horsepower asserts that plaintiffs' tortious interference claims must fail because plaintiffs have not satisfied various elements with respect to each employee at issue (Nate Prenger, Brian Pilsl, Brian Wingerd and Taylor Gustafson).[5]

### 1. Prenger

Nate Prenger was a minority partner in several of Mosiman's companies, and he operated Pipeline and Backwood. Plaintiffs ultimately fired Prenger for embezzlement, and he immediately

---

[4] As the Court explained above, the jury found that Madison was not liable for tortious interference. Accordingly, defendants' motion on this issue is moot with respect to Madison.

[5] Without citing any authority or record evidence, Horsepower also argues that plaintiffs have not satisfied the intentional misconduct element with respect to the employees at issue. To satisfy the intentional misconduct element of a claim for tortious interference with a prospective business advantage, plaintiffs must show that defendants acted with "intent to do a harmful act without reasonable justification." Pipeline Prods., Inc. v. Horsepower Entm't, No. 15-4890-KHV, 2017 WL 4536420, at *3 (D. Kan. Oct. 11, 2017) (citations omitted). Based on the evidence in the record, a reasonable jury could find that Horsepower intended to harm plaintiffs when it stole plaintiffs' employees.

went to work for Horsepower.  Horsepower asserts that as a matter of law, it did not tortiously interfere with plaintiffs' business relationship or expectancy with Prenger.  Specifically, it argues that plaintiffs fired Prenger before Horsepower hired him, and that even absent its alleged tortious interference, plaintiffs were not reasonably certain to have continued their relationship with Prenger.

The Court disagrees.  The record contains evidence that even before Prenger's relationship with plaintiffs fell apart, Horsepower was soliciting Prenger to leave plaintiffs and come work for it.  Plaintiffs presented evidence that as early as April of 2015, Horsepower and Prenger were exchanging draft consulting agreements.  This caused the relationship between Prenger and Mosiman to sour and on July 1, 2015, Mosiman terminated Prenger's employment.  Prenger began working for Horsepower the next day.  Although Prenger's embezzlement was the final straw leading to his termination, Mosiman also cited Prenger's continued collusion with Horsepower and the resulting deterioration of their relationship.  A reasonable jury could find that absent this interference from Horsepower, plaintiffs were reasonably certain to have continued their relationship with Prenger.

      **2.**      **Gustafson**

Taylor Gustafson was the ticketing manager and box office manager for Pipeline and Backwood.  She was responsible for the box office, credentials and the guest lists for the festivals.  In July of 2015, she began working for Horsepower.  Horsepower asserts that as a matter of law, it did not tortiously interfere with plaintiffs' business relationship or expectancy with Gustafson.  Specifically, Horsepower argues that Mosiman was unhappy with her performance, and that even

absent its alleged tortious interference, plaintiffs were not reasonably certain to have continued their relationship with her.[6]

The Court disagrees. Even if it were true that plaintiffs were unhappy with Gustafson's performance – a proposition for which defendants cite no record evidence – this does not prove as a matter of law that plaintiffs were not reasonably certain to have continued their relationship with her absent Horsepower's interference. Horsepower seems to implicitly argue that given Gustafson's purported performance, plaintiffs were ultimately going to fire her at some point even if Horsepower did not steal her away. Horsepower does not cite any record evidence for this theory. A reasonable jury could find that absent Horsepower's interference, plaintiffs were reasonably certain to have continued their relationship with Gustafson.

### 3. Pilsl And Wingerd

Brian Pilsl and Brian Wingerd owned Sprocket Marketing, an entity that provided various festival-related services to Backwood and Pipeline. As early as June of 2015, Horsepower began to solicit Pilsl and Wingerd to provide Sprocket's services to it and to end their relationships with plaintiffs. On October 1, 2015, Pilsl and Wingerd officially began working for Horsepower.

Horsepower asserts that as a matter of law, it did not tortiously interfere with plaintiffs' business relationships or expectancies with Pilsl and Wingerd. Specifically, Horsepower argues that Pilsl and Wingerd provided services to plaintiffs under an independent contracting arrangement. As best the Court can ascertain, Horsepower is arguing that plaintiffs have not

---

[6] In less than a sentence, defendants assert that plaintiffs have not established a business relationship or expectancy with Gustafson because plaintiffs did not employ her. Defendants do not identify Gustafson's alleged employer, and they do not cite record evidence. On this record, the Court cannot conclude as a matter of law that for purposes of their tortious interference claims, Pipeline and/or Backwood lacked a business relationship or expectancy with Gustafson.

established a business relationship or expectancy with either Pilsl or Wingerd because plaintiffs did not employ them.

Beyond vaguely referencing "the testimony," Horsepower does not cite any record evidence that Pilsl and Wingerd provided services to plaintiffs under independent contracting agreements. Moreover, even if the evidence did show this, Horsepower does not cite any authority for the proposition (or any authority at all) that this type of service arrangement cannot satisfy the business relationship or expectancy prong of a tortious interference claim. In other words, Horsepower has not shown that as a matter of law, plaintiffs could not have had a business relationship or expectancy with probable future economic benefit simply because Pilsl and Wingerd provided their services via independent contractor agreements. The Court therefore overrules Horsepower's motion on this issue.

### III. Punitive Damages

Defendants assert that as a matter of law, plaintiffs cannot recover punitive damages because they have not shown that defendants acted in a "wanton and willful" manner.[7]

Punitive damages "punish the wrongdoer for his malicious, vindictive or willful and wanton invasion of another's rights, with the ultimate purpose being to restrain and deter others from the commission of similar wrongs." Brand v. Mazda Motor Corp., 978 F. Supp. 1382, 1393 (D. Kan. 1997). Defendants display wantonness when they realize that their acts place others in imminent danger or risk of injury, but fail to prevent such injury because of indifference to whether the injury occurs. Id.

---

[7] Citing Fergus, defendants also assert that if the jury returns a verdict finding only nominal damages, punitive damages are not available under Kansas law. 2019 WL 3817961, at *9. As defendants seem to acknowledge, this is an issue more properly suited for a post-trial motion.

For purposes of the tortious interference and breach of fiduciary duty claims,[8] the evidence is sufficient to support punitive damages. A reasonable jury could find that Horsepower and Madison intended to harm Backwood and Pipeline when, among other actions, they stole their employees, tried to get them to accept a different deal, sued them and threatened further litigation and sent defamatory letters to artist agencies. The Court therefore overrules defendants' motion on this issue.

**IT IS THEREFORE ORDERED** that defendants' Oral Motion (Doc. #825) filed February 10, 2020 is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants' Memorandum In Support Of Motion For Judgment As A Matter Of Law (Doc. #822) filed February 13, 2020 is **OVERRULED.**

Dated this 17th day of March, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[8] Under Kansas law, punitive damages are not available for the breach of contract claims against Horsepower. See Penncro Assocs., Inc. v. Sprint Corp., No. 04-2549-JWL, 2006 WL 416227, at *9 (D. Kan. Feb. 22, 2006).